**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

In re:

SPIEGEL, INC., et al.,

                **Reorganized Debtors.**

Chapter 11

Case No.  07-CV-10317-RJH

(Related Case No. 07-CV-03947-RJH
& Related Bankruptcy Case 03-11540)

----------------------------------------------------------------x

**DECLARATION IN SUPPORT OF SPIEGEL CREDITOR TRUST'S**
**MOTION TO DISMISS SECOND JOHNSON APPEAL**

      DAVID M. LeMAY, declares under penalties of perjury pursuant to 28 U.S.C. § 1746
as follows:

      1.      I am an attorney with the law firm of Chadbourne & Parke LLP, attorneys for the
Spiegel Creditor Trust (the "Creditor Trust").  As such, I am fully familiar with the facts set forth
herein that relate to the pending appeal of Jacqueline J. Johnson (hereafter, "Johnson").  I make
this declaration in support of the Creditor Trust's Motion to Dismiss Second Johnson Appeal (the
"Motion to Dismiss").  Attached hereto are copies of the documents relied upon in the Creditor
Trust's Motion to Dismiss.

      2.      Attached hereto at Exhibit 1 is a true and correct copy of Bankruptcy Claim
Number 4248 filed by Jacqueline J. Johnson against Spiegel, Inc., *et al.* for $100,000.00
(Bankruptcy Court recorded as filed on October 15, 2004).

      3.      Attached hereto at Exhibit 2 is a true and correct copy of Debtors' Twenty-Fourth
Omnibus Objection to Proofs of Claim (No Amount Due and Owing, Amount of Claim
Incorrect, Claims Filed Against Incorrect Debtor, Misclassified Claims and Amended and

Superseded Claims) (Bankruptcy Docket No. 2431) (Bankruptcy Court recorded as filed on December 9, 2004).

4.      Attached hereto at Exhibit 3 is a true and correct copy of Johnson's Objection to Notice of Presentment of Order Granting the Debtors' Twenty-Fourth Omnibus Objection to Proofs of Claim (No Amount Due and Owing, Amount of Claim Incorrect, Claims Filed Against Incorrect Debtor, Misclassified Claims and Amended and Superseded Claims) (Bankruptcy Docket No. 2593) (Bankruptcy Court recorded as filed on January 4, 2005).

5.      Attached hereto at Exhibit 4 is a true and correct copy of Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Bankruptcy Docket No. 3556) (Bankruptcy Court recorded as filed on May 23, 2005).

6.      Attached hereto at Exhibit 5 is a true and correct copy of Finding of Facts, Conclusions of Law and Order Pursuant to 11 U.S.C. § 1129(a) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Modified First Amended Joint Plan of Reorganization of Affiliated Debtors and Granting Related Relief (Bankruptcy Docket No. 3590) (Bankruptcy Court recorded as filed May 25, 2005).

7.      Attached hereto at Exhibit 6 is a true and correct copy of the Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline J. Johnson (Bankruptcy Docket No. 4606) (Bankruptcy Court recorded as filed December 19, 2006).

8.      Attached hereto as Exhibit 7 is a true and correct copy of a judgment by default obtained by Johnson in an action captioned Jacqueline Johnson v. Spiegel, Inc., Case Number 07 Civ. 00747 filed in the United States District Court for the Northern District of Illinois (the

2

"Illinois Action") and entered on July 13, 2007.

9.      Attached hereto as Exhibit 8 is a true and correct copy of the court's docket sheet in the Illinois Action.

10.      Attached hereto as Exhibit 9 is a true and correct copy of Johnson's Complaint which commenced the Illinois Action.

11.      Attached hereto as Exhibit 10 is a true and correct copy of a Motion by Defendant Spiegel, Inc. to vacate Default Judgment in the Illinois Action filed on August 27, 2007.

12.      Attached hereto as Exhibit 11 is a true and correct copy of a Minute entry before Judge Elaine E. Bucklo granting the Motion of Special Creditor Trust to vacate default judgment in the Illinois Action entered August 30, 2007.

13.      Attached hereto as Exhibit 12 is a true and correct copy of Motion to Hold Johnson in Contempt of Court for Knowing Violation of Plan Injunction (Bankruptcy Docket No. 4713) (Bankruptcy Court recorded as filed August 3, 2007).

14.      Attached hereto as Exhibit 13 is a true and correct copy of Order Granting Creditor's Trust Motion to Hold Johnson in Contempt of Court. (Bankruptcy Docket No. 4720) (Bankruptcy Court recorded as filed August 21, 2007).

15.      Attached hereto as Exhibit 14 is a true and correct copy of Transcript of Hearing Held on August 21, 2007 regarding Motion of Spiegel Creditor Trust to hold Jacqueline Johnson in Contempt of Court for Knowing Violation of Plan Injunction (Bankruptcy Docket No. 4723) (Bankruptcy Court recorded as filed August 31, 2007).

16.      Attached hereto as Exhibit 15 is a true and correct copy of Notice of Appeal (Bankruptcy Docket No. 4724) (Bankruptcy Court recorded as filed September 5, 2007) (District

Court Appeal Docket No. 1).

17.    Attached hereto as Exhibit 16 is a true and correct copy of Notice for Designation of Items and Motion to Stay Pending Appeal (Bankruptcy Docket No. 4725) (Bankruptcy Court recorded as filed September 11, 2007) (District Court Appeal Docket No. 2).

18.    Attached hereto as Exhibit 17 is a true and correct copy of Counter Designation of Items on Record for Appeal (Bankruptcy Docket No. 4728) (Bankruptcy Court recorded as filed September 19, 2007) (District Court Appeal Docket No. 3).

19.    Attached hereto as Exhibit 18 is a true and correct copy of the Affidavit of Service of David M. Bava for the Service of Spiegel Creditor Trust's Counter Designation of Items for the Record on Appeal (Bankruptcy Docket No. 4729) (bankruptcy Court recorded as filed September 19, 2007).

Dated:  March 27, 2008

                                                    */s/ David M. LeMay*
                                                    David M. LeMay

NY3 - 465069.02

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW YORK**
SPIEGEL INC., ET AL. CLAIMS PROCESSING
P.O. BOX 5129, BOWLING GREEN STATION
NEW YORK, NY 10274-5129

## PROOF OF CLAIM

| In Re: Spiegel Inc, et al., Debtors. | Chapter 11 Case Nos. 03-11539(CB) thru 03-11558(CB) (Jointly Administered) |
|---|---|

Filed: USBC - Southern District of New York
Spiegel, Inc., Et Al.
03-11540 (CB)      0000004248

| Name of Debtor Against Which Claim is Held SPIEGEL, INC. | Case No. of Debtor Case No: 03-11540 (CB) |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name and address of Creditor :**

SPI (MERGE.DBF,SCHED_NO)   SCHEDULE #: 540007800*****
JACQUELINE J. JOHNSON
10305 S. BENSLEY
CHICAGO, IL 60617

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☑ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Your claim is scheduled by the Debtor as:
$0.00 UNSECURED
UNLIQUIDATED
DISPUTED

**Telephone number:** 773 374-7581

**Account or other number by which creditor identifies debtor:**

Check here if this claim:
☐ replaces   ☐ amends a previously filed claim, dated: _____

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☑ Wages, salaries, and compensation (fill out below) |
| ☐ Money loaned | |
| ☐ Personal injury/wrongful death | Last Four Digits of your SS#: 349 58 8506 |
| ☑ Taxes | Unpaid compensation for services performed |
| ☑ Other Discrimination (explain) | from 8-23-02 (date) to Present (date) |

**2. Date debt was incurred:**
8-23-02

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed: $ _____ + _____ + 100,000.00 = 100,000.00**
(unsecured nonpriority)   (secured)   (unsecured priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim:** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ 100,000.00
Specify the priority of the claim:

☐ Wages, salaries or commissions (up to $4,650), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☑ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.

**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10 Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
OCT 1 5 2004
CLAIMS PROCESSING CENTER
USBC, SDNY   4

| Date 9-16-04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Jacqueline Johnson |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

To:  United States Bankruptcy Court
Southern District of New York
Bowling Green Station
P.O. Box 5129
New York, NY 10004-5129

From:  Jacqueline Johnson
10305 S. Bensley Ave.
Chicago, Illinois 60617
773 374-7581

Re:  SPIEGEL, INC., et al., debtors in Chapter 11 Case No. 03-11540 (CB) (Jointly Administered)


EXPLANATION OF WHY DOCUMENTS ARE NOT AVILIABLE

To Whom It May Concern:

I, Jacqueline Johnson am the named creditor in this Bankruptcy filed by the above named Debtors.

I would like to begin be saying this is my first time receiving notice of this bankruptcy filed by the above debtors.  I, have filed a Complaint and or Law Suit against the above-mentioned debtors, for reasons of discrimination, these complaint were and are filed with (EEOC) The Equal Opportunity Commission.  I the creditor have the right under this charge to file a Right To Sue.  I, the creditor have all intentions on filing a formal law suit against the above mentioned debtors, to protect any rights I have to claim.

The debtors have committed discrimination against creditor based on retaliation and Coercion, in violation of the ADA and Title VII.   I am filing this claim as a result of that violation.

The remedies for violations of the statutes the (EEOC) enforces are designed to make the identified victims whole and to provide corrective and preventive relief.  These remedies may include an agreement by the debtors to cease engaging in unlawful employment practices, placement of identified victims in the positions they would have held but for the discriminatory action, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation and the resolution of the claim.

The first (Board of Education) party of the suit has been found in violation of the Americans with Disabilities Act of 1990 (ADA) and Title VII of the Civil Rights Act of 1964, as amended (Title VII) for coercion, creditor is awaiting the decision on the second party (Spiegel Inc. et al) in this violation and/or the right to sue.

Estimation of Loss Wages,

$40,320.00 for two years of lost pay.
$60,000.00 for lost benefits, compensatory and punitive damages.  Attached is a copy of the Determination.

Sincerely Yours, Jacqueline Johnson

| United States Bankruptcy Court    Southern    District of  New York | | ☐ Ch 13   ☒ Ch 11 |
| --- | --- | --- |
| | | PLEASE CHECK CHAPTER |

| Name of Debtor            Eddie Bauer *, Spiegel Inc Etal* | Case Number      03-11547 | **PROOF OF CLAIM** |
| --- | --- | --- |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor     (The person or other entity to whom the debtor owes money or property)  Skagit County, a political subdivision of Washington State | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| --- | --- |
| Name and Address Where Notices Should be Sent  Skagit County Treasurer c/o Linda Patterson P.O. Box 518 Mount Vernon WA 98273 Telephone No.    360-336-9350 | ☐ Check box if you have never received any notices from the bankruptcy court on this case. ☐ Check box if the address differs from the address on the envelope sent to you by the court.    THIS SPACE FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor:  **P119035** | Check here if this claim  ☒ Amends        ☐ Replaces a previously filed claim dated:    **4/28/2004** |
| --- | --- |

**1.  BASIS FOR CLAIM**

| ☐ Goods Sold | ☐ Services Performed | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| --- | --- | --- |
| ☐ Money Loaned | ☐ Personal Injury/Wrongful Death | ☐ Wages, salaries, and compensations (Fill out below) Your social security number: |
| ☒ Taxes | ☐ Other: | Unpaid compensations for services performed from _____ to _____ |

| **2.  DATE DEBT WAS INCURRED:**    4/30/2002 | **3.  IF COURT JUDGMENT, DATE OBTAINED:** |
| --- | --- |

**4.  Total Amount of Claim at Time Case Filed:**    **$689.82**

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.
(SEE ATTACHED LIST)

| **5.  Secured Claim** | **6.  Unsecured Priority Claim** |
| --- | --- |
| ☐ Check this box if your claim is secured by collateral (including right of setoff). | ☐ Check this box if you have an unsecured priority claim. Amount entitled to be priority: |
| Brief Description of Collateral: | Specify the priority of the claim: |
| ☐ Real Estate | ☐ Wages, salaries, or commissions (up to $4650), *earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier-11 U.S.C. § 507(a)(3) |
| ☐ Motor Vehicle | ☐ Contributions to an employee benefit plan-11 U.S.C. § 507(a)(4) |
| ☐ Other: | ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use-11 U.S.C. § 507(a)(6) |
| Value of collateral:    **$51,922.00** | ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child-11 U.S.C. § 507(a)(7) |
| | ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8) |
| | ☐ Other-Specify applicable paragraph of 11 U.S.C. § 570(a) |
| Amount of arrearage and other charges *at the time case filed* included in secured claim above, if any:    **$689.82** | *Amounts are subject to adjustments on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

7.  **CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8.  **SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9.  **DATE-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of the proof of claim.

THIS SPACE FOR COURT USE ONLY

RECEIVED
OCT 1 5 2004
CLAIMS PROCESSING CENTER
USBC, SDNY                 4

| Date:  October 6, 2004 | Sign and print the name and title, if any, of creditor or other person authorized to file this claim (attach copy of power of attorney, if any).  *Linda Patterson, Skagit County Treasurer* |
| --- | --- |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

# 2004 PERSONAL PROPERTY TAX STATEMENT

SKAGIT COUNTY TREASURER
P.O. BOX 518, MOUNT VERNON, WASHINGTON 98273

ACCOUNT NUMBER

8033

P119035        85208

# 2004

## KEEP THIS PORTION

BRING ALL PARTS WHEN PAYING IN PERSON

(105016)

EDDIE BAUER INC
C/O TAX DEPT
PO BOX 97014
REDMOND WA 98073-7194

EQUIPMENT AND SUPPLIES 220 FASHION
WAY BURLINGTON WA 98233 WITH LC 0905

**NO SALE WITHOUT PREPAYMENT OF TAX
INCLUDING ADVANCE TAX PER R.C.W.84.56.070**

| CURRENT TAX DISTRIBUTION | |
|---|---|
| State Levy | 144.59 |
| Local School SD100 | 251.83 |
| County | 93.46 |
| City or Road | 104.77 |
| Port Dist. P02 | 6.06 |
| Fire Dist. | 0.00 |
| Hospital H304 | 22.94 |
| Other | 0.00 |
| Cemetery | 0.00 |
| Dike | 0.00 |
| Drainage | 0.00 |
| Conservation Futures | 3.02 |
| | 0.00 |
| TOTAL CURRENT TAX | 626.67 |

First half must be paid or post-marked by April 30th or **FULL TAX BECOMES DELINQUENT AND PAYABLE** with interest plus penalty.
Second half tax becomes delinquent after OCTOBER 31st.
**SEE REVERSE SIDE FOR MOBILE HOME EXCEPTION.**

TAX OF LESS THAN $50.00
MUST BE PAID IN FULL

| CURRENT TAX INFORMATION | |
|---|---|
| Assessed Value | 51,922 |
| TOTAL VALUE | 51,922 |
| Levy Code | 0905 |
| Levy Rate | 12.0694 |
| Voter Approved Tax | 264.91 |
| Non Voter Approved Tax | 361.76 |
| General Tax | 626.67 |
| Special Assessment | 0.00 |
| Less Exemption (if any) | 0.00 |
| Late Filing Penalty % | 0.00 |
| TOTAL CURRENT TAX | 626.67 |

| OTHER TAX INFORMATION | | |
|---|---|---|
| YEAR | INT./PEN. 10/04 | TAX |
| 2003 | 114.97 | 574.85 |

---

# PERSONAL PROPERTY TAX

ACCOUNT NUMBER

8033
P119035        85208

# 2004

MAILED PAYMENTS MUST BE POSTMARKED BY THE DUE DATE TO AVOID INTEREST.

DELINQUENT PAYMENTS RECEIVED WITHOUT INTEREST AND PENALTY WILL BE RETURNED.

CALL **(360) 336-9350** FOR DELINQUENT TAX, INTEREST AND PENALTY DUE.

FOR CREDIT CARD PAYMENTS SEE BACK.

**SEE REVERSE SIDE FOR MOBILE HOME EXCEPTION.**

PLEASE MAKE ADDRESS CHANGE ON BACK

EDDIE BAUER INC
C/O TAX DEPT
PO BOX 97014
REDMOND WA 98073-7194

## KATIE JUNGQUIST

*MAKE REMITTANCES PAYABLE TO:*
SKAGIT COUNTY TREASURER
P.O. BOX 518
MOUNT VERNON, WASHINGTON 98273

# SECOND PAYMENT

**DETACH THIS PORTION AND MAIL WITH YOUR PAYMENT**
Your cancelled check is your receipt

| TAX TYPE | TAX YEAR | INTEREST/PENALTY THRU: 10/04 | SECOND HALF TAX |
|---|---|---|---|
| Current | 2004 | | |

\* SECOND HALF 2004 TAX ONLY \*

DUE OCTOBER 31, 2004

---

# PERSONAL PROPERTY TAX

ACCOUNT NUMBER

8033
P119035        85208

# 2004

MAILED PAYMENTS MUST BE POSTMARKED BY THE DUE DATE TO AVOID INTEREST.

★First half of 2004 tax must be paid by April 30th or ENTIRE TAX BECOMES DELINQUENT AND PAYABLE IN FULL

CALL **(360) 336-9350** FOR DELINQUENT TAX, INTEREST AND PENALTY DUE.

FOR CREDIT CARD PAYMENTS SEE BACK.

**SEE REVERSE SIDE FOR MOBILE HOME EXCEPTION.**

PLEASE MAKE ADDRESS CHANGE ON BACK

EDDIE BAUER INC
C/O TAX DEPT
PO BOX 97014
REDMOND WA 98073-7194

## KATIE JUNGQUIST

*MAKE REMITTANCES PAYABLE TO:*
SKAGIT COUNTY TREASURER
P.O. BOX 518
MOUNT VERNON, WASHINGTON 98273

# FIRST PAYMENT

**DETACH THIS PORTION AND MAIL WITH YOUR PAYMENT**
Your cancelled check is your receipt

| TAX TYPE | TAX YEAR | OMIT YEAR | INTEREST/PENALTY THRU: 10/04 | FULL TAX | ★HALF TAX |
|---|---|---|---|---|---|
| Current | 2004 | | 56.40 | 626.67 | |

| DELINQUENT OR OMIT | | DELINQUENT TAX | DELINQUENT TOTAL |
|---|---|---|---|
| DELIN-QUENT OR OMIT | 2003 | 114.97 | 574.85 | 689.82 |

BANKRUPTCY # 03-11547

FIRST HALF 2004 DUE APRIL 30

Attachment A

# SKAGIT COUNTY HOLDS A SECURED FIRST PRIORITY LIEN POSITION UNDER WASHINGTON STATE LAW RCW 84.60.010, *priority of tax liens*, which reads as follows:

*All taxes and levies which may hereafter be lawfully imposed or assessed shall be and they are hereby declared to be a lien respectively upon the real and personal property upon which they may hereafter be imposed or assessed, which liens shall include all charges and expenses of and concerning the said taxes which, by the provisions of this title, are directed to be made. The said lien shall **have priority** to and **shall be fully paid and satisfied** before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real and personal property may become charged or liable.*

This claim will include interest and penalties, in addition to the principal amount, when due. Interest will accrue at the rate of 12% per annum and penalties will be incurred per RCW 84.56.020.

Please list our lien and make payments accordingly.

# NOTE TO DEBTORS ATTORNEY:

Under Washington State Law, RCW 84.56.050, we are required to send out yearly notices of all taxes owed within our county. Refer to the attached statement for the current mailing address we have on our tax roll records. If changes need to be made, please address them in writing to Skagit County Treasurer P O Box 518 Mount Vernon WA 98274 or e-mail us at: treasurer@co.skagit.wa.us.

Presentment Date:  January 6, 2005 at 10:00 a.m.
Hearing Date and Time (only if objections are filed):  January 18, 2005 at 10:00 a.m.
Objection Deadline:  January 3, 2005 at 5:00 p.m.

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
James L. Garrity, Jr. (JG-8389)
Marc B. Hankin (MH-7001)

Attorneys for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                     :
                                     :      Chapter 11
                                     :
In re:                               :      Case No.  03 - 11540 (CB)
                                     :
SPIEGEL, INC., et al.,               :         (Jointly Administered)
                                     :
                 Debtors.            :
                                     :
                                     :
                                     :
-----------------------------------------------------------x
```

**DEBTORS' TWENTY-FOURTH OMNIBUS OBJECTION TO PROOFS OF
CLAIM (NO AMOUNT DUE AND OWING, AMOUNT OF CLAIM
INCORRECT, CLAIMS FILED AGAINST INCORRECT DEBTOR,
MISCLASSIFIED CLAIMS AND AMENDED OR SUPERSEDED CLAIMS)**

TO THE HONORABLE CORNELIUS BLACKSHEAR
UNITED STATES BANKRUPTCY JUDGE:

Spiegel, Inc. ("Spiegel") and certain of its direct and indirect subsidiaries, as

debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the

"Spiegel Group"), file this objection (this "Objection") and respectfully represent:

## Background

1.      On March 17, 2003, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code").

2.      On March 24, 2003, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Committee").  As of the date hereof, no request has been made for the appointment of a trustee or examiner in these cases.

3.      The Debtors have continued in possession of their respective properties and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Schedules and Bar Date For Filing Proofs of Claim

5.      On April 11, 2003, this Court entered an order authorizing the Debtors to retain Bankruptcy Services LLC as their official claims and noticing agent (Docket No. 177).

6.      On May 23, 2003, each of the Debtors filed a Statement of Financial Affairs and Schedule of Assets and Liabilities (collectively, the "Schedules").

7.      On July 17, 2003, this Court entered an order pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") setting an October 1, 2003 (the "Bar Date") deadline for the filing of proofs of claim in these chapter 11 cases (Docket

No. 581) (the "Bar Date Order"). In accordance with the terms of the Bar Date Order, on July 23, 2003, the Debtors caused a notice of the Bar Date (the "Bar Date Notice"), a proof of claim form, and an instruction sheet to the proof of claim form to be mailed to, among others, all known holders of claims. (See Affidavit of Mailing of Kate Mailloux (Docket No. 645)). In addition, the Debtors caused a copy of the Bar Date Notice (as defined in the Bar Date Order) to be published on September 10, 2003, in The New York Times, The Wall Street Journal, and USA Today. (See Notice of Filing Certifications of Publication (Docket No. 848)).

8.      From time to time, certain of the Debtors filed amendments and supplements to their respective Schedules (collectively, the "Schedule Amendments"). In accordance with the terms of the Bar Date Order, holders of claims affected by the Schedule Amendments had thirty days from the date notice of the Schedule Amendments was given within which to file proofs of claim.

### Claims Reconciliation Process

9.      As of the date of this Objection, over 4,100 proofs of claim have been filed against the Debtors. The Debtors are reviewing and reconciling these claims against the liabilities reflected in their books and records. As part of that process, the Debtors are identifying categories of claims that should be targeted for disallowance and expungement, reduction and allowance, or reclassification and allowance. To avoid improper recovery by claimants, the Debtors are filing a series of omnibus objections to various categories of claims.

### Relief Requested

10.      By this Objection, the Debtors respectfully request that this Court enter an order pursuant to section 502(a) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules (i) disallowing and expunging the proofs of claim identified on the chart annexed hereto as

Exhibit A; (ii) reducing and allowing the proofs of claim identified on the chart annexed hereto as Exhibit B; (iii) disallowing and expunging each of the proofs of claim identified as "Claims to be Expunged" on the chart annexed hereto as Exhibit C; (iv) reclassifying as general unsecured non-priority claims each of the proofs of claim identified on Exhibit D; (v) disallowing the proofs of claim identified on the chart annexed hereto as Exhibit E against the Debtor identified in the "Case Number Filed" column of Exhibit E and allowing each of those claims in the amount identified in the "Total Allowed Amount" column of Exhibit E against the Debtor identified in the "Proper Case Number" column of Exhibit E; (vi) disallowing claim number 3775 filed by Quik-X Transportation, Inc. (the "Quik-X Claim") against Distribution Fulfillment Services, Inc. ("DFS"), reclassifying this claim as a general unsecured non-priority claim and allowing this claim against Eddie Bauer, Inc.("Eddie Bauer") in the amount of $7,045.94.

11.     This Objection is limited to the grounds stated herein.  It is without prejudice to the right of the Debtors or any other party in interest to object to the proofs of claim identified on the charts annexed hereto as Exhibits A through E and the Quik-X Claim (collectively, the "Disputed Claims") on any ground whatsoever.  The Debtors expressly reserve all further substantive and/or procedural objections they may have.

### Basis For Relief

**A.     No Amount Due and Owing Pursuant to Debtors' Books and Records**

12.     The Debtors object to each of the proofs of claim identified on the chart annexed hereto as Exhibit A (collectively, the "No Amount Due Claims") on the grounds that they have reviewed each of those claims, as well as their books and records, and concluded that no amount is due and owing to the claimants.  Accordingly, the Debtors respectfully request that this Court enter an order disallowing and expunging the No Amount Due Claims.

**B.**    <u>Amount of Claim Incorrect Pursuant to Debtors' Books and Records</u>

13.    The Debtors object to each of the proofs of claim identified on the chart annexed hereto as <u>Exhibit B</u> (collectively, the "Incorrect Amount Claims") on the grounds that they differ in amount from the liabilities reflected on the Debtors' books and records.  The Debtors have reviewed each of the Incorrect Amount Claims as well as their books and records and determined that the asserted amount of each of those claims is overstated.  Accordingly, the Debtors respectfully request that this Court enter an order reducing and allowing the Incorrect Amount Claims in the amount shown in the "Allowed Amount" column of <u>Exhibit B</u>.

**C.**    <u>Amended Claims</u>

14.    The Debtors object to each of the proofs of claim listed under the "Claim to be Expunged" column of the chart annexed hereto as <u>Exhibit C</u> (collectively, the "Amended Claims") on the basis that amended claims have been filed by the same claimant in relation to the same underlying claim and, therefore, the Amended Claims have been Superseded.  The Debtors have undertaken a thorough review of each of the claims listed on <u>Exhibit C</u> and determined that the proofs of claim listed in the "Surviving Claim" column (the "Surviving Claims") purport to amend the Amended Claims.

15.    If the Amended Claims are not formally expunged or disallowed, the claimants that filed the Amended Claims could receive a double recovery.  Moreover, elimination of the Amended Claims will enable the Debtors to maintain a more accurate claims register.  Accordingly, the Debtors respectfully request that this Court enter an order disallowing and expunging the Amended Claims, except that any documents filed with an Amended Claim shall be deemed attached to the applicable Surviving Claim.

**D.    Claim Misclassified**

16.    The Debtors also object to each of the proofs of claim identified on the chart annexed hereto as Exhibit D (collectively, the "Misclassified Claims") on the grounds that they have been misclassified.  The Debtors have examined each of the Misclassified Claims and have determined that there is not a valid basis for the priority or secured status asserted in the Misclassified Claims.  Accordingly, the Debtors also respectfully request that this Court enter an order reclassifying the Misclassified Claims as general unsecured non-priority claims.

**E.    Claim Filed Against Incorrect Debtor**

17.    The Debtors also object to each of the proofs of claim identified on the chart annexed hereto as Exhibit E (collectively, the "Incorrect Debtor Claims") on the grounds that the Debtors have examined each of the Incorrect Debtor Claims and their books and records and determined that each of Incorrect Debtor Claims was filed against the incorrect Debtor.  Accordingly, the Debtors respectfully request that this Court enter an order disallowing the Incorrect Debtor Claims against the Debtor identified in the "Case Number Filed" column and allowing each claim against the Debtor indicated in the "Proper Case Number" column of Exhibit E.  Also, for certain of the Incorrect Debtor Claims, the Debtors do not dispute the total amount of the claim asserted therein.  However, according to the Debtors books and records, a portion of each of those claims should have been asserted against one Debtor entity, and the remainder of the each claim should have been asserted against another Debtor entity.  The correct portion of the amounts of each of the Incorrect Debtor Claims that each Debtor entity owes is set forth in the "Total Allowed Amount" column of Exhibit E next to the Debtor entity owing that amount in the "Proper Case Number" column of Exhibit E.  The "Total Allowed Amount" of each of these claims is equal to the amount asserted in each claim.

**F.**     **The Quik-X Claim:  Claim Misclassified and Filed Against the Incorrect Debtor**

18.     The Debtors also object to the Quik-X Claim on the grounds that (i) it has been misclassified and (ii) it was filed against the incorrect Debtor.  The Debtors have examined the Quik-X Claim and have determined that there is not a valid basis for the priority status asserted by the Quik-X Claim and that it was filed against the incorrect Debtor.  Accordingly, the Debtors respectfully request that this Court enter an order disallowing the Quik-X Claim against DFS, allowing this claim against Eddie Bauer in the amount of $7,045.94 and reclassifying this claim as a general unsecured non-priority claim.

## Notice

19.     Notice of this Objection has been provided in accordance with the "Order Pursuant to 11 U.S.C. §§ 102 and 105(a) and (d) and Bankruptcy Rules 2002(m), 9006 and 9007 Establishing Certain Notice, Case Management and Administrative Procedures and Scheduling Initial Case Conference in Accordance with Local Bankruptcy Rule 1007-2(e)" entered by this Court on March 21, 2003 (Docket No. 72).  Notice of this Objection has also been provided in accordance with Bankruptcy Rule 3007 to each of the claimants listed on Exhibits A through E and to Quik-X Transportation, Inc., 6767 Davand Drive, Mississauga, Ontario, Canada, L5T 2T2, Attn: Maria Webster, via first class mail.  The Debtors submit that, under the circumstances, no other or further notice need be provided.

## Waiver of Memorandum of Law

Given that there are no novel issues of law presented herein and that the legal authority for the relief being sought is set forth herein, the Debtors respectfully request that this Court waive the requirement that the Debtors file a memorandum of law in support of this Objection as provided

in Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York.

### No Prior Request

The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order granting the

relief requested herein and such other or further relief as is just.

Dated: New York, New York
      December 7, 2004

By:    /s/ James L. Garrity, Jr.
        James L. Garrity, Jr. (JG-8389)
        Marc B. Hankin (MH-7001)

        SHEARMAN & STERLING LLP
        599 Lexington Avenue
        New York, New York 10022
        Telephone:  (212) 848-4000
        Facsimile:  (212) 848-7179

        Attorneys for the Debtors and
        Debtors in Possession

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT A**

| CLAIMANT NAME & ADDRESS | CLAIM NUMBER TO BE EXPUNGED | CASE NO. | DATE FILED | AMOUNT OF CLAIM TO BE EXPUNGED |
|---|---|---|---|---|
| **NO AMOUNT DUE AND OWING BASED ON DEBTOR'S BOOKS AND RECORDS** | | | | |
| **Spiegel, Inc.** | | | | |
| JACQUELINE J. JOHNSON<br>10305 S. BENSLEY<br>CHICAGO, IL 60617 | 4248 | 03-11540 | 10/15/2004 | $100,000.00 |
| OHIO DEPARTMENT OF COMMERCE<br>INDUSTRIAL RELATIONS<br>C/O MICHELLE T. SUTTER<br>101 E. TOWN STREET<br>COLUMBUS, OH 43215 | 1040 | 03-11540 | 8/20/2003 | $179.01 |
| REMPERT, LINDA<br>MOORE-GIBBS, ESQ.<br>U.S. EEOC,<br>500 W. MADISON, STE 2800<br>CHICAGO, IL 60661 | 2238 | 03-11540 | 9/25/2003 | $0.00 |
| MELISSA WHITTAKER            42<br>CANON ST APT 5<br>ST JOHN NB E2K 3J6 CANADA | 2722 | 03-11556 | 9/29/2003 | $0.00 |
| **Eddie Bauer, Inc.** | | | | |
| ARLINGTON COUNTY, VIRGINIA<br>2100 CLARENDON BLVD.<br>SUITE 217<br>ARLINGTON, VA 22201 | 4061 | 03-11547 | 5/5/2004 | $435.49 |
| JAN CITRON<br>1136 LARRABEE ST.<br>WEST HOLLYWOOD, CA 90069 | 4231 | 03-11547 | 9/29/2004 | $2,300.00 |
| **Spiegel Catalog, Inc.** | | | | |
| LUMISOURCE, INC.<br>C/O WILSON & ASSOCIATES<br>ATTN: JEFFREY S. WILSON<br>1821 WALDEN OFFICE SQUARE, SUITE 400<br>SCHAUMBURG, IL 60173 | 2742 | 03-11541 | 9/29/2003 | $122,054.98 |
| MELISSA PAYNER-GREGOR<br>917 ST STEPHENS GREEN<br>OAK BROOK, IL 60523-2569 | 2480 | 03-11541 | 9/29/2003 | $    5,408.91 |
| **Newport News, Inc.** | | | | |
| TRI-W DEVELOPMENT INC<br>WILSON LOUISIANA ASSOC.<br>MALLOF LOUISIANA ASSOC<br>4121 CARMICHAEL ROAD, SUITE 501<br>MONTGOMERY, AL 36106 | 2922 | 03-11539 | 10/1/2003 | $16,466.13 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT B

| AMOUNT OF CLAIM INCORRECT BASED ON DEBTOR'S BOOKS AND RECORDS | | | | | | |
|---|---|---|---|---|---|---|
| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NO. | DATE FILED | AMOUNT OF CLAIM | SCHEDULED AMOUNT | ALLOWED AMOUNT |
| **Eddie Bauer, Inc.** | | | | | | |
| ADVANCE SMART INTERNATIONAL LTD UNIT D3 7/F TONG YUEN FACTORY 505 CASTLE PEAK RD. KOWLOON, HONG KONG | 656 | 03-11547 | 8/8/2003 | $16,796.00 | $0.00 | $10,971.69 |
| COELIMA IND TEXTELS GLOBAL DEBT SOLUTIONS MARIA F. DEMONTE, COLLECTION MANAGER 7301 WEST PALMETTO PARK ROAD, STE 110B BOCA RATON, FL 33433 | 4085 | 03-11547 | 5/19/2004 | $189,945.27 | $150,117.90 | $150,117.90 |
| HAMLIN INDUSTRIAL CORP C/O LAUREN T. DIEHL, ESQ. 355 SOUTH GRAND AVE., SUITE 2900 LOS ANGELES, CA 90071 | 398 | 03-11547 | 7/30/2003 | $57,432.11 | $48,577.98 | $55,922.91 |
| LAMEIRINHO GLOBAL DEBT SOLUTIONS MARIA F. DEMONTE, COLLECTION MANAGER 7301 WEST PALMETTO PARK ROAD, STE 110B BOCA RATON, FL 33433 | 4084 | 03-11547 | 5/19/2004 | $9,451.88 | $8,413.67 | $8,413.67 |
| LTS INTERNATIONAL DD 21  KALKAJI NEW DELHI,  110019 | 1283 | 03-11547 | 8/26/2003 | $28,420.71 | $27,289.63 | $23,941.56 |
| MULHOLLAND BROTHERS 190 NAPOLEON ST. SAN FRANCISCO, CA 94124 | 3301 | 03-11547 | 10/1/2003 | $128,949.51 | $21,466.24 | $67,035.66 |
| GGP-NORTH POINT INC. BY: GENERAL GROWTH MGMT INC. AGENT C/O MICHAEL CHIMITRIS, ESQ. 110 N. WACKER DR. CHICAGO, IL 60606 | 1813 | 03-11547 | 1/0/1900 | UNDETERMINED | $645.24 | $752.38 |
| WASTE MANAGEMENT OF MURRELLS INLET C/O WASTE MANAGEMENT, INC. 1001 FANNIN, STE 4000 HOUSTON, TX 77002 | 3125 | 03-11547 | 10/1/2003 | UNDETERMINED | $162.48 | $162.48 |
| **Newport News, Inc.** | | | | | | |
| METTER INDUSTRIES, INC. 8200 GREENSBORO DRIVE, SUITE 500 MCLEAN, VA 22102 | 4242 | 03-11539 | 10/1/2004 | $8,637.87 | $  6,395.49 | $  6,395.49 |

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY- FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT C**

AMENDED CLAIMS

| CLAIMS TO BE EXPUNGED | | | | | SURVIVING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **CLAIMANT NAME & ADDRESS** | **AMENDED CLAIM NUMBER TO BE EXPUNGED** | **CASE NO.** | **DATE FILED** | **AMOUNT OF CLAIM TO BE EXPUNGED** | **CLAIMANT NAME & ADDRESS** | **SURVIVING CLAIM NUMBER** | **CASE NO.** | **DATE FILED** | **AMOUNT OF SURVIVING CLAIM** |
| Spiegel, Inc. | | | | | Spiegel, Inc. | | | | |
| SBC AMERITECH CORP. P.O. BOX 981268 WEST SACRAMENTO, CA 95798 | 214 | 03-11540 | 6/9/2003 | $71,597.23 | SBC COMMUNICATIONS SBC BUSINESS BANKRUPTCY GROUP P.O. BOX 981268 WEST SACRAMENTO, CA 95798 | 4229 | 03-11540 | 9/28/2004 | $70,697.28 |
| Spiegel Management Group, Inc. | | | | | Spiegel Management Group, Inc. | | | | |
| MORRIS, CLARENCE R. C/O LAW OFFICES OF JAMES CONNORS ATTN: JAMES CONNORS 221 SOUTH HIGH STREET COLUMBUS, OH 43215 | 3272 | 03-11546 | 10/1/2003 | $50,000.00 | MORRIS, CLARENCE R. C/O LAW OFFICES OF JAMES CONNORS 221 SOUTH HIGH STREET COLUMBUS, OH 43215 | 4230 | 03-11546 | 9/23/2004 | $912,041.70 |
| JOHNSON, ALFRED R. C/O LAW OFFICES OF JAMES CONNORS ATTN: JAMES CONNORS 221 SOUTH HIGH STREET COLUMBUS, OH 43215 | 3273 | 03-11546 | 10/1/2003 | $650,000.00 | MORRIS, CLARENCE R. C/O LAW OFFICES OF JAMES CONNORS 221 SOUTH HIGH STREET COLUMBUS, OH 43215 | 4230 | 03-11546 | 9/23/2004 | $912,041.70 |

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT D**

| | | | | | | |
|---|---|---|---|---|---|---|
| **FILED WITH INCORRECT CLASSIFICATION** | | | | | | |
| **CLAIMANT NAME & ADDRESS** | **CASE NUMBER FILED AGAINST** | **CLAIM NUMBER** | **CLAIM DATE** | **TOTAL CLAIM AMOUNT** | **CLASSIFICATION** | **PROPER CLASSIFICATION** |
| Distribution Fulfillment Services, Inc. | | | | | | |
| BETTER PACKAGING SYSTEMS<br>P.O.BOX 514<br>NOVELTY, OH 44072 | 03-11554 | 848 | 8/11/2003 | $1,197.10 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| CAPITOL DRYWALL SUPPLY<br>1150 MCKINLEY AVENUE<br>COLUMBUS, OH 43222 | 03-11554 | 1338 | 9/2/2003 | $410.42 | SECURED | GENERAL UNSECURED NON PRIORITY |
| CARL ZIPF LOCK SHOP INC<br>161 E. FIFTH AVE.<br>COLUMBUS, OH 43201 | 03-11554 | 878 | 8/11/2003 | $408.75 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| CHOICEPOINT PUBLIC RECORD<br>P.O. BOX 945664<br>ATLANTA, GA 30394-5664 | 03-11554 | 1105 | 8/21/2003 | $48.00 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| CITY OF COLUMBUS<br>TRANSPORTATION DIVISION<br>109 N. FRONT STREET, ROOM 458<br>COLUMBUS, OH 43215 | 03-11554 | 3918 | 2/10/2004 | $11,927.31 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| HATHAWAY & FERGUSON INC<br>873 MT. VERNON AVENUE<br>COLUMBUS, OH 43203 | 03-11554 | 459 | 8/1/2003 | $3,900.00 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| LABEL DATA<br>3287 HARBOR DRIVE<br>LEWIS CENTER, OH 43035 | 03-11554 | 702 | 8/8/2003 | $491.28 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| MINUTEMAN PRESS<br>70 SO. FOURTH STREET<br>COLUMBUS, OH 43215 | 03-11554 | 767 | 8/11/2003 | $3,560.60 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| SUPERIOR SPECIAL SERVICES<br>1275 MINERAL SPRINGS DRIVE<br>PORT WASHINGTON, WI 53074 | 03-11554 | 475 | 8/1/2003 | $417.70 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| TRI-US TROPHY<br>511 MAIN STREET<br>GROVEPORT, OH 43125 | 03-11554 | 1387 | 9/29/2003 | $954.35 | PRIORITY | GENERAL UNSECURED NON PRIORITY |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| | | | | FILED AGAINST INCORRECT DEBTOR | | |
|---|---|---|---|---|---|---|
| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
| **Spiegel Group Teleservices Canada, Inc.(In Canadian $'s)** | | | | | | |
| GRAND AND TOY<br>BOX 5500<br>DON MILLS, ON M3C 3L5<br>CANADA | 1005 | 03-11556 | 8/18/2003 | $14,842.33 | $9,865.49<br>$4,976.84<br>$14,842.33 | Eddie Bauer Canada, Inc. 03-11551<br>Spiegel Group TeleServices Canada, Inc. 03-11556 |
| **Newport News Inc.** | | | | | | |
| FASHION FOCUS MFG<br>15/F PACIFIC TRADE CTR<br>2 KAI HING RD<br>KOWLOON BAY<br>KOWLOON, HONG KONG | 2193 | 03-11539 | 9/23/2003 | $39,804.37 | $37,560.00<br>$2,244.37<br>$39,804.37 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| CONDE NAST PUBLICATIONS<br>ATTN: SHARRON MAHONEY<br>4 TIMES SQUARE, 18TH FLOOR<br>NEW YORK, NY 10036 | 2391 | 03-11539 | 9/26/2003 | $345,672.80 | $152,618.27<br>$193,054.53<br>$345,672.80 | Newport News, Inc. 03-11539<br>Spiegel Catalog, Inc. 03-11541 |
| **Spiegel Inc.** | | | | | | |
| OVERNITE TRANSPORTATION COMPANY<br>P.O. BOX 1216<br>RICHMOND, VA 23218-1216 | 38 | 03-11540 | 4/4/2003 | $802.18 | $570.08<br>$232.10<br>$802.18 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| COS SERVICES, INC.<br>P.O. BOX 2622<br>COLUMBUS, OH 43216 | 607 | 03-11540 | 8/5/2003 | $13,815.39 | $6,714.00<br>$7,101.39<br>$13,815.39 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| ROBINSON TRANSPORTATION<br>P.O. BOX 9803<br>COLUMBUS, OH 43209 | 1190 | 03-11540 | 8/25/2003 | $41,797.80 | $20,313.73<br>$21,484.07<br>$41,797.80 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| TRANS UNION CORP<br>TRANS UNION LLC<br>P.O. BOX 5000<br>CRUM LYNNE, PA 190222005 | 2826 | 03-11540 | 9/30/2003 | $379,028.01 | $65,582.32<br>$293,596.89<br>$19,848.80<br>$379,028.01 | Newport News, Inc. 03-11539<br>Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| ROADWAY EXPRESS, INC.<br>1077 GORGE BLVD.<br>P.O. BOX 3552<br>AKRON, OH 44309-3552 | 3540 | 03-11540 | 10/9/2003 | $53,790.83 | $48,669.68<br>$5,121.15<br>$53,790.83 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| FLORIDA POWER & LIGHT COMPANY<br>P.O. BOX 025209<br>MIAMI, FL 33102-5209 | 156 | 03-11540 | 5/19/2003 | $9,540.35 | $9,070.30<br>$470.05<br>$9,540.35 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |
| WASHINGTON GAS<br>CUSTOMER CREDIT DEPARTMENT<br>1100 H ST., NW, 2ND FLOOR<br>WASHINGTON, DC 20080 | 613 | 03-11540 | 8/8/2003 | $2,115.38 | $1,862.18<br>$253.20<br>$2,115.38 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |
| MISSOURI GAS<br>P.O. BOX 219255<br>KANSAS CITY, MO 64121 | 2409 | 03-11540 | 9/26/2003 | $1,037.85 | $923.65<br>$114.20<br>$1,037.85 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
|---|---|---|---|---|---|---|
| **FILED AGAINST INCORRECT DEBTOR** | | | | | | |
| LANDSTAR RANGER<br>13410 SUTTON PARK DR S.<br>JACKSONVILLE, FL 32224 | 49 | 03-11540 | 4/9/2003 | $4,493.72 | $2,062.63<br>$2,431.09<br>$4,493.72 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| USF DISTRIBUTION<br>2122 YORK RD., STE 300<br>OAK BROOK, IL 60523 | 271 | 03-11540 | 6/24/2003 | $96,535.24 | $10,991.24<br>$85,544.00<br>$96,535.24 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| NATIONAL FUEL GAS DISTRIBUTION CORP<br>ATTN: MARY JO BEN<br>10 LAFAYETTE SQUARE<br>SUITE 1500<br>BUFFALO, NY 14203 | 310 | 03-11540 | 7/7/2003 | $667.71 | $149.38<br>$518.33<br>$667.71 | Newport News, Inc. 03-11539<br>Eddie Bauer, Inc. 03-11547 |
| UNITED PARCEL SERVICE<br>C/O D&B/RMS BANKRUPTCY SERVICES<br>P.O. BOX 4396<br>TIMONIUM, MD 21094 | 651 | 03-11540 | 8/8/2003 | $1,198,180.26 | $247,000.00<br>$458,600.00<br>$492,580.26<br>$1,198,180.26 | Newport News, Inc. 03-11539<br>Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| BUILDING SYSTEMS TRANSPO<br>460 E HIGH ST.<br>LONDON, OH 43140 | 488 | 03-11540 | 8/4/2003 | $5,547.85 | $1,679.20<br>$3,868.65<br>$5,547.85 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| PUBLIC SERVICE COMPANY OF COLORADO<br>ATTN: DENNIS A. SCHIPPER<br>BANKRUPTCY SPECIALIST, XCEL ENERGY<br>990 BANNOCK ST.<br>DENVER, CO 80204 | 1310 | 03-11540 | 8/28/2003 | $14,184.89 | $235.16<br>$13,949.73<br>$14,184.89 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| CARIMAX CORP<br>238, PANGDORI, DOCHUKMUYUN<br>KWAUGJU CITY, KYUNGGIDO<br>KOREA | 1672 | 03-11540 | 9/10/2003 | $107,739.41 | $102,528.01<br>$5,211.40<br>$107,739.41 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| WHELAN'S INTERNATIONAL CO. INC.<br>731 UNION PARKWAY<br>RONKONKOMA, NY 11779 | 3362 | 03-11540 | 10/1/2003 | $139,261.33 | $131,527.83<br>$7,733.50<br>$139,261.33 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| AMERICAN ELECTRIC POWER<br>P.O. BOX 2021<br>ROANOKE, VA 24022 | 362 | 03-11540 | 7/28/2003 | $303,463.17 | $1,937.30<br>$301,525.87<br>$303,463.17 | Eddie Bauer, Inc. 03-11547<br>Distribution Fulfillment Services, Inc. 03-11554 |
| IOS CAPITAL<br>BANKRUPTCY ADMINISTRATION<br>P.O. BOX 13708<br>MACON, GA 31208-3708 | 3665 | 03-11540 | 10/14/2003 | $4,417.82 | $86.56<br>$4,160.12<br>$171.14<br>$4,417.82 | Eddie Bauer, Inc. 03-11547<br>Distribution Fulfillment Services, Inc. 03-11554<br>Spiegel Group Teleservices, Inc. 03-11555 |

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (C B) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E**

| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
|---|---|---|---|---|---|---|
| **FILED AGAINST INCORRECT DEBTOR** | | | | | | |
| EQUIFAX<br>P.O. BOX 105835<br>ATLANTA, GA 30348-5835 | 2001 | 03-11540 | 9/22/2003 | $256,668.70 | $35,288.00<br>$106,755.50<br>$114,625.20<br>$256,668.70 | Newport News, Inc. 03-11539<br>Spiegel Publishing Co., Inc. 03-11542<br>Gemini Credit Services, Inc. 03-11558 |
| WARD TRUCKING COMPANY<br>P.O. BOX 1553<br>ALTOONA, PA 16603 | 489 | 03-11540 | 8/4/2003 | $3,178.11 | $1,709.00<br>$1,469.11<br>$3,178.11 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| DELMARVA POWER & LIGHT CO.<br>D/B/A CONECTIV POWER DELIVERY<br>5 COLLINS DR., SUITE 2133<br>CARNEY'S POINT, NJ 08069 | 79 | 03-11540<br>03-11539<br>03-11547 | 4/24/2003 | $1,592.22 | $823.15<br>$769.07<br>$1,592.22 | Newport News, Inc. 03-11539<br>Eddie Bauer, Inc. 03-11547 |
| CONSUMERS ENERGY COMPANY<br>ATTN: MICHAEL G. WILSON (P33263)<br>ONE ENERGY PLAZA<br>JACKSON, MI 49201 | 351 | 03-11540 | 7/21/2003 | $7,412.29 | $2,416.89<br>$4,995.40<br>$7,412.29 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |
| SUPERCAP<br>18 FL., NO. 216 TUN HWA S. RD, SEC 2<br>TAIPEI<br>TAIWAN R.O.C. | 4136 | 03-11540 | 6/10/2004 | $9,689.52 | $3,015.77<br>$6,673.75<br>$9,689.52 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| UPS CUSTOMHOUSE BROKERAGE<br>1930 BISHOP LANE, STE 300<br>LOUISVILLE, KY 40218 | 329 | 03-11540 | 7/16/2003 | $151,739.73 | $128,470.32<br>$19,396.62<br>$147,866.94 | EDDIE BAUER, INC./03-11547<br>SPIEGEL CATALOG, INC./03-11541 |
| HIBBS/WOODINVILLE ASSOCIATED, LLC<br>3301 MONTE VILLA PARKWAY, SUITE 101<br>BOTHELL, WA 98201 | 3891 | 03-11540 | 1/9/2004 | $263,599.17 | $263,599.17 | Eddie Bauer, Inc. 03-11547 |
| MOORE-WALLACE, INC.<br>C/O ABC/AMEGA, INC<br>1100 MAIN ST.<br>BUFFALO, NY 14209-2356 | 1433 | 03-11540 | 9/2/2003 | $82,809.01 | $82,809.01 | Newport News, Inc. 03-11539 |
| WMXJ-FM/WYLF-FM RADIO<br>C/O SZABO ASSOCIATES, INC.<br>3355 LENOX ROAD, 9T FLOOR<br>ATLANTA, GA 30326 | 124 | 03-11540 | 5/2/2003 | $17,372.50 | $17,372.50 | Ultimate Outlet, Inc. 03-11543 |
| **Spiegel Catalog, Inc.** | | | | | | |
| GEORGIA POWER COMPANY<br>BIN 80002 / SANDRA VAUGHN<br>2500 PATRICK HENRY BLVD.<br>MCDONOUGH, GA 30253 | 34 | 03-11541 | 4/8/2003 | $2,095.38 | $1,157.88<br>$937.50<br>$2,095.38 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| YEHUDA SILBERG LTD<br>2 NER ITALILA ST<br>INDUSTRIAL & BUSINESS PARK<br>CAESARCA<br>ISRAEL, 38900 | 1301 | 03-11541 | 8/27/2003 | $136,233.66 | $2,700.00<br>$133,533.66<br>$136,233.66 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| **Eddie Bauer, Inc.** | | | | | | |
| HERTZ CORPORATION, THE<br>14501 HERTZ QUAIL SPRINGS PARKWAY<br>OKLAHOMA CITY, OK 73134 | 206 | 03-11547 | 6/6/2003 | $5,408.70 | $600.13<br>$4,808.57<br>$5,408.70 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| | | | | | | |
|---|---|---|---|---|---|---|
| **FILED AGAINST INCORRECT DEBTOR** | | | | | | |
| **CLAIMANT NAME & ADDRESS** | **CLAIM NUMBER** | **CASE NUMBER FILED** | **DATE FILED** | **AMOUNT OF CLAIM** | **TOTAL ALLOWED AMOUNT** | **PROPER CASE NUMBER** |
| RUMFORD GARDENER, THE<br>225 NEWMAN AVE.<br>RUMFORD, RI 02916 | 36 | 03-11547 | 4/7/2003 | $42,405.00 | $38,550.00<br>$3,855.00<br>$42,405.00 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| PINKERTON, INC.<br>4330 PARK TERRACE DR.<br>WESTLAKE VILLAGE, CA 91361 | 144 | 03-11547 | 5/13/2003 | $31,994.90 | $18,689.24<br>$13,305.66<br>$31,994.90 | Eddie Bauer, Inc. 03-11547<br>Spiegel Group Teleservices, Inc. 03-11555 |
| MCCALLUM PRINT GROUP<br>4700 9TH AVE NW<br>SEATTLE, WA 98107 | 1084 | 03-11547 | 8/21/2003 | $4,725.80 | $4,526.42<br>$199.38<br>$4,725.80 | Eddie Bauer, Inc. 03-11547<br>Spiegel Group Teleservices, Inc. 03-11555 |
| FREEDOM LOGISTICS<br>8201 W 183RD, STE E<br>TINLEY PARK, IL 60477 | 1113 | 03-11547 | 8/21/2003 | $15,500.00 | $1,940.00<br>$13,560.00<br>$15,500.00 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| MATEO BEJA<br>YALE DE MEXICO<br>C/O NATHAN F. COCO-MCDERMOT, WILL<br>ET AL.<br>227 W. MONROE ST.<br>CHICAGO, IL 60606 | 2336 | 03-11547 | 9/26/2003 | $634,517.34 | $559,288.32<br>$75,229.02<br>$634,517.34 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| OMAHA FIXTURES MFG. INC. C/O KT TRUST<br>TRANSFEROR: CAPITAL INVESTORS, LLC<br>ONE UNIVERSITY PLAZA<br>SUITE 518<br>HACKENSACK, NJ 07601 | 2440 | 03-11547 | 9/29/2003 | $2,424.29 | $2,200.68<br>$223.61<br>$2,424.29 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| CONTINENTAL CASUALTY COMPANY<br>CORNELL & STOREFRONT SYSTEMS<br>P.O. BOX 905<br>ATTN: DAVID MILLER<br>MONMOUTH JUNCTION, NJ 08852 | 97 | 03-11547 | 4/28/2003 | $16,397.00 | $13,898.00<br>$2,499.00<br>$16,397.00 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| CLS FACILITIES MGMT SERVICES INC C/O KT<br>TRUST<br>TRANSFEROR: LIQUIDITY SOLUTIONS<br>ONE UNIVERSITY PLAZA<br>SUITE 518<br>HACKENSACK, NJ 07601 | 530 | 03-11547 | 8/4/2003 | $81,506.29 | $80,877.12<br>$629.17<br>$81,506.29 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| MADISON LIQUIDITY INVESTORS 123, LLC<br>TRANSFEROR:IMAGE NATIONAL INC<br>6310 LAMAR AVE., SUITE 120,<br>OVERLAND PARK, KS 66202 | 1146 | 03-11547 | 8/26/2003 | $6,787.23 | $3,859.23<br>$2,928.00<br>$6,787.23 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| YANGTZEKIANG INDUSTRIES JON BH<br>NO 3 JALAN BAKTI<br>KAWASAN PERINDUST DATOONN<br>80350 JOHOR BAHRU<br>MALAYSIA | 1431 | 03-11547 | 9/2/2003 | $113,621.83 | $93,416.78<br>$20,205.05<br>$113,621.83 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| | | | | | | FILED AGAINST INCORRECT DEBTOR |
|---|---|---|---|---|---|---|
| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
| **Distribution Fulfillment Services, Inc.** | | | | | | |
| 1ST CARRIER CORP CITICAPITAL COM CORP P.O. BOX 911 CIRCLEVILLE, OH 43113 | 1147 | 03-11554 | 8/26/2003 | $34,863.55 | $31,506.59 $3,356.96 $34,863.55 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| CATAMOUNT CARGO SERVICES ATTN: ELLIE RAY STE. 103, 105 DIVISION ST. BENSENVILLE, IL 60106 | 2575 | 03-11554 | 9/29/2003 | $2,490.27 | $1,454.86 $1,035.41 $2,490.27 | Spiegel, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| COVENANT TRANSPORT ATTN: JANETTE WHITE P.O. BOX 22997 CHATTANOOGA, TN 37422 | 272 | 03-11554 | 6/16/2003 | $9,645.31 | $4,888.15 $4,757.16 $9,645.31 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| EAGLE GLOBAL LOGISTICS, INC. 15350 VICKERY DR. ATTN: DESTINY COLL HOUSTON, TX 77032 | 594 | 03-11554 | 8/5/2003 | $259,165.65 | $163,306.92 $95,858.73 $259,165.65 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| CENTRAL TRUCKING, INC. 11930 N. HARTMAN EDINBURGH, IN 46124 | 1594 | 03-11554 | 9/9/2003 | $105,660.10 | $39,659.10 $66,001.00 $105,660.10 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| D&S TRANSPORTATION ATTN: KARL 3500 OLD AIRPORT ROAD WOOSTER, OH 44691 | 387 | 03-11554 | 7/31/2003 | $3,205.95 | $1,461.55 $1,744.40 $3,205.95 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| NAVAJO EXPRESS 5305 E. 56TH AVENUE COMMERCE CITY, CO 80022 | 1409 | 03-11554 | 9/2/2003 | $23,191.68 | $2,816.05 $20,375.63 $23,191.68 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| TARGET LOGISTICS 2901 E. 4TH AVE, BLDG.1, SUITE A COLUMBUS, OH 43219 | 1747 | 03-11554 | 9/16/2003 | $47,935.56 | $16,215.34 $31,720.22 $47,935.56 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| UNISOURCE WORLDWIDE, INC 6600 GOVERNORS LAKE PARKWAY NORCROSS, GA 30071 | 2567 | 03-11554 | 9/29/2003 | $158,870.83 | $522.00 $1,889.52 $63,604.01 $1,042.21 $91,039.78 $773.31 $158,870.83 | Spiegel Catalog, Inc. 03-11541 Ultimate Outlet, Inc. 03-11543 Eddie Bauer, Inc. 03-11547 Eddie Bauer of Canada, Inc. 03-11551 Distribution Fulfillment Services, Inc. 03-11554 Spiegel Group Teleservices, Inc. 03-11555 |
| L & E PACKAGING LLC AVERY DENNISON TICKETING P.O. BOX 2115 ST LOUIS, MO 63195-2115 | 3801 | 03-11554 | 11/24/2003 | $38,818.85 | $20,738.06 $18,080.79 $38,818.85 | Distribution Fulfillment Services, Inc. 03-11554 Eddie Bauer, Inc. 03-11547 |
| KONICA BUSINESS MACHINES 500 DAY HILL RD. WINDSOR, CT 06095 | 1597 | 03-11554 | 9/11/2003 | $2,247.24 | $1,314.52 $932.72 $2,247.24 | Distribution Fulfillment Services, Inc. 03-11554 Eddie Bauer, Inc. 03-11547 |

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E**

| FILED AGAINST INCORRECT DEBTOR | | | | | | |
|---|---|---|---|---|---|---|
| **CLAIMANT NAME & ADDRESS** | **CLAIM NUMBER** | **CASE NUMBER FILED** | **DATE FILED** | **AMOUNT OF CLAIM** | **TOTAL ALLOWED AMOUNT** | **PROPER CASE NUMBER** |
| BEKINS WORLDWIDE/SOLUTIONS, INC<br>330 S. MANNHEIM ROAD<br>HILLSIDE, IL 60162 | 644 | 03-11554 | 8/8/2003 | $25,915.80 | $5,879.80<br>$20,036.00<br>$25,915.80 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| **Ultimate Outlet, Inc.** | | | | | | |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY<br>ATTN: REVENUE ASSURANCE & RECOVERY<br>801 E. 86TH AVENUE<br>MERRILLVILLE, IN 46410 | 290 | 03-11543 | 7/3/2003 | $6,858.62 | $4,499.48<br>$2,359.14<br>$6,858.62 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                      :

                                      :

**In re:**                              :

**SPIEGEL, INC., et al.,**         :

                         **Debtors.**   :

                                        :

                                        :

                                        :
-------------------------------------------------------------x

                                 **Chapter 11**

                                 **Case No.  03 - 11540 (CB)**

                                 **(Jointly Administered)**

**DECLARATION OF JAMES B. PEKAREK IN SUPPORT OF DEBTORS'
TWENTY-FOURTH OMNIBUS OBJECTION TO PROOFS OF CLAIM (NO
AMOUNT DUE AND OWING, AMOUNT OF CLAIM INCORRECT,
CLAIMS FILED AGAINST INCORRECT DEBTOR, MISCLASSIFIED
CLAIMS AND AMENDED OR SUPERSEDED CLAIMS)**

I, JAMES B. PEKAREK, do hereby declare, as follows:

1.      I am a Vice President and the Corporate Controller of Spiegel, Inc. ("Spiegel"), the direct or indirect parent corporation of each of the debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "Debtors"). In that capacity, I am familiar with the day-to-day operations, business and financial affairs of the Debtors, including, without limitation, the Debtors' claims reconciliation process. I submit this declaration (this "Declaration") in support of the Debtors' Twenty-Fourth Omnibus Objection to Proofs of Claim (No Amount Due and Owing, Amount of Claim Incorrect, Claims Filed Against Incorrect Debtor, Misclassified Claims and Amended or Superseded Claims), dated December 7, 2004 (the "Objection").[1] I am authorized to submit this Declaration on behalf of the Debtors.

---

[1]     Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Objection.

2.       Since the claims reconciliation process began, I have lead the Bankruptcy

Claims Reconciliation Team for the Debtors and been personally involved in the review,

processing and reconciliation of claims against the Debtors.  Except as otherwise set forth herein,

all statements in this Declaration are based on my personal knowledge, my familiarity with the

Debtors' reconciliation process, and/or my review of relevant documents.  If called upon to

testify, I could and would testify competently to the facts set forth herein.

3.       I have, or someone under my direction and supervision has, thoroughly

reviewed each of the proofs of claim listed on the charts annexed as <u>Exhibits A</u> through <u>E</u> to the

Objection and the Quik-X Claim and determined the following:

- the Debtors' books and records and the proofs of claim identified on <u>Exhibit A</u> (collectively, the "No Amount Due Claims") to the Objection do not substantiate any amounts being due and owing to the claimants identified on <u>Exhibit A</u> to the Objection;

- the asserted amount of each of the proofs of claim listed on <u>Exhibit B</u> (collectively, the "Incorrect Amount Claims") to the Objection is overstated pursuant to the Debtors' books and records;

- each of the proofs of claims listed in the "Surviving Claim" column of <u>Exhibit C</u> to the Objection purport to amend the corresponding proofs of claim listed in the "Claims to be Expunged" column (the "Amended Claims");

- each of the proofs of claim listed on <u>Exhibit D</u> (collectively, the "Misclassified Claims") to the Objection has been misclassified;

- each of the proofs of claim listed on <u>Exhibit E</u> (collectively, the "Incorrect Debtor Claims") to the Objection was filed against the incorrect Debtor; and

- the Quik-X Claim was misclassified and was filed against the incorrect Debtor.

Accordingly, I submit that:  (i) each of the No Amount Due Claims should be disallowed and

expunged; (ii) each of the Incorrect Amount Claims should be reduced and allowed in the

amount shown in the "Allowed Amount" column of <u>Exhibit B</u>; (iii) each of the Amended Claims

should be disallowed and expunged, provided that any documents filed with an Amended Claim

shall be deemed attached to the applicable Surviving Claim; (iv) each of the Misclassified

Claims should be reclassified as a general unsecured nonpriority claim; (v) each of the Incorrect

Debtor Claims should be disallowed against the Debtor indicated in the "Case Number Filed"

column of <u>Exhibit E</u> and should be allowed against the Debtor identified in the "Proper Case

Number" column of <u>Exhibit E</u> in the amount identified in the "Total Allowed Amount" column

of <u>Exhibit E</u> and (vi) the Quik-X Claim should be disallowed and expunged against DFS,

allowed against Eddie Bauer in the amount of $7,045.94 and reclassified as a general unsecured

non-priority claim.

       I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated:    December 7, 2004
         Downers Grove, Illinois


                /s/ James B. Pekarek
                James B. Pekarek

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                          :

**In re:**                                 :

**SPIEGEL, INC., et al.,**          :

                  **Debtors.**       :

-----------------------------------------------------------x

**Chapter 11**

**Case No.  03 - 11540 (CB)**

**(Jointly Administered)**

## ORDER GRANTING THE DEBTORS' FIFTEENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM (NO AMOUNT DUE AND OWING, AMOUNT OF CLAIM INCORRECT, CLAIMS FILED AGAINST INCORRECT DEBTOR, MISCLASSIFIED CLAIMS AND AMENDED OR SUPERSEDED CLAIMS)

Upon the objection dated December 7, 2004 (Docket No. _____) (the

"Objection")[1] of Spiegel, Inc. ("Spiegel") and certain of its direct and indirect subsidiaries, as

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"Debtors"), seeking entry of an order pursuant to section 502(a) of the Bankruptcy Code and

Rule 3007 of the Bankruptcy Rules (i) disallowing and expunging the No Amount Due Claims,

(ii) reducing and allowing the Incorrect Amount Claims in the amount identified in the "Allowed

Amount" column of Exhibit B, (iii) disallowing and expunging the Amended Claims;

(iv) reclassifying each of the Misclassified Claims as a general unsecured non-priority claim;

(v) disallowing and expunging the Incorrect Debtor Claims against the Debtor indicated in the

Case Number Filed column of Exhibit E and allowing the Incorrect Debtor Claims in the amount

identified in the "Total Allowed Amount" column of Exhibit E against the Debtor indicated in

the "Proper Case Number" column of Exhibit E; and (vi) disallowing and expunging the Quik-X

---

[1]       Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Objection.

Claim against DFS, allowing the Quik-X Claim in the amount of $7,045.94 against Eddie Bauer and reclassifying the Quik-X Claim as a general unsecured non-priority claim, as described in greater detail in the Objection; and upon the Declaration of James B. Pekarek in support of the Objection; and it appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these cases and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that the relief requested in the Objection is in the best interests of the Debtors, their estates and their creditors; and it appearing that notice of the Objection has been given as provided in the Objection, and that no other or further notice need be given; and upon the record herein and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, that the relief requested in the Objection is granted as set forth below; and it is further

ORDERED, that each of the No Amount Due Claims identified in the chart annexed hereto as Exhibit A be and hereby is disallowed and expunged in its entirety; and it is further

ORDERED, that each of the Incorrect Amount Claims identified in the chart annexed hereto as Exhibit B be and hereby is reduced and allowed in the amount indicated in the "Allowed Amount" column of Exhibit B; and it is further

ORDERED, that each of the Amended Claims identified in the chart annexed hereto as Exhibit C be and hereby is disallowed and expunged in its entirety, provided that any documents filed with an Amended Claim shall be deemed attached to the applicable Surviving Claim; and it is further

ORDERED, that each of the Misclassified Claims identified in the chart annexed hereto as Exhibit D be and hereby is reclassified as a general unsecured nonpriority claim; and it is further

ORDERED, that each of the Incorrect Debtor Claims identified in the chart annexed hereto as Exhibit E be and hereby is disallowed against the Debtor indicated in the "Case Number Filed" column of Exhibit E and is allowed against the Debtor identified in the "Proper Case Number" column of Exhibit E in the amount identified in the "Total Allowed Amount" column of Exhibit E; and it is further

ORDERED, that the Quik-X Claim be and hereby is disallowed and expunged in its entirety against DFS, is allowed against Eddie Bauer in the amount of $7,045.94 and is reclassified as a general unsecured non-priority claim; and it is further

ORDERED, that the Debtors retain their rights to file additional objections to the Disputed Claims and to any other proofs of claim filed against the Debtors, either on the grounds set forth in the Objection or on any other grounds as may be necessary or appropriate; and it is further

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order; and it is further

ORDERED, that the requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Objection is hereby waived.

Dated: New York, New York
_____, 2005

_____
HONORABLE CORNELIUS BLACKSHEAR
UNITED STATES BANKRUPTCY JUDGE

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT A**

| | CLAIM NUMBER TO BE EXPUNGED | CASE NO. | DATE FILED | AMOUNT OF CLAIM TO BE EXPUNGED |
|---|---|---|---|---|
| **NO AMOUNT DUE AND OWING BASED ON DEBTOR'S BOOKS AND RECORDS** | | | | |
| **CLAIMANT NAME & ADDRESS** | | | | |
| **Spiegel, Inc.** | | | | |
| JACQUELINE J. JOHNSON<br>10305 S. BENSLEY<br>CHICAGO, IL 60617 | 4248 | 03-11540 | 10/15/2004 | $100,000.00 |
| OHIO DEPARTMENT OF COMMERCE<br>INDUSTRIAL RELATIONS<br>C/O MICHELLE T. SUTTER<br>101 E. TOWN STREET<br>COLUMBUS, OH 43215 | 1040 | 03-11540 | 8/20/2003 | $179.01 |
| REMPERT, LINDA<br>MOORE-GIBBS, ESQ.<br>U.S. EEOC,<br>500 W. MADISON, STE 2800<br>CHICAGO, IL 60661 | 2238 | 03-11540 | 9/25/2003 | $0.00 |
| MELISSA WHITTAKER                    42<br>CANON ST APT 5<br>ST JOHN NB E2K 3J6 CANADA | 2722 | 03-11556 | 9/29/2003 | $0.00 |
| **Eddie Bauer, Inc.** | | | | |
| ARLINGTON COUNTY, VIRGINIA<br>2100 CLARENDON BLVD.<br>SUITE 217<br>ARLINGTON, VA 22201 | 4061 | 03-11547 | 5/5/2004 | $435.49 |
| JAN CITRON<br>1136 LARRABEE ST.<br>WEST HOLLYWOOD, CA 90069 | 4231 | 03-11547 | 9/29/2004 | $2,300.00 |
| **Spiegel Catalog, Inc.** | | | | |
| LUMISOURCE, INC.<br>C/O WILSON & ASSOCIATES<br>ATTN: JEFFREY S. WILSON<br>1821 WALDEN OFFICE SQUARE, SUITE 400<br>SCHAUMBURG, IL 60173 | 2742 | 03-11541 | 9/29/2003 | $122,054.98 |
| MELISSA PAYNER-GREGOR<br>917 ST STEPHENS GREEN<br>OAK BROOK, IL 60523-2569 | 2480 | 03-11541 | 9/29/2003 | $     5,408.91 |
| **Newport News, Inc.** | | | | |
| TRI-W DEVELOPMENT INC<br>WILSON LOUISIANA ASSOC.<br>MALLOF LOUISIANA ASSOC<br>4121 CARMICHAEL ROAD, SUITE 501<br>MONTGOMERY, AL 36106 | 2922 | 03-11539 | 10/1/2003 | $16,466.13 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT B

| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NO. | DATE FILED | AMOUNT OF CLAIM | SCHEDULED AMOUNT | ALLOWED AMOUNT |
|---|---|---|---|---|---|---|
| **AMOUNT OF CLAIM INCORRECT BASED ON DEBTOR'S BOOKS AND RECORDS** | | | | | | |
| **Eddie Bauer, Inc.** | | | | | | |
| ADVANCE SMART INTERNATIONAL LTD UNIT D3 7/F TONG YUEN FACTORY 505 CASTLE PEAK RD. KOWLOON, HONG KONG | 656 | 03-11547 | 8/8/2003 | $16,796.00 | $0.00 | $10,971.69 |
| COELIMA IND TEXTELS GLOBAL DEBT SOLUTIONS MARIA F. DEMONTE, COLLECTION MANAGER 7301 WEST PALMETTO PARK ROAD, STE 110B BOCA RATON, FL 33433 | 4085 | 03-11547 | 5/19/2004 | $189,945.27 | $150,117.90 | $150,117.90 |
| HAMLIN INDUSTRIAL CORP C/O LAUREN T. DIEHL, ESQ. 355 SOUTH GRAND AVE., SUITE 2900 LOS ANGELES, CA 90071 | 398 | 03-11547 | 7/30/2003 | $57,432.11 | $48,577.98 | $55,922.91 |
| LAMEIRINHO GLOBAL DEBT SOLUTIONS MARIA F. DEMONTE, COLLECTION MANAGER 7301 WEST PALMETTO PARK ROAD, STE 110B BOCA RATON, FL 33433 | 4084 | 03-11547 | 5/19/2004 | $9,451.88 | $8,413.67 | $8,413.67 |
| LTS INTERNATIONAL DD 21 KALKAJI NEW DELHI, 110019 | 1283 | 03-11547 | 8/26/2003 | $28,420.71 | $27,289.63 | $23,941.56 |
| MULHOLLAND BROTHERS 190 NAPOLEON ST. SAN FRANCISCO, CA 94124 | 3301 | 03-11547 | 10/1/2003 | $128,949.51 | $21,466.24 | $67,035.66 |
| GGP-NORTH POINT INC. BY: GENERAL GROWTH MGMT INC. AGENT C/O MICHAEL CHIMITRIS, ESQ. 110 N. WACKER DR. CHICAGO, IL 60606 | 1813 | 03-11547 | 1/0/1900 | UNDETERMINED | $645.24 | $752.38 |
| WASTE MANAGEMENT OF MURRELLS INLET C/O WASTE MANAGEMENT, INC. 1001 FANNIN, STE 4000 HOUSTON, TX 77002 | 3125 | 03-11547 | 10/1/2003 | UNDETERMINED | $162.48 | $162.48 |
| **Newport News, Inc.** | | | | | | |
| METTER INDUSTRIES, INC. 8200 GREENSBORO DRIVE, SUITE 500 MCLEAN, VA 22102 | 4242 | 03-11539 | 10/1/2004 | $8,637.87 | $  6,395.49 | $  6,395.49 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY- FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT C

AMENDED CLAIMS

| CLAIMS TO BE EXPUNGED | | | | | SURVIVING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLAIMANT NAME & ADDRESS | AMENDED CLAIM NUMBER TO BE EXPUNGED | CASE NO. | DATE FILED | AMOUNT OF CLAIM TO BE EXPUNGED | CLAIMANT NAME & ADDRESS | SURVIVING CLAIM NUMBER | CASE NO. | DATE FILED | AMOUNT OF SURVIVING CLAIM |
| **Spiegel, Inc.** | | | | | **Spiegel, Inc.** | | | | |
| SBC AMERITECH CORP.<br>P.O. BOX 981268<br>WEST SACRAMENTO, CA 95798 | 214 | 03-11540 | 6/9/2003 | $71,597.23 | SBC COMMUNICATIONS<br>SBC BUSINESS BANKRUPTCY GROUP<br>P.O. BOX 981268<br>WEST SACRAMENTO, CA 95798 | 4229 | 03-11540 | 9/28/2004 | $70,697.28 |
| **Spiegel Management Group, Inc.** | | | | | **Spiegel Management Group, Inc.** | | | | |
| MORRIS, CLARENCE R.<br>C/O LAW OFFICES OF JAMES CONNORS<br>ATTN: JAMES CONNORS<br>221 SOUTH HIGH STREET<br>COLUMBUS, OH 43215 | 3272 | 03-11546 | 10/1/2003 | $50,000.00 | MORRIS, CLARENCE R.<br>C/O LAW OFFICES OF JAMES CONNORS<br>221 SOUTH HIGH STREET<br>COLUMBUS, OH 43215 | 4230 | 03-11546 | 9/23/2004 | $912,041.70 |
| JOHNSON, ALFRED R.<br>C/O LAW OFFICES OF JAMES CONNORS<br>ATTN: JAMES CONNORS<br>221 SOUTH HIGH STREET<br>COLUMBUS, OH 43215 | 3273 | 03-11546 | 10/1/2003 | $650,000.00 | MORRIS, CLARENCE R.<br>C/O LAW OFFICES OF JAMES CONNORS<br>221 SOUTH HIGH STREET<br>COLUMBUS, OH 43215 | 4230 | 03-11546 | 9/23/2004 | $912,041.70 |

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT D**

| | CASE NUMBER FILED AGAINST | CLAIM NUMBER | CLAIM DATE | TOTAL CLAIM AMOUNT | CLASSIFICATION | PROPER CLASSIFICATION |
|---|---|---|---|---|---|---|
| **FILED WITH INCORRECT CLASSIFICATION** | | | | | | |
| **CLAIMANT NAME & ADDRESS** | | | | | | |
| **Distribution Fulfillment Services, Inc.** | | | | | | |
| BETTER PACKAGING SYSTEMS<br>P.O.BOX 514<br>NOVELTY, OH 44072 | 03-11554 | 848 | 8/11/2003 | $1,197.10 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| CAPITOL DRYWALL SUPPLY<br>1150 MCKINLEY AVENUE<br>COLUMBUS, OH 43222 | 03-11554 | 1338 | 9/2/2003 | $410.42 | SECURED | GENERAL UNSECURED NON PRIORITY |
| CARL ZIPF LOCK SHOP INC<br>161 E. FIFTH AVE.<br>COLUMBUS, OH 43201 | 03-11554 | 878 | 8/11/2003 | $408.75 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| CHOICEPOINT PUBLIC RECORD<br>P.O. BOX 945664<br>ATLANTA, GA 30394-5664 | 03-11554 | 1105 | 8/21/2003 | $48.00 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| CITY OF COLUMBUS<br>TRANSPORTATION DIVISION<br>109 N. FRONT STREET, ROOM 458<br>COLUMBUS, OH 43215 | 03-11554 | 3918 | 2/10/2004 | $11,927.31 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| HATHAWAY & FERGUSON INC<br>873 MT. VERNON AVENUE<br>COLUMBUS, OH 43203 | 03-11554 | 459 | 8/1/2003 | $3,900.00 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| LABEL DATA<br>3287 HARBOR DRIVE<br>LEWIS CENTER, OH 43035 | 03-11554 | 702 | 8/8/2003 | $491.28 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| MINUTEMAN PRESS<br>70 SO. FOURTH STREET<br>COLUMBUS, OH 43215 | 03-11554 | 767 | 8/11/2003 | $3,560.60 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| SUPERIOR SPECIAL SERVICES<br>1275 MINERAL SPRINGS DRIVE<br>PORT WASHINGTON, WI 53074 | 03-11554 | 475 | 8/1/2003 | $417.70 | PRIORITY | GENERAL UNSECURED NON PRIORITY |
| TRI-US TROPHY<br>511 MAIN STREET<br>GROVEPORT, OH 43125 | 03-11554 | 1387 | 9/29/2003 | $954.35 | PRIORITY | GENERAL UNSECURED NON PRIORITY |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
|---|---|---|---|---|---|---|
| **FILED AGAINST INCORRECT DEBTOR** | | | | | | |
| **Spiegel Group Teleservices Canada, Inc.(In Canadian $'s)** | | | | | | |
| GRAND AND TOY BOX 5500 DON MILLS, ON M3C 3L5 CANADA | 1005 | 03-11556 | 8/18/2003 | $14,842.33 | $9,865.49 $4,976.84 $14,842.33 | Eddie Bauer Canada, Inc. 03-11551 Spiegel Group TeleServices Canada, Inc. 03-11556 |
| **Newport News Inc.** | | | | | | |
| FASHION FOCUS MFG 15/F PACIFIC TRADE CTR 2 KAI HING RD KOWLOON BAY KOWLOON, HONG KONG | 2193 | 03-11539 | 9/23/2003 | $39,804.37 | $37,560.00 $2,244.37 $39,804.37 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| CONDE NAST PUBLICATIONS ATTN: SHARRON MAHONEY 4 TIMES SQUARE, 18TH FLOOR NEW YORK, NY 10036 | 2391 | 03-11539 | 9/26/2003 | $345,672.80 | $152,618.27 $193,054.53 $345,672.80 | Newport News, Inc. 03-11539 Spiegel Catalog, Inc. 03-11541 |
| **Spiegel Inc.** | | | | | | |
| OVERNITE TRANSPORTATION COMPANY P.O. BOX 1216 RICHMOND, VA 23218-1216 | 38 | 03-11540 | 4/4/2003 | $802.18 | $570.08 $232.10 $802.18 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| COS SERVICES, INC. P.O. BOX 2622 COLUMBUS, OH 43216 | 607 | 03-11540 | 8/5/2003 | $13,815.39 | $6,714.00 $7,101.39 $13,815.39 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| ROBINSON TRANSPORTATION P.O. BOX 9803 COLUMBUS, OH 43209 | 1190 | 03-11540 | 8/25/2003 | $41,797.80 | $20,313.73 $21,484.07 $41,797.80 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| TRANS UNION CORP TRANS UNION LLC P.O. BOX 5000 CRUM LYNNE, PA 190222005 | 2826 | 03-11540 | 9/30/2003 | $379,028.01 | $65,582.32 $293,596.89 $19,848.80 $379,028.01 | Newport News, Inc. 03-11539 Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| ROADWAY EXPRESS, INC. 1077 GORGE BLVD. P.O. BOX 3552 AKRON, OH 44309-3552 | 3540 | 03-11540 | 10/9/2003 | $53,790.83 | $48,669.68 $5,121.15 $53,790.83 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| FLORIDA POWER & LIGHT COMPANY P.O. BOX 025209 MIAMI, FL 33102-5209 | 156 | 03-11540 | 5/19/2003 | $9,540.35 | $9,070.30 $470.05 $9,540.35 | Ultimate Outlet, Inc. 03-11543 Eddie Bauer, Inc. 03-11547 |
| WASHINGTON GAS CUSTOMER CREDIT DEPARTMENT 1100 H ST., NW, 2ND FLOOR WASHINGTON, DC 20080 | 613 | 03-11540 | 8/8/2003 | $2,115.38 | $1,862.18 $253.20 $2,115.38 | Ultimate Outlet, Inc. 03-11543 Eddie Bauer, Inc. 03-11547 |
| MISSOURI GAS P.O. BOX 219255 KANSAS CITY, MO 64121 | 2409 | 03-11540 | 9/26/2003 | $1,037.85 | $923.65 $114.20 $1,037.85 | Ultimate Outlet, Inc. 03-11543 Eddie Bauer, Inc. 03-11547 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| | | | | | | |
|---|---|---|---|---|---|---|
| **FILED AGAINST INCORRECT DEBTOR** | | | | | | |
| **CLAIMANT NAME & ADDRESS** | **CLAIM NUMBER** | **CASE NUMBER FILED** | **DATE FILED** | **AMOUNT OF CLAIM** | **TOTAL ALLOWED AMOUNT** | **PROPER CASE NUMBER** |
| LANDSTAR RANGER<br>13410 SUTTON PARK DR S.<br>JACKSONVILLE, FL 32224 | 49 | 03-11540 | 4/9/2003 | $4,493.72 | $2,062.63<br>$2,431.09<br>$4,493.72 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| USF DISTRIBUTION<br>2122 YORK RD., STE 300<br>OAK BROOK, IL 60523 | 271 | 03-11540 | 6/24/2003 | $96,535.24 | $10,991.24<br>$85,544.00<br>$96,535.24 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| NATIONAL FUEL GAS DISTRIBUTION CORP<br>ATTN: MARY JO BEN<br>10 LAFAYETTE SQUARE<br>SUITE 1500<br>BUFFALO, NY 14203 | 310 | 03-11540 | 7/7/2003 | $667.71 | $149.38<br>$518.33<br>$667.71 | Newport News, Inc. 03-11539<br>Eddie Bauer, Inc. 03-11547 |
| UNITED PARCEL SERVICE<br>C/O D&B/RMS BANKRUPTCY SERVICES<br>P.O. BOX 4396<br>TIMONIUM, MD 21094 | 651 | 03-11540 | 8/8/2003 | $1,198,180.26 | $247,000.00<br>$458,600.00<br>$492,580.26<br>$1,198,180.26 | Newport News, Inc. 03-11539<br>Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| BUILDING SYSTEMS TRANSPO<br>460 E HIGH ST.<br>LONDON, OH 43140 | 488 | 03-11540 | 8/4/2003 | $5,547.85 | $1,679.20<br>$3,868.65<br>$5,547.85 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| PUBLIC SERVICE COMPANY OF COLORADO<br>ATTN: DENNIS A. SCHIPPER<br>BANKRUPTCY SPECIALIST, XCEL ENERGY<br>990 BANNOCK ST.<br>DENVER, CO 80204 | 1310 | 03-11540 | 8/28/2003 | $14,184.89 | $235.16<br>$13,949.73<br>$14,184.89 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| CARIMAX CORP<br>238, PANGDORI, DOCHUKMUYUN<br>KWAUGJU CITY, KYUNGGIDO<br>KOREA | 1672 | 03-11540 | 9/10/2003 | $107,739.41 | $102,528.01<br>$5,211.40<br>$107,739.41 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| WHELAN'S INTERNATIONAL CO. INC.<br>731 UNION PARKWAY<br>RONKONKOMA, NY 11779 | 3362 | 03-11540 | 10/1/2003 | $139,261.33 | $131,527.83<br>$7,733.50<br>$139,261.33 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| AMERICAN ELECTRIC POWER<br>P.O. BOX 2021<br>ROANOKE, VA 24022 | 362 | 03-11540 | 7/28/2003 | $303,463.17 | $1,937.30<br>$301,525.87<br>$303,463.17 | Eddie Bauer, Inc. 03-11547<br>Distribution Fulfillment Services, Inc. 03-11554 |
| IOS CAPITAL<br>BANKRUPTCY ADMINISTRATION<br>P.O. BOX 13708<br>MACON, GA 31208-3708 | 3665 | 03-11540 | 10/14/2003 | $4,417.82 | $86.56<br>$4,160.12<br>$171.14<br>$4,417.82 | Eddie Bauer, Inc. 03-11547<br>Distribution Fulfillment Services, Inc. 03-11554<br>Spiegel Group Teleservices, Inc. 03-11555 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
|---|---|---|---|---|---|---|
| EQUIFAX<br>P.O. BOX 105835<br>ATLANTA, GA 30348-5835 | 2001 | 03-11540 | 9/22/2003 | $256,668.70 | $35,288.00<br>$106,755.50<br>$114,625.20<br>$256,668.70 | Newport News, Inc. 03-11539<br>Spiegel Publishing Co., Inc. 03-11542<br>Gemini Credit Services, Inc. 03-11558 |
| WARD TRUCKING COMPANY<br>P.O. BOX 1553<br>ALTOONA, PA 16603 | 489 | 03-11540 | 8/4/2003 | $3,178.11 | $1,709.00<br>$1,469.11<br>$3,178.11 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| DELMARVA POWER & LIGHT CO.<br>D/B/A CONECTIV POWER DELIVERY<br>5 COLLINS DR., SUITE 2133<br>CARNEY'S POINT, NJ 08069 | 79 | 03-11540<br>03-11539<br>03-11547 | 4/24/2003 | $1,592.22 | $823.15<br>$769.07<br>$1,592.22 | Newport News, Inc. 03-11539<br>Eddie Bauer, Inc. 03-11547 |
| CONSUMERS ENERGY COMPANY<br>ATTN: MICHAEL G. WILSON (P33263)<br>ONE ENERGY PLAZA<br>JACKSON, MI 49201 | 351 | 03-11540 | 7/21/2003 | $7,412.29 | $2,416.89<br>$4,995.40<br>$7,412.29 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |
| SUPERCAP<br>18 FL., NO. 216 TUN HWA S. RD, SEC 2<br>TAIPEI<br>TAIWAN R.O.C. | 4136 | 03-11540 | 6/10/2004 | $9,689.52 | $3,015.77<br>$6,673.75<br>$9,689.52 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| UPS CUSTOMHOUSE BROKERAGE<br>1930 BISHOP LANE, STE 300<br>LOUISVILLE, KY 40218 | 329 | 03-11540 | 7/16/2003 | $151,739.73 | $128,470.32<br>$19,396.62<br>$147,866.94 | EDDIE BAUER, INC./03-11547<br>SPIEGEL CATALOG, INC./03-11541 |
| HIBBS/WOODINVILLE ASSOCIATED, LLC<br>3301 MONTE VILLA PARKWAY, SUITE 101<br>BOTHELL, WA 98201 | 3891 | 03-11540 | 1/9/2004 | $263,599.17 | $263,599.17 | Eddie Bauer, Inc. 03-11547 |
| MOORE-WALLACE, INC.<br>C/O ABC/AMEGA, INC<br>1100 MAIN ST.<br>BUFFALO, NY 14209-2356 | 1433 | 03-11540 | 9/2/2003 | $82,809.01 | $82,809.01 | Newport News, Inc. 03-11539 |
| WMXJ-FM/WYLF-FM RADIO<br>C/O SZABO ASSOCIATES, INC.<br>3355 LENOX ROAD, 9T FLOOR<br>ATLANTA, GA 30326 | 124 | 03-11540 | 5/2/2003 | $17,372.50 | $17,372.50 | Ultimate Outlet, Inc. 03-11543 |
| **Spiegel Catalog, Inc.** | | | | | | |
| GEORGIA POWER COMPANY<br>BIN 80002 / SANDRA VAUGHN<br>2500 PATRICK HENRY BLVD.<br>MCDONOUGH, GA 30253 | 34 | 03-11541 | 4/8/2003 | $2,095.38 | $1,157.88<br>$937.50<br>$2,095.38 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| YEHUDA SILBERBERG LTD<br>2 NER ITALILA ST<br>INDUSTRIAL & BUSINESS PARK<br>CAESARCA<br>ISRAEL, 38900 | 1301 | 03-11541 | 8/27/2003 | $136,233.66 | $2,700.00<br>$133,533.66<br>$136,233.66 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| **Eddie Bauer, Inc.** | | | | | | |
| HERTZ CORPORATION, THE<br>14501 HERTZ QUAIL SPRINGS PARKWAY<br>OKLAHOMA CITY, OK 73134 | 206 | 03-11547 | 6/6/2003 | $5,408.70 | $600.13<br>$4,808.57<br>$5,408.70 | Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| FILED AGAINST INCORRECT DEBTOR | | | | | | |
|---|---|---|---|---|---|---|
| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
| RUMFORD GARDENER, THE<br>225 NEWMAN AVE.<br>RUMFORD, RI 02916 | 36 | 03-11547 | 4/7/2003 | $42,405.00 | $38,550.00<br>$3,855.00<br>$42,405.00 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| PINKERTON, INC.<br>4330 PARK TERRACE DR.<br>WESTLAKE VILLAGE, CA 91361 | 144 | 03-11547 | 5/13/2003 | $31,994.90 | $18,689.24<br>$13,305.66<br>$31,994.90 | Eddie Bauer, Inc. 03-11547<br>Spiegel Group Teleservices, Inc. 03-11555 |
| MCCALLUM PRINT GROUP<br>4700 9TH AVE NW<br>SEATTLE, WA 98107 | 1084 | 03-11547 | 8/21/2003 | $4,725.80 | $4,526.42<br>$199.38<br>$4,725.80 | Eddie Bauer, Inc. 03-11547<br>Spiegel Group Teleservices, Inc. 03-11555 |
| FREEDOM LOGISTICS<br>8201 W 183RD, STE E<br>TINLEY PARK, IL 60477 | 1113 | 03-11547 | 8/21/2003 | $15,500.00 | $1,940.00<br>$13,560.00<br>$15,500.00 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| MATEO BEJA<br>YALE DE MEXICO<br>C/O NATHAN F. COCO-MCDERMOT, WILL<br>ET AL.<br>227 W. MONROE ST.<br>CHICAGO, IL 60606 | 2336 | 03-11547 | 9/26/2003 | $634,517.34 | $559,288.32<br>$75,229.02<br>$634,517.34 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| OMAHA FIXTURES MFG, INC. C/O KT TRUST<br>TRANSFEROR: CAPITAL INVESTORS, LLC<br>ONE UNIVERSITY PLAZA<br>SUITE 518<br>HACKENSACK, NJ 07601 | 2440 | 03-11547 | 9/29/2003 | $2,424.29 | $2,200.68<br>$223.61<br>$2,424.29 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| CONTINENTAL CASUALTY COMPANY<br>CORNELL & STOREFRONT SYSTEMS<br>P.O. BOX 905<br>ATTN: DAVID MILLER<br>MONMOUTH JUNCTION, NJ 08852 | 97 | 03-11547 | 4/28/2003 | $16,397.00 | $13,898.00<br>$2,499.00<br>$16,397.00 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| CLS FACILITIES MGMT SERVICES INC C/O KT<br>TRUST<br>TRANSFEROR: LIQUIDITY SOLUTIONS<br>ONE UNIVERSITY PLAZA<br>SUITE 518<br>HACKENSACK, NJ 07601 | 530 | 03-11547 | 8/4/2003 | $81,506.29 | $80,877.12<br>$629.17<br>$81,506.29 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| MADISON LIQUIDITY INVESTORS 123, LLC<br>TRANSFEROR:IMAGE NATIONAL INC<br>6310 LAMAR AVE., SUITE 120,<br>OVERLAND PARK, KS 66202 | 1146 | 03-11547 | 8/26/2003 | $6,787.23 | $3,859.23<br>$2,928.00<br>$6,787.23 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |
| YANGTZEKIANG INDUSTRIES JON BH<br>NO 3 JALAN BAKTI<br>KAWASAN PERINDUST DATOONN<br>80350 JOHOR BAHRU<br>MALAYSIA | 1431 | 03-11547 | 9/2/2003 | $113,621.83 | $93,416.78<br>$20,205.05<br>$113,621.83 | Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551 |

SPIEGEL, INC. ET AL
CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)
TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E

| | | | | | FILED AGAINST INCORRECT DEBTOR | |
|---|---|---|---|---|---|---|
| CLAIMANT NAME & ADDRESS | CLAIM NUMBER | CASE NUMBER FILED | DATE FILED | AMOUNT OF CLAIM | TOTAL ALLOWED AMOUNT | PROPER CASE NUMBER |
| **Distribution Fulfillment Services, Inc.** | | | | | | |
| 1ST CARRIER CORP<br>CITICAPITAL COM CORP<br>P.O. BOX 911<br>CIRCLEVILLE, OH 43113 | 1147 | 03-11554 | 8/26/2003 | $34,863.55 | $31,506.59<br>$3,356.96<br>$34,863.55 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| CATAMOUNT CARGO SERVICES<br>ATTN: ELLIE RAY<br>STE. 103, 105 DIVISION ST.<br>BENSENVILLE, IL 60106 | 2575 | 03-11554 | 9/29/2003 | $2,490.27 | $1,454.86<br>$1,035.41<br>$2,490.27 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| COVENANT TRANSPORT<br>ATTN: JANETTE WHITE<br>P.O. BOX 22997<br>CHATTANOOGA, TN 37422 | 272 | 03-11554 | 6/16/2003 | $9,645.31 | $4,888.15<br>$4,757.16<br>$9,645.31 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| EAGLE GLOBAL LOGISTICS, INC.<br>15350 VICKERY DR.<br>ATTN: DESTINY COLL<br>HOUSTON, TX 77032 | 594 | 03-11554 | 8/5/2003 | $259,165.65 | $163,306.92<br>$95,858.73<br>$259,165.65 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| CENTRAL TRUCKING, INC.<br>11930 N. HARTMAN<br>EDINBURGH, IN 46124 | 1594 | 03-11554 | 9/9/2003 | $105,660.10 | $39,659.10<br>$66,001.00<br>$105,660.10 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| D&S TRANSPORTATION<br>ATTN: KARL<br>3500 OLD AIRPORT ROAD<br>WOOSTER, OH 44691 | 387 | 03-11554 | 7/31/2003 | $3,205.95 | $1,461.55<br>$1,744.40<br>$3,205.95 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| NAVAJO EXPRESS<br>5305 E. 56TH AVENUE<br>COMMERCE CITY, CO 80022 | 1409 | 03-11554 | 9/2/2003 | $23,191.68 | $2,816.05<br>$20,375.63<br>$23,191.68 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| TARGET LOGISTICS<br>2901 E. 4TH AVE, BLDG.1, SUITE A<br>COLUMBUS, OH 43219 | 1747 | 03-11554 | 9/16/2003 | $47,935.56 | $16,215.34<br>$31,720.22<br>$47,935.56 | Spiegel Catalog, Inc. 03-11541<br>Eddie Bauer, Inc. 03-11547 |
| UNISOURCE WORLDWIDE, INC<br>6600 GOVERNORS LAKE PARKWAY<br>NORCROSS, GA 30071 | 2567 | 03-11554 | 9/29/2003 | $158,870.83 | $522.00<br>$1,889.52<br>$63,604.01<br>$1,042.21<br>$91,039.78<br>$773.31<br>$158,870.83 | Spiegel Catalog, Inc. 03-11541<br>Ultimate Outlet, Inc. 03-11543<br>Eddie Bauer, Inc. 03-11547<br>Eddie Bauer of Canada, Inc. 03-11551<br>Distribution Fulfillment Services, Inc. 03-11554<br>Spiegel Group Teleservices, Inc. 03-11555 |
| L & E PACKAGING LLC<br>AVERY DENNISON TICKETING<br>P.O. BOX 2115<br>ST LOUIS, MO 63195-2115 | 3801 | 03-11554 | 11/24/2003 | $38,818.85 | $20,738.06<br>$18,080.79<br>$38,818.85 | Distribution Fulfillment Services, Inc. 03-11554<br>Eddie Bauer, Inc. 03-11547 |
| KONICA BUSINESS MACHINES<br>500 DAY HILL RD.<br>WINDSOR, CT 06095 | 1597 | 03-11554 | 9/11/2003 | $2,247.24 | $1,314.52<br>$932.72<br>$2,247.24 | Distribution Fulfillment Services, Inc. 03-11554<br>Eddie Bauer, Inc. 03-11547 |

**SPIEGEL, INC. ET AL**
**CASE NO. 03-11540 (CB) (JOINTLY ADMINISTERED)**
**TWENTY-FOURTH OMNIBUS OBJECTION TO CLAIMS - EXHIBIT E**

| | | | | | | |
|---|---|---|---|---|---|---|
| **FILED AGAINST INCORRECT DEBTOR** | | | | | | |
| **CLAIMANT NAME & ADDRESS** | **CLAIM NUMBER** | **CASE NUMBER FILED** | **DATE FILED** | **AMOUNT OF CLAIM** | **TOTAL ALLOWED AMOUNT** | **PROPER CASE NUMBER** |
| BEKINS WORLDWIDE/SOLUTIONS, INC 330 S. MANNHEIM ROAD HILLSIDE, IL 60162 | 644 | 03-11554 | 8/8/2003 | $25,915.80 | $5,879.80 $20,036.00 $25,915.80 | Spiegel Catalog, Inc. 03-11541 Eddie Bauer, Inc. 03-11547 |
| **Ultimate Outlet, Inc.** | | | | | | |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY ATTN: REVENUE ASSURANCE & RECOVERY 801 E. 86TH AVENUE MERRILLVILLE, IN 46410 | 290 | 03-11543 | 7/3/2003 | $6,858.62 | $4,499.48 $2,359.14 $6,858.62 | Ultimate Outlet, Inc. 03-11543 Eddie Bauer, Inc. 03-11547 |

**UNITED STATES BANKRUPTCY COURT SOURTHERN DISTRICT OF NEW YORK**

SHERARMAN 7 STERLING LLP
559 Lexington Avenue
New York, New York 1002
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
James L. Garrity, Jr. (JG-8389)
Marc B. Hankin (MH-7001)

Attorneys for the Debtors and Debtors in Possession

In re:  Case No. 03-11540 (CB)
**Chapter 11**

**SPIEGEL, INC., et al.,**

---

**OBJECTION TO NOTICE OF PRESENTMENT OF ORDER GRANTING THE DEBTORS TWENTY-FOURTH OMNIBUS OBJECTION TO PROOFFS OF CLAIM (NO AMOUNT DUE AND OWING, AMOUNT OF CLAIM INCORRECT, CLAIMS FILED AGAINST INCORRECT DEBTOR, MISCLASSIFIED CLAIMS AND AMENDED OR SUPERSEDED CLAIMS)**

I, Jacqueline Johnson state the following is true to the best of my knowledge, I respectfully request that this Honorable Court disallow the Debtor's motion.  I have legal court cases pending against SPIEGELS INC..  SPIEGEL INC has been named as second defendant in a discrimination claim; I have filed with the EEOC (Equal Employment Opportunity Commission) for cohesion.  The first defendant has already received their letter of sufficient evidence against them.  SPIEGEL INC. was a part of this cohesion. The EEOC will try to negotiate a possible settlement.  If we cannot settle, my attorney will be filing a lawsuit against the first and second party in this discrimination claim.   It is because of this reason, I am requesting this Honorable Court not to grant the debtors motion.  If it is granted, it will deprive me of an opportunity to seek any relief, and any chance of relief will be lost.     I will supply a copy of the notice of sufient evidence at the request of this court.  My lost under this lawsuit is in the amount of $100,000.00 for punitive and compensatory damage.

Jacqueline Johnson
Pro-se
10305 S. Bensley Ave.
Chicago, Illinois 60617
Phone No. Home (773) 374-7581 Cell (773) 640-1460
Date: December 29, 2004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
       :
       :
In re:       :    **Chapter 11**
       :
SPIEGEL, INC., <u>et al.</u>,[1]    :    **Case No. 03-11540 (BRL)**
       :
       :    **(Jointly Administered)**
      Debtors.    :
       :
---------------------------------------------------------------- x

## MODIFIED FIRST AMENDED JOINT PLAN OF REORGANIZATION OF AFFILIATED DEBTORS PURSUANT TO <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
James L. Garrity, Jr. (JG-8389)
Andrew V. Tenzer (AT-2263)
Marc B. Hankin (MH-7001)

Attorneys for the Debtors and
Debtors in Possession

Dated as of May 23, 2005

---

[1]    The other Debtors in these jointly administered Chapter 11 proceedings are Newport News, Inc., Spiegel Catalog, Inc., Spiegel Publishing Co., Ultimate Outlet Inc., Spiegel Catalog Services, LLC, Spiegel Marketing Corporation, Spiegel Management Group, Inc., Eddie Bauer, Inc., Eddie Bauer Diversified Sales, LLC, Eddie Bauer International Development, LLC, Eddie Bauer Services, LLC, Eddie Bauer of Canada, Inc., Newport News Services, LLC, New Hampton Realty Corp., Distribution Fulfillment Services, Inc. (DFS), Spiegel Group Teleservices, Inc., Spiegel Group Teleservices-Canada, Inc., Retailer Financial Products, Inc., and Gemini Credit Services, Inc.

# TABLE OF CONTENTS

Page

## ARTICLE I

**DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW** ..........................................................1

Section 1.1 Rules of Interpretation, Computation of Time and Governing Law.................1
Section 1.2 Defined Terms .............................................................................................2

## ARTICLE II

**COMPROMISE AND SETTLEMENT OF DISPUTES**.....................................................16

Section 2.1 Introduction................................................................................16
Section 2.2 Cash Settlement Payment ...........................................................16
Section 2.3 Executory Contracts....................................................................16
Section 2.4 Allowance of Claims....................................................................17
Section 2.5 Releases and Claims Over Protection...........................................17
Section 2.6 Post-Effective Date Litigation .....................................................18
Section 2.7 Tax Reimbursement Agreements...................................................18
Section 2.8 Termination of Temporary Restraining Order..................................18

## ARTICLE III

**ADMINISTRATIVE CLAIMS, RECLAMATION CLAIMS,
PROFESSIONAL FEES AND PRIORITY TAX CLAIMS** ....................................................18

Section 3.1 Introduction................................................................................18
Section 3.2 Administrative Claims.................................................................18
Section 3.3 Reclamation Claims....................................................................19
Section 3.4 Statutory Fees ...........................................................................19
Section 3.5 Professional Fees .......................................................................19
Section 3.6 Priority Tax Claims.....................................................................21

## ARTICLE IV

**CLASSIFICATION AND TREATMENT OF
CLASSIFIED CLAIMS AND EQUITY INTERESTS**...........................................................21

Section 4.1 Summary....................................................................................21
Section 4.2 Class 1 – Groveport Secured Claims ............................................22
Section 4.3 Class 2 – Other Secured Claims ..................................................23
Section 4.4 Class 3 – Non-Tax Priority Claims................................................23
Section 4.5 Class 4 – General Unsecured Claims............................................23

Section 4.6 Class 5 – Convenience Claims.......................................................................24
Section 4.7 Class 6 – Class 6 Equity Interests ...............................................................24

## ARTICLE V

**ACCEPTANCE OR REJECTION OF PLAN** .........................................................25

Section 5.1 Voting Classes ..............................................................................................25
Section 5.2 Acceptance by Class of Creditors ................................................................25
Section 5.3 Cramdown......................................................................................................25

## ARTICLE VI

**EFFECT OF CONFIRMATION** ............................................................................25

Section 6.1 Reorganized Debtors and Creditor Trust Debtors as Separate Corporate
    Entities; Vesting and Revesting ..............................................................25
Section 6.2 Binding Effect ...............................................................................................26
Section 6.3 Corporate Action...........................................................................................26
Section 6.4 Dissolution of Creditors' Committee; Plan Oversight Committee ...............26
Section 6.5 Late Claims ...................................................................................................27

## ARTICLE VII

**IMPLEMENTATION OF THIS PLAN** ..................................................................27

Section 7.1 Substantive Consolidation of the Debtors ....................................................27
Section 7.2 Cash Settlement Payment .............................................................................28
Section 7.3 Cancellation of Intercompany Claims ..........................................................28
Section 7.4 Cancellation of Notes, Instruments, Common Stock and Stock Option........28
Section 7.5 Eddie Bauer Holdings Working Capital Facility..........................................28
Section 7.6 Eddie Bauer Holdings Senior Debt Facility or Creditor Notes.....................28
Section 7.7 Restructuring Transactions ...........................................................................29
Section 7.8 Violations of Claims Trading Order ..............................................................30
Section 7.9 Creation of the Creditor Trust .......................................................................30
Section 7.10 The Trustees.................................................................................................33
Section 7.11 Release of Liens and Perfection of Liens ....................................................34
Section 7.12 Corporate Governance, Directors and Officers, and Corporate Action........35
Section 7.13 Sources of Cash for Plan Distribution .........................................................37
Section 7.14 Issuance of Eddie Bauer Holdings Common Stock......................................37
Section 7.15 Management Stock Incentive Program.........................................................39
Section 7.16 Listing of Eddie Bauer Holdings Common Stock;
    Registration of Securities.......................................................................39
Section 7.17 Second Amended and Restated Loan and Security Agreement....................39

**ARTICLE VIII**

**RIGHTS OF ACTION** ....................................................................................................40

Section 8.1 Maintenance of Eddie Bauer Rights of Action ...............................40
Section 8.2 Maintenance of the Creditor Trust Rights of Action .....................40
Section 8.3 Preservation of All Rights of Action Not Expressly Settled or Released.......41
Section 8.4 Timing............................................................................................42

**ARTICLE IX**

**PROVISIONS REGARDING DISTRIBUTIONS AND RESERVES** .................................42

Section 9.1 Initial Distribution to Creditors....................................................42
Section 9.2 Disputed Claims Reserves ............................................................42
Section 9.3 Subsequent Distributions to Creditors .........................................43
Section 9.4 Time and Manner of Payments .....................................................43
Section 9.5 Delivery of Distributions ..............................................................43
Section 9.6 Undeliverable Distributions ..........................................................43
Section 9.7 Compliance with Tax Requirements/Allocation............................44
Section 9.8 Time Bar to Cash Payments..........................................................44
Section 9.9 Fractional Dollars, Fractional Shares, and De Minimis Distributions...........45
Section 9.10 Set-Offs .......................................................................................45
Section 9.11 Settlement of Claims and Controversies.....................................46

**ARTICLE X**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND UNRESOLVED CLAIMS**..................................................................................................46

Section 10.1 Prosecution of Objections to Claims ..........................................46
Section 10.2 Estimation of Claims ...................................................................47
Section 10.3 Cumulative Remedies ..................................................................47
Section 10.4 Allowance of Claims ...................................................................47
Section 10.5 Personal Injury Claims ................................................................48

**ARTICLE XI**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................................48

Section 11.1 Rejection of Executory Contracts and Unexpired Leases ...........48
Section 11.2 Assumption of Executory Contracts and Unexpired Leases........48
Section 11.3 Claims Based on Rejection of Executory Contracts or Unexpired Leases...49
Section 11.4 Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ...............................................................49
Section 11.5 Miscellaneous ..............................................................................50

Section 11.6 Indemnification of Officers, Employees and Restructuring Committee
Board Members..................................................................................51
Section 11.7 Compensation and Benefit Programs .......................................................51

## ARTICLE XII

**CONDITIONS PRECEDENT TO CONFIRMATION**...........................................................52

Section 12.1 Conditions Precedent to Confirmation Date of This Plan ...........................52
Section 12.2 Conditions Precedent to Effective Date of This Plan ..................................52
Section 12.3 Waiver of Conditions Precedent .................................................................53

## ARTICLE XIII

**INJUNCTIONS, RELEASES AND INDEMNIFICATIONS
AND EFFECTIVE DATE OF THIS PLAN**...........................................................................53

Section 13.1 Injunction ...................................................................................................53
Section 13.2 Discharge ...................................................................................................54
Section 13.3 Releases by the Debtors .............................................................................54
Section 13.4 SHI Settlement Releases .............................................................................55
Section 13.5 Claims Over Protection ...............................................................................57
Section 13.6 Post-Petition Released Party Exculpation and Limitation of Liability.........58
Section 13.7 Reservation of Rights..................................................................................59

## ARTICLE XIV

**RETENTION OF JURISDICTION** ....................................................................................59

Section 14.1 Retention of Jurisdiction ............................................................................59

## ARTICLE XV

**MISCELLANEOUS PROVISIONS** ...................................................................................61

Section 15.1 Modification of Plan ...................................................................................61
Section 15.2 Revocation or Withdrawal ..........................................................................61
Section 15.3 Term of Existing Injunctions or Stays ........................................................61
Section 15.4 Post-Effective Date Fees and Expenses......................................................61
Section 15.5 Exemption from Registration......................................................................62
Section 15.6 Section 1146 Exception ..............................................................................62
Section 15.7 Severability ................................................................................................62
Section 15.8 Plan Supplement ........................................................................................62
Section 15.9 Governing Law ...........................................................................................62
Section 15.10 Reservation of Rights for Certain Canadian Creditors ..............................63
Section 15.11 Notices .....................................................................................................63
Section 15.12 Closing of Cases ......................................................................................64
Section 15.13 Section Headings .....................................................................................64

Section 15.14 Continuing Viability of Other Orders/Agreements.....................................64

**ARTICLE XVI**

**CONCLUSION AND RECOMMENDATION** .......................................................................65

The above-captioned Debtors respectfully propose the following Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to chapter 11 of the Bankruptcy Code (this "Plan").

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

Section 1.1  Rules of Interpretation, Computation of Time and Governing Law

(a)      For purposes of this Plan:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and neuter genders; (ii) any reference to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) any reference to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, waived, modified or supplemented; (iv) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (v) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (vi) any reference to "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (vii) any use of the words "hereof," "herein," "hereto" and "hereunder" and words of similar import refer to this Plan in its entirety and not to any particular provision of this Plan; (viii) unless otherwise specified, all references to Subsections, Sections, Articles and Exhibits are references to Subsections, Sections, Articles and Exhibits of or to this Plan; (ix) unless the context otherwise requires, any term used in capitalized form in this Plan that is not defined herein but that is used or defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (x) any term used in capitalized form in Section 7.17 of this Plan that is not defined herein shall have the meaning assigned to such term in the Second Amended and Restated Loan and Security Agreement.

(b)      In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)      Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

Section 1.2    <u>Defined Terms</u>

(a)    As used in this Plan, the following terms have the respective meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined unless otherwise indicated:

"<u>Administrative Claim</u>" means any Claim, excluding Reclamation Claims, constituting a cost or expense of administration of any of the Chapter 11 Cases asserted under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including (i) any actual and necessary costs and expenses of preserving the estates of the Debtors, (ii) any actual and necessary costs and expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the administration and implementation of this Plan, (iii) any compensation and reimbursement of expenses under section 330 or 503 of the Bankruptcy Code arising during the period from and after the Petition Date and to the Effective Date or otherwise in accordance with the provisions of this Plan, (iv) any fees or charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930, or (v) as determined by the Bankruptcy Court to be an Administrative Claim in a Final Order.

"<u>Administrative Claim Bar Date</u>" means the date that is forty-five (45) days after the Effective Date.

"<u>ADR Procedures</u>" means the alternative dispute resolution procedures approved by the Order Pursuant to 11 U.S.C. § 105(a) Approving Alternative Dispute Resolution Procedures to Resolve Personal Injury, Employment Litigation, and Similar Claims entered by the Bankruptcy Court on August 18, 2004 as set forth in the Alternative Dispute Resolution Term Sheet annexed as <u>Exhibit A</u> to that order.

"<u>Allowed</u>" means, with respect to any Claim or portion thereof (i) for which proof thereof was Filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3), and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, shall have been interposed on or before the Effective Date, (ii) for which no proof thereof was Filed, to the extent that such Claim has been listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, (iii) which arises from the recovery of property under section 550 or 553 of the Bankruptcy Code, (iv) which is allowed under this Plan, (v) which is allowed as set forth in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with this Plan, or (vi) which is allowed by a Final Order; <u>provided</u>, <u>however</u>, that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Claim or Claim from and after the Petition Date, except for interest and other fees, costs and charges on the Groveport Secured Claims from and after the Petition Date to the extent contemplated in Section 4.2 of this Plan.

"<u>Amended Certificate of Incorporation and Bylaws</u>" has the meaning set forth in Section 7.12(a) of this Plan.

2

"Assets" means (i) any and all real or personal property of one or more Debtors, as the case may be, of any nature, including, without limitation, any Cash, real property interests, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in process, accounts receivable, tax refunds, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action, and any other general intangibles of one or more Debtors, as the case may be, of any nature whatsoever, including the property of the estate pursuant to section 541 of the Bankruptcy Code; and (ii) proceeds, products, rents and profits of any and all of the foregoing.

"Assignment Objection" has the meaning set forth in Section 11.4(b) of this Plan.

"Avoidance Actions" means all actions, causes of action, claims or rights of the Debtors or their estates arising under chapter 5 of the Bankruptcy Code, whether or not commenced as of the Effective Date.

"Ballot" means the ballot for voting to accept or reject this Plan distributed by the Debtors to Holders of Impaired Claims entitled to vote on this Plan.

"Bankruptcy Code" means title 11 of the United States Code, as applicable to the Chapter 11 Cases, as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or such other court having jurisdiction over the Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075, and any Local Rules of the Bankruptcy Court.

"Bar Date Order" means the Order Pursuant to Bankruptcy Rule 3003(c)(3) Setting an October 1, 2003 Deadline for Filing Proofs of Claim, and Approving Form and Manner of Notice Thereof, entered by the Bankruptcy Court on July 15, 2003.

"Beneficiary" means a holder of beneficial interests in the Creditor Trust.

"Benefit Programs" has the meaning set forth in Section 11.7 of this Plan.

"Business Day" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by law to be closed in the City of New York.

"Buying Agency Agreements" means (i) that certain Agency Agreement dated March 1, 1998, as subsequently supplemented or amended, between Eddie Bauer International (Americas), Inc. and Eddie Bauer, Inc. and (ii) that certain Agency Agreement dated January 1, 1994, as subsequently supplemented or amended, between Eddie Bauer International Ltd. and Eddie Bauer, Inc.

"Canadian Court" means the Ontario Superior Court of Justice.

3

"Canadian Confirmation Order" means the Order of the Canadian Court, which shall, among other things, order and declare that the Confirmation Order and this Plan are recognized and shall be implemented and effective in Canada in accordance with their terms.

"Canadian Debtors" means Eddie Bauer of Canada, Inc. and Spiegel Group Teleservices-Canada, Inc.

"Cash" means legal tender of the United States of America.

"Cash Settlement Payment" has the meaning set forth in Section 2.2 of this Plan.

"CCAA" means the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended.

"Certificate of Incorporation" means a certificate of incorporation.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code, commenced by Debtors in the Bankruptcy Court, being jointly administered for procedural purposes only under Case No. 03-11540 (BRL).

"Claim" means a claim as defined in section 101(5) of the Bankruptcy Code against any Debtor, whether or not asserted.

"Claims Over Determination" has the meaning set forth in Section 13.5 of this Plan.

"Claims Over Beneficiaries" means in any capacity the (i) SHI Released Parties and (ii) the Debtors' directors, officers, managers, members, employees, attorneys, financial advisors, accountants, investment bankers, restructuring consultants, agents and representatives who served in such capacity at any time during the period beginning June 1, 2004; provided, however, that (a) any Person or Entity that is an Excluded Defendant shall not be a Claims Over Beneficiary, and (b) any Person who, during the period beginning June 1, 2004, served as an officer and/or director of Retailer Financial Products, Inc. and/or Gemini Credit Services, Inc. and not as an officer and/or director of any other Debtor shall not be a Claims Over Beneficiary.

"Class" means a class of Holders of Claims or Equity Interests as set forth in Article IV of this Plan.

"Class 4 Distributable Cash" means Cash equal to the sum of (i) all Cash on hand of the Debtors as of the Business Day prior to the Effective Date, less (ii) all Cash necessary to satisfy, or establish reserves for, Administrative Claims, Reclamation Claims, Professional Fees, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 5 Claims, in each case pursuant to this Plan, less (iii) Cash in transit held by the Debtors as of such date, less (iv) statutory fees to be paid on the Effective Date pursuant to Section 3.4 of this Plan, less (v) Cash to be transferred to the Creditor Trust that comprises the Creditor Trust Operating Expense Fund, plus (vi) solely in the event that as of such date the estimated working capital of Eddie Bauer, Inc. and its subsidiaries is greater than projected as set forth in the "Projected Consolidated Balance Sheet for the Reorganized Debtors as of the Projected Effective Date"

attached as Exhibit E to the Disclosure Statement, Cash proceeds of the Working Capital Facility in an amount to be determined by the Debtors in consultation with the Creditors' Committee.

"Class 6 Equity Interests" has the meaning set forth in Section 4.7(a) of this Plan.

"Confirmation" means confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, which shall occur upon the entry of (i) the Confirmation Order in the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003, and (ii) the Canadian Confirmation Order.

"Confirmation Date" means the first date upon which the Confirmation Order has been entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"Confirmation Hearing" means the hearing to be held by the Bankruptcy Court regarding Confirmation, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"Consummation" means the occurrence of the Effective Date.

"Contribution Claim" has the meaning set forth in Section 13.5(a) of this Plan.

"Convenience Claim" means any General Unsecured Claim that is (i) Allowed in an amount of five thousand dollars ($5,000) or less or (ii) Allowed in an amount greater than five thousand dollars ($5,000) but less than or equal to ten thousand dollars ($10,000) but which is reduced to five thousand dollars ($5,000) by an irrevocable written election of the Holder of such Claim made on a properly delivered Ballot; provided, however, that any General Unsecured Claim that was originally Allowed in excess of five thousand dollars ($5,000) may not be subdivided into multiple General Unsecured Claims of five thousand dollars ($5,000) or less for purposes of receiving the treatment provided under this Plan to Holders of Convenience Claims; provided further, however, that, in the event a Holder of an Allowed General Unsecured Claim against the Debtors holds multiple Allowed General Unsecured Claims against the Debtors, such Allowed General Unsecured Claims shall not be aggregated for purposes of determining whether each such Allowed General Unsecured Claim is a Convenience Claim.

"Creditor" has the meaning ascribed to such term in section 101(10) of the Bankruptcy Code and shall mean a creditor of any Debtor.

"Creditor Notes" means the promissory notes that may be issued by Eddie Bauer Holdings, as contemplated by Sections 4.5(a) and 7.6 of this Plan, the principal terms and conditions of which shall be set forth in the Plan Supplement and shall be reasonably acceptable to the Creditors' Committee.

"Creditor Trust" means the statutory trust created pursuant to the Delaware Statutory Trust Act (12 Del. C. section 3801 et seq.), created pursuant to sections 3804 and 3806(b)(2) of the Delaware Statutory Trust Act, the Creditor Trust Agreement and this Plan.

"Creditor Trust Agreement" means the trust agreement that documents the powers, duties, responsibilities and compensation of the Trustees, which agreement shall be in form and substance acceptable to the Creditors' Committee and Filed as a component of the Plan Supplement.

"Creditor Trust Assets" means all of the Assets of the Debtors that are not transferred to Eddie Bauer Holdings or one of its subsidiaries as of the Effective Date and shall include (i) all Equity Interests in each of the Creditor Trust Debtors, (ii) the Creditor Trust Rights of Action, (iii) the Creditor Trust Operating Expense Fund, (iv) the Disputed Claims Reserve, (v) the Securitization Note, and (vi) such other Assets as may be identified in the Plan Supplement.

"Creditor Trust Debtors" means Spiegel, Inc., Newport News, Inc., Spiegel Catalog, Inc., Spiegel Publishing Co., Ultimate Outlet Inc., Spiegel Catalog Services, LLC, Spiegel Marketing Corporation, Newport News Services, LLC, New Hampton Realty Corp., Spiegel Group Teleservices, Inc., Retailer Financial Products, Inc., and Gemini Credit Services, Inc., as reorganized pursuant to this Plan.

"Creditor Trust Interests" means all beneficial interests in the Creditor Trust.

"Creditor Trust Judgment" has the meaning set forth in Section 13.5(b) of this Plan.

"Creditor Trust Operating Expense Fund" means (i) as of the Effective Date, the amount of Cash as may be determined by the Debtors and the Creditors' Committee and disclosed in a notice that the Debtors will File and serve on or before five (5) Business Days prior to the Confirmation Hearing, and (ii) as of any date after the Effective Date, Cash held by the Creditor Trust in an amount to be determined in accordance with the Creditor Trust Agreement, in each case to ensure that the Creditor Trust has sufficient Cash necessary to satisfy the projected expenses of the Creditor Trust through the termination of the Creditor Trust.

"Creditor Trust Rights of Action" means all Rights of Action other than the Eddie Bauer Rights of Action and shall include all Rights of Action against the Excluded Defendants.

"Creditors' Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

"Cure Objection" has the meaning set forth in Section 11.4(a) of this Plan.

"Cure Payment Schedule" means the schedule that will be included in the Plan Supplement identifying the executory contracts and unexpired leases that will be assumed, and if applicable assigned, pursuant to the terms of this Plan and setting forth the corresponding amount of cure and compensation payments, if any, proposed to be provided in connection with such assumption pursuant to section 365 of the Bankruptcy Code.

"Debtors" means Spiegel, Inc., Spiegel Catalog, Inc., Spiegel Publishing Co., Ultimate Outlet Inc., Spiegel Catalog Services, LLC, Spiegel Marketing Corporation, Spiegel Management Group, Inc., Eddie Bauer, Inc., Eddie Bauer Diversified Sales, LLC, Eddie Bauer International Development, LLC, Eddie Bauer Services, LLC, Eddie Bauer of Canada, Inc., Newport News, Inc., Newport News Services, LLC, New Hampton Realty Corp., Distribution

Fulfillment Services, Inc. (DFS), Spiegel Group Teleservices, Inc., Spiegel Group Teleservices-Canada, Inc., Retailer Financial Products, Inc., and Gemini Credit Services, Inc.

"Delaware Trustee" means an Entity with its principal place of business in the State of Delaware appointed to serve as the trustee of the Creditor Trust for the purpose of satisfying the requirements of section 3807 of the Delaware Statutory Trust Act.

"Dilution" means the dilution of the Distributions of Eddie Bauer Holdings Common Stock to the Holders of Allowed Class 4 General Unsecured Claims resulting from (i) grants pursuant to the Management Stock Incentive Program to the percentage distributions of Eddie Bauer Holdings Common Stock provided for under this Plan and (ii) such adjustments in the total issued Eddie Bauer Holdings Common Stock as may occur pursuant to Section 9.9 of this Plan.

"DIP Agents" means Bank of America, N.A., Banc of America Securities LLC, Fleet Retail Finance Inc., and The CIT Group/Business Credit, Inc.

"DIP Credit Agreement" means the post-petition Amended and Restated Loan and Security Agreement, dated as of May 2, 2003, among the DIP Agents, the DIP Lenders and the Debtors, as approved by the Final Order (i) Authorizing Incurrence of Indebtedness with Administrative Super-Priority, Secured by First Priority Liens on and Security Interests in Certain Assets Pursuant to sections 364(c) and (d) of the Bankruptcy Code, (2) providing Adequate Protection and Granting Replacement Liens and (3) Granting Other Relief, entered by the Bankruptcy Court on April 30, 2003.

"DIP Lenders" means the financial institutions which at any time during the Chapter 11 Cases were party to the DIP Credit Agreement (as amended by the Second Amended and Restated Loan and Security Agreement) as a lender.

"Disallowed" means, when referring to a Claim, a Claim or any portion thereof that has been (i) disallowed or expunged by a Final Order or (ii) listed on the Schedules as unliquidated, disputed or contingent and as to which no proof of Claim has been Filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(2).

"Disclosure Statement" means the disclosure statement for this Plan, including, without limitation, all exhibits and schedules thereto, Filed concurrently herewith, and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code on or about March 29, 2005.

"Disputed" means, with respect to any Claim, any Claim or portion thereof as to which the Debtors, or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and Bankruptcy Rules or which is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been settled, waived, withdrawn or determined by a Final Order. A Claim that is Disputed shall be deemed Allowed in the amount that is not Disputed, if any, and Disputed as to the excess.

"Disputed Administrative Claims Reserve" has the meaning set forth in Section 9.2(a) of this Plan.

"Disputed Claims Reserve" has the meaning set forth in Section 9.2(b) of this Plan.

"Distribution" means the Cash to be distributed to certain Holders of Allowed Claims under the terms of this Plan and, in the case of certain Holders of Allowed Class 4 Claims only, Eddie Bauer Holdings Common Stock, Creditor Trust Interests, and Senior Facility Proceeds or Creditor Notes.

"Distribution Notification Date" means the day that is three (3) Business Days from and after the Confirmation Date.

"Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions hereunder, and shall be June 6, 2005.

"Eddie Bauer Holdings" means a company named "Eddie Bauer Holdings, Inc." to be formed pursuant to Section 7.7 of this Plan and to which the Debtors will transfer certain assets as set forth in Section 7.7 of this Plan.

"Eddie Bauer Holdings Common Stock" means the common stock of Eddie Bauer Holdings to be issued pursuant to Section 7.14 of this Plan.

"Eddie Bauer Holdings Equity" has the meaning set forth in Section 7.12(b) of this Plan.

"Eddie Bauer Rights of Action" means the Rights of Action that are identified in the Plan Supplement.

"Effective Date" means the first Business Day on which all conditions in Article XII of this Plan have been satisfied or waived.

"Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

"Equity Interests" means any equity interest in one or more of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any calls, warrants, options, subscription or contract rights to purchase or acquire any such interests at any time.

"Equity Escrow" has the meaning set forth in Section 7.12(b) of this Plan.

"Equity Transfer Restrictions" has the meaning set forth in Section 7.12(b) of this Plan.

"ERISA" has the meaning set forth in Section 11.7(b) of this Plan.

"Escrow Percentage" has the meaning set forth in Section 7.12(b) of this Plan.

"Estates" means the estates of the Debtors, individually or collectively, as appropriate in the context, created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

"Exchange Act" means the Securities Exchange Act of 1934, as amended.

"Excluded Defendants" means Messrs. Michael Moran, James Sievers, KPMG, Kirkland & Ellis, White & Case, and any of their respective past and present shareholders, officers, directors, employees, members, partners, heirs, successors, and assigns; provided, however, that Dr. Urs Aschenbrenner is expressly excepted from the Excluded Defendants.

"Expeditors" has the meaning set forth in Section 7.11 of this Plan.

"Face Amount" means, with respect to a particular Claim: (i) if the Claim is listed in the Debtors' Schedules and the Holder thereof has not Filed a proof of claim within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the amount of such Claim that is listed in the Debtors' Schedules as not disputed, contingent or unliquidated; or (ii) if the Holder of such Claim has Filed a proof of claim within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the liquidated amount stated in such proof of claim, or such amount as is determined by Final Order of the Bankruptcy Court; or (iii) in the case of an Administrative Claim, the liquidated amount set forth in any application that has been Filed or the amount set forth in the Debtors' books and records or such amount as is determined by a Final Order of the Bankruptcy Court; or (iv) in all other cases, zero (0) or such amount as shall be fixed or estimated by a Final Order of the Bankruptcy Court.

"Federal Securities Class Action" means the securities fraud class action styled *In re Spiegel, Inc. Securities Litigation*, Case No. 02 C 8946 (RRP), filed in the United States District Court for the Northern District of Illinois.

"FCNB" means First Consumers National Bank.

"File", "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

"Foreign Distribution Restriction Notice" has the meaning set forth in Section 7.14(b)(i) of this Plan.

"General Unsecured Claims" means any Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

9

"Germany Joint Venture Agreement" means that certain Joint Venture Agreement by and between Eddie Bauer, Inc., Handelsgesellschaft Heinrich Heine GmbH, and Sport-Scheck GmbH, dated June 6, 1995.

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"Groveport Secured Claims" means the claims held by the lenders under certain term loan agreements, dated November 15, 1993, as thereafter amended and restated, which claims are secured by first mortgages on certain property and improvements thereon located at 6600 Alum Creek Drive, Groveport, Ohio.

"Holder" means the beneficial holder of any Claim or Equity Interest.

"Impaired" means a Class of Claims or Class of Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indemnified Person" has the meaning set forth in Section 6.4(b) of this Plan.

"Independent Directors" has the meaning set forth in Section 7.12(c) of this Plan.

"Initial Directors" has the meaning set forth in Section 7.12(c) of this Plan.

"Initial Distribution" has the meaning set forth in Section 9.1 of this Plan.

"Initial Term" has the meaning set forth in Section 7.12(c) of this Plan.

"Insured Personal Injury Claim" means any Personal Injury Claim to the extent such Claim is covered under the Debtors' insurance policies.

"Intercompany Claims" means any Claim held by any of the Debtors against any other Debtor.

"Interim Compensation Order" means the Order Pursuant to sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Monthly Compensation and Reimbursement of Professionals entered by the Bankruptcy Court on April 10, 2003, and the Orders Allowing Interim Compensation of and Reimbursement of Expenses for Professionals relating to the interim compensation periods during the pendency of the Chapter 11 Cases.

"Japan Joint Venture Agreement" means that certain Joint Venture Agreement by and between Eddie Bauer, Inc. and Otto-Sumisho Inc., dated September 28, 1993.

"KPMG" means KMPG LLP, KPMG International, KPMG Peat Marwick LLP and the other member firms of KPMG International, and their predecessors or successors.

"Lawful Receipt Representation" has the meaning set forth in Section 7.14(b)(i) of this Plan.

"<u>Lien</u>" means any charge against or interest in property to secure payment or performance of a claim, debt or obligation.

"<u>Losses</u>" has the meaning set forth in Section 6.4(b) of this Plan.

"<u>Management Stock Incentive Program</u>" means a stock incentive plan, pursuant to which, among other things, Eddie Bauer Holdings will reserve 2,100,000 million shares of the Eddie Bauer Holdings Common Stock for award to certain members of the management and directors of Eddie Bauer Holdings and its subsidiaries, on a date and in a manner to be determined in the sole discretion of the board of directors of Eddie Bauer Holdings.

"<u>Managing Trustee</u>" means an Entity appointed to serve as trustee for the Creditor Trust pursuant to the Creditor Trust Agreement and appointed by the Creditors' Committee, and any successor trustee selected pursuant to the Creditor Trust Agreement.

"<u>MBIA Settlement Trust</u>" has the meaning set forth in the Motion of the Debtors for an Order Pursuant to 11 U.S.C. § 105(A) and Rule 9019 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to Enter Into and Perform Under a Certain Settlement Agreement, Filed on December 12, 2004.

"<u>OIHK</u>" means Otto International (Hong Kong), Limited, a Hong Kong limited liability company.

"<u>OSF</u>" means Otto-Spiegel Finance G.m.b.H. & Co. KG, a German limited partnership.

"<u>Other Secured Claims</u>" means those Secured Claims other than the Groveport Secured Claims as of the Petition Date.

"<u>Otto KG</u>" means Otto (GmbH & Co KG), formerly known as Otto Versand (GmbH & Co), a German limited partnership.

"<u>Otto KG Goods Unsecured Claims</u>" has the meaning set forth in Section 2.4(a) of this Plan.

"<u>Pension Plan</u>" has the meaning set forth in Section 11.7(b) of this Plan.

"<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"<u>Personal Injury Claim</u>" means any Claim, whether or not the subject of an existing lawsuit, arising from a personal injury or wrongful death allegation.  A Personal Injury Claim may, either in whole or in part, also be an Insured Personal Injury Claim.

"<u>Petition Date</u>" means March 17, 2003.

"<u>Plan Oversight Committee</u>" means the committee created pursuant to Section 6.4(b) of this Plan.

"Plan Supplement" means the document containing the documents specified in Section 15.8 of this Plan.

"Post-Petition Released Parties" means the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, the Creditors' Committee, the DIP Agents, the DIP Lenders, and all of the respective officers, directors, managers, members, employees, attorneys, financial advisors, auditors, accountants, investment bankers, restructuring consultants, agents and representatives of each of the foregoing, whether current or former, in each case in their capacity as such, and only to the extent serving in such capacity on the Petition Date or thereafter; provided, however, that (i) any Person or Entity that is an Excluded Defendant shall not be a Post-Petition Released Party, and (ii) any Person who serves or served as an officer and/or director of Retailer Financial Products, Inc. and/or Gemini Credit Services, Inc. and not as an officer and/or director of any other Debtor shall not be a Post-Petition Released Party.

"Pre-Petition Released Parties" means each of the Debtors' current and former officers, directors, managers, members, employees, attorneys, financial advisors, accountants, investment bankers, restructuring consultants, agents and representatives of each of the foregoing, whether current or former; provided, however, that (i) any Person or Entity that is an Excluded Defendant shall not be a Pre-Petition Released Party, and (ii) any Person who served as an officer and/or director of Retailer Financial Products, Inc. and/or Gemini Credit Services, Inc. and not as an officer and/or director of any other Debtor shall not be a Pre-Petition Released Party.

"Priority Claims" means those claims afforded priority under sections 507(a) and 502(f) of the Bankruptcy Code.

"Priority Tax Claim" means, with respect to the Debtors, a claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Professional" means an Entity (i) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with section 105, 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code, or (ii) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to section 503(b)(2) or (4) of the Bankruptcy Code.

"Professional Fee Reserve" means, as of the Effective Date, the amount of Cash necessary to pay all Professional Fees entitled to payment pursuant to Section 3.5 of this Plan.

"Professional Fees" means those fees and expenses claimed by Professionals under sections 327, 328, 330, 331, 363, 503 and/or 1103 of the Bankruptcy Code, and unpaid as of the Effective Date.

"Prohibited Jurisdiction" has the meaning set forth in Section 7.14(b)(i) of this Plan.

"Pro Rata Share" means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Claims, other than Disallowed Claims, in such Class.

"Reclamation Claims" means any reclamation Claims listed on the Reclamation Report or determined by the Bankruptcy Court to be a reclamation Claim pursuant to section 546 of the Bankruptcy Code and applicable statutory or common law in a Final Order.

"Reclamation Report" means the reclamation report, as may be amended from time to time by stipulation or otherwise, Filed by the Debtors pursuant to the Order Under 11 U.S.C. §§ 105(a), 503(b), 546(c)(2) and 546(g) Establishing Procedures For Treatment of Reclamation Claims, which was entered by the Bankruptcy Court on April 28, 2003.

"Released Claims" means those Rights of Action or Claims that are specifically released under this Plan.

"Released Parties" means in any capacity (i) the SHI Released Parties; and (ii) the past or present officers, directors, employees, members, agents, financial advisors, auditors, heirs, successors or attorneys of any of the Debtors; provided, however, that (a) any Person or Entity that is an Excluded Defendant shall not be a Released Party, and (b) any Person who served or serves as an officer and/or director of Retailer Financial Products, Inc. and/or Gemini Credit Services, Inc. and not as an officer and/or director of any other Debtor shall not be a Released Party.

"Reorganized Debtors" means Eddie Bauer, Inc., Eddie Bauer Diversified Sales, LLC, Eddie Bauer International Development, LLC, Eddie Bauer Services, LLC, Eddie Bauer of Canada, Inc., Distribution Fulfillment Services, Inc. (DFS), Spiegel Management Group, Inc., and Spiegel Group Teleservices-Canada, Inc. as reorganized pursuant to this Plan.

"Reorganized Eddie Bauer" means Eddie Bauer, Inc. as reorganized pursuant to this Plan.

"Restructuring Committee Board Members" means William C. Kosturos, Larry J. Gorrell and Hugh E. Sawyer.

"Rights of Action" means all actions, causes of action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment and claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances and trespasses of, or belonging to, the Estates, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, but excluding any of the foregoing which are Released Claims (except to the extent required for the Creditor Trust to add necessary parties as provided by Section 2.6 of this Plan).

"Second Amended and Restated Loan and Security Agreement" means that certain Second Amended and Restated Loan and Security Agreement dated as of March 15, 2005 among the financial institutions named therein as the Lenders, Bank of America, N.A. as the Agent, Banc of America Securities LLC as Sole Lead Arranger and Book Manager, Fleet Retail Group, Inc. and the CIT Group/Business Credit, Inc. as Co-Syndication Agents, General Electric Capital Corporation as Documentation Agent, Spiegel, Inc., Eddie Bauer, Inc., Spiegel Catalog, Inc., Ultimate Outlet Inc. and Newport News, Inc. as Borrowers and Guarantors and the subsidiaries of Spiegel, Inc., parties thereto, as Guarantors.

13

"Schedules" means the Debtors' schedules of assets and liabilities, statements of financial affairs, and such other schedules Filed on May 23, 2003 by the Debtors in accordance with section 521(1) of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as such schedules have been amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

"Section 7.9 Disputed Claims" has the meaning given to such term in Section 7.9(d)(iii) of this Plan.

"Secured Claim" means a Claim against the Debtors that is secured by a Lien on or security interest in the Debtors' property or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtors' interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

"Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"Securitization Interests" means (i) all of Spiegel Acceptance Corporation's right, title and interest, whether beneficial or legal and whether held directly, indirectly or through some other person or entity (including, without limitation, the interest of Spiegel Acceptance Corporation in the MBIA Settlement Trust), in, to and under (a) the Spiegel Credit Card Master Note Trust, a trust organized under the laws of the State of Illinois, (b) the "Seller Interest" issued thereunder and (c) all transactions entered into in connection with those certain receivables financings entered into by the Spiegel Credit Card Master Note Trust, Spiegel Acceptance Corporation and certain of its affiliates and (ii) all of Financial Services Acceptance Corporation's right, title and interest, whether beneficial or legal and whether held directly, indirectly or through some other person or entity, in, to and under (x) the First Consumers Master Trust, a trust organized under the laws of the State of Illinois, (y) the First Consumers Credit Card Master Note Trust, a trust organized under the laws of the State of Illinois, and the "Seller Interest" issued thereunder (to the extent such Seller Interest is held by Financial Services Acceptance Corporation) and (z) all transactions entered into in connection with the certain receivables financings entered into by the First Consumers Master Trust, First Consumers Credit Card Master Note Trust, Financial Services Acceptance Corporation and certain of its affiliates.

"Securitization Note" means the promissory note to be issued by Eddie Bauer Holdings to the Creditor Trust that shall entitle the holder of the note to receive an amount equal to 90% of funds indefeasibly received by Spiegel Acceptance Corporation and Financial Services Acceptance Corporation in respect of any Securitization Interests held by either entity as of the Effective Date. The principal terms and conditions of the Securitization Note shall be set forth in the Plan Supplement.

"Senior Debt Facility" means the $300 million debt obligation of Eddie Bauer Holdings that may be incurred pursuant to Section 7.6 of this Plan. The principal terms and conditions of the Senior Debt Facility shall be set forth in the Plan Supplement.

"Senior Facility Proceeds" means the Cash proceeds of the Senior Debt Facility.

"Separate Trust" has the meaning given to such term in Section 7.9(d)(iii) of this Plan.

"SHI" means Spiegel Holdings, Inc., a Delaware corporation.

"SHI Released Parties" means in any capacity SHI, Otto KG, OSF, OIHK, and any of their respective affiliates (excepting the Debtors and their subsidiaries, including First Consumers National Bank and First Consumers Credit Corporation), Dr. Michael Otto, Dr. Michael Crüsemann, Dr. Urs Aschenbrenner, Mr. Hans-Otto Schrader, Mr. Hans-Jörg Hammer, Dr. Winfried Zimmerman, Mr. Horst R.A. Hansen, Dr. Rainer Hillebrand, Mr. Martin Zaepfel, Mr. Wolfgang Linder, Dr. Peter Müller, Mr. Gert Rietz, Dr. Peer Witten, and past and present shareholders, officers, directors, employees, members, agents, financial advisors, auditors, heirs, successors or attorneys of any of them, and any law firm that represented all of SHI, Spiegel, Inc., and First Consumers National Bank prior to the Petition Date (including all of the attorneys of such firm acting in whatever capacity with respect to the Debtors and the Debtors' non-Debtor direct and indirect subsidiaries, including but not limited to First Consumers Credit Corporation); provided, however, that any Person or Entity that is an Excluded Defendant shall not be an SHI Released Party.

"SHI Settlement" has the meaning set forth in Section 2.1 of this Plan.

"SHI Settlement Term Sheet" means that certain term sheet, dated February 3, 2005, between the Debtors, the Creditors' Committee, SHI, Otto KG, OSF, OIHK, Dr. Michael Otto, and Dr. Michael Crüsemann, with respect to the SHI Settlement.

"SHI Unsecured Claim" has the meaning set forth in Section 2.4(b) of this Plan.

"Subsequent Distribution Date" means any date on which the Creditor Trust makes a Distribution pursuant to this Plan.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"Third Party Designation" has the meaning set forth in Section 7.14(b)(i) of this Plan.

"Trading Order" means the Final Order Pursuant to Sections 105(a), 362 and 541 of the Bankruptcy Code Establishing Procedures for Requiring Notice in Advance of Certain Transactions Regarding Claims Against and Equity Interests In Spiegel, Inc. entered by the Bankruptcy Court on January 20, 2004, as amended by the Interim Order Pursuant to Sections 105(a), 362 and 541 of the Bankruptcy Code Modifying Procedures for Requiring Notice in Advance of Certain Transactions Regarding Claims Against and Equity Interests in Spiegel, Inc. entered by the Bankruptcy Court on March 8, 2005, and as may be further amended by the Bankruptcy Court.

"Trustee" means the Managing Trustee or the Delaware Trustee.

"Trustees" means the Managing Trustee and the Delaware Trustee.

"Unimpaired" means a Class of Claims or Equity Interests that is not Impaired.

"Unresolved" means, with respect to any Claim, any Claim or portion thereof that is not an Allowed Claim, Disputed Claim or Disallowed Claim.

"U.S. Trustee" means the United States Trustee for the Southern District of New York.

"Voting Deadline" means the date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting this Plan.

"Working Capital Facility" means the $150 million revolving working capital facility, the principal terms and conditions of which shall be set forth in the Plan Supplement.

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES

Section 2.1    Introduction

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, this Plan incorporates the compromise and settlement of all claims existing or arising on or before the Effective Date that may be held by (i) any of the Debtors, their Estates, or any of the Debtors' subsidiaries that are not chapter 11 debtors, or of any Person on any of their behalves, against the Released Parties and (ii) the creditors of the Debtors (but not shareholders of the Debtors or former shareholders of Spiegel, Inc. solely in their capacity as shareholders or former shareholders of Spiegel, Inc., or any Governmental Unit) against the Released Parties that are related to the Debtors or their direct or indirect subsidiaries (such settlement, together with all of its terms and conditions that are incorporated in this Plan and the Disclosure Statement, the "SHI Settlement").

The SHI Settlement is the compromise of disputed claims and a good faith settlement and release of those claims and associated alleged injuries.  The consideration to be provided pursuant to the SHI Settlement is not to be construed as an admission of liability or wrongdoing on the part of any of the Released Parties.

Section 2.2    Cash Settlement Payment

SHI or its designee shall pay to the Debtors $104 million in Cash on the Effective Date as provided below (the "Cash Settlement Payment").

Section 2.3    Executory Contracts

Pursuant to Section 11.2 of this Plan, (i) Eddie Bauer, Inc. shall assume the Buying Agency Agreements and shall pay in Cash cure claims in respect of such assumed agreements in the aggregate amount of $2,294,700 on the Effective Date and (ii) Eddie Bauer, Inc. shall assume the Germany Joint Venture Agreement and Japan Joint Venture Agreement, and shall pay in Cash a cure claim of $846,800 under the Germany Joint Venture Agreement in full on the Effective Date.  No Person shall hold any Allowed Claim arising prior to the Petition Date in respect of an executory contract that is assumed pursuant to this Section 2.3 and Section

16

11.2 of this Plan, except as expressly provided by this Section 2.3.  All Distributions for cure claims in respect to the Buying Agency Agreements, the Germany Joint Venture Agreement and the Japan Joint Venture Agreement shall be made to PANTA Achte Grundstücksgesellschaft m.b.H. in accordance with distribution instructions provided in writing for such entity to the Debtors as the same may be updated from time to time by written notice to the Debtors (but in no event later that three (3) days prior to the Effective Date), unless such Distributions otherwise would be contrary to the Plan or the Creditor Trust Agreement.

Section 2.4   <u>Allowance of Claims</u>

(a)     Otto KG, OIHK and other affiliates of Otto KG shall hold Allowed Class 4 Claims in the aggregate amount of $26,871,900 (the "<u>Otto KG Goods Unsecured Claims</u>").  The Otto KG Goods Unsecured Claims shall receive the treatment set forth in Section 4.5 of this Plan.  All Distributions on the Otto KG Goods Unsecured Claims shall be made to PANTA Achte Grundstücksgesellschaft m.b.H. in accordance with distribution instructions provided in writing for such entity to the Debtors as the same may be updated from time to time by written notice to, as applicable, the Debtors or the Managing Trustee, unless such Distributions otherwise would be contrary to the Plan or Creditor Trust Agreement.

(b)     OSF shall hold an Allowed Class 4 Claim in the amount of $160,469,900, and SHI shall hold an Allowed Class 4 Claim in the amount of $13,443,140 (each, an "<u>SHI Unsecured Claim</u>").  The SHI Unsecured Claims shall receive the treatment set forth in Section 4.5 of this Plan.

(c)     The Otto KG Goods Unsecured Claims and the SHI Unsecured Claims shall not be subject to setoff, recoupment, subordination or any other challenge.  No Holder of an Otto KG Goods Unsecured Claim or SHI Unsecured Claim shall hold Allowed Class 4 Claims, Class 5 Claims, Allowed Secured Claims, Allowed Priority Claims, Allowed Administrative Claims, or Allowed Reclamation Claims, except (i) as provided in Section 2.3, 2.4 or 2.7 of this Plan, and (ii) Claims covered by insurance pursuant to Section 13.4(c)of this Plan, which Claims shall not receive any Distribution under this Plan.  The Released Parties, including the SHI Released Parties, have agreed not to object to or otherwise oppose Distributions upon the SHI Unsecured Claims that are consistent with the treatment set forth in Section 4.5(a) of this Plan.

Section 2.5  <u>Releases and Claims Over Protection</u>

(a)     The Released Parties shall receive the benefit of the applicable releases set forth in this Plan and the Confirmation Order, and the permanent injunction set forth in the Confirmation Order to effectuate such releases.  The Released Parties shall grant the applicable releases set forth in Section 13.4 of this Plan, and shall be subject to the permanent injunction set forth in the Confirmation Order to effectuate such release.

(b)     The Claims Over Beneficiaries shall receive the benefit of the provisions of Section 13.5 of this Plan.

Section 2.6  Post-Effective Date Litigation

None of the provisions of this Plan, including, but not limited to, the releases and injunctions granted pursuant to Article XIII of this Plan, shall prevent any of the Excluded Defendants or the Creditor Trust (i) from taking discovery from the Debtors, the Reorganized Debtors, the Creditor Trust or from any Released Party, or (ii) from joining any Released Party to such litigation solely to the extent, if any, such Released Party is a necessary party under applicable law; provided, however, that (a) the Creditor Trust may not recover any amounts against any Released Party; and (b) no provision of this Plan or the Confirmation Order shall authorize the Creditor Trust or any other Person to take discovery from any Released Party except in accordance with applicable law, without regard to the existence of the SHI Settlement incorporated in this Plan, including, without limitation, the Hague Convention.

Section 2.7  Tax Reimbursement Agreements

SHI and the Debtors will be entitled to their respective shares of all funds generated by past and future state and federal tax refunds, calculated in accordance with that certain Tax Reimbursement Agreement between SHI and Spiegel, effective as of September 30, 1998 for all taxable years beginning on or after January 1, 1986, and that certain Supplemental Tax Reimbursement Agreement effective as of November 1, 1996.

Section 2.8  Termination of Temporary Restraining Order

The Confirmation Order shall provide that the temporary restraining order set forth in the Order of the Bankruptcy Court, dated June 27, 2003, shall be terminated as of the date of receipt of the Cash Settlement Payment.  The Reorganized Debtors and the Creditor Trust shall use their reasonable best efforts to facilitate the return to SHI of the funds held in an escrow account created pursuant to that certain Deposit Escrow and Custody Agreement among First Consumers National Bank, SHI, and Deutsche Bank Trust Company Americas, dated on or about May 14, 2002, as soon as practicable after the Effective Date.


**ARTICLE III**

**ADMINISTRATIVE CLAIMS, RECLAMATION CLAIMS, PROFESSIONAL FEES AND PRIORITY TAX CLAIMS**

Section 3.1  Introduction

Certain types of Claims are not placed into voting Classes.  Such Claims are not considered Impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  These non-voting Claims and their treatment are described in this Article III.

Section 3.2  Administrative Claims

(a)  On or before the Effective Date, the Debtors shall pay in full, without interest and in Cash, the amount of Allowed Administrative Claims as of such date, and after the Effective

Date Eddie Bauer Holdings shall pay each Administrative Claim in full, without interest and in Cash (except for Professional Fees to the extent that their treatment, which is set forth below, differs), when and to the extent the Administrative Claim is or becomes Allowed.  The Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by such Holder and the respective Debtor.

(b)     Holders of Administrative Claims that have not been paid as of the Effective Date must File a written request for payment of Administrative Claims with the Bankruptcy Court and serve the same upon counsel to Eddie Bauer Holdings such that it is received no later than the Administrative Claim Bar Date.  If an Administrative Claim is not timely Filed by the Administrative Claim Bar Date, then such Administrative Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, their successors, their assigns or their property, or the Creditor Trust or the Trustees.  The foregoing shall not apply to (i) Professional Fee Claims, (ii) Administrative Claims arising in the ordinary course of the Debtors' business, (iii) Administrative Claims held by current or former employees of the Debtors for wages or pursuant to any Benefit Program, and (iv) any Administrative Claims asserted by any Governmental Unit for any tax.  An objection to an Administrative Claim Filed pursuant to this provision must be Filed within ninety (90) days from the later of the date such Administrative Claim is Filed and properly served or ninety (90) days after the Effective Date.  Eddie Bauer Holdings reserves the right to seek an extension of such time to object.

Section 3.3  <u>Reclamation Claims</u>

On or before the Effective Date, the Debtors shall pay in full, without interest and in Cash, the amount of Allowed Reclamation Claims as of such date, and after the Effective Date the Creditor Trust shall pay each Reclamation Claim in full, without interest and in Cash when and to the extent the Reclamation Claim is or becomes Allowed.  The Holder of an Allowed Reclamation Claim may be paid on such other date and upon such other terms as may be agreed upon by such Holder and the respective Debtor or the Creditor Trust.

Section 3.4  <u>Statutory Fees</u>

Without limiting the foregoing, all fees due and payable under 28 U.S.C. § 1930 as of the Effective Date that have not been paid shall be paid on or before the Effective Date by the Debtors.  Payments after the Effective Date shall be made as required by statute and shall be paid by the Reorganized Debtors.

Section 3.5  <u>Professional Fees</u>

(a)     On or as soon as reasonably practicable after the Effective Date, Eddie Bauer Holdings shall establish the Professional Fee Reserve.

(b)     Eddie Bauer Holdings shall pay Professionals who are entitled to allowance of fees and reimbursement of expenses as of the Effective Date from the Professional Fee Reserve in accordance with this Section 3.5.

(c)    The Bankruptcy Court must rule on each request for payment of Professional Fees before the fees will be paid, except as such fees have been paid pursuant to the Interim Compensation Order.  For all Professional Fees, the Professional in question must File and serve a properly noticed fee application and the Bankruptcy Court must rule on the application.  Only the amount of fees allowed by the Bankruptcy Court will be required to be paid under this Plan; provided that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims.

(d)    Except as otherwise provided by a Bankruptcy Court order for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 363, 503(b) and/or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must File and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date.  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.  Holders of Administrative Claims (including Professionals) requesting compensation or reimbursement of expenses that do not File such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, or their successors, their assigns or their property, or the Creditor Trust or the Trustees.  Any objection to Professional Fee Claims shall be written and Filed on or before the fifteenth (15th) day after the date such application for final compensation or reimbursement has been Filed.

(e)    Notwithstanding anything herein to the contrary, following the occurrence of the Effective Date, Professionals shall be authorized to retain any funds held on retainer for payment of fees and expenses authorized to be paid pursuant to this Plan, including fees and expenses approved by the Bankruptcy Court in connection with such Professionals' final applications for allowance of compensation and reimbursement of expenses.  Thereafter (i) Shearman & Sterling LLP, counsel for the Debtors, shall be authorized to continue to hold a retainer in the amount of $75,000 until the earlier of (a) six months after the Effective Date or (b) entry of the Final Decree and shall be authorized without further order of the Bankruptcy Court to apply such retainer to fees and expenses incurred in connection with services rendered on behalf of the Debtors, the Reorganized Debtors, Eddie Bauer Holdings or the Creditor Trust Debtors on or after the Effective Date, and (ii) all Professionals shall return the unapplied balance of any retainer to Eddie Bauer Holdings within sixty (60) days of the Effective Date.

(f)    Following dissolution of the Creditors' Committee, the Creditor Trust shall be deemed a party in interest with respect to all requests for Professional Fees pursuant to this Section 3.5 and may, at the Managing Trustee's discretion, prosecute an objection or otherwise participate with respect to all matters governed by this Section 3.5.

(g)    Subject to the provisions of this Plan, all reasonable fees for services rendered on behalf of the Debtors and the Reorganized Debtors in connection with the Chapter 11 Cases and this Plan after the Effective Date shall be paid by Eddie Bauer Holdings after the submission of a monthly fee statement with service upon the Managing Trustee, and the Creditor Trust; provided that no written objections are received within ten (10) days of such service.  If no written

objections are received, Eddie Bauer Holdings shall be authorized to pay such amounts requested without further Bankruptcy Court authorization.  If objections are received and such objections are not capable of being resolved between the parties in a timely manner, the Bankruptcy Court shall reserve jurisdiction to resolve such disputes.

(h)     To the extent that there is surplus Cash in the Professional Fee Reserve after Eddie Bauer Holdings has satisfied all Professional Fees approved by the Bankruptcy Court in accordance with this Section 3.5 and there are no outstanding requests for allowance of Professional Fees before the Bankruptcy Court, Eddie Bauer Holdings shall transfer such surplus Cash to the Creditor Trust within ten (10) days from the date that Eddie Bauer Holdings determines there is such surplus Cash.

Section 3.6  Priority Tax Claims

Each Allowed Priority Tax Claim shall be paid by Eddie Bauer Holdings or the Reorganized Debtors, or if Allowed after the Effective Date, by the Creditor Trust, in full, in Cash, upon the later of (i) the Effective Date, (ii) the date upon which there is a Final Order allowing such Allowed Priority Tax Claim, (iii) the date such an Allowed Priority Tax Claim would have been due and payable if the Chapter 11 Cases had not been commenced, or (iv) as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the Debtors; provided, however, that (a) Eddie Bauer Holdings, the Reorganized Debtor or the Creditor Trust, as applicable, may, at its option, in lieu of payment in full of an Allowed Priority Tax Claim on the Effective Date, make Cash payments on account of such Allowed Priority Tax Claim, deferred to the extent permitted pursuant to section 1129(a)(9)(C) of the Bankruptcy Code and, in such event, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at a rate to be agreed upon by the Debtors and the applicable Governmental Unit or as determined by the Bankruptcy Court; (b) in the event an Allowed Priority Tax Claim may also be classified as an Allowed Secured Claim, Eddie Bauer Holdings, the Reorganized Debtor or the Creditor Trust, as applicable, may, at its option, elect to treat such Allowed Priority Tax Claim as an Allowed Class 2 Other Secured Claim; and (c) any Allowed Priority Tax Claims subject to section 18.2 of the CCAA shall be paid in full within six (6) months of the date the Canadian Confirmation Order is entered on the docket maintained by the Canadian Court.

**ARTICLE IV**

**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

Section 4.1  Summary

The classes listed below classify Claims and Equity Interests (other than Administrative Claims and Priority Tax Claims) for all purposes, including voting, Confirmation and Distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim

or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

The classification of Claims and Equity Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| Class 1 | Groveport Secured Claims | Unimpaired | Not entitled to vote |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote |
| Class 3 | Non-Tax Priority Claims | Unimpaired | Not entitled to vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 5 | Convenience Claims | Impaired | Entitled to vote |
| Class 6 | Class 6 Equity Interests | Impaired | Not entitled to vote (deemed to have rejected Plan under the Bankruptcy Code) |

Section 4.2  Class 1 – Groveport Secured Claims

(a)  Classification:  Class 1 consists of the Allowed Groveport Secured Claims against the Debtors in the amount of $56.0 million.

(b)  Treatment:  The Holders of the Allowed Class 1 Claims shall receive, on account thereof, on the Effective Date, Cash in the aggregate amount of $56.0 million, to be apportioned on account of the Groveport Secured Claims in the respective amounts set forth in the next sentence (except, solely with respect to any particular Holder of any Allowed Class 1 Claim, to the extent that such Holder agrees to less favorable treatment thereof). The amounts to be received by each Holder of Groveport Secured Claims shall be distributed on the Effective Date as follows: (i) $28.0 million to Deutsche Bank AG New York Branch and/or Cayman Islands Branches, for payment on account of the obligations of the Debtors under the term loan agreement among certain of the Debtors and Deutsche Bank AG New York and/or Cayman Islands Branches, and (iii) $28.0

million to Norddeutsche Landesbank Girozentrale, for payment on account of the obligations of the Debtors under the term loan agreement among certain of the Debtors and Norddeutsche Landesbank Girozentrale.

(c)    <u>Voting</u>:  Class 1 is an Unimpaired Class and Holders of Class 1 Claims are, therefore, not entitled to vote to accept or reject this Plan and shall be deemed to have conclusively accepted this Plan.

**Section 4.3   <u>Class 2 – Other Secured Claims</u>**

(a)    <u>Classification</u>:  Class 2 consists of Secured Claims against the Debtors other than the Class 1 Secured Claims.

(b)    <u>Treatment</u>:  Each Holder of an Allowed Class 2 Claim shall receive, on account thereof, on the Effective Date, either (i) the return of such Assets on which the Holder has a senior perfected and indefeasible Lien or security interest or (ii) Cash equal to the Allowed amount of such Class 2 Claim except to the extent that any Holder of an Allowed Class 2 Claim agrees to less favorable treatment thereof.

(c)    <u>Voting</u>:  Class 2 is an Unimpaired Class and Holders of Class 2 Claims are, therefore, not entitled to vote to accept or reject this Plan and shall be deemed to have conclusively accepted this Plan.

**Section 4.4   <u>Class 3 – Non-Tax Priority Claims</u>**

(a)    <u>Classification</u>:  Class 3 consists of Holders of Priority Claims specified under section 507(a) of the Bankruptcy Code other than Priority Tax Claims.

(b)    <u>Treatment</u>:  On the Effective Date, each Holder of an Allowed Class 3 Claim shall be entitled to receive, on account thereof, Cash equal to the Allowed amount of such Priority Claim, except to the extent that any Holder of an Allowed Class 3 Claim agrees to less favorable treatment thereof.

(c)    <u>Voting</u>:  Class 3 is an Unimpaired Class and Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and shall be deemed to have conclusively accepted this Plan.

**Section 4.5   <u>Class 4 – General Unsecured Claims</u>**

(a)    <u>Classification</u>:  Class 4 consists of the General Unsecured Claims other than the Convenience Claims.

<u>Treatment</u>:  Each Holder of an Allowed Class 4 General Unsecured Claim shall be entitled to receive, on account of such Allowed General Unsecured Claim, Distributions in an aggregate amount equal to such Holder's Pro Rata Share of (i) 100% of the Eddie Bauer Holdings Common Stock, subject to Dilution, (ii) the Class 4 Distributable Cash, (iii) the Cash Settlement Payment, (iv) the

23

Creditor Trust Interests, and (v) either (a) the Senior Facility Proceeds <u>or</u> (b) the Creditor Notes; <u>provided</u>, <u>however</u>, that (x) each Holder of an Otto KG Goods Unsecured Claim shall not receive any Distribution on account of the Cash Settlement Payment; and (y) notwithstanding the foregoing, each Holder of an SHI Unsecured Claim shall only be entitled to receive Cash equal to not less than 2.3% of such Claim, with the ultimate amount of such Distribution to be determined by the Debtors based on the distributions on General Unsecured Claims that would have been made by Spiegel, Inc. if it were not substantively consolidated with the other Debtors, and without regard to the Cash Settlement Payment.

(b)     <u>Voting</u>:  Holders of Class 4 Claims are Impaired and therefore are entitled to vote to accept or reject this Plan.

Section 4.6    <u>Class 5 – Convenience Claims</u>

(a)     <u>Classification</u>:  Class 5 consists of all Convenience Claims.

(b)     <u>Treatment</u>:  Each Holder of an Allowed Claim in Class 5 shall receive, on the Effective Date, Cash in an amount equal to one-hundred percent (100%) of the Allowed amount of its Convenience Claim.

(c)     <u>Voting</u>:  Holders of Class 5 Claims are Impaired and therefore are entitled to vote to accept or reject this Plan.

Section 4.7    <u>Class 6 – Class 6 Equity Interests</u>

(a)     <u>Classification</u>:  Class 6 consists of all Equity Interests in Spiegel, Inc. and all Claims arising from the rescission of a purchase or sale of a security of a Debtor or for damages arising from the purchase or sale of such a security, including but not limited to the Claim asserted in these Cases on behalf of "Purchasers of Class A Non-Voting Common Stock of Spiegel, Inc. between February 1, 1999 to June 4, 2002, inclusive", as set forth in Claim Number 2971 (collectively, the "<u>Class 6 Equity Interests</u>").

(b)     <u>Treatment</u>:  All Equity Interests in Spiegel, Inc. shall be cancelled on the Effective Date and Holders of Class 6 Equity Interests shall not receive or retain any property or Distributions under this Plan.

(c)     <u>Voting</u>:  Class 6 Equity Interests will receive no Distribution under this Plan and are, therefore, deemed to have rejected this Plan.  Accordingly, Class 6 Equity Interests are not entitled to vote to accept or reject this Plan.

## ARTICLE V

## <u>ACCEPTANCE OR REJECTION OF PLAN</u>

Section 5.1  <u>Voting Classes</u>

   Each Holder of a Claim in Class 4 or Class 5 shall be entitled to vote to accept or reject this Plan.  Only those votes properly cast by Holders of Allowed Claims at the time the vote on this Plan is solicited shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.  Class 6 is conclusively deemed to have rejected this Plan and is not entitled to vote on this Plan.  Classes 1, 2, and 3 are conclusively deemed to have accepted this Plan and are not entitled to vote on this Plan.

Section 5.2  <u>Acceptance by Class of Creditors</u>

   Under the Bankruptcy Code, an Impaired Class of Holders of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (?) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.

Section 5.3  <u>Cramdown</u>

   If all applicable requirements for Confirmation are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8) thereof, the Debtors intend to request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is Impaired under, and has not accepted, this Plan.

## ARTICLE VI

## <u>EFFECT OF CONFIRMATION</u>

Section 6.1  <u>Reorganized Debtors and Creditor Trust Debtors as Separate Corporate Entities; Vesting and Revesting</u>

   The Debtors shall continue to exist after the Effective Date, with each Reorganized Debtor and Creditor Trust Debtor being a separate corporate entity with all the powers of a corporation or limited liability company under applicable law, as the case may be, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law on or after the Effective Date.  Except as otherwise provided in this Plan, pursuant to sections 1123(a)(5) and 1141 of the Bankruptcy Code (i) the Equity Interests in or common stock of Eddie Bauer, Inc., Financial Services Acceptance Corporation and Spiegel Acceptance Corporation shall vest in Eddie Bauer Holdings or its successor, (ii) the Equity Interests in Distribution Fulfillment Services, Inc. (DFS) and Spiegel Group Teleservices-Canada, Inc. shall vest in Reorganized Eddie Bauer, (iii) the Equity Interests in each of the Debtors that becomes a Creditor Trust Debtor, S.I. Reinsurance Limited, East Coast Collection

25

Agency, Inc., Spiegel Credit Corporation III, First Consumers National Bank, The Spiegel Foundation, Spiegel Cares, Spiegel General Service, LLC and Together Retail U.S.A., Inc. shall vest in the Creditor Trust, (iv) all the Assets of the Debtors that will become Reorganized Debtors shall vest in each Reorganized Debtor or its successor, free and clear of all Claims, Liens, charges, encumbrances and interests of Creditors and Holders of Equity Interests on the Effective Date, (v) all property comprising the Estates of each Debtor that will become a Creditor Trust Debtor (other than the Creditor Trust Rights of Action) shall vest in such Creditor Trust Debtor, and (vi) the Creditor Trust Rights of Action shall vest in the Creditor Trust, in each case free and clear of all Claims, Liens, charges, encumbrances and interests of Creditors and Holders of Equity Interests on the Effective Date. As of the Effective Date, Eddie Bauer Holdings, the Reorganized Debtors, and the Creditor Trust Debtors may operate their businesses and use, acquire and dispose of property, and settle and compromise Claims or Equity Interests without the supervision or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

Section 6.2  <u>Binding Effect</u>

Except as otherwise expressly provided in this Plan, on and after the Effective Date, this Plan and all exhibits thereto shall bind all Holders of Claims and Equity Interests.

Section 6.3  <u>Corporate Action</u>

Each of the matters provided for under this Plan involving any corporate action to be taken or required by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by stockholders, officers, directors or members of any of the Debtors.

Section 6.4  <u>Dissolution of Creditors' Committee; Plan Oversight Committee</u>

(a)    On the Effective Date, the Creditors' Committee shall dissolve and members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

(b)    On the Effective Date, the Plan Oversight Committee shall be created.  The Plan Oversight Committee shall have the right to direct and control the Trustees with respect to the liquidation of the Creditor Trust Assets, prosecution, settlement and abandonment of the Creditor Trust Rights of Action and the prosecution and resolution of claims pursuant to the terms of this Plan as provided in the Creditor Trust Agreement.  Persons who served as Professionals to the Creditors' Committee prior to the Effective Date may also continue to serve as professionals to the Plan Oversight Committee and/or the Trustees, and the fees of such professionals shall be paid by the Creditor Trust.  The Plan Oversight Committee shall consist of any member of the Creditors' Committee that notifies the counsel to the Creditors' Committee in writing no later than ten (10) days prior to the Confirmation Hearing of its intention to serve on the Plan Oversight Committee.  The Plan Oversight Committee shall be dissolved upon the termination of the Creditor Trust.  In the event of the resignation of a member of the Plan Oversight Committee,

the remaining members may, but need not, designate a successor from among the Holders of Allowed General Unsecured Claims other than the Allowed Class 4 Claims described in Section 2.4 of this Plan. Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership. Neither the Plan Oversight Committee nor any of its members, nor any of its employees, professionals or agents, shall in any way be liable for any acts or for any acts of any of its members, except for acts constituting willful misconduct or gross negligence, in the performance of their duties as members of the Plan Oversight Committee. The Creditor Trust shall indemnify and hold harmless the Plan Oversight Committee, its members, and its professionals (each an "Indemnified Person") from and against any and all liabilities, expenses, claims, damages or losses (collectively, "Losses") arising out of the Creditor Trust Agreement or their capacities as members or agents for the Plan Oversight Committee except for Losses arising as a direct result of such Indemnified Person's willful misconduct or gross negligence.

Section 6.5  Late Claims

In accordance with the Bar Date Order, unless otherwise specifically ordered by the Bankruptcy Court, any Entity that was required to but did not File a proof of claim in respect of a Claim in compliance with the procedures and deadlines established by the Bar Date Order shall not be treated as a Creditor with respect to such Claim for the purposes of voting and Distributions under this Plan.

## ARTICLE VII

## IMPLEMENTATION OF THIS PLAN

Section 7.1  Substantive Consolidation of the Debtors

(a)     Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for all purposes related to this Plan, including for purposes of voting, Confirmation, and Distribution. On and after the Effective Date and except with respect to SHI Unsecured Claims, (i) all assets and liabilities of the Debtors shall be treated as though they were merged, (ii) no Distributions shall be made under this Plan on account of any Claim held by any Debtor against any other Debtor, (iii) all guarantees of any Debtor of any obligation of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof expected by any other Debtor and any joint or several liability of any of the Debtors shall be one obligation of the Debtors, and (iv) each and every Claim Filed or to be Filed against any of the Debtors shall be deemed Filed against the Debtors, and shall be one Claim against and an obligation of the Debtors.

(b)     The substantive consolidation effected pursuant to Section 7.1(a) of this Plan shall not (other than for purposes related to funding Distributions under this Plan and as set forth above in this Section 7.1) affect: (i) the legal and organizational structure of the Debtors (which structures will be reorganized in the manner set forth in Section 7.7 of this Plan), (ii) defenses to any Right of Action or requirements for any third party to establish mutuality in order to assert a

27

right of setoff, (iii) Distributions out of any insurance policies or proceeds of such policies, and (iv) the obligation of any Debtor, Reorganized Debtor, or Creditor Trust Debtor to pay quarterly fees to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

Section 7.2  <u>Cash Settlement Payment</u>

SHI or its designee shall pay the Cash Settlement Payment to the Debtors on the Effective Date.

Section 7.3  <u>Cancellation of Intercompany Claims</u>

On the Effective Date, all Intercompany Claims shall be eliminated and extinguished.

Section 7.4  <u>Cancellation of Notes, Instruments, Common Stock and Stock Option</u>

On the Effective Date, except to the extent provided otherwise in this Plan or the Confirmation Order, and provided that the treatments provided for herein and the Distributions contemplated by Article IV of this Plan are made and transactions in Section 7.7 of this Plan are consummated (i) all notes, instruments, certificates, guaranties and other documents evidencing Claims in any of the Debtors and all Equity Interests in Spiegel, Inc. shall be cancelled and deemed terminated; (ii) all Equity Interests in Spiegel, Inc. shall be cancelled and deemed terminated; and (iii) all options, warrants, conversions, privileges or other legal or contractual rights to acquire any Equity Interests in any of the Debtors shall be cancelled and deemed terminated.

Section 7.5  <u>Eddie Bauer Holdings Working Capital Facility</u>

On the Effective Date, or as soon as practicable thereafter, Eddie Bauer Holdings shall enter into definitive documentation with respect to the $150 million Working Capital Facility with the respective lender(s) thereunder.  The Working Capital Facility shall be secured by a first Lien on certain of the assets of Eddie Bauer Holdings.  The principal terms and conditions with respect to such financing arrangements shall be Filed by the Debtors as a component of the Plan Supplement.

Section 7.6  <u>Eddie Bauer Holdings Senior Debt Facility or Creditor Notes</u>

(a)    On the Effective Date, or as soon as practicable thereafter, Eddie Bauer Holdings shall enter into definitive documentation with respect to the $300 million Senior Debt Facility with the respective lender(s) thereunder.  The principal terms and conditions with respect to such financing arrangements shall be included in the Plan Supplement; <u>provided</u>, <u>however</u>, that Eddie Bauer Holdings may, in consultation with the Creditors' Committee, elect not to enter definitive documentation with respect to the Senior Debt Facility if it makes a determination that then existing market conditions are such that entering into the Senior Debt Facility would not be favorable to Eddie Bauer Holdings or in the best interests of Eddie Bauer Holdings and its shareholders.  In the event that Eddie Bauer Holdings enters into definitive documentation with respect to the Senior Debt Facility, then, on the Effective Date, Eddie Bauer Holdings shall

borrow funds thereunder, which funds shall be distributed to Holders of Allowed General Unsecured Claims.

(b)    In the event that Eddie Bauer Holdings elects, after consultation with the Creditors' Committee and after making the determination described in Section 7.6(a) of this Plan, not to enter into definitive documentation with respect to the Senior Debt Facility, then, on the date of the Initial Distribution, Eddie Bauer Holdings shall issue $300 million of Creditor Notes to certain Holders of Allowed Class 4 Claims pursuant to Section 4.5(a) of this Plan and the Creditor Trust to be held in the Disputed Claims Reserve, in each case in accordance with the terms of the Plan.  If the Creditor Notes are issued pursuant to this Section 7.6, then Eddie Bauer Holdings shall use commercially reasonable efforts to refinance the Creditor Notes as soon as practicable after the date of the Initial Distribution.

Section 7.7  Restructuring Transactions

(a)    On the Effective Date, the following transactions shall be effectuated:  (i) Spiegel, Inc. shall form a Delaware corporation named "Eddie Bauer Holdings, Inc." to serve as the holding company for the Reorganized Debtors and certain non-debtor subsidiaries of Spiegel, Inc.; (ii) Spiegel, Inc. shall transfer 100% of its ownership interest in Eddie Bauer, Inc., Financial Services Acceptance Corporation, and Spiegel Acceptance Corporation to Eddie Bauer Holdings; (iii) Spiegel, Inc. shall transfer 100% of its ownership interest in Distribution Fulfillment Services, Inc. (DFS) and Spiegel Group Teleservices-Canada, Inc. to Eddie Bauer, Inc.; (iv) a Delaware limited liability company named "Eddie Bauer Information Technology, LLC" shall be formed by and as the wholly owned subsidiary of Eddie Bauer, Inc.; (v) Spiegel Management Group, Inc. shall transfer all of its Assets that do not comprise or support its information services capability to Spiegel, Inc.; (vi) Spiegel Management Group, Inc. shall merge with and into Eddie Bauer Information Technology, LLC, with Eddie Bauer Information Technology, LLC surviving; (vii) Spiegel, Inc. shall transfer 100% of its ownership interest in the Creditor Trust Debtors and in each of Spiegel, Inc.'s non-Debtor subsidiaries that are not transferred to Eddie Bauer Holdings (including, but not limited to, First Consumers National Bank) to the Creditor Trust; and (viii) upon the cancellation of the Spiegel, Inc. Equity Interests on the Effective Date, 100% of the common stock of reorganized Spiegel, Inc. shall be distributed to the Creditor Trust.  Furthermore, on the Effective Date, the Debtors will waive and release any and all claims they may hold against the Debtors' direct and indirect non-Debtor subsidiaries other than First Consumers National Bank and First Consumers Credit Corporation; provided, however, that such waiver and release is not intended to, and shall not, release any other Entities or Persons, including the Excluded Defendants, of any liability, including any liability for any alleged acts and omissions relating to the Debtors.  The Debtors, the Debtors' direct and indirect non-debtor subsidiaries, the Creditors' Committee, and the successors or assignees of any of them expressly reserve all of their respective rights to assert claims which are not being released pursuant to this Plan.

(b)    On or as of the Effective Date, with the prior approval of the Creditors' Committee, the Debtors may, notwithstanding any other transactions described in this Section 7.7, (i) cause any or all of the Debtors to be merged into one or more of the Debtors, dissolved, or otherwise consolidated, (ii) cause the transfer of assets between or among the Debtors, or (iii) engage in any other transaction in furtherance of this Plan.  Any such transaction shall be

effective as of the Effective Date pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors, the Reorganized Debtors or the Creditor Trust Debtors.  The Debtors may utilize this provision to merge, dissolve, or otherwise consolidate certain of their companies, including, but not limited to, numerous Debtor entities involved in the Debtors' Eddie Bauer business, and transfer certain executory contracts, unexpired leases, and other assets to Eddie Bauer Holdings or the Reorganized Debtors.  A list of the subsidiaries that will be merged or dissolved will be included in the Plan Supplement.

(c)     On the Effective Date, Eddie Bauer Holdings shall issue the Securitization Note to the Creditor Trust.

Section 7.8  <u>Violations of Claims Trading Order</u>

In the event that any person or group of persons is in violation of the Trading Order and such person or group of persons, but for the application of this Section 7.8, would become a "5% shareholder" (within the meaning of section 382 of the Tax Code and the Treasury Regulations promulgated thereunder) of Eddie Bauer Holdings as a result of the implementation of this Plan, such person(s) (and, to the extent necessary, any other person whose ownership would be attributed to any such person for purposes of section 382 of the Tax Code) shall not be entitled to and shall not receive distributions of Eddie Bauer Holdings Common Stock pursuant to this Plan (i) in excess of 1.425 million (1,425,000) shares of Eddie Bauer Holdings Common Stock, if such violation was a failure to notify the Debtors of ownership of 61 million dollars ($61,000,000) or more of Claims, or (ii) in respect of any Claims acquired in violation of the Trading Order.  If the Debtors or Eddie Bauer Holdings only become aware of such circumstances after the Distribution Notification Date, then, except as provided below, no Distribution shall be made in lieu of the Eddie Bauer Holdings Common Stock that is not distributable by reason of this Section 7.8.

Section 7.9  <u>Creation of the Creditor Trust</u>

(a)     On the Effective Date, (i) the Creditor Trust shall be created and established by the execution and delivery of the Creditor Trust Agreement and any other necessary action, subject to the provisions of this Plan, and (ii) the Creditor Trust Assets shall be transferred to the Creditor Trust, free of all Claims, Liens and interests, including, without limitation, escrows, charges, pledges, encumbrances and/or security interests of any kind; <u>provided</u>, <u>however</u>, that the property comprising the Disputed Claims Reserve shall be transferred to the Creditor Trust on the date of the Initial Distribution pursuant to Section 9.2(b) of this Plan.  The costs and expenses incurred by the Creditor Trust on and after the Effective Date shall be paid from the Creditor Trust Operating Expense Fund.  The Creditor Trust shall be terminated and dissolved without further action by the Trustees five (5) years from the Effective Date; <u>provided</u>, <u>however</u>, that, if warranted by the facts and circumstances and subject to the entry of a Final Order upon a finding by the Bankruptcy Court that an early termination of the Creditor Trust is appropriate or that an extension of the term of the Creditor Trust is necessary to the liquidating purpose of the Creditor Trust, the term of the Creditor Trust may be terminated early or may be extended for a finite term based on the particular facts and circumstances.  For any such extension, entry of a Final Order must be obtained within six (6) months of the beginning of the extended term.

(b)    As of the Effective Date the Creditor Trust shall be responsible for:  (i) filing, prosecuting and settling the Creditor Trust Rights of Action; (ii) making Distributions, after the Initial Distributions are made, to Holders of Allowed Claims (other than Administrative Claims) in the manner described in this Plan and the Creditor Trust Agreement; (iii) settling, resolving, and objecting to all Disputed Claims and Unresolved Claims (other than Administrative Claims) and making Distributions to all Holders of any such Claims that become Allowed Claims; (iv) filing any 2004 and 2005 federal and state tax returns and pursuing any federal and state tax refunds for the Creditor Trust Debtors that are necessary or appropriate; (v) preserving certain documents that may be necessary to respond to requests from Governmental Units; and (vi) holding, managing, overseeing, protecting, administering, selling, liquidating, transferring, prosecuting, resolving, settling or otherwise disposing of the Creditor Trust Assets.  The Creditor Trust shall have the authority without further Bankruptcy Court approval to liquidate any unliquidated Creditor Trust Assets, to hire counsel, other professional advisors and consultants and to pay the fees and expenses of such Persons, to pursue any preserved Creditor Trust Rights of Action, and otherwise to take such other actions as shall be necessary to administer the Creditor Trust Assets.  The Creditor Trust shall be substituted as successor to the Debtors (i) in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in respect of the Creditor Trust Assets, (ii) in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims and Unresolved Claims (other than Administrative Claims), and (iii) in any agreement in respect of the Creditor Trust Assets.  The Creditor Trust shall dissolve Spiegel, Inc. no later than six (6) months after the Effective Date.  The Managing Trustee shall be authorized and empowered to complete and execute on behalf of the Creditor Trust Debtors any document necessary to carry out the provisions of the this Plan, including, but not limited to, executing state and/or federal tax returns.

(c)    The Creditor Trust Interests are not transferable by any Beneficiary except (i) to any corporation, partnership or other entity of which such Beneficiary beneficially owns a majority of the equity interests; (ii) to any Person or entity that owns, directly or indirectly, a majority of the equity interests of such Beneficiary; or (iii) upon the death of a Beneficiary (by will or pursuant to the law of intestacy) or otherwise by operation of the law.

(d)    The Creditor Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of U.S. Treasury Regulation section 301.7701-4(d), and the Plan, the Creditor Trust and the Disclosure Statement are intended to comply with the advance-ruling guidelines contained in Rev. Proc. 94-45, 1994-2 C.B. 684.

(i)    The transfers by the Creditor Trust Debtors of Creditor Trust Assets to the Creditor Trust will be treated for all federal income tax purposes as a distribution of the Creditor Trust Assets directly to the Creditors at the time of creation of the Creditor Trust, followed by the immediate transfer by the Creditors of the Creditor Trust Assets to the Creditor Trust in exchange for beneficial interests in the Creditor Trust.  Creditors will be treated as the grantors and direct owners of a specified undivided interest in the Creditor Trust Assets for all U.S. federal income tax purposes.

(ii)    The Managing Trustee will file all returns for the Creditor Trust as a grantor trust pursuant to U.S. Treasury Regulation section 1.671-4(a) (or successor provisions).

31

The Managing Trustee will provide to the Creditors an annual statement that will list items of income, deduction and credit applicable to the Creditor Trust in the taxable year.  The Managing Trustee will comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements.  As soon as practicable after the Effective Date, but in no event later than thirty (30) days after the Effective Date, the Managing Trustee will determine the valuations of the transferred property, such valuations will be used for all U.S. federal income tax purposes, and all Creditors shall be bound by such valuations.

(iii)    From and after the Effective Date and until such time as all Disputed Claims or Unresolved Claims for which property is held in the Disputed Claims Reserve (collectively, the "Section 7.9 Disputed Claims") are resolved, a portion of the assets of the Creditor Trust will be retained on account of such claims and, as discussed below, will be treated for federal income tax purposes as if held in a separate trust (the "Separate Trust"). Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury regulations, the receipt by the Managing Trustee of a private letter ruling if the Managing Trustee so requests one (or the receipt of an adverse determination by the IRS upon audit if not contested by the Managing Trustee), the Managing Trustee will:

(1)    treat all the assets of the Creditor Trust allocable to, or retained on account of, the Section 7.9 Disputed Claims, as held in the Separate Trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each disputed claim, in accordance with the trust provisions of the Tax Code (section 641 et seq. of the Tax Code);

(2)    treat as a taxable income or loss of the Separate Trust with respect to any given taxable year the portion of the taxable income or loss of the Creditor Trust that would have been allocated to the holders of such Section 7.9 Disputed Claims had such claims been allowed on the Effective Date (but only for the portion of the taxable year with respect to which such claims are unresolved);

(3)    treat as a distribution from the Separate Trust any increased amounts distributed by the Creditor Trust as a result of any Section 7.9 Disputed Claim against Spiegel being resolved earlier in the taxable year, to the extent such distribution related to taxable income or loss of the Separate Trust determined in accordance with the provisions hereof; and

(4)    to the extent permitted by applicable law, report consistently for state and local income tax purposes.

(e)    The Managing Trustee shall be responsible for payments, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or the Creditor Trust Assets, including the Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of Section 7.9 Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained

on account of, Section 7.9 Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Section 7.9 Disputed Claims, or (ii) to the extent such Section 7.9 Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Managing Trustee as a result of the resolutions of such Section 7.9 Disputed Claims.

(f)     The Managing Trustee may request an expedited determination of taxes of the Creditor Trust, including the Section 7.9 Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust.

Section 7.10  The Trustees

(a)     Not later than ten (10) days prior to the Voting Deadline, the Creditors' Committee shall identify the Delaware Trustee and the Managing Trustee.  The identities of the Delaware Trustee and the Managing Trustee shall be set forth in the Creditor Trust Agreement as part of the Plan Supplement.  A Trustee, once appointed by the Creditors' Committee, shall act as a Trustee on behalf of the Creditor Trust to carry out its obligations and exercise its rights in accordance with, and subject to, this Plan, the Confirmation Order and the Creditor Trust Agreement.  The Managing Trustee shall be initially compensated as set forth in the Creditor Trust Agreement  (which compensation may be revised by the Creditor Trust with the consent of the Managing Trustee and the Plan Oversight Committee) and shall not be required to file a fee application to receive compensation.  The Managing Trustee's compensation shall, however, be subject to the review and oversight of the Plan Oversight Committee.  The Delaware Trustee shall be paid as set forth in the Creditor Trust Agreement.  Such annual fee may be revised with the consent of the Delaware Trustee and the Plan Oversight Committee.  Any objection to the appointment of a Trustee shall be raised at the Confirmation Hearing.  The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitral or other action or proceeding shall be commenced against either Trustee in its official capacity, with respect to its status, duties, powers, acts or omissions as a Trustee in any forum other than the Bankruptcy Court.  The Trustees shall be vested with the rights, powers and benefits set forth in the Creditor Trust Agreement.  The Trustees shall be subject to the directions of the Plan Oversight Committee as set forth in the Creditor Trust Agreement.  Subject to the provisions of the Creditor Trust Agreement, the Trustees shall be entitled to hire such professionals as the Trustees may deem necessary to assist them in carrying out their duties, with the fees and expenses of such professionals to be borne by the Creditor Trust.

(b)     The Managing Trustee shall monitor the liquidation of the Creditor Trust Assets and the Managing Trustee shall make all personnel, books and records relating to the Creditor Trust available to the Plan Oversight Committee, upon written request.  Any disputes concerning the administration of the Creditor Trust may be brought before the Bankruptcy Court for resolution.

(c)     All funds held by the Creditor Trust shall be invested in Cash or short-term, highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Creditor Trust Agreement.

(d)    In accordance with this Plan, the Creditor Trust shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, the Creditor Trust Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by or against the Debtors, Debtors' Estates or the Creditors' Committee.  The Creditor Trust may pursue or decline to pursue the Rights of Action and may settle, release, sell, assign, otherwise transfer or compromise such Rights of Action, in the Managing Trustee's business judgment, subject to the provisions of this Plan and the Creditor Trust Agreement, without Bankruptcy Court approval.

(e)    The Plan Oversight Committee may at any time remove either Trustee, as provided under the Creditor Trust Agreement.  In the event of the death or incompetency (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Trustee, the Plan Oversight Committee shall have the authority to appoint a successor trustee as set forth in the Creditor Trust Agreement.

Section 7.11  Release of Liens and Perfection of Liens

Except as otherwise provided in this Plan or in any contract, instrument or other agreement or document entered into in connection with the consummation of this Plan:  (i) each Holder of (a) a Secured Claim, (b) a Claim that is purportedly secured, and/or (c) a judgment, mechanics or similar Lien, shall on or immediately before the Effective Date:  (x) turn over and release to the Debtors any and all property of the Debtors that secures or purportedly secures such Claim, as it pertains to the properties currently owned or leased by the Debtors, or such Liens shall automatically, and without further action by the Debtors, the Reorganized Debtors, or the Creditor Trust Debtors, be deemed released; and (y) execute such documents and instruments as the Debtors, the Reorganized Debtors, or the Creditor Trust Debtors request to evidence such Claim Holder's release of such property or Lien; and (ii) on the Effective Date, as set forth in Section 7.1 of this Plan, all right, title and interest in any and all property of the Debtors' Estates other than the Creditor Trust Assets shall be transferred to Eddie Bauer Holdings free and clear of all Claims and interests, including, without limitation, Liens, escrows, charges, pledges, encumbrances and/or security interests of any kind.  No Distribution hereunder shall be made to or on behalf of any Claim Holder unless and until such Holder executes and delivers to the Debtors or Eddie Bauer Holdings, as the case may be, such release of Liens or otherwise turns over and releases such Cash, pledge, or other possessory Liens.  Any such Holder that fails to execute and deliver such release of Liens within one hundred and twenty (120) days of the Effective Date shall be deemed to have no further Claim against the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust or their assets or property in respect of such Claim and shall not participate in any Distribution hereunder.  Notwithstanding the immediately preceding sentence, any such Holder of a Disputed Claim shall not be required to execute and deliver such release until such time as the Claim is Allowed or Disallowed.  Notwithstanding the above or any other provision in this Plan, confirmation of this Plan shall not impair, release, modify or otherwise affect the liens, security interests and other rights of Expeditors International of Washington, Inc. ("Expeditors") under that certain Escrow Agreement dated August 30, 2002 among Expeditors, Eddie Bauer, Inc., and LaSalle Bank National Association (as amended on October 31, 2003, modified by that certain Agreement for

Continuation of Escrow Funds dated October 31, 2003 among Expeditors, Eddie Bauer, Inc., and Spiegel Catalog, Inc., and approved by the Bankruptcy Court by Order entered November 19, 2003), all of which liens, security interests and other rights shall remain in full force and effect with respect to Eddie Bauer, Inc.

Section 7.12    Corporate Governance, Directors and Officers, and Corporate Action

(a)    Amended and Restated Certificates of Incorporation.  On or as soon as reasonably practicable after the Effective Date, each of the certificates of incorporation and bylaws for each of the Reorganized Debtors, unless dissolved on or as soon as practicable after the Effective Date, and the Creditor Trust Debtors shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code, including, without limitation, the prohibition against the issuance of nonvoting equity securities set forth in section 1123(a) of the Bankruptcy Code (with respect to each entity, the "Amended Certificate of Incorporation and Bylaws"; and collectively, the "Amended Certificates of Incorporation and Bylaws").  After the Effective Date, each of the Reorganized Debtors and the Creditor Trust Debtors may amend, modify and restate its Amended and Restated Certificate of Incorporation and Bylaws as permitted by applicable law.

(b)    Eddie Bauer Holdings Certificate of Incorporation and Bylaws.  The Eddie Bauer Holdings Certificate of Incorporation and the Eddie Bauer Holdings Bylaws shall contain provisions necessary (i) to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such certificates of incorporation and bylaws as permitted by applicable law, and (ii) unless the Debtors and the Creditors' Committee deem it unnecessary or inadvisable or make the determination in accordance with the last sentence of this Section 7.12(b), to impose restrictions on the direct or indirect purchase and transferability of the Eddie Bauer Holdings Common Stock or other equity of Eddie Bauer Holdings ("Eddie Bauer Holdings Equity") in order for Eddie Bauer Holdings to satisfy the requirements of section 382(l)(5) of the Tax Code, such that (A) no persons or "entity" may acquire or accumulate 4.75% or more (as determined under tax law principles covering the application of section 382 of the Tax Code) of the Eddie Bauer Holdings Equity and (B) no persons or entity owning directly or indirectly (as determined under such tax law principles) on the Effective Date, after giving effect to this Plan, 4.75% or more of the Eddie Bauer Holdings Equity may acquire additional shares of Eddie Bauer Holdings Equity or sell a specified percentage (the "Escrow Percentage", determined as set forth below) of its shares of Eddie Bauer Holdings Equity, which shares will be held in escrow pursuant to this Section 7.12(b), unless certain prescribed notice requirements are met by the proposed purchaser (and in the case of a proposed sale of shares in the Equity Escrow, as defined below, by the proposed seller) and Eddie Bauer Holdings has not objected within a specified period after receipt of the prescribed notice to the proposed transaction (such restrictions on the transferability and purchase of the Eddie Bauer Holdings Equity described under clause (ii) of this sentence, the "Equity Transfer Restrictions").  The Equity Transfer Restrictions (i) shall expire no earlier than January 1, 2008 absent a vote of the shareholders of Eddie Bauer Holdings to the contrary in accordance with applicable law or a determination pursuant to (iii) of this sentence; (ii) shall expire on January 4, 2009 unless the Board of Directors of Eddie Bauer Holdings in good faith determines that it is in the best interests of Eddie Bauer Holdings and its shareholders for the Equity Transfer Restrictions to expire as of an earlier date, but subject to clause (iii) of this sentence, not earlier than January 1, 2008; or (iii) may expire on any date after the Effective Date

35

if the Board of Directors of Eddie Bauer Holdings in good faith determines that the requirements under section 382(l)(5) of the Tax Code will not be satisfied with respect to the ownership change occurring directly as a result of the consummation of this Plan. Eddie Bauer Holdings shall use good faith efforts to make the determination of whether a reasonable basis exists for taking the position that the requirements of section 382(l)(5) of the Tax Code have been satisfied, at the earliest date following the Effective Date, that adequate information regarding the ownership of Eddie Bauer Holdings Equity is reasonably available, and from time to time thereafter as additional information or developments relevant to its determination are reasonably available or occur. Any objection raised by Eddie Bauer Holdings on the purchase and transferability of shares of Eddie Bauer Holdings Equity described under clause (ii) in the first sentence of this paragraph shall be based on its reasonable assessment that allowing the proposed transaction to be consummated would jeopardize the use of substantial net operating loss carryovers or other tax attributes available to it; and any such objection by Eddie Bauer Holdings shall be subject to appeal to the appropriate court of competent jurisdiction, including but not limited to the Bankruptcy Court, for review under the same standard of reasonableness. Any transfer in violation of the above restrictions will be void ab initio and will be treated as having no effect. The Escrow Percentage shall be up to ten percent (10%) of Eddie Bauer Holdings Common Stock issued to persons or entities that will acquire 4.75% or more of Eddie Bauer Holdings Common Stock on the Effective Date, which shares will be held in escrow in order to effectuate the restrictions described above (the "Equity Escrow"); provided, however, that the Debtors and the Creditors' Committee may together elect to reduce the Escrow Percentage or eliminate the Equity Escrow entirely, and shall jointly file a notice with the Bankruptcy Court setting forth any such election not later than three (3) Business Days prior to the Effective Date. In the event that the Debtors and the Creditors' Committee determine that the requirements of section 382(l)(5) cannot be met without undue risk with the implementation of the Equity Transfer Restrictions and the Equity Escrow, (i) Eddie Bauer Holdings shall elect to not have section 382(l)(5) of the Tax Code to apply and therefore apply section 382(l)(6) of the Tax Code, (ii) the Eddie Bauer Holdings Bylaws shall not include the Equity Transfer Restrictions and the Equity Escrow, and (iii) the Debtors and the Creditors' Committee shall jointly file a notice with the Bankruptcy Court with respect to the matters set forth in clauses (i) and (ii) of this sentence not later than three (3) Business Days prior to the Effective Date.

(c)    Directors and Officers of the Reorganized Debtors. Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, a total of nine (9) directors shall serve as the initial directors of Eddie Bauer Holdings (the "Initial Directors"). Eight (8) of the Initial Directors (the "Independent Directors") shall be nominated by the Creditors' Committee. The members of the board of directors will serve for a term of two (2) years (the "Initial Term") and the Amended and Restated Eddie Bauer Certificate of Incorporation shall provide that the Independent Directors cannot be removed without "cause" during their Initial Term. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on the initial board of directors, board of managers or as the managing member, as applicable, of each of the Reorganized Debtors and the Creditor Trust Debtors or employed as an officer of the Reorganized Debtors, and, to the extent such Person is an insider, the nature of any compensation for such Person. The classification and composition of the board of directors or managing members, as appropriate, of each of the Reorganized Debtors and the Creditor Trust Debtors shall be consistent with the applicable Amended

36

Certificate of Incorporation and Bylaws. Each such director, officer and managing member shall serve from and after the Effective Date pursuant to the terms of the applicable Amended Certificate of Incorporation and Bylaws or other applicable constituent documents or law. Any directors, officers, or managing member of a Debtor that will not continue in such capacity after the Effective Date with the applicable Creditor Trust Debtor or Reorganized Debtor shall be deemed to have resigned from such positions without the need for any corporate action on the part of the Debtors or documentation of such resignations on the part of any party.

(d)    Corporate Action. On the Effective Date, all actions contemplated by this Plan shall be authorized and approved in all respects. On the Effective Date, all matters provided for in this Plan involving the corporate structure of the Debtors, or any of the Reorganized Debtors and Creditor Trust Debtors, and any corporate action required by the Debtors, the Reorganized Debtors, or the Creditor Trust Debtors in connection with this Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, officers, directors or members of the Debtors, the Reorganized Debtors, or the Creditor Trust Debtors. On the Effective Date, the appropriate officers of the Reorganized Debtors and the Creditor Trust Debtors, members of the boards of directors or boards of managers of the Reorganized Debtors and the Creditor Trust Debtors and the managing members, as applicable, of the Reorganized Debtors and the Creditor Trust Debtors are authorized and directed in the name of and on behalf of the Reorganized Debtors and the Creditor Trust Debtors to issue, execute, deliver, file or record the agreements, documents, contracts, securities, instruments, releases and other agreements, and take such other actions as may be necessary, to effectuate and further evidence the terms and conditions of this Plan. The Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust and the Managing Trustee are expressly authorized to sell or dispose of any and all unliquidated Assets and to pay all costs and expenses associated with such sale or disposition without further order of the Bankruptcy Court, subject to the provisions of this Plan, including Article VI of this Plan.

Section 7.13   Sources of Cash for Plan Distribution

All Cash necessary for the Debtors and Eddie Bauer Holdings to make payments pursuant to this Plan shall be obtained from existing Cash balances, the Cash Settlement Payment, the operations of the Debtors, the Reorganized Debtors or Eddie Bauer Holdings, or post-Confirmation Date borrowings and/or financings including the Senior Facility Proceeds. Eddie Bauer Holdings may also make such payments using Cash received from its subsidiaries through its consolidated cash management system and from advances or dividends from such subsidiaries in the ordinary course.

All Cash necessary for the Creditor Trust to make payments pursuant to this Plan shall be obtained from the Creditor Trust Assets as funded pursuant to this Plan.

Section 7.14   Issuance of Eddie Bauer Holdings Common Stock

(a)    Issuance of Eddie Bauer Holdings Common Stock. On or as soon as is practicable after the Effective Date, Eddie Bauer Holdings will issue thirty (30) million shares of Eddie Bauer Holdings Common Stock for distribution in accordance with this Plan. The issuance of the Eddie Bauer Holdings Common Stock and the distribution, transfer or exchange thereof in

accordance with this Plan shall be exempt from registration or similar requirement under applicable securities laws (including, without limitation, section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145 of the Bankruptcy Code, and may be sold without registration to the extent permitted under section 1145 of the Bankruptcy Code.

(b)      Effect of Securities Laws Restrictions on Foreign Distributions.  Eddie Bauer Holdings Common Stock will not be distributed pursuant to this Plan or the Confirmation Order in any jurisdiction outside the United States, to or for the account or benefit of any Person, where such distribution could be prohibited by any applicable law, rule or regulation of such jurisdiction without compliance by any Person with conditions or requirements that are "unduly onerous", as determined by Eddie Bauer Holdings in its sole discretion with the advice of legal counsel and having due regard for (i) the number of Holders of Allowed Class 4 Claims that are or may be located in such jurisdiction, (ii) the value of Eddie Bauer Holdings Common Stock to which such Holders are or may be entitled pursuant to this Plan, (iii) the extent to which the requirements of the laws, rules and regulations of such jurisdiction as applied to any such distribution are uncertain, (iv) the nature and extent of the risks or penalties associated with any violation of or non-compliance with such legal or regulatory requirements, and (v) the costs, administrative burden and timing implications to Eddie Bauer Holdings of taking such action (if any) as might permit distribution of the Eddie Bauer Holdings Common Stock to be made in that jurisdiction (including pursuant to any available exemptions) in accordance with applicable legal and regulatory requirements.  Any reference in the remainder of this Section 7.14(b) to whether distribution of Eddie Bauer Holdings Common Stock would be prohibited except after compliance with conditions that are "unduly onerous" should be construed accordingly.

(i)      As soon as practicable after the Confirmation Date, the Debtors will mail a notice (a "Foreign Distribution Restriction Notice") to the Holders of Allowed Class 4 Claims in any jurisdiction where it has been determined that distribution of Eddie Bauer Holdings Common Stock in such jurisdiction would be unduly onerous (each a "Prohibited Jurisdiction").  The Foreign Distribution Restriction Notice will inform each such Holder of an Allowed Class 4 Claim that such Holder is required, within forty-five (45) days of mailing of the Foreign Distribution Restriction Notice, to either: (1) provide notice in writing and in accordance with the instructions contained in the Foreign Distribution Restriction Notice that such Holder has elected to receive Eddie Bauer Holdings Common Stock in such Prohibited Jurisdiction, in which case such Holder will indemnify the Debtors against any and all damages the Debtors may incur if it is subsequently determined that distribution of such securities in such Prohibited Jurisdiction violated or was not in compliance with any applicable law, rule or regulation of such Prohibited Jurisdiction (a "Lawful Receipt Representation"); or (2) provide notice in writing and in accordance with the instructions contained in the Foreign Distribution Restriction Notice, identifying a third party to either purchase such Holder's right to receive such Eddie Bauer Holdings Common Stock, or receive such Eddie Bauer Holdings Common Stock on behalf of or for the benefit of such Holder, which third party will be required to meet the same conditions as such Holder of an Allowed Class 4 Claim prior to the third party's receiving such Eddie Bauer Holdings Common Stock, including either receiving such Eddie Bauer Holdings Common Stock in a non-Prohibited Jurisdiction or duly delivering a Lawful Receipt Representation (a "Third Party Designation").

(ii)    If the Debtors receive, prior to the Distribution Record Date, a duly completed and executed Lawful Receipt Representation or a Third Party Designation in response to a Foreign Distribution Restriction Notice sent to a Holder of an Allowed Class 4 Claim, the Person identified therein shall receive Eddie Bauer Holdings Common Stock on or as soon as practicable after the Effective Date as if such Person was a Holder of an Allowed Class 4 Claim. If the Debtors or the Creditor Trust, as the case may be, do not so receive a Lawful Receipt Representation or a Third Party Designation, the Eddie Bauer Holdings Common Stock distributable to the Holder of such Claim but for operation of this Section 7.14(b) shall be transferred to and held by the Creditor Trust.  Upon receipt of a duly completed and executed Lawful Receipt Representation or a Third Party Designation in respect of a Foreign Distribution Restriction Notice, the Creditor Trust shall as soon as practicable release the Eddie Bauer Holdings Common Stock in accordance with the instructions contained in the Foreign Distribution Restriction Notice.

(iii)    If the Debtors or the Creditor Trust, as the case may be, do not receive by the first anniversary of the date of mailing of a Distribution Restriction Notice a Lawful Receipt Representation or a Third Party Designation in respect of such Distribution Restriction Notice sent to a Holder of an Allowed Class 4 Claim, the Eddie Bauer Holdings Common Stock held by the Creditor Trust shall be treated as an undeliverable Distribution in accordance with Section 9.6(b) of this Plan.

Section 7.15  <u>Management Stock Incentive Program</u>

After the Effective Date, the board of directors of Eddie Bauer Holdings shall have the authority to adopt the Management Stock Incentive Program.

Section 7.16  <u>Listing of Eddie Bauer Holdings Common Stock; Registration of Securities</u>

Eddie Bauer Holdings shall use its commercially reasonable best efforts to become a reporting company under the Exchange Act and cause, as soon as reasonably practicable after the Effective Date, the shares of Eddie Bauer Holdings Common Stock issued hereunder to be listed on the national market system of the National Association of Securities Dealers' Automated Quotation System.

Section 7.17  <u>Second Amended and Restated Loan and Security Agreement</u>

The "Termination Date" of the Second Amended and Restated Loan and Security Agreement and the "Closing Date" of the Loan and Security Agreement shall both occur on the Effective Date.  On the Effective Date, if there are any Letters of Credit outstanding under the Second Amended and Restated Loan and Security Agreement or any unpaid Obligations under the Second Amended and Restated Loan and Security Agreement, the following shall occur: (i) to the extent there are any undrawn Letters of Credit issued under the Second Amended and Restated Loan and Security Agreement outstanding on the Effective Date, the Debtors or Reorganized Debtors, as the case may be, shall either deposit with the Agent under the Second Amended and Restated Loan and Security Agreement cash in the amount of one hundred five percent (105%) of the face amount of each such undrawn Letter of Credit or provide to the Agent a "Supporting Letter of Credit" for each such outstanding Letter of Credit in accordance with

section 2.3(k) of the Second Amended and Restated Loan and Security Agreement or, at the option of the Debtors and the Agent under the Working Capital Facility, shall be deemed to constitute Letters of Credit issued under the Working Capital Facility; (ii) to the extent there are any unpaid Obligations under the Second Amended and Restated Loan and Security Agreement on the Effective Date, such Obligations will be repaid by the Debtors on the Effective Date; and (iii) with respect to the Cash, if any, deposited with the Agent with respect to undrawn Letters of Credit that were outstanding on the Effective Date, any Cash that was deposited with the Agent with respect to a Letter of Credit that eventually expires without being drawn will be promptly delivered by the Agent to Reorganized Eddie Bauer upon the expiration of any such Letter of Credit.  In addition, upon the completion of clauses (i) and (ii) in the immediately preceding sentence, the Agent under the Second Amended and Restated Loan and Security Agreement shall terminate and release its liens and security interests in the Collateral granted to it under the Second Amended and Restated Loan and Security Agreement, the Final Bankruptcy Court Order and the Confirmation of Borrowing Order, and the Debtors, on the one hand, and the Agent and the Lenders, on the other hand, will release, remise and discharge each other, and their respective officers, directors, agents, employees, servants, accountants, attorneys, parents, subsidiaries and affiliates, from any and all claims, debts, liabilities, torts, claims for relief or causes of action arising under or relating to the Second Amended and Restated Loan and Security Agreement or the negotiation and documentation thereof, the administration thereof, of the payment or enforcement thereof.

## ARTICLE VIII

## RIGHTS OF ACTION

Section 8.1  Maintenance of Eddie Bauer Rights of Action

The Debtors transfer and assign to Eddie Bauer Holdings or any of its subsidiaries, at the sole discretion of the Debtors, all rights on behalf of the Debtors to commence and pursue, as appropriate, any and all Eddie Bauer Rights of Action, whether arising before or after the Petition Date through and including the Effective Date, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, and, in accordance with section 1123(b)(3) of the Bankruptcy Code, all claims, rights, and Eddie Bauer Rights of Action that the respective Debtors may hold against any Entity shall automatically vest in Eddie Bauer Holdings and its subsidiaries.  From and after the Effective Date, Eddie Bauer Holdings and its subsidiaries shall retain and may exclusively enforce any and all Eddie Bauer Rights of Action, and shall have the exclusive right, authority and discretion to pursue, institute, prosecute, abandon, settle, or compromise any and all Eddie Bauer Rights of Action.

Section 8.2  Maintenance of the Creditor Trust Rights of Action

The Debtors transfer and assign to the Creditor Trust all the Debtors' rights, title and interest in and to the Creditor Trust Rights of Action, including all rights to commence and pursue in the name of the Creditor Trust or on behalf of the Debtors, as appropriate, any and all Creditor Trust Rights of Action, whether arising before or after the Petition Date through and

40

including the Effective Date, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. All Creditor Trust Rights of Action that the respective Debtors may hold against any Entity shall automatically vest in the Creditor Trust. The Managing Trustee shall be designated as an estate representative of the Debtors' Estates, individually and/or collectively, under sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, and shall have the rights and powers of a trustee appointed under section 1104 of the Bankruptcy Code in each case solely with respect to the Creditor Trust Rights of Action, except to the extent limited by this Plan or the Creditor Trust Agreement. As an estate representative and in the exercise of its discretion in its capacity as such, the Managing Trustee may, from and after the Effective Date, exclusively enforce any and all Creditor Trust Rights of Action, and shall have the exclusive right, authority and discretion to pursue, institute, prosecute, abandon, settle, or compromise any and all Creditor Trust Rights of Action on behalf of the Debtors' Estates, individually and/or collectively, and, if necessary, in the name of a Debtor or the Debtors. In the event that the Managing Trustee commences an action in the name of a Debtor, the Managing Trustee shall provide, to the extent practicable, Eddie Bauer Holdings with at least ten (10) days' written notice prior to commencing such action. Eddie Bauer Holdings shall, and shall cause its subsidiaries reasonably to, cooperate with the Creditor Trust in its operations and actions. The terms of such reasonable cooperation, and the obligation of the Creditor Trust to reimburse Eddie Bauer Holdings and its subsidiaries for any reasonable expenses that Eddie Bauer Holdings and its subsidiaries incur in connection with such cooperation, shall be set forth in a document filed with the Plan Supplement.

Section 8.3   Preservation of All Rights of Action Not Expressly Settled or Released

(a)   Unless a claim or Right of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Debtors expressly reserve such claim or Right of Action for later enforcement by Eddie Bauer Holdings and its subsidiaries, or the Creditor Trust (if such Right of Action constitutes a Creditor Trust Right of Action, including, without limitation, claims and Rights of Action not specifically identified or of which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Rights of Action upon or after Confirmation or Consummation based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Rights of Action have been expressly released in this Plan or other Final Order. In addition, Eddie Bauer Holdings, its subsidiaries, and the Creditor Trust expressly reserve the right to pursue or adopt any claims, crossclaims or counterclaims alleged in any lawsuit in which any of the Debtors are a defendant or an interested party against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions in this Plan or any Final Order.

(b)   Subject to the terms of any Final Order or this Plan including the SHI Settlement, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or

leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by Eddie Bauer Holdings, its subsidiaries, and the Creditor Trust subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has Filed a proof of claim against the Debtors, (ii) such Entity's proof of claim has been the subject of an objection, (iii) such Entity's Claim was included in Debtors' Schedules, or (iv) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent or unliquidated.

Section 8.4   <u>Timing</u>

       The Creditor Trust, Eddie Bauer Holdings, and the Reorganized Debtors shall be subject to the provisions of Sections 13.4 and 13.5 of this Plan regardless of when the Rights of Action are transferred.

## ARTICLE IX

## PROVISIONS REGARDING DISTRIBUTIONS AND RESERVES

Section 9.1   <u>Initial Distribution to Creditors</u>

       On the Effective Date, or as soon as practicable thereafter, Eddie Bauer Holdings shall make an initial Distribution (the "<u>Initial Distribution</u>") to Holders of Claims that are Allowed Claims as of the Distribution Record Date, or such other date set forth in the Confirmation Order, in accordance with the treatment accorded such Allowed Claims pursuant to Articles III and IV of this Plan.  In no event shall the Initial Distribution take place prior to the receipt by the Debtors or the Reorganized Debtors, as applicable, of the Cash Settlement Payment and the Senior Debt Facility Proceeds.

Section 9.2   <u>Disputed Claims Reserves</u>

     (a)    On the date of the Initial Distribution, Eddie Bauer Holdings shall establish a reserve for the Holders of Disputed or Unresolved Administrative Claims as of the Effective Date consisting of (i) the property that would otherwise be distributable to such Holder on such date in accordance with this Plan were such Disputed Claim or Unresolved Claim an Allowed Claim on such date, in the Face Amount thereof, (ii) such other amount as ordered by the Bankruptcy Court, or (iii) such other property as such Holder and the Debtors agree (the "<u>Disputed Administrative Claims Reserve</u>").

     (b)    On the date of the Initial Distribution, Eddie Bauer Holdings shall transfer to the Creditor Trust the property to be placed by the Creditor Trust into a reserve for Holders of all Disputed or Unresolved Claims other than Administrative Claims as of the Effective Date, and such reserve shall, as of such date, consist of (i) the property that would otherwise be distributable to such Holder on such date in accordance with this Plan were such Disputed Claim or Unresolved Claim an Allowed Claim on such date, in the Face Amount thereof, (ii) such other amount as ordered by the Bankruptcy Court, or (iii) such other property as such Holder and the Debtors or the Creditor Trust agree (the "<u>Disputed Claims Reserve</u>").

Section 9.3   Subsequent Distributions to Creditors

(a)    After the date of the Initial Distribution, to the extent a Disputed or Unresolved Administrative Claim becomes an Allowed Claim, Eddie Bauer Holdings shall make a Distribution to the Holder of such Claim from the Disputed Administrative Claims Reserve pursuant to, and to the extent provided for in, this Plan.

(b)    After the date of the Initial Distribution, to the extent a Disputed or Unresolved Claim other than an Administrative Claim becomes an Allowed Claim, the Creditor Trust shall make a Distribution to the Holder of such Claim from the Disputed Claims Reserve pursuant to, and to the extent provided for in, this Plan.

(c)    All Distributions made by the Creditor Trust, Eddie Bauer Holdings or the Trustees pursuant to this Plan shall be made without any requirement for bond or surety with respect thereto.

Section 9.4   Time and Manner of Payments

Any Distribution in Cash shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  This Section 9.4 shall not apply to the payment of the Cash Settlement Payment; provided, however, that, notwithstanding the foregoing, the Cash Settlement Payment shall be transferred to the Debtors pursuant to this Plan such that the Cash Settlement Payment shall be received by the Debtors in same day funds on the Effective Date.

Section 9.5   Delivery of Distributions

Subject to the provisions of Bankruptcy Rule 2002(g) and except as otherwise provided under this Plan, Distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules unless superseded by (i) the address set forth on proofs of claim Filed by such Holders or the agent for such Holders, or (ii) an address provided to the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust or Eddie Bauer Holdings provided that such address is provided to the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust, or Eddie Bauer Holdings, as the case may be, in writing at least ten (10) Business Days prior to such Distribution.

Section 9.6   Undeliverable Distributions

(a)    Holding of Undeliverable Distributions.  If any Distribution to any Holder is returned to Eddie Bauer Holdings or the Creditor Trust as undeliverable, no further Distributions shall be made to such Holder unless and until Eddie Bauer Holdings or the Creditor Trust, as the case may be, is notified, in writing, of such Holder's then-current address.  Subject to Section 9.6 of this Plan, if any Distribution to any Holder is returned as undelivered, no further Distribution to such Holder shall be made and all undeliverable Distributions shall remain in the possession of Eddie Bauer Holdings or the Creditor Trust, as the case may be, until such time as a Distribution becomes deliverable, at which time all missed Distributions shall be made to such Holders, without any interest or other accruals of any kind.  Nothing contained in this Plan shall require any of the Reorganized Debtors or the Creditor Trust to attempt to locate any Holder of an Allowed Claim.

(b)    <u>Failure to Claim Undeliverable Distributions</u>.  Within ten (10) Business Days after the later of the first anniversary of the Effective Date or the first Distribution under this Plan and thereafter at intervals that Eddie Bauer Holdings or the Creditor Trust shall deem appropriate, Eddie Bauer Holdings and the Creditor Trust shall File a list setting forth the names of those Entities for which Distributions have been attempted hereunder and have been returned as undeliverable as of the date thereof.  Any Holder of an Allowed Claim that does not assert its rights pursuant to this Plan to receive a Distribution within sixty (60) days from and after the Filing of such list shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim against the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, the Trustees or any of their assets.  In such case, any consideration held for Distribution on account of such Claim shall revert to the Creditor Trust.

Section 9.7  <u>Compliance with Tax Requirements/Allocation</u>

In connection with this Plan, to the extent applicable, the Debtors, Eddie Bauer Holdings and the Creditor Trust, in making Distributions under this Plan, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Debtors, Eddie Bauer Holdings and the Creditor Trust may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Debtors, Eddie Bauer Holdings, or the Creditor Trust, as the case may be, the necessary information to comply with any withholding requirements of any Governmental Unit.  Any property so withheld will then be paid by Eddie Bauer Holdings or the Creditor Trust, as the case may be, to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Debtors, Eddie Bauer Holdings, or the Creditor Trust, as the case may be, the information necessary to comply with any withholding requirements of any Governmental Unit within six (6) months after the date of first notification by the Debtors, Eddie Bauer Holdings, or the Creditor Trust, as the case may be, to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan.

For tax purposes, Distributions received in respect of Allowed Claims shall be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

Section 9.8  <u>Time Bar to Cash Payments</u>

Checks issued by the Debtors, Eddie Bauer Holdings and the Creditor Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to Eddie Bauer Holdings (if the check was issued on or after the Effective Date by Eddie Bauer Holdings) or the Creditor Trust (if the check was issued after the Effective Date by the Creditor Trust), as the case may be, by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on

account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the right to all moneys from the voided checks shall revert to the Creditor Trust (regardless of whether the check was issued by Eddie Bauer Holdings), for Distribution pursuant to this Plan.

Section 9.9   Fractional Dollars, Fractional Shares, and De Minimis Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars shall not be made.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  Eddie Bauer Holdings, as successor to the Debtors, and the Creditor Trust shall have the discretion not to make payments of less than one hundred dollars ($100) on account of any Allowed General Unsecured Claim that was a Disputed Claim as of the Effective Date, unless a specific request is made in writing to the Debtors on or before ninety (90) days after allowance of such Claim.

Notwithstanding anything contained herein to the contrary, only whole numbers of shares of Eddie Bauer Holdings Common Stock shall be issued.  When any Distribution on account of an Allowed Claim would otherwise result in the issuance of a number of shares of Eddie Bauer Holdings Common Stock that is not a whole number, the actual distribution of such shares only shall include the next lower whole number of shares.  The total number of shares of Eddie Bauer Holdings Common Stock specified to be distributed to holders of Allowed General Unsecured Claims pursuant to this Plan shall be adjusted as necessary to account for the rounding provided for herein.  No consideration shall be provided in lieu of fractional shares that are rounded down.

In addition, neither Eddie Bauer Holdings nor the Creditor Trust shall be required to make any Distribution on account of any Claim in the event that the costs of making such Distribution payment exceed the amount of such Distribution payment, and all Distributions that otherwise would have been distributed to the Holders of such de minimis Claims shall otherwise be distributed in accordance with the terms of this Plan.

Section 9.10   Set-Offs

Except as expressly provided in this Plan, the Debtors, Eddie Bauer Holdings and the Creditor Trust may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that any of the Debtors may hold against the Holder of such Allowed Claim.  The Holders of Claims may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off any Allowed Claims such Holder possesses against the Debtors or any claim, rights or causes of action of any nature that the Debtors may hold against such Holder.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Eddie Bauer Holdings, the Creditor Trust or such Holders of any such claims, rights and causes of action that such parties may possess under section 553 of the Bankruptcy Code.

Section 9.11   Settlement of Claims and Controversies

        Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any Distribution to be made on account of such an Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims, and is fair, equitable and reasonable.

## ARTICLE X

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND UNRESOLVED CLAIMS

Section 10.1   Prosecution of Objections to Claims

    (a)    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as set forth in this Plan, the Creditor Trust shall have the right to make, File and prosecute objections to General Unsecured Claims, Other Secured Claims and Priority Claims.  The Creditor Trust shall have the right to prosecute objections to Claims previously Filed by the Debtors against any such Claims.

    (b)    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as set forth in this Plan, Eddie Bauer Holdings shall have the right to make, File and prosecute objections to Administrative Claims, Professional Fee Claims, and Priority Tax Claims.  Eddie Bauer Holdings shall have the right to prosecute objections to Claims previously Filed by the Debtors against any Administrative Claims, Professional Fee Claims, and Priority Tax Claims.  Notwithstanding this provision, the Creditor Trust and, until dissolved, the Creditors' Committee shall remain a party in interest, with the right to be heard in all matters related to this Section 10.1.

    (c)    Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be Filed and served upon the Holders of each of the Claims to which objections are made by the later of (i) ninety (90) days after the Effective Date or (ii) ninety (90) days after a timely Proof of Claim or request for payment with respect to such Claim is Filed; provided, however, that the Creditor Trust and Eddie Bauer Holdings may seek an extension of such time to object.

    (d)    Except as set forth in this Plan or the Confirmation Order, nothing in this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtors had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim.  Except as set forth in this Plan or the Confirmation Order, upon Confirmation, the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust and Eddie Bauer Holdings, each on behalf of itself

and/or any of the foregoing parties, shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses of any of the Debtors, which shall be vested in the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust and Eddie Bauer Holdings upon the occurrence of the Effective Date.

Section 10.2    <u>Estimation of Claims</u>

Eddie Bauer Holdings and the Creditor Trust may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Creditor Trust or Eddie Bauer Holdings may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

Section 10.3    <u>Cumulative Remedies</u>

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved as provided herein or by any mechanism approved by the Bankruptcy Court.  Until such time as a Claim becomes Allowed, such Claim shall be treated as a Disputed Claim for purposes related to allocations, Distributions and voting under this Plan.

Section 10.4    <u>Allowance of Claims</u>

(a)    <u>Disallowance of Claims</u>.  Pursuant to sections 105 and 502(d) of the Bankruptcy Code, no Distributions shall be made to Holders of Claims held by Entities from which property is recoverable under section 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code (including the Rights of Action) until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due to any of the Debtors are turned over to the Debtors (on or prior to the Effective Date) or Eddie Bauer Holdings (after the Effective Date).

(b)    <u>Allowance of Claims</u>.  Except as expressly provided in this Plan, no Claim shall be deemed Allowed by virtue of this Plan, Confirmation, or any order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim is deemed Allowed under the Bankruptcy Code.

(c)    <u>No Distribution Pending Allowance</u>.  If any Claim is a Disputed Claim or Unresolved Claim, no Distribution provided hereunder shall be made on account of such Claim unless such Claim becomes an Allowed Claim.

Section 10.5  <u>Personal Injury Claims</u>

No Distributions shall be made on account of any Personal Injury Claim unless and until such Claim is liquidated and becomes an Allowed Claim.  Any Personal Injury Claim that has not been liquidated prior to the Effective Date and as to which a proof of claim was timely Filed, shall be determined and liquidated in accordance with the ADR Procedures.  Any Personal Injury Claim determined and liquidated in accordance with the ADR Procedures, shall be paid as follows:  (a) to the extent such Personal Injury Claim is, in whole or in part, an Insured Personal Injury Claim, the insured portion shall be paid by the applicable insurer pursuant to the provisions of the applicable insurance policies; and (b) to the extent any portion of such Personal Injury Claim is not an Insured Personal Injury Claim, such portion shall be deemed, to the extent applicable, an Allowed Claim in Class 4 (General Unsecured Claims) and treated in accordance with Section 4.5 of this Plan.  Nothing contained in this Section 10.5 shall constitute or be deemed a waiver (i) of any claim, right, or Right of Action that the Debtors may have against any person in connection with or arising out of any Personal Injury Claim, including, without limitation, any rights under section 157(b) of title 28 of the United States Code; (ii) of any claim, right, or Right of Action that the Debtors or any entity may hold against any other entity, including, without limitation, insurers under any policies of insurance; or (iii) by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE XI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 11.1  <u>Rejection of Executory Contracts and Unexpired Leases</u>

Immediately prior to the Effective Date, all executory contracts and unexpired leases of the Debtors will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code pursuant to this Plan except those executory contracts and unexpired leases that (i) have been previously rejected or assumed by Final Order of the Bankruptcy Court, (ii) are the subject of a motion to reject or assume pending on the Effective Date, (iii) are to be assumed pursuant to the SHI Settlement, or (iv) are identified on the Cure Payment Schedule.  In the event the Debtors seek to assume and assign any executory contracts and unexpired leases, such contracts and leases shall be so identified in the Cure Payment Schedule together with the information regarding the proposed assignee required by section 365 of the Bankruptcy Code.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments, and rejections pursuant to sections 365(a), 365(f) and 1123 of the Bankruptcy Code.  The non-Debtor parties to any rejected subleases shall be responsible for taking all steps necessary to retrieve, at their expense, all personal property in, and to surrender, the premises that are the subject of such leases.

Section 11.2  <u>Assumption of Executory Contracts and Unexpired Leases</u>

All executory contracts and unexpired leases specially identified (i) on the Cure Payment Schedule, or (ii) in Section 2.3 of this Plan, shall be deemed automatically assumed

(and to the extent applicable, assigned) in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code pursuant to this Plan as of the Effective Date. Each executory contract and unexpired lease assumed pursuant to this Article XI shall revest in and be fully enforceable by the applicable Reorganized Debtor or Creditor Trust Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law. Notwithstanding the foregoing, each executory contract and unexpired lease to which a Canadian Debtor is a party shall be assumed as of the Effective Date, the Canadian Debtors shall cure all defaults under each such executory contract and unexpired lease (except for defaults of the kind set forth in section 365(b)(2) of the Bankruptcy Code) and each executory contract and unexpired lease shall be binding on the Canadian Debtor and other Entities party thereto as of the Effective Date. No Person who is a party to, or is entitled to any benefit from, any such contract or lease shall, on or following the Effective Date, accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right, directly or indirectly, in any manner whatsoever under or in respect of any such contract or lease by reason of the effect on the Canadian Debtors of the completion of any of the transactions contemplated under this Plan. This Section 11.2 may not be amended with regard to a Canadian Debtor without the approval of the Canadian Court.

Section 11.3   Claims Based on Rejection of Executory Contracts or Unexpired Leases

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed within thirty (30) days after the later of (i) the entry of entry of an order of the Bankruptcy Court approving such rejection or (ii) the effective date of such rejection; provided, however, that all proofs of claim with respect to any Claims arising from the rejection of any executory contract or unexpired lease that is initially set forth in the Cure Payment Schedule Filed by the Debtors and is subsequently withdrawn from such schedule or is otherwise rejected must be Filed within thirty (30) days after the later of the Effective Date and the date the order authorizing such rejection becomes a Final Order. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such time shall be forever barred from assertion against the Debtors, their respective Estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust and the Trustees and their property unless otherwise ordered by the Bankruptcy Court or provided for in this Plan. All such Allowed Claims for which proofs of claim are required to be Filed will be treated as Allowed General Unsecured Claims subject to the provisions of Article IV of this Plan and to any limitation on allowance of such Claims under section 502(b) of the Bankruptcy Code or otherwise.

Section 11.4   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

(a)   Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to this Plan is in default shall be the exclusive obligation of the applicable Reorganized Debtor or Creditor Trust Debtor and shall be deemed satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the amount set forth on the Cure Payment Schedule, in Cash on the Effective Date or as soon as practicable thereafter or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree; provided, however, that if an objection to a cure payment set forth in the Cure Payment Schedule

(each a "<u>Cure Objection</u>") is timely Filed in accordance with this Section 11.4(a), then any such default shall be deemed satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, in accordance with the procedures set forth in Section 11.4(b) of this Plan.  Cure Objections must be Filed and served on counsel to the Debtors and the Creditors' Committee at the applicable addresses set forth in Section 15.11 of this Plan not later than five (5) business days prior to the Confirmation Hearing.  A party to an assumed executory contract or unexpired lease that has not timely Filed and served a Cure Objection shall be deemed to have waived its right to dispute the cure payment amount set forth in the Cure Payment Schedule.

(b)      In the event of a dispute regarding the amount of a cure payment, the applicable Reorganized Debtor or Creditor Trust Debtor shall pay (i) the amount of the proposed cure payment set forth in the Cure Payment Schedule on the earlier of the Effective Date and the date the applicable contract or lease is assumed, and (ii) any additional amounts set forth in a Cure Objection on the date an order resolving the dispute regarding the amount of the cure payment becomes a Final Order.  In the event of a dispute regarding (a) the ability of the applicable Reorganized Debtor, Creditor Trust Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (b) any other matter pertaining to assumption, the cure payment required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.  Nothing in this Plan or the Confirmation Order shall impair the rights of the parties under an assumed contract or lease with respect to amounts that are first billed or credited under such contract or lease after the date of the Cure Payment Schedule, including but not limited to any such amounts that are calculated based on reconciliations or adjustments with respect to periods ending prior to such date or including such date.  With respect to any cure payment owing under any executory contract or unexpired lease that is assigned by a Creditor Trust Debtor to a Reorganized Debtor, the Reorganized Debtor shall be responsible for making all cure payments.

(c)      Objections to an assignment set forth in the Cure Payment Schedule (each, an "<u>Assignment Objection</u>") must be Filed and served on counsel to the Debtors and the Creditors' Committee at the applicable addresses set forth in Section 15.11 of this Plan not later than five (5) business days prior to the Confirmation Hearing.  A party to an executory contract or unexpired lease that is designated as to be assigned on the Cure Payment Schedule who has not timely Filed and served an Assignment Objection shall be deemed to have waived its right to dispute such assignment.  In the event of a dispute regarding assignment of an executory contract or unexpired lease, the applicable Reorganized Debtor or Creditor Trust Debtor shall make any required cure payment after an order resolving the dispute and authorizing the assumption and assignment becomes a Final Order, <u>provided</u> that in the event a Reorganized Debtor is the assignee of such a contract, the Reorganized Debtor shall make the required cure payment.

Section 11.5  <u>Miscellaneous</u>

(a)      The Debtors reserve the right to File a motion not later than three (3) Business Days before the date of the Confirmation Hearing to assume or reject any executory contract or unexpired lease.  To the extent that the terms of any such motion conflicts with the terms of the Cure Payment Schedule, such motion shall control.

(b)     Listing an executory contract or unexpired lease on the Cure Payment Schedule shall not constitute an admission by any of the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust or Eddie Bauer Holdings that such contract or lease (including any related agreements that may exist) is an executory contract or unexpired lease, or that the applicable Debtor, Reorganized Debtor or Creditor Trust Debtor has any liability thereunder.

Section 11.6  Indemnification of Officers, Employees and Restructuring Committee Board Members

Subject to the provisions of this Section 11.6, the obligations of the Debtors to advance defense expenses to or indemnify any individual serving at any time after the Petition Date as an officer or employee of any Debtor and the Restructuring Committee Board Members shall, to the extent provided in a Debtor's constituent documents or by a written agreement with a Debtor or by state corporate law, as applicable, be assumed by Eddie Bauer Holdings, irrespective whether such advancement or indemnification is owed for an act or event occurring before or after the Petition Date; provided, however, that (i) Eddie Bauer Holdings shall have no obligation to advance to or indemnify any Excluded Defendant, any SHI Released Party or any Person who was an officer or employee of any Debtor after the Petition Date and is not a Claims Over Beneficiary; (ii) any individual who has received, or at any time requests, advancement or indemnification pursuant to this Section 11.6 shall provide reasonable cooperation with respect to the pursuit by the Creditor Trust of the Creditor Trust Rights of Action; and (iii) this Section 11.6 is without prejudice to any Person's right to reimbursement or indemnification under any insurance policy.  Notwithstanding the foregoing, (a) clause (ii) of the prior sentence shall not apply to any Restructuring Committee Board Member, (b) Eddie Bauer Holdings shall not assume any obligation to advance to or indemnify any Person with respect to any amounts owing under any judgment or settlement of any Claim asserted by any Holder of a Class 6 Equity Interest, and (c) with respect to any claims for advancement or indemnification that arose prior to February 27, 2003, Eddie Bauer Holdings shall only make a payment pursuant to this Section 11.6 after the individual requesting such advancement or indemnification first provides Eddie Bauer Holdings with such information as it shall reasonably require demonstrating that the individual has taken all reasonable actions to obtain payment under any applicable insurance policies, and that the insurer(s) under the policies have disclaimed coverage or have informed such individual that any available limits of liability under the applicable policies have been exhausted.  The individual will cooperate in any effort to recover any advanced or indemnified amount from any third party, including but not limited to any insurer, such cooperation to include, without limitation, at Eddie Bauer Holdings's request, assigning Eddie Bauer Holdings such rights of recovery or executing any documents that may be required.

Section 11.7  Compensation and Benefit Programs

(a)     Except as otherwise expressly provided herein, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, vacation, life and accidental death and dismemberment insurance plans (collectively, the "Benefit Programs") in effect as of the Effective Date shall be treated as executory contracts under this Plan and on the

Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code and shall be transferred to Eddie Bauer Holdings.

(b)     As of the date hereof, Spiegel, Inc. is the contributing sponsor of the Spiegel, Inc. Pension Plan (the "Pension Plan"), a defined benefit pension plan insured by the Pension Benefit Guaranty Corporation under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461, et seq. On and after the Effective Date, Eddie Bauer Holdings shall be the sponsor of the Pension Plan.

## ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THIS PLAN

Section 12.1  Conditions Precedent to Confirmation Date of This Plan

The occurrence of the Confirmation Date is subject to satisfaction of the following conditions precedent:

(a)     the entry of the Confirmation Order (i) in form and substance reasonably acceptable to the Debtors and the Creditors' Committee, (ii) in form and substance reasonably acceptable to SHI solely with respect to the Confirmation Order and this Plan incorporating the provisions of the SHI Settlement Term Sheet (including the releases contemplated therein) and this Plan being otherwise consistent with the SHI Settlement Term Sheet, and (iii) which approves the SHI Settlement as a good faith settlement;

(b)     neither the Debtors nor the Creditors' Committee having commenced or filed a motion seeking authority to commence: (i) any action against any Released Party; or (ii) to take discovery from any Released Party; and

(c)     the Confirmation Date occurring on or before June 30, 2005.

Section 12.2  Conditions Precedent to Effective Date of This Plan

The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)     Confirmation Order as Final Order:  The Confirmation Order shall (i) in form and substance be reasonably acceptable to the Debtors and the Creditors' Committee; (ii) in form and substance be reasonably acceptable to SHI solely with respect to the Confirmation Order incorporating the provisions of the SHI Settlement Term Sheet (including, without limitation, the releases contemplated therein), and being otherwise consistent with the SHI Settlement Term Sheet; and (iii) approve the SHI Settlement as a good faith settlement, and (iv) be a Final Order.

(b)     Canadian Confirmation Order as Final Order:  The Canadian Confirmation Order shall (i) in form and substance be reasonably acceptable to the Debtors and the Creditors' Committee; in form and substance be reasonably acceptable to (ii) SHI solely with respect to the

Canadian Confirmation Order incorporating the provisions of the SHI Settlement Term Sheet (including, without limitation, the releases contemplated therein), and being otherwise consistent with the SHI Settlement Term Sheet; (iii) approve the SHI Settlement as a good faith settlement, and (iv) be a Final Order.

(c)    <u>Execution of Documents; Other Actions</u>:  All other actions and documents necessary to implement this Plan shall have been effected or executed.

(d)    <u>Absence of Certain Actions</u>:  neither the Debtors nor the Creditors' Committee shall have commenced or filed a motion seeking authority to commence (i) any action against any SHI Released Party, or (ii) to take discovery from any SHI Released Party.

(e)    <u>Occurrence of Effective Date</u>:  The Effective Date shall occur on or before July 31, 2005.

Section 12.3  <u>Waiver of Conditions Precedent</u>

To the extent legally permissible, each of the conditions precedent in Sections 12.1 and 12.2 of this Plan may be waived, in whole or in part, by the Debtors with consent of the Creditors' Committee, and of SHI solely with respect to the conditions precedent in Sections 12.1 and 12.2(a), (b), (d) and (e).  Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than proceeding to act as if the condition no longer existed.

## ARTICLE XIII

## <u>INJUNCTIONS, RELEASES AND INDEMNIFICATIONS AND EFFECTIVE DATE OF THIS PLAN</u>

Section 13.1  <u>Injunction</u>

**(a)    Except as otherwise expressly provided in this Plan or to enforce any obligation of any Entity under this Plan, all Entities who have held, hold or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from:  (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust or the Trustees against the property or interests in property of any of the foregoing Entities; (iv) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims, Equity Interests which are extinguished or released pursuant to this Plan; and (v) taking any actions to interfere with**

the implementation or consummation of this Plan that do not conform to or comply with the provisions of this Plan.

**(b)     With respect to any actions or controversies against the Creditor Trust, the Trustees or the Plan Oversight Committee, all Persons and Entities shall be and are permanently enjoined from commencing or continuing any such matter except in the Bankruptcy Court and the Bankruptcy Court shall retain exclusive jurisdiction over such matters; <u>provided</u>, <u>however</u>, that this Section 13.1(b) shall not prevent any Excluded Defendant from asserting defenses in any court adjudicating claims brought by the Creditor Trust against such Excluded Defendant, to the extent such defenses are not discharged or released pursuant to this Plan and the Confirmation Order.**

Section 13.2   <u>Discharge</u>

**(a)     Except for Distributions under this Plan, and as otherwise provided in this Plan or in the Confirmation Order, on the Effective Date, the Confirmation Order shall operate as a discharge under section 1141(d)(1) of the Bankruptcy Code, and as a release of any and all debts (as such term is defined in section 101(12) of the Bankruptcy Code) of, and Claims against, one or more of the Debtors that arose at any time before the Confirmation Date, including, but not limited to, all principal and interest, whether accrued before, on or after the Petition Date, regardless of whether (i) a proof of claim in respect of such Claim has been Filed or deemed Filed, (ii) such Claim has been Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on this Plan or has voted to reject this Plan.  Without limiting the generality of the foregoing, on the Effective Date, the Debtors shall be discharged from any debt that arose before the Confirmation Date and any debt of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code and shall have all of the benefits and protections set forth in section 1141(d)(1) of the Bankruptcy Code.  Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any manner the discharge granted upon Confirmation of this Plan pursuant to section 1141 of the Bankruptcy Code.**

(b)     The discharge and release of the Debtors as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover claims against any Debtor or any other Person.  The discharge and release of the Debtors as provided in this Plan shall not diminish or impair any claims arising after the Petition Date with respect to the non-monetary obligations of the Reorganized Debtors or the Creditor Trust Debtors under any insurance policy.  The insurers under all policies to which the Debtors are a party will continue to be responsible for insurance claims, including, without limitation, future claims, in accordance with the terms of the insurance policies and the requirements of state and other applicable law, notwithstanding the effect of the discharge and release under this Plan on any requirement under the insurance policies that the Debtors first satisfy any monetary obligations.

Section 13.3   <u>Releases by the Debtors</u>

**(a)     On the Effective Date, the Debtors, on their own behalf and as representatives of the Estates, release unconditionally, and are hereby deemed to release**

54

unconditionally, each of the Post-Petition Released Parties from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or after the Petition Date through and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the management and operation of the Debtors, the formulation, negotiation, and implementation of this Plan, Confirmation or Consummation, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.

(b)    On the Effective Date, the Debtors, on their own behalf and as representatives of the Estates, release unconditionally, and are hereby deemed to release unconditionally, each of Pre-Petition Released Parties from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with or relating to Spiegel, Inc. or any of its direct or indirect subsidiaries.

(c)    The Confirmation Order shall contain a permanent injunction to effectuate the releases granted in this Section 13.3.

Section 13.4    SHI Settlement Releases

(a)    On the Effective Date, the Debtors, on their own behalf and as representatives of the Estates, and any of the Debtors' direct or indirect non-debtor subsidiaries and the Creditors' Committee or any other entity acting on any of their behalves, release unconditionally, and are hereby deemed to release unconditionally, each of the Released Parties from any and all claims (including, without limitation, derivative claims), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place during the period beginning at the beginning of time through and including the Effective Date; **provided**, **however**, that such released claims shall not include (i) any claims asserted by FCNB against SHI in the lawsuit between such parties pending in the United States District Court for the District of Oregon, and (ii) any claims by the Debtors with respect to the obligation of SHI or its designee to make the Cash Settlement Payment on the Effective Date in accordance with the terms and conditions of this Plan.

(b)    On the Effective Date, each Holder of a Claim (but not shareholders or former shareholders of Spiegel, Inc. solely in their capacity as shareholders or former shareholders of Spiegel, Inc. or any Governmental Unit) shall be deemed to have unconditionally released each of the Released Parties from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including

those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place during the period beginning at the beginning of time through and including the Effective Date and related to the Debtors or their direct or indirect subsidiaries, including, but not limited, to Contribution Claims. This release shall apply to: (i) any Person or Entity that is or was the Holder of a Claim on or after the Petition Date and (ii) to any Person or Entity acquiring a Claim directly or indirectly from a Person or Entity that is bound by the release pursuant to this section 13.4(b) as if such acquiring Person or Entity had agreed to be bound to such release with respect to such acquired Claim; provided, however, that the release pursuant to this Section 13.4(b) shall have no effect on the liability of any Post-Petition Released Party who is not an SHI Released Party that results from any of such Post-Petition Released Party's act or omission after the Petition Date that is determined in a Final Order to have constituted gross negligence or willful misconduct.

(c)    On the Effective Date, the Released Parties release unconditionally, and are hereby deemed to release unconditionally, the Debtors from any and all claims, obligations, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, solely for reimbursement or indemnification under the bylaws of such entities or applicable statute (including, but not limited to, claims that relate to pre-Effective Date activity and, therefore, arose before the Effective Date, but involve expenses actually incurred after the Effective Date); provided, however, such released claims for reimbursement or indemnification shall not include (i) claims to the extent covered by insurance, (ii) SHI's claims in its lawsuit against FCNB in the United States District Court for the District of Oregon, (iii) claims held by Restructuring Committee Board Members, and (iv) claims held by Persons who served as officers of the Debtors at any time after the Petition Date.

(d)    On the Effective Date, the Released Parties release unconditionally, and are hereby deemed to release unconditionally, all claims (including, without limitation, derivative claims), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, existing or arising on or before the Effective Date against the Creditors' Committee, each of the Creditors' Committee's members, and the Creditors' Committee's professionals, including the Creditors' Committee's attorneys, financial advisors and investment banker (but only to the extent such claims relate to a Creditors' Committee member's acts in its official capacity as a Creditors' Committee member or such professional's acts as a professional for the Creditors' Committee).

(e)    On the Effective Date, the SHI Released Parties release unconditionally, and are hereby deemed to release unconditionally, all claims (including, without limitation, derivative claims), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, existing or arising on or before the Effective Date against the Debtors, and the Debtors' direct and indirect non-debtor subsidiaries, and each of their respective officers,

directors, employees, members, agents, brokers, financial advisors, restructuring advisors, investment bankers, auditors or attorneys (but only to the extent such claims relate to acts or omissions in such person's capacity with respect to a Debtor or non-debtor subsidiary prior to or on the Effective Date); provided, however, that such released claims shall not include (i) the Otto KG Goods Unsecured Claims and the SHI Unsecured Claims, (ii) any claims against the Excluded Defendants, (iii) any claims against any Person who, during the period beginning June 1, 2004, served as an officer and/or director of Retailer Financial Products, Inc. and/or Gemini Credit Services, Inc. and not as an officer and/or director of any other Debtor, (iv) claims to the extent covered by insurance, (v) any claims arising after the Petition Date under any Buying Agency Agreement, the Germany Joint Venture Agreement, or the Japan Joint Venture Agreement, and (vi) SHI's claims in its lawsuit against FCNB in the United States District Court for the District of Oregon.

(f)     The Confirmation Order shall contain a permanent injunction to effectuate the releases granted in this Section 13.4.

(g)     Notwithstanding anything to the contrary in this Section 13.4, the provisions of this Section 13.4 shall only take effect as of the date the Debtors receive the Cash Settlement Payment.  The releases provided in this Section 13.4 (or any other Section or provision of this Plan) or any Order confirming the Plan do not release the claims asserted or to be asserted in the Federal Securities Class Action against any non-Debtors, by or on behalf of present or former shareholders of Spiegel, Inc. solely in their capacity as present or former shareholders of Spiegel, Inc.

Section 13.5  Claims Over Protection

(a)     On the Effective Date, each Holder of a Claim that is an Excluded Defendant shall be deemed to have unconditionally released each of the Released Parties from all liability for any judgment obtained by the Creditor Trust against such Excluded Defendant to the extent, if any, that a court determines that such Excluded Defendant would have had (absent the SHI Settlement which is incorporated in this Plan) a claim against any Released Party for contribution or indemnification, or any other basis to contribute to satisfy that judgment (any such claim,  a "Contribution Claim").

(b)     In the event the Creditor Trust obtains a judgment against any Person or Entity, including without limitation, any Excluded Defendant (the "Creditor Trust Judgment") and if, notwithstanding the releases provided pursuant to Section 13.4 (a) and (b) and Section 13.5(a) of this Plan and any bar to Contribution Claims arising under applicable law by reason of the good faith SHI Settlement, such Person or Entity in turn obtains a judgment or finding against a Claims Over Beneficiary (or against another Person or Entity who obtains a judgment or finding against a Claims Over Beneficiary whether in the action commenced by the Creditor Trust or in a separate action) based on a Contribution Claim or other claim seeking to hold such Claims Over Beneficiary liable for some or all of the Creditor Trust Judgment (a "Claims Over Determination"), then and in such event, the Creditor Trust shall reduce the Creditor Trust Judgment for the benefit of the Claims Over Beneficiary and in satisfaction of the Claims Over Determination by an amount or to an extent equal to the Claims Over Determination.  The term "such Person or Entity" in the foregoing sentence shall include any other Person or Entity sued

directly or through an intermediary for contribution or indemnification for a judgment or finding obtained by the Creditor Trust and shall encompass Persons or Entities whether or not they are Holders of a Claim.  Pursuant to this paragraph, a Claims Over Beneficiary will not incur any liability to any Person or Entity in connection with any Creditor Trust Judgment.  This paragraph is not intended to release the Excluded Defendants from liability or limit in any way the recovery of damages by the Creditor Trust from the Excluded Defendants, except as may result from the express provisions hereof.

(c)    Notwithstanding anything to the contrary in this Section 13.5, the provisions of this Section 13.5 shall only take effect as of the date the Debtors receive the Cash Settlement Payment.

Section 13.6  <u>Post-Petition Released Party Exculpation and Limitation of Liability</u>

**(a)    None of the Post-Petition Released Parties shall have or incur any liability to any Holder, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, including the formulating, negotiating or implementing of this Plan, the solicitation of acceptances of this Plan, the pursuit of Confirmation, Confirmation, Consummation, the administration of this Plan or the property to be distributed under this Plan and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities, as applicable, in the Chapter 11 Cases, under this Plan; <u>provided</u>, <u>however</u>, that the foregoing provisions of this Section 13.6(a) shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**(b)    Notwithstanding any other provision of this Plan, no Holder, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Post-Petition Released Party for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing this Plan, Consummation, Confirmation, or the administration of this Plan or the property to be distributed under this Plan; <u>provided</u>, <u>however</u>, that the foregoing provisions of this Section 13.6(b) shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**(c)    The Reorganized Debtors shall indemnify each Post-Petition Released Party exculpated pursuant to this Section 13.6 against, hold each such party harmless from, and reimburse each such party for, any and all losses, costs, expenses (including reasonable attorneys' fees and expenses), liabilities and damages sustained by such party arising from any liability described in this Section 13.6, excluding any liability that results from any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

Section 13.7  Reservation of Rights

(a)    Except as otherwise expressly provided in this Plan, no provisions of this Article XIII shall prohibit or restrain the prosecution of any Claims or Rights of Action against Excluded Defendants.

(b)    The express exception of Dr. Urs Aschenbrenner from the Excluded Defendants is not intended to, and does not, release the Excluded Defendants of any liability, including any liability for any alleged acts and omissions of Dr. Aschenbrenner.  The Debtors, the Debtors' direct and indirect non-debtor subsidiaries, the Creditors' Committee, and the successors or assignees of any of them expressly reserve all of their respective rights against the Excluded Defendants which are not being released pursuant to this Plan.

## ARTICLE XIV

## RETENTION OF JURISDICTION

Section 14.1  Retention of Jurisdiction

Except as otherwise provided in this Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan.  The Bankruptcy Court shall also have exclusive jurisdiction:

(a)    to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any of the Debtors was or is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(b)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with this Plan;

(c)    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by Eddie Bauer Holdings or the Creditor Trust after the Effective Date (to the extent such venue is selected by Eddie Bauer Holdings or the Creditor Trust, as the case may be);

(d)    to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(e)    subject to Section 15.10 of this Plan with respect to certain Canadian Entities, to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Equity Interests Filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify,

estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part;

      (f)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

      (g)      to issue orders in aid of execution of this Plan;

      (h)      to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

      (i)      to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

      (j)      subject to Section 15.10 of this Plan with respect to certain Canadian Entities, to hear and determine disputes arising in connection with or relating to this Plan, the interpretation, implementation or enforcement of this Plan, or the extent of any Entity's obligations incurred in connection with or released under this Plan;

      (k)      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

      (l)      subject to Section 15.10 of this Plan with respect to certain Canadian Entities, to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or the Disclosure Statement;

      (m)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

      (n)      to hear any other matter for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-Filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

      (o)      to enter a Final Decree closing the Chapter 11 Cases;

      (p)      to determine matters that may arise in connection with the Creditor Trust or the Creditor Trust Agreement;

      (q)      to determine and hear any actions or controversies by or against the Trustees or the Plan Oversight Committee; and

      (r)      subject to Section 15.10 of this Plan with respect to certain Canadian Entities, to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to Confirmation or Consummation or the formulation, preparation,

dissemination, implementation, administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including any other act or omission taken or to be taken in connection with the Chapter 11 Cases commenced against any party in the Chapter 11 Cases, including the Debtors and the Creditors' Committee, and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors and other professionals and Entities employed pursuant to sections 327 and 1103 of the Bankruptcy Code.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

Section 15.1    Modification of Plan

Subject to obtaining the approval of the Creditors' Committee, and, if such amendment or modification concerns the SHI Settlement, SHI, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  Claimants that have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim.

Section 15.2    Revocation or Withdrawal

This Plan may be revoked or withdrawn by the Debtors prior to the Confirmation Date.  If this Plan is revoked or withdrawn prior to the Confirmation Date, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

Section 15.3    Term of Existing Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to section 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

Section 15.4    Post-Effective Date Fees and Expenses

From and after the Effective Date, Eddie Bauer Holdings shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Reorganized Debtors related to implementation and consummation of this Plan.

Section 15.5   <u>Exemption from Registration</u>

> Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of (i) the Eddie Bauer Holdings Common Stock, (ii) Cash, (iii) the Creditor Trust Interests, and (iv) either (x) the Senior Facility Proceeds <u>or</u> (y) the Creditor Notes, on account of, and in exchange for, the Claims against the Debtors shall be exempt from registration pursuant to section 5 of the Securities Act and any other applicable non-bankruptcy law or regulation.

Section 15.6   <u>Section 1146 Exception</u>

> Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under this Plan (including, without limitation, the Eddie Bauer Holdings Common Stock, the Creditor Trust Interests, and, if applicable, the Creditor Notes), or the making or delivery of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

Section 15.7   <u>Severability</u>

> The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors and the Creditors' Committee and such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

Section 15.8   <u>Plan Supplement</u>

> The Plan Supplement shall be Filed no later than ten (10) days prior to the Voting Deadline and shall contain (i) forms of the Creditor Trust Agreement, the Eddie Bauer Holdings Certificate of Incorporation, the Eddie Bauer Holdings Bylaws and the Securitization Note, (ii) the principal terms and conditions of the Senior Debt Facility (if applicable) and the Working Capital Facility, (iii) the identity of the proposed senior officers and directors of Eddie Bauer Holdings, (iv) the identity and compensation of any insiders to be retained or employed by Eddie Bauer Holdings, (v) the Cure Payment Schedule, and (vi) a list of the Eddie Bauer Holdings Rights of Action; <u>provided</u>, <u>however</u>, that the Debtors may amend the documents contained in the Plan Supplement (other than the Cure Payment Schedule which may only be amended not later than ten (10) days prior to the date of the Confirmation Hearing), through and including the Effective Date in a manner consistent with this Plan and the Disclosure Statement through and including the Effective Date.  The Plan Supplement may also include such other documents as contemplated by this Plan.  Upon the Filing of the Plan Supplement, the Plan Supplement may be inspected in the Office of the Clerk of the Bankruptcy Court during normal court hours.

Section 15.9   <u>Governing Law</u>

> Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York.  This paragraph shall not

affect or alter the governing law, including the choice of law rules, applicable to all claims by, against or among the Excluded Defendants.

Section 15.10    <u>Reservation of Rights for Certain Canadian Creditors</u>

The rights of a Canadian Entity that is (i) the Holder of a Claim against a Canadian Debtor and (ii) not subject to personal jurisdiction in the Bankruptcy Court shall not be affected, solely with respect to such Claim, by this Plan, but such rights shall be subject to all orders and rulings of the Canadian Court regarding such Claim.  Notwithstanding the foregoing, all such Canadian entities shall be bound by all terms and provisions of this Plan, including, but not limited to, the SHI Settlement.

Section 15.11    <u>Notices</u>

All notices, requests and demands to or upon the Debtors, Eddie Bauer Holdings or the Creditor Trust to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following or, in the case of notice by facsimile transmission, when received by all of the following and telephonically confirmed, addressed as follows or to such other addresses as Filed.

To:

**On behalf of the Debtors:**

James L. Garrity, Jr.
Marc B. Hankin
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

**On behalf of the Creditors' Committee:**

Howard Seife
David M. LeMay
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

**On behalf of the U.S. Trustee:**

Deirdre A. Martini
OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street
Suite 2100
New York, NY  10004
Telephone:  (212) 510-0500
Facsimile:  (212) 668-2255

**On behalf of the Creditor Trust:**

At the address set forth in the Creditor Trust Agreement.

Section 15.12  <u>Closing of Cases</u>

The Reorganized Debtors and the Creditor Trust Debtors shall, promptly upon the full administration of the Chapter 11 Cases, File all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Cases.

Section 15.13  <u>Section Headings</u>

The section headings contained in this Plan are for reference purposes only and shall not affect the meaning or interpretation of this Plan.

Section 15.14  <u>Continuing Viability of Other Orders/Agreements</u>

Except to the extent expressly modified by this Plan, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between Creditors or between the Debtors and the Creditors shall continue in full force and effect.

**ARTICLE XVI**

**<u>CONCLUSION AND RECOMMENDATION</u>**

   The Debtors believe that this Plan is in the best interests of all Holders of Claims and urge the Holders of impaired Claims in Classes 4 and 5 to vote to accept this Plan and to evidence such acceptance by returning their Ballots so that they will be timely received.

Dated: Downers Grove, Illinois
   May 23, 2005

        NEWPORT NEWS, INC.


        By:  <u>/s/ James M. Brewster     </u>
           James M. Brewster
           Senior Vice President and Director


        SPIEGEL, INC.


        By:  <u>/s/ William Kosturos     </u>
           William Kosturos
           Interim Chief Executive Officer, Chief
           Restructuring Officer and Director


        SPIEGEL CATALOG, INC.


        By:  <u>/s/ James M. Brewster     </u>
           James M. Brewster
           Vice President and Director


        SPIEGEL PUBLISHING CO.


        By:  <u>/s/ James M. Brewster     </u>
           James M. Brewster
           Vice President and Director

ULTIMATE OUTLET INC.


By:    /s/ James M. Brewster
        James M. Brewster
        Vice President and Director


SPIEGEL CATALOG SERVICES, LLC


By:    /s/ James M. Brewster
        James M. Brewster
        Vice President and Director


SPIEGEL MARKETING CORPORATION


By:    /s/ James M. Brewster
        James M. Brewster
        Vice President and Director


SPIEGEL MANAGEMENT GROUP, INC.


By:    /s/ William Kosturos
        William Kosturos
        Interim Chief Executive Officer and Chief
        Restructuring Officer


EDDIE BAUER, INC.


By:    /s/ William Kosturos
        William Kosturos
        Chairman and Director


EDDIE BAUER DIVERSIFIED SALES, LLC


By:    /s/ James M. Brewster
        James M. Brewster
        President and Director

EDDIE BAUER INTERNATIONAL
DEVELOPMENT, LLC


By:    /s/ James M. Brewster
       James M. Brewster
       President and Director


EDDIE BAUER SERVICES, LLC


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


EDDIE BAUER OF CANADA, INC.


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


NEWPORT NEWS SERVICES, LLC


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


NEW HAMPTON REALTY CORP.


By:    /s/ James M. Brewster
       James M. Brewster
       Senior Vice President and Director


DISTRIBUTION FULFILLMENT SERVICES, INC.
(DFS)


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


67

SPIEGEL GROUP TELESERVICES, INC.


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


SPIEGEL GROUP TELESERVICES-CANADA, INC.


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


RETAILER FINANCIAL PRODUCTS, INC.


By:    /s/ James M. Brewster
       James M. Brewster
       Vice President and Director


GEMINI CREDIT SERVICES, INC.


By:    /s/ James M. Brewster
       James M. Brewster
       President and Director

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                            :
                                            :        Chapter 11
                                            :
In re:                                      :        Case No.  03 - 11540 (BRL)
                                            :
SPIEGEL, INC., et al.,                      :        (Jointly Administered)
                                            :
                       Debtors.             :
                                            :
                                            :
                                            :
-----------------------------------------------------------------x
```

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER PURSUANT TO 11 U.S.C. § 1129(a) AND RULE 3020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE CONFIRMING MODIFIED FIRST AMENDED JOINT PLAN OF REORGANIZATION OF AFFILIATED DEBTORS AND GRANTING RELATED RELIEF

### RECITALS

A.      On March 17, 2003 (the "Petition Date"), each of Spiegel, Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

B.      On March 24, 2003, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Creditors' Committee").  As of the date hereof, no request has been made for the appointment of a trustee or examiner in these cases.

C.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D.      As of the Petition Date, the Debtors operated their retail and catalog businesses through their three merchant divisions: Eddie Bauer, Spiegel Catalog, and Newport News. This Court has previously approved the sale of the Spiegel Catalog and Newport News businesses.

E.      Since the Petition Date, the Debtors have been working diligently to move their cases forward. On March 28, 2005, the Debtors filed their First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 3082) and accompanying First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the First Amended Joint Plan of Reorganization of Affiliated Debtors (Docket No. 3084) (as modified, amended or supplemented from time to time and including all exhibits and schedules thereto, the "Disclosure Statement"). On May 23, 2005, the Debtors filed a Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 3556) (the "Plan")[1] that incorporated certain non-material technical amendments and modifications.

F.      On June 13, 2003, Spiegel Group Teleservices-Canada, Inc. and Eddie Bauer of Canada, Inc. were granted ancillary relief by the Ontario Superior Court of Justice (the "Canadian Court") pursuant to section 18.6 of the (Canada) *Companies' Creditors Arrangement Act*. The Canadian Court has made a series of Orders more particularly described in the Disclosure Statement at pages 50 to 53. A condition precedent to the Effective Date of the Plan is that the Canadian Court enter the Canadian Confirmation Order that complies with the criteria set forth in Section 12.2(b) of the Plan, and the Canadian Confirmation Order be a Final Order. A hearing before the Canadian Court for confirmation of the Plan has been scheduled for May 27, 2005.

---

[1]      Unless otherwise specified, capitalized terms and phrases used herein have the meanings as defined in the Plan.

G.      On March 29, 2005, after due notice and a hearing held on March 29, 2005, this Court entered an order (Docket No. 3116) (the "Disclosure Statement Order") that, among other things, (a) approved the Disclosure Statement as containing adequate information, (b) fixed a voting record date, (c) approved solicitation packages (the "Solicitation Packages") and procedures for distribution thereof, (d) approved the forms of ballots (the "Ballots") and established procedures for voting on the Plan, (e) scheduled a hearing on May 25, 2005 at 10:00 a.m. (prevailing Eastern Time) to consider confirmation of the Plan (the "Confirmation Hearing") and (f) established notice and objection procedures in respect of confirmation of the Plan, including a form of confirmation hearing notice (the "Confirmation Hearing Notice").

H.      The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Disclosure Statement Order as evidenced by the Affidavit of Mailing of Kate Mailloux, dated and sworn April 11, 2005 (Docket No. 3176) and the Affidavit of Mailing of Kate Mailloux dated and sworn April 22, 2005 (Docket No. 3292) (together, the "BSI Affidavits").

I.      Adequate and sufficient notice of the Confirmation Hearing and other requirements and deadlines, hearings and matters described in the Disclosure Statement Order was provided in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.  As evidenced by the BSI Affidavits, the Confirmation Hearing Notice was mailed on or about April 5, 2005 to Holders of Claims against and Equity Interests in the Debtors and other parties in interest.  As evidenced by the Certifications of Publication filed with this Court on April 19, 2005 (Docket No. 3244) and the Affidavit of Publication filed with this Court on April 21, 2005 (Docket No. 3266) (collectively, the "Publication Affidavits"), the Confirmation Hearing Notice was published, on April 14, 2005 in *USA Today* (National Edition),

and on April 15, 2005 in *The New York Times* (National Edition), *The Wall Street Journal*
(National Edition), and *The Globe and Mail* (National Edition).  No other or further notice of the
Confirmation Hearing was or is required.

J.      On May 3, 2005, in accordance with the terms of the Disclosure Statement Order
and the Plan, the Debtors filed the Plan Supplement, which included, among other things, the
Cure Payment Schedule (Docket No. 3332).  On May 13, 2005, the Debtors filed certain
amendments to the Cure Payment Schedule (Docket No. 3415).  On May 20, 2005 the Debtors
filed certain amendments to the Plan Supplement (Docket No. 3527) (the "Amendments").  On
May 23, 2005, the Debtors filed an amended Creditor Trust Agreement (Docket No. 3527) (the
"Amended Creditor Trust Agreement").  On May 24, 2005 the Debtors filed a list summarizing
the experience of the proposed members of the Board of Directors of Eddie Bauer Holdings
(Docket No. 3579) (collectively with the Amendments and the Amended Creditor Trust
Agreement, the "Amendment to the Plan Supplement").

K.      The Disclosure Statement Order established March 29, 2005 as the record date
(the "Record Date") for determining which creditors are entitled to vote to accept or reject the
Plan and 4:00 p.m. (prevailing Eastern Time) on May 13, 2005 as the voting deadline to return
completed Ballots to the Debtors.  On May 20, 2005, the Debtors filed the Affidavit of
Cassandra Murray of Bankruptcy Services LLC Regarding the Methodology for the Tabulation
of and Results of Voting with respect to the First Amended Joint Plan of Reorganization of
Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code, dated and sworn to on May
19, 2005 (Docket No. 3517) attesting and certifying the method and results of the ballot
tabulation for the Classes of Claims entitled to vote to accept or reject the Plan (the "Voting

Report"). As evidenced by the Voting Report, ballots were tabulated in compliance with the

Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

L.    The Disclosure Statement Order established 4:00 p.m. (prevailing Eastern Time)

on May 13, 2005 as the deadline to object to confirmation of the Plan. The following objections

to confirmation of the Plan were filed:

| Objector | Date Filed | Docket No. |
|---|---|---|
| Iowa Department of Revenue | May 5, 2005 | (Docket No. 3338) |
| County of Denton, et al. (collectively, the "Texas Counties") | May 10, 2005 | (Docket No. 3370) |
| Lead plaintiffs in the Federal Securities Class Action | May 10, 2005 | (Docket No. 3371) |
| Woodlands Metro MUD, et al. (collectively, the "Taxing Entities") | May 11, 2005 | (Docket No. 3379) |
| Ohio Bureau of Workers' Compensation | May 12, 2005 | (Docket No. 3387) |
| EklecCo Newco, LLC, et al. (as defined therein, the "Pyramid Landlords") | May 12, 2005 | (Docket No. 3392) |
| Austin Central Appraisal District, et al. (the "Texas Taxing Authorities", and collectively with the Texas Counties and the Taxing Entities, the "Texas Taxing Entities") | May 12, 2005 | (Docket No. 3392) |
| Bankgesellschaft Berlin AG | May 13, 2005 | (Docket No. 3393) |
| CLPF-600 NMA, LLC | May 13, 2005 | (Docket No. 3395) |
| L & B One Pacific Place, Inc. | May 13, 2005 | (Docket No. 3403) |
| Illinois Department of Revenue | May 13, 2005 | (Docket No. 3413) |
| Kirkland & Ellis LLP ("K&E") | May 16, 2005[2] | (Docket No. 3425) |

---

[2]    K&E was granted an extension of time to file such objection by counsel to the Debtors.

| Objector | Date Filed | Docket No. |
|---|---|---|
| Mills Corporate Entities | May 19, 2005 | (Docket No. 3487) |
| Oracle USA, Inc. | May 20, 2005 | (Docket No. 3522) |

No other objections to confirmation of the Plan were filed.  All objections to confirmation of the Plan are collectively referred to herein as the "Objections."

M.       On May 23, 2005, the Debtors filed the (i) Memorandum of Law in Support of Approval of Confirmation of the First Amended Joint Plan of Reorganization of Affiliated Debtors (Docket No. 3558) and (ii) Debtors' Omnibus Response to Confirmation of the First Amended Joint Plan of Reorganization of Affiliated Debtors (Docket No. 3559) (together, the "Confirmation Papers").

N.       The Confirmation Hearing was held before this Court on May 25, 2005.

NOW, THEREFORE, this Court having reviewed and considered the Disclosure Statement, the Plan, the Plan Supplement and the documents contained therein, the Amendment to the Plan Supplement and the documents contained therein, the BSI Affidavits, the Publication Affidavits, the Voting Report, the Objections, the Confirmation Papers, and statements and comments regarding confirmation of the Plan; this Court having heard statements of counsel in support of and in opposition to confirmation of the Plan at the Confirmation Hearing; this Court having considered all testimony presented and evidence admitted at the Confirmation Hearing; this Court having taken judicial notice of the papers and pleadings on file in these Chapter 11 Cases; it appearing to this Court that (a) notice of the Confirmation Hearing was adequate and appropriate as to all parties to be affected by the Plan and the transactions contemplated thereby and (b) the legal and factual bases set forth in the Confirmation Papers and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation

thereon and good cause appearing therefor, this Court hereby makes and issues the following

Findings of Fact and Conclusions of Law:

<div align="center">

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

</div>

IT IS HEREBY FOUND AND DETERMINED THAT:

   1. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157,</u>

<u>1334(a), 1408 and 1409)</u>.  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28

U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding under 28 U.S.C.

§ 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies

with the applicable provisions of the Bankruptcy Code and should be confirmed, and such

jurisdiction does not conflict with the jurisdiction of the Canadian Court with respect to the

Canadian Debtors in respect of the Canadian Confirmation Hearing.  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in the Southern District of New York was

proper as of the Petition Date and continues to be proper.

   2. <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the

Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including,

without limitation, all pleadings and other documents filed, all orders entered, and all evidence

and arguments made, proffered or adduced at, the hearings held before this Court during the

pendency of the Chapter 11 Cases.

   3. <u>Transmittal and Mailing of Materials, Notice; Solicitation</u>.  The

Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the

Bankruptcy Rules and applicable nonbankruptcy law and the Disclosure Statement Order.  Such

transmittal and service of the Solicitation Packages were adequate and sufficient.  Adequate and

sufficient notice of the Confirmation Hearing was given in compliance with the Bankruptcy

Code, the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is

or shall be required.  Votes for acceptance and rejection of the Plan were solicited in good faith and such solicitation complied with sections 1125 and 1126 of the Bankruptcy Code, Rules 3017 and 3018 of the Bankruptcy Rules, all other applicable provisions of the Bankruptcy Code, the Disclosure Statement Order and all other applicable rules, laws and regulations.

4.    <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan,  have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

5.    <u>Modifications to the Plan</u>.  As disclosed on the record of the Confirmation Hearing, clause (v) of the definition of "Class 4 Distributable Cash" is amended to insert the phrase "or pursuant to a Final Order of the Bankruptcy Court" prior to the word "plus" at the conclusion of such clause.

6.    <u>Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    <u>Proper Classification of Claims and Equity Interests (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates six Classes of Claims and Equity Interests.  <u>See</u> <u>Plan</u> Articles III and IV.  The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate among Holders of Claims or Equity Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)        Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).

Article IV of the Plan specifies that each of Class 1, Class 2, and Class 3 is Unimpaired under the

Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)        Specification of Treatment of Impaired Classes (11 U.S.C.

§ 1123(a)(3)).  Article IV of the Plan designates each of Class 4, Class 5 and Class 6 as Impaired

and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying

section 1123(a)(3) of the Bankruptcy Code.

(d)        Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)).  The

Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in a

particular Class unless the Holder of a particular Claim or Equity Interest in such Class has

agreed to a less favorable treatment of its Claim or Equity Interest, thereby satisfying section

1123(a)(4) of the Bankruptcy Code.

(e)        Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan and

Plan Supplement provide adequate and proper means for implementation of the Plan, including,

but not limited to, (a) the substantive consolidation of the Debtors for all purposes related to the

Plan, including for purposes of voting, confirmation and distribution, (b) the restructuring

transactions contemplated by section 7.7 of the Plan, (c) entry into definitive documentation for

the Working Capital Facility, (d) entry into definitive documentation for the Senior Debt

Facility, (e) the issuance of Eddie Bauer Holdings Common Stock and (f) the establishment of

the Creditor Trust, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)        Charter Provisions (11 U.S.C. § 1123(a)(6)).  Section 7.12(a) of

the Plan provides that, on or as soon as reasonably practicable after the Effective Date, each of

the certificates of incorporation and bylaws for each of the Reorganized Debtors and, unless

dissolved on or as soon as practicable after the Effective Date, the Creditor Trust Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, including, without limitation, the prohibition against the issuance of nonvoting equity securities set forth in section 1123(a) of the Bankruptcy Code, subject to the further amendment of such certificates of incorporation and bylaws as permitted by applicable law.  Section 7.12(b) of the Plan provides that the Eddie Bauer Holdings Certificate of Incorporation and the Eddie Bauer Holdings Bylaws shall contain, among other things, provisions necessary to prohibit the issuance of nonvoting equity securities as required by section 1123(a) of the Bankruptcy Code, subject to the further amendment of such certificates of incorporation and bylaws as permitted by applicable law.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(g)    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).

Section 7.12(c) of the Plan provides that subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, a total of nine directors shall serve as the initial directors of Eddie Bauer Holdings, eight of which will be nominated by the Creditors' Committee.  The provisions of the Plan for the selection of directors and officers are consistent with the interests of creditors and equity security holders and with public policy as to the manner and selection of any officer, director or trustee and any successor thereto, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on the initial board of directors, board of managers or as the managing member, as applicable, of each of the Reorganized Debtors and the Creditor Trust Debtors or employed as an officer of the

Reorganized Debtors, and, to the extent such Person is an insider, the nature of any

compensation for such Person.  The classification and composition of the board of directors or

managing members, as appropriate, of each of the Reorganized Debtors and the Creditor Trust

Debtors are consistent with the applicable Amended Certificate of Incorporation and Bylaws.

Each such director, officer and managing member shall serve from and after the Effective Date

pursuant to the terms of the applicable Amended Certificate of Incorporation and Bylaws or

other applicable constituent documents or law.  Any directors, officers, or managing member of

a Debtor that will not continue in such capacity after the Effective Date with the applicable

Creditor Trust Debtor or Reorganized Debtor shall be deemed to have resigned from such

positions without the need for any corporate action on the part of the Debtors or documentation

of such resignations on the part of any party.

    7.  <u>Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the entities

submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure

Statement with the Clerk of the Court satisfies Bankruptcy Rule 3016(b).

    8.  <u>Bankruptcy Rule 3017</u>.  The Debtors have given notice of the

Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Disclosure Statement

Order.  The transmittal and service of the Solicitation Packages was in compliance with the

Disclosure Statement Order and adequate and sufficient under the Bankruptcy Rules and the

circumstances surrounding these Chapter 11 Cases.

    9.  <u>Bankruptcy Rule 3018</u>.  The solicitation of votes to accept or reject the

Plan solely from Holders of Allowed Claims in Classes entitled to vote to accept or reject the

Plan as of the Record Date satisfies Bankruptcy Rule 3018.  Votes to accept and reject the Plan

have been solicited and tabulated fairly, in good faith, and in a manner consistent with the
Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and industry practice.

      10.   <u>Debtors' Compliance with the Applicable Provisions of the Bankruptcy
Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the
Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

    (a)  the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper
proponents of the Plan under section 1121(a) of the Bankruptcy Code;

    (b)  the Debtors have complied with applicable provisions of the Bankruptcy Code, except
as otherwise provided or permitted by orders of the Court; and

    (c)  the Debtors have complied with the applicable provisions of the Bankruptcy Code,
including sections 1125 and 1126(b), the Bankruptcy Rules and the Disclosure Statement
Order in transmitting the Solicitation Materials and in soliciting and tabulating votes on
the Plan.

      11.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have
proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying
section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in
good faith, this Court has examined the totality of the circumstances surrounding the filing of the
Chapter 11 Cases and the formulation of the Plan.  The Chapter 11 Cases were filed and the Plan
was proposed with the legitimate and honest purposes of reorganizing the Debtors and
expeditiously making distributions to the Debtors' creditors.  The Debtors, the Creditors'
Committee and other interested parties and their respective agents, accountants, business
consultants, representatives, attorneys and advisors, through their participation in arms'-length
negotiations and preparation of the Plan and related documents, including those included in the
Plan Supplement, have participated in the Chapter 11 Cases in good faith and in compliance with
the applicable provisions of the Bankruptcy Code.

12. <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

13. <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. On May 20, 2005, the Debtors, as part of the Amendment to the Plan Supplement disclosed the identity and affiliations of any Person proposed to serve on the initial board of directors, board of managers or as the managing member, as applicable, of each of the Reorganized Debtors, the Creditor Trust Debtors and Eddie Bauer Holdings or employed as an officer of the same, and, to the extent such Person is an insider, the nature of any compensation for such Person.

14. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any change in rates subject to governmental regulation. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

15. <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis contained in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been challenged or controverted by other evidence, and (iii) establish that each Holder of a Claim or Equity Interest in an Impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the

amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

16.    Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)). Holders of Claims in Classes 1, 2 and 3 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Report, the percentages of Holders of Claims in Classes entitled to vote on the Plan that voted to accept or reject the Plan are as follows:

| Impaired Class of Claims | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) |
|---|---|---|
| Class 4 | 99.87% | 99.30% |
| Class 5 | 99.02% | 99.12% |

Accordingly, Holders of Claims in Classes 4 and 5 have each accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code.  Holders of Equity Interests in Class 6 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Plan therefore does not satisfy section 1129(a)(8) of the Bankruptcy Code.  Notwithstanding the lack of compliance of section 1129(a)(8) of the Bankruptcy Code with respect to Class 6, the Plan is confirmable because it satisfies section 1129(b)(1) of the Bankruptcy Code with respect to such Class, as set forth below.

17.    Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Expense Claims and Allowed Non-Tax Priority Claims pursuant to sections 3.2 and 4.1 of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Allowed Priority Tax Claims pursuant to section 3.6 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

18.      Acceptance of at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).  As set forth in the Voting Report, each of Class 4 and Class 5 has voted to accept the Plan and has accepted the Plan in requisite numbers and amounts without the need to include any acceptance of the Plan by any insider.  Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

19.      Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code because confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtors.  The Plan provides for, among other things, (i) the payment of the Cash Settlement Payment by SHI in the amount of $104 million, (ii) the availability of the Working Capital Facility in the amount of $150 million, and (iii) the availability of the Senior Debt Facility in the amount of $300 million on the Effective Date.  The record of these Chapter 11 Cases, including the financial projections attached as Exhibit F to the Disclosure Statement, supports that these amounts, existing cash balances, and projected revenue will be sufficient to meet the ongoing financial needs of the Reorganized Debtors and to implement the Plan.  The cash available to the Debtors from the Cash Settlement Payment, the Working Capital Facility, the Senior Debt Facility, and the Debtors' existing cash balances will be sufficient to make the distributions contemplated by the Plan.  The Plan presents a workable scheme of reorganization and is found and determined to be feasible.  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

20.      Payment of Certain Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under 28 U.S.C. § 1930 either have been paid or will be paid pursuant to Section 3.4 of the Plan.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

21.      Continuation of Retiree Benefits  (11 U.S.C. § 1129(a)(13)).  Section 11.7(a) of the Plan provides that, except as otherwise expressly provided therein, all employment

and severance policies, and all compensation and benefit plans, policies, and programs of the

Debtors applicable to their employees, retirees and non-employee directors and the employees

and retirees of their subsidiaries, including, without limitation, all savings plans, retirement

plans, healthcare plans, disability plans, severance benefit plans, incentive plans, vacation, life

and accidental death and dismemberment insurance plans in effect as of the Effective Date shall

be treated as executory contracts under the Plan and on the Effective Date will be assumed

pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code and shall be

transferred to Eddie Bauer Holdings.  Section 11.7(b) of the Plan further provides that Eddie

Bauer Holdings shall be the sponsor of the Spiegel, Inc. Pension Plan.  Thus, the requirements of

section 1129(a)(13) of the Bankruptcy Code are satisfied.

      22.    <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies all the

requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

      23.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.  The principal purpose of the

Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act, and no

governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan,

therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

      24.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based upon the record

before this Court, the Post-Petition Released Parties have participated in the solicitation of votes

for the acceptance or rejection of the Plan in good faith and in compliance with the applicable

provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e)

of the Bankruptcy Code and the exculpatory, indemnification and injunctive provisions set forth

in Article XIII of the Plan.

25. <u>Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b))</u>. As described in paragraphs 5 through 23 above, the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8). Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan. Each of Class 4 and Class 5, the only Impaired Classes other than Class 6, have voted to accept the Plan. With respect to Class 6, no Holders of Claims or Equity Interests that are subordinate to a Class 6 Equity Interest will receive or retain any property under the Plan. Accordingly, the requirements of section 1129(b)(2)(C)(ii) are satisfied with respect to Class 6, the Plan is fair and equitable with respect to such Class, and the Plan does not unfairly discriminate against such Class. Accordingly, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and shall be confirmed notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code.

26. <u>Exemption from Securities Laws</u>. The issuance and the distribution transfer or exchange thereof in accordance with the Plan and the Creditor Trust Agreement of the Eddie Bauer Holdings Common Stock and the Creditor Trust Interests pursuant to the terms of the Plan is on account of, and in exchange for, the Claims against the Debtors within the meaning of section 1145(a)(1) of the Bankruptcy Code. In addition, under section 1145 of the Bankruptcy Code, to the extent, if any, that the above-listed items constitute "securities" (A) the offering of such items is exempt and the issuance and distribution of such items will be exempt from Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities and (B) all of the above-described items (other than the Creditor Trust Interests) will be subject to, as applicable, the Eddie Bauer

Holdings Certificate of Incorporation and Bylaws and shall be further subject to (1) the

provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an

underwriter in Section 2(a)(11) of the Securities Act, (2) compliance with any rules and

regulations of the Securities and Exchange Commission, if any, applicable at the time of any

future transfer of such securities or instruments and (3) all applicable regulatory approvals.

      27.    <u>Rule 9019 Settlement of Claims and Controversies</u>.  The provisions of the

Plan constitute a good faith compromise and settlement of all claims or controversies relating to

the enforcement or termination of all contractual , legal and equitable subordination and turnover

rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or

Equity Interest, or any distribution to be made pursuant to the Plan on account of such Claim.

Such settlement, as reflected in the relative distributions and recoveries of Holders of Allowed

Claims under the Plan, (a) will save the Debtors and their estates the costs and expenses of

prosecuting various disputes, the outcome of which is likely to consume substantial resources of

the Debtors' estates and require substantial time to adjudicate, and (b) have facilitated the

creation and implementation of the Plan and benefits the Debtors' estates and creditors.  The

compromise or settlement of all such claims or controversies is approved under Rule 9019 of the

Bankruptcy Rules as being fair, equitable and reasonable and in the best interests of the Debtors,

the Reorganized Debtors, the Creditor Trust Debtors, and the Holders of Claims and Equity

Interests.

      28.    <u>Rule 9019 SHI Settlement</u>.  Pursuant to section 1123(b)(3) of the

Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates the SHI Settlement.  The SHI

Settlement plays an important part in the Plan, and absent the releases and corresponding

injunction that are critical components of the SHI Settlement, the Released Parties (including,

but not limited to, the Holders of the Otto KG Goods Unsecured Claims and the SHI Unsecured

Claims) would not be willing to enter into the SHI Settlement.  The SHI Settlement is the

compromise of disputed claims and a good faith settlement and release of those claims and

associated alleged injuries.  Such settlement, as reflected in the relative distributions and

recoveries of Holders of Allowed Claims under the Plan, (i) will save the Debtors and their

estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to

consume substantial resources of the Debtors' estates and require substantial time to adjudicate

and (ii) have facilitated the creation and implementation of the Plan and benefits the Debtors'

estates and creditors.  Accordingly, such settlement is fair, equitable and reasonable.

       29.   <u>Exit Financing</u>.  Except as otherwise provided in the Plan, on the Effective

Date, the Reorganized Debtors shall enter into definitive documentation with respect to the

Working Capital Facility and the Senior Debt Facility.  The Working Capital Facility and the

Senior Debt Facility were negotiated between the Debtors and the counterparties thereto in good

faith and at arms'-length.  The terms of the Working Capital Facility and the Senior Debt

Facility, together with the payment of fees and expenses thereunder, are fair and reasonable,

reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties,

and are supported by reasonably equivalent value and fair consideration.  The terms of the

Working Capital Facility and Senior Debt Facility are in the best interests of the Reorganized

Debtors, the Debtors, and their estates, creditors and other parties in interest.

       30.   <u>Assumed Executory Contracts and Unexpired Leases</u>.  The Plan satisfies

all requirements for the assumption of such contracts and leases contained in the Bankruptcy

Code, including, without limitation, the requirement to cure all outstanding defaults, if any, and

to provide adequate assurance of such contracts and leases.

31.    <u>Conditions to Confirmation</u>.  Entry of this Order shall satisfy the conditions set forth in Section 12.1(a) of the Plan.

32.    <u>Releases, Exculpations and Injunctions</u>.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, releases, discharges, exculpations, and injunctions set forth in the Plan and implemented by this Confirmation Order, including but not limited to the SHI Settlement, are fair, equitable, reasonable, in good faith and in the best interests of the Debtors and their estates, the Reorganized Debtors, the Creditor Trust Debtors, the Creditors' Committee, the Creditor Trust, Eddie Bauer Holdings, and Holders of Claims and Equity Interests.  The releases of non-Debtors under the Plan and related injunctions are fair to Holders of Claims and Equity Interests and are necessary to the proposed reorganization of the Debtors and the successful administration of their estates, thereby satisfying the requirements of <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285 (2d Cir. 1992), <u>In re Johns-Mansville</u>, 837 F.2d 89 (2d Cir. 1988), and <u>In re Ionosphere Clubs, Inc.</u>, 184 B.R. 648, 655 (S.D.N.Y. 1995).  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpations and injunctions provided for in Article XIII of the Plan.

33.    <u>Substantive Consolidation</u>.  The facts adduced by the Debtors during the Confirmation Hearing supporting the substantive consolidation of all of the Debtors for all purposes related to the Plan are persuasive and credible, have not been controverted by other persuasive evidence and have not been challenged, and provide an adequate basis for the substantive consolidation of all the Debtors as provided in the Plan.

34.    <u>The Plan and Amendment to the Plan Supplement</u>.  The technical modifications to the First Amended Joint Plan of Reorganization of Affiliated Debtors set forth

in the Plan, the Amendment to the Plan Supplement, and this Order do not materially or adversely affect or change the treatment of any Claim or Equity Interest. Accordingly, pursuant to Rule 3019 of the Bankruptcy Rules, these modifications and amendments do not require additional disclosure under section 1126 of the Bankruptcy Code nor do they require that Holders of Allowed Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan as distributed in the Solicitation Packages.

35. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law and shall also have exclusive jurisdiction over the matters set forth in Article XIV of the Plan subject to Section 15.10 of the Plan; *provided, however* that nothing in Section 14.1 of the Plan or this Order shall modify the Debtors' or Pyramid Landlords' rights under that certain Stipulation dated September 29, 2003 and so ordered as of September 30, 2003 (Docket No. 865).

## <u>DECREES</u>

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

36. <u>Confirmation</u>. The Plan is confirmed under section 1129 of the Bankruptcy Code. All objections to the Plan not heretofore withdrawn are overruled in their entirety.

37. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

38.  <u>Modifications to Plan</u>.  Upon entry of this Confirmation Order, the Debtors may, upon order of this Court and subject to Section 15.1 of the Plan, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  Claimants that have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim.

39.  <u>Plan Classification Controlling</u>.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications and amounts of Claims, if any, set forth on the Ballots returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual amount or classification of such Claims under the Plan for distribution purposes and (c) shall not be binding on the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings or the Creditor Trust except with respect to voting on the Plan.

40.  <u>Discharge of Debtors</u>.  Except as otherwise expressly provided in the Plan or this Confirmation Order, the discharge set forth in Section 13.2 of the Plan is approved; *provided* that nothing in this Section shall affect, limit, or enlarge the discharge provided to the Debtors under section 1141 of the Bankruptcy Code.

41.  <u>Binding Effect</u>.  Pursuant to section 1141 of the Bankruptcy Code, except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan and all

exhibits thereto (including the Plan Supplement and Amendment to the Plan Supplement) shall bind all Holders of Claims and Equity Interests.

42.    <u>Exemption from Certain Transfer Taxes</u>.  Pursuant to section 1146 of the Bankruptcy Code:  (a) the issuance, transfer or exchange of any securities, instruments or documents; (b) the creation of any other Lien, mortgage, deed of trust or other security interest; (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan; and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, this Confirmation Order, shall not be taxed under any law imposing a stamp tax or similar tax save and except such taxes, if any, as may be applicable under the applicable laws of Canada or any province thereof. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded is hereby ordered and directed to accept such instrument without requiring the payment of any stamp tax or similar tax. Eddie Bauer Holdings, the Reorganized Debtors, the Creditor Trust Debtors, and the respective agent lenders under the Working Capital Facility and the Senior Debt Facility are authorized to serve upon all filing and recording officers a notice, substantially in the form annexed hereto as <u>Exhibit A</u>, in connection with the filing and recording of any instrument hereunder in accordance

with the Plan, to evidence and implement the provisions of this paragraph. This Court retains
jurisdiction to enforce the foregoing authorization.

43.    Documentation. The Debtors, the Reorganized Debtors, the Creditor Trust
Debtors, and Eddie Bauer Holdings, as applicable, are authorized to execute, deliver, file or
record such contracts, instruments, releases, indentures and other agreements or documents of
take such actions as may be necessary or appropriate to effectuate and further evidence the terms
and conditions of the Plan and any securities issued pursuant to the Plan.

44.    Substantive Consolidation. The estates of the Debtors shall be
substantively consolidated for all purposes related to the Plan, including for purposes of voting,
Confirmation, and Distribution. On and after the Effective Date and except with respect to SHI
Unsecured Claims, (a) all assets and liabilities of the Debtors shall be treated as though they
were merged, (b) no Distributions shall be made under the Plan on account of any Claim held by
any Debtor against any other Debtor, (c) all guarantees of any Debtor of any obligation of any
other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof
expected by any other Debtor and any joint or several liability of any of the Debtors shall be one
obligation of the Debtors, and (d) each and every Claim Filed or to be Filed against any of the
Debtors shall be deemed Filed against the Debtors, and shall be one Claim against and an
obligation of the Debtors. The substantive consolidation effected pursuant this Confirmation
Order and Section 7.1(a) of the Plan shall not (other than for purposes related to funding
Distributions under the Plan and as set forth above in Section 7.1 of the Plan) affect: (i) the legal
and organizational structure of the Debtors (which structures will be reorganized in the manner
set forth in Section 7.7 of the Plan), (ii) defenses to any Right of Action or requirements for any
third party to establish mutuality in order to assert a right of setoff, (iii) Distributions out of any

insurance policies or proceeds of such policies, and (iv) the obligation of any Debtor,

Reorganized Debtor, or Creditor Trust Debtor to pay quarterly fees to the Office of the U.S.

Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is

closed, dismissed or converted.

      45.    <u>Cancellation of Intercompany Claims</u>.  On the Effective Date, all

Intercompany Claims shall be eliminated and extinguished.

      46.    <u>Cancellation of Notes, Instruments, Common Stock and Stock Options</u>.

On the Effective Date, except to the extent provided otherwise in the Plan or this Confirmation

Order, and provided that the treatments provided for therein and the Distributions contemplated

by Article IV of the Plan are made and transactions in Section 7.7 of the Plan are consummated

(i) all notes, instruments, certificates, guaranties and other documents evidencing Claims in any

of the Debtors shall be cancelled and deemed terminated; (ii) all Equity Interests in Spiegel, Inc.

shall be cancelled and deemed terminated; and (iii) all options, warrants, conversions, privileges

or other legal or contractual rights to acquire any Equity Interests in any of the Debtors shall be

cancelled and deemed terminated.

      47.    <u>Rule 9019(a) Settlement</u>.  The provisions of this Plan constitute a good

faith compromise of all Claims or controversies relating to the contractual, legal and

subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with

respect thereto, or any Distribution to be made on account of such an Allowed Claim.  The entry

of this Confirmation Order constitutes this Court's approval of the compromise or settlement of

all such Claims or controversies, and this Court's finding that such compromise or settlement is

in the best interests of the Debtors, their estates and Holders of Claims, and is fair, equitable and

reasonable.  This Court has found that the settlements embodied in the Plan will save the Debtors

and their estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' estates and require substantial time to adjudicate. This Court has also found that such settlements have facilitated the creation and implementation of the Plan and benefit the creditors and shareholders of the Debtors.

48.    Dissolution of Creditors' Committee; Creation of Plan Oversight Committee and Creditor Trust; Trustees. The provisions of Sections 6.4, 7.9 and 7.10 of the Plan, including, without limitation, the dissolution of the Creditors' Committee, the creation of the Plan Oversight Committee and the Creditor Trust, and the appointment of the Trustees are hereby approved and found to be reasonable. Without the permission of this Court, no judicial, administrative, arbitral or other action or proceeding shall be commenced against either Trustee in its official capacity, with respect to its status, duties, powers, acts or omissions as a Trustee or against the Creditor Trust in any forum other than this Court.

49.    Restructuring Transactions. The mergers, transfers of assets, dissolutions, consolidations and other transactions contemplated in Section 7.7 of the Plan are approved and authorized in all respects.

50.    Reorganized Debtors and Creditor Trust Debtors as Separate Corporate Entities; Vesting and Revesting. The Debtors shall continue to exist after the Effective Date, with each Reorganized Debtor and Creditor Trust Debtor being a separate corporate entity with all the powers of a corporation or limited liability company under applicable law, as the case may be, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law on or after the Effective Date. Except as otherwise provided in the Plan and subject to the occurrence of the Effective Date, pursuant to sections 1123(a)(5) and 1141 of the Bankruptcy Code (a) the Equity Interests in or common stock of Eddie Bauer, Inc.,

Financial Services Acceptance Corporation and Spiegel Acceptance Corporation shall vest in Eddie Bauer Holdings or its successor, (b) the Equity Interests in Distribution Fulfillment Services, Inc. (DFS) and Spiegel Group Teleservices-Canada, Inc. shall vest in Reorganized Eddie Bauer, (c) the Equity Interests in each of the Creditor Trust Debtors, S.I. Reinsurance Limited, East Coast Collection Agency, Inc., Spiegel Credit Corporation III, First Consumers National Bank, The Spiegel Foundation, Spiegel Cares, Spiegel General Service, LLC and Together Retail U.S.A., Inc. shall vest in the Creditor Trust, (d) all of the Assets of each of the Debtors that will become Reorganized Debtors shall vest in such Reorganized Debtor or its successor, free and clear of all Claims, Liens, charges, encumbrances and interests of Creditors and Holders of Equity Interests on the Effective Date, (e) all Assets comprising the estate of each Creditor Trust Debtor (other than the Creditor Trust Rights of Action) shall vest in such Creditor Trust Debtor, (f) the Eddie Bauer Rights of Actions shall vest in Eddie Bauer Holdings and its subsidiaries, (g) the Creditor Trust Rights of Action shall vest in the Creditor Trust, in each case free and clear of all Claims, Liens, charges, encumbrances and interests of Creditors and Holders of Equity Interests on the Effective Date, and (h) each of the Creditor Trust Operating Expense Fund and the Disputed Claim Reserve shall vest in the Creditor Trust.  As of the Effective Date, Eddie Bauer Holdings, the Reorganized Debtors, and the Creditor Trust Debtors may operate their businesses and use, acquire and dispose of property, and settle and compromise Claims or Equity Interests without the supervision or approval of this Court and free and clear of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

51.    Section 13.1 Injunction.  Except as otherwise expressly provided in the Plan or to enforce any obligation of any Entity under the Plan, all Entities who have held, hold or

may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from:  (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (b) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust or the Trustees against the property or interests in property of any of the foregoing Entities; (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims, Equity Interests that are extinguished or released pursuant to the Plan; and (e) taking any actions to interfere with the implementation or consummation of the Plan that do not conform to or comply with the provisions of the Plan, *provided however*, the Pyramid Landlords are not enjoined from prosecuting that certain civil action pending in the United States District Court for the Northern District of New York, commenced by the Pyramid Landlords on or about May 17, 2002 (Index No. 5:02-cv-669) (the "Percentage Rent Action") and enforcing any recovery thereunder in accordance with the terms of the Plan.  With respect to any actions or controversies against the Creditor Trust, the Trustees or the Plan Oversight Committee, all Persons and Entities shall be and are permanently enjoined from commencing or continuing any such matter except in this Court and this Court shall retain exclusive jurisdiction over such matters; *provided however*, that (i) this ordered paragraph and Section 13.1(b) of the Plan shall not prevent any Excluded Defendant from asserting defenses in any court adjudicating claims brought by the Creditor Trust

against such Excluded Defendant, to the extent such defenses are not discharged or released

pursuant to the Plan and this Confirmation Order and (ii) the Pyramid Landlords are not enjoined

from prosecuting the Percentage Rent Action and enforcing any recovery thereunder in

accordance with the terms of the Plan.

52.    SHI Settlement.  The SHI Settlement is a good faith settlement and release

of claims and associated alleged injuries, is fair and reasonable and is accordingly approved in all

respects pursuant to Bankruptcy Rule 9019(a) and section 1123(b)(3)(A) of the Bankruptcy

Code.  This Court has found that (a) the SHI Settlement was reached as a result of arm's-length

good faith negotiations among the parties, (b) the SHI Settlement plays a vital part in the Plan,

and absent the releases and corresponding injunctions that are critical components of the SHI

Settlement, the Released Parties (including, but not limited to, the Holders of the Otto KG Goods

Unsecured Claims and the SHI Unsecured Claims) would not be willing to enter into the SHI

Settlement, and (c) such settlement, as reflected in the relative distributions and recoveries of

Holders of Allowed Claims under the Plan, (i) will save the Debtors and their estates the

substantial costs and expenses of prosecuting various disputes, the outcome of which is likely to

consume substantial resources of the Debtors' estates and require substantial time to adjudicate

and (ii) has facilitated the creation and implementation of the Plan and provided substantial

benefits to the Debtors' estates and creditors.  SHI or its designee shall pay the Cash Settlement

Payment to the Debtors on the Effective Date as provided in the Plan.

53.    Termination of TRO.  In accordance with section 2.8 of the Plan, the

portion of this Court's Order, dated June 27, 2003 (Docket No. 522), temporarily restraining

Deutsche Bank Trust Company Americas ("DBTCA") from transferring to SHI any assets held

in any escrow account, disbursement account and/or a custodial account created pursuant to that

certain Deposit Escrow and Custody Agreement among First Consumers National Bank, SHI, and Deutsche Bank Trust Company Americas, dated on or about May 14, 2002 (any such account, the "Escrow Account"), which order may have been extended indefinitely by this Court on the record at a hearing on July 8, 2003, shall be terminated as of the date of receipt by the Debtors of the Cash Settlement Payment.  No later than one business day after the Debtors' receipt of the Cash Settlement Payment, the Debtors shall provide DBTCA with written notice, with copies to SHI and the Committee, advising of the Debtors' receipt of the Cash Settlement Payment (the "Cash Settlement Receipt"), and upon receipt of the Cash Settlement Receipt by DBTCA, DBTCA shall be free to transfer all funds in the Escrow Account to SHI as instructed by SHI.

54.    Section 13.4(b) Injunction.  On the Effective Date, each Holder of a Claim (but not shareholders or former shareholders of Spiegel, Inc. solely in their capacity as shareholders or former shareholders of Spiegel, Inc. or any Governmental Unit) are hereby permanently enjoined from asserting any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place during the period beginning at the beginning of time through and including the Effective Date and related to the Debtors or their direct or indirect subsidiaries, including, but not limited, to Contribution Claims, against any of the Released Parties (the "Section 13.4(b) Injunction").  This Section 13.4(b) Injunction shall apply to: (i) any Person or Entity that is or was the Holder of a Claim on or after the Petition Date and (ii) to any Person or Entity acquiring a Claim directly or indirectly from a Person or Entity that is bound by the

release pursuant to Section 13.4(b) of the Plan as if such acquiring Person or Entity had agreed to be bound to such release with respect to such acquired Claim. Notwithstanding the foregoing, the Section 13.4(b) Injunction shall have no effect on the liability of any Post-Petition Released Party who is not an SHI Released Party that results from any of such Post-Petition Released Party's act or omission after the Petition Date that is determined in a Final Order to have constituted gross negligence or willful misconduct, and shall not apply with respect to any action against such Post-Petition Released Party in respect of such act or omission.

55.    <u>Other Injunctions</u>. All Persons or Entities that release claims pursuant to Sections 13.2, 13.3, 13.4 and 13.6 of the Plan are hereby permanently enjoined from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such released claims except as otherwise permitted pursuant to Section 2.6 of the Plan; (b) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order on such released claims; and (c) creating, perfecting, or enforcing any encumbrance of any kind on such released claims. Neither this injunction nor the Section 13.4(b) Injunction (or any other provision of this Confirmation Order or the Plan) enjoins the plaintiffs in Federal Securities Class Action from prosecuting the claims asserted or to be asserted in the Federal Securities Class Action against any non-Debtors, by or on behalf of present or former shareholders of Spiegel, Inc. solely in their capacity as present or former shareholders of Spiegel, Inc.

56.    <u>Releases</u>. Except as otherwise expressly provided in the Plan, this Confirmation Order or a separate order of this Court, the release provisions set forth in Article XIII of the Plan are approved.

57.    <u>Exculpation</u>.  Except as otherwise expressly provided in the Plan, this Confirmation Order or a separate order of this Court, the exculpation provisions set forth in Section 13.6 of the Plan are approved.

58.    <u>Preservation of All Rights of Action Not Expressly Settled or Released.</u> Unless a claim or Right of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, such claim or Right of Action shall be expressly reserved for later enforcement by Eddie Bauer Holdings and its subsidiaries (if such Right of Action constitutes an Eddie Bauer Right of Action) or the Creditor Trust (if such Right of Action constitutes a Creditor Trust Right of Action, including, without limitation, claims and Rights of Action not specifically identified or of which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Rights of Action upon or after Confirmation or Consummation based on the Disclosure Statement, the Plan or this Confirmation Order, except where such claims or Rights of Action have been expressly released in the Plan or other Final Order.  In addition, Eddie Bauer Holdings, its subsidiaries, and the Creditor Trust shall have the right to pursue or adopt any claims, crossclaims or counterclaims alleged in any lawsuit in which any of the Debtors are a defendant or an interested party against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions in the Plan, this Confirmation Order, or any Final Order.

59. <u>Continuation of Automatic Stay</u>. Except as otherwise expressly provided in the Plan, this Confirmation Order or a separate Order of this Court, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

60. <u>Provisions Regarding Distributions and Reserves</u>. The provisions contained in Articles IV and IX of the Plan, including without limitation, the provisions governing distributions and reserves, are found to be reasonable and are hereby approved. The Distribution Record Date shall be June 6, 2005.

61. <u>No Distributions to Class 6</u>. Pursuant to Section 4.7 of the Plan, Holders of Class 6 Equity Interests shall not receive or retain any property or Distributions under the Plan, including but not limited to the proceeds of any insurance policy to the extent they are or may be deemed to be property of the Debtors or of the Debtors' estates.

62. <u>Set-Offs</u>. Except as expressly provided in the Plan, the Debtors, Eddie Bauer Holdings and the Creditor Trust may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that any of the Debtors may hold against the Holder of such Allowed Claim. The Holders of Claims may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off any Allowed Claims such Holder possesses against the Debtors or any claim, rights or causes of action of any nature that the Debtors may hold against such Holder. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Eddie

Bauer Holdings, the Creditor Trust or such Holders of any such claims, rights and causes of action that such parties may possess under section 553 of the Bankruptcy Code. Notwithstanding anything to the contrary in Sections 4.3, 7.11 or 13.2 of the Plan, any rights of the Pyramid Landlords to setoff or recoupment in connection with that certain civil action pending in the United States District Court for the Northern District of New York styled *Brookstone Company, Inc., et al. v. Pyramid Company of Hadley, et al.*, (96-CV-1215) (the "Brookstone Action") and any rights of the Pyramid Landlords to setoff and recoupment against any claims of any of the Debtors or Reorganized Debtors asserted in the Brookstone Action are preserved and any defenses or counterclaims thereto of the Debtors, the Creditor Trust Debtors or the Reorganized Debtors hereby are preserved. The immediately preceding sentence shall be binding on the Creditor Trust.

63. Exemption from Securities Laws. Pursuant to section 1145(a) of the Bankruptcy Code, the offer, issuance, transfer or exchange of any security under the Plan (including, if applicable, the Creditor Trust Interests), or the making or delivery of an offering memorandum or other instrument of offer or transfer under the Plan, shall be exempt from section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer, or underwriter of, or broker or dealer in, or a security.

64. Issuance of Eddie Bauer Holdings Common Stock. Eddie Bauer Holdings is authorized to issue Eddie Bauer Holdings Common Stock as necessary to effectuate the Plan including any distributions thereunder. The issuance of the Eddie Bauer Holdings Common Stock and the distribution, transfer or exchange thereof in accordance with the Plan and the Creditor Trust Agreement shall be exempt from registration or similar requirement under

applicable securities laws (including, without limitation, section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145 of the Bankruptcy Code, and may be sold without registration to the extent permitted under section 1145 of the Bankruptcy Code.

65.    Management Stock Incentive Program.  Subject only to the occurrence of the Effective Date, the board of directors of Eddie Bauer Holdings shall have the authority to adopt the Management Stock Incentive Program.

66.    Procedures for Resolving Disputed Claims and Unresolved Claims.  The provisions contained in Article X of the Plan, including without limitation, the provisions governing the procedures for resolving Disputed Claims and Unresolved Claims, are found to be reasonable and are hereby approved.  All objections to Claims shall be Filed and served upon the Holders of each of the Claims to which objections are made by the later of (a) ninety days after the Effective Date or (b) ninety days after a timely Proof of Claim or request for payment with respect to such Claim is Filed; *provided, however*, that the Creditor Trust and Eddie Bauer Holdings may seek an extension of such time to object upon notice to all Holders of Unresolved Claims.

67.    Professional Compensation and Reimbursement Claims.  The provisions in Section 3.5 of the Plan are hereby approved and found to be fair and reasonable.  Except as otherwise provided by order of this Court for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 363, 503(b) and/or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must File and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final allowance of

compensation and reimbursement of expenses no later than forty-five days after the Effective

Date (collectively, the "Final Fee Applications").  Any objection to Professional Fee Claims

shall be written and Filed on or before the fifteenth day after the date such application for final

compensation or reimbursement has been Filed.  Any requirement set forth in the Interim

Compensation Order that Professionals or other entities requesting compensation or

reimbursement of expenses pursuant to sections 327, 328, 330, 331, 363, 503(b) and/or 1103 of

the Bankruptcy Code file interim fee applications before the deadline for the Filing of Final Fee

Application is hereby waived and such interim applications shall be incorporated in the Final Fee

Applications.

> 68.    Treatment of Iowa Department of Revenue and Illinois Department of
Revenue Claims.  Each Allowed Priority Tax Claim of the Iowa Department of Revenue and the

Illinois Department of Revenue shall be paid by Eddie Bauer Holdings or the Reorganized

Debtors, or if Allowed after the Effective Date, by the Creditor Trust, in full, in Cash, upon the

later of (i) the Effective Date, (ii) the date upon which there is a Final Order allowing such

Allowed Priority Tax Claim, (iii) the date such an Allowed Priority Tax Claim would have been

due and payable if the Chapter 11 Cases had not been commenced, or (iv) as may be agreed upon

between the Holder of such Allowed Priority Tax Claim and, as applicable, the Debtors or the

Creditor Trust.  The rights of (a) the Iowa Department of Revenue and the Illinois Department of

Revenue to assert that they are entitled to interest with respect to their Claims from the Effective

Date until the date that such Claims are paid and (b) the Debtors or the Creditor Trust to object to

such claim for post-confirmation interest are hereby preserved.

> 69.    Treatment of Texas Taxing Entity Claims.

(a)     The Claims of the Texas Taxing Authorities are Other Secured Claims and are included in Class 2 under the Plan.

(b)     On the Effective Date the Creditor Trust shall create, as part of the Disputed Claims Reserve, a separate escrow account  (the "Texas Taxing Entity Escrow Account"), and transfer into such account Cash from the Disputed Claims Reserve equal to the amount of the reserve established for the Other Secured Claims asserted by the Texas Taxing Entities.  On the Effective Date, the Liens, if any, that secure the Other Secured Claims held by the Texas Taxing Authorities shall attach to the Texas Taxing Entity Escrow Account to the extent that such liens were valid and properly perfected immediately prior to such date.

(c)     Each of the Texas Taxing Authorities shall receive interest on account of its Other Secured Claim from the Petition Date to the date such Claim is paid at a rate of 12%.

(d)     All taxes that may become due and owing to the Texas Taxing Entities for the 2005 tax year shall be paid by Eddie Bauer Holdings, Inc. in the ordinary course of its business pursuant to section 503(b) of the Bankruptcy Code without recourse to this Court.

(e)     Notwithstanding anything contained in the Plan or this Order to the contrary, the liens, if any, that secure any taxes that may become due and owing to the Texas Taxing Entities for the 2005 tax year are not released or primed pursuant to the Plan or this Order.

        70.    <u>Executory Contracts and Unexpired Leases</u>.  The provisions contained in Article XI of the Plan, including, without limitation, the provisions regarding the assumptions, assumptions and assignments, and rejections of the Debtors' executory contracts and unexpired

leases are hereby approved and found to be fair and reasonable. The assumptions, assumptions and assignments, and rejections of the Debtors' executory contracts and unexpired leases pursuant to the procedures set forth in Article XI of the Plan are hereby approved pursuant to sections 365 and 1123 of the Bankruptcy Code *provided*, *however*, that no unexpired leases or executory contracts to which the Canadian Debtors are party will be rejected pursuant to the Plan. Each executory contract and unexpired lease assumed pursuant to Article XI of the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor or Creditor Trust Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of this Court authorizing and providing for its assumption or applicable federal law. The amounts set forth in the Cure Payment Schedule (as amended) for the leases of the Pyramid Landlords are exclusive of any amounts that may be due or become due under such leases as sought in the Percentage Rent Action (such excluded amounts constitute cure claims under leases being assumed); *provided however*, that any such amounts shall be subject to recoupment against any amounts owing to the Reorganized Debtors under such leases pursuant to the Brookstone Action. Notwithstanding the foregoing, each executory contract and unexpired lease to which a Canadian Debtor is a party shall be assumed as of the Effective Date, the Canadian Debtors shall cure all defaults under each such executory contract and unexpired lease (except for defaults of the kind set forth in section 365(b)(2) of the Bankruptcy Code) and each executory contract and unexpired lease shall be binding on the Canadian Debtor and other Entities party thereto as of the Effective Date. No Person who is a party to, or is entitled to any benefit from, any such contract or lease shall, on or following the Effective Date, accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right, directly or indirectly, in any manner whatsoever under or in respect of any such contract or lease

by reason of the effect on the Canadian Debtors of the completion of any of the transactions contemplated under the Plan. All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed within thirty (30) days after the later of (a) the entry of entry of an order of this Court approving such rejection or (b) the effective date of such rejection; *provided, however*, that all proofs of claim with respect to any Claims arising from the rejection of any executory contract or unexpired lease that is initially set forth in the Cure Payment Schedule Filed by the Debtors and is subsequently withdrawn from such schedule or is otherwise rejected must be Filed within thirty (30) days after the later of the Effective Date and the date the order authorizing such rejection becomes a Final Order. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such time shall be forever barred from assertion against the Debtors, their respective estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust and the Trustees and their property unless otherwise ordered by this Court or provided for in the Plan. All such Allowed Claims for which proofs of claim are required to be Filed will be treated as Allowed General Unsecured Claims subject to the provisions of Article IV of the Plan and to any limitation on allowance of such Claims under section 502(b) of the Bankruptcy Code or otherwise.

71.    <u>Authorization to Take Acts Necessary to Implement Plan</u>. Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, each of the Debtors, the Reorganized Debtors, the Creditor Trust, the Creditor Trust Debtors, and Eddie Bauer Holdings hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan and any

matters under the Plan, and all documents, instruments and agreements related thereto, including but not limited to those contained in the Plan Supplement, and all annexes, exhibits, and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any shareholders' or board of directors' approval. Each of the Debtors, the Reorganized Debtors, the Creditor Trust, the Creditor Trust Debtors, and Eddie Bauer Holdings hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, file and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan, including but not limited to those contained in the Plan Supplement, and that may be required or necessary for its performance thereunder without the need for any shareholders' or board of directors' approval. On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors, the Creditor Trust, the Creditor Trust Debtors and Eddie Bauer Holdings and members of the boards of directors of the same are authorized and empowered to issue, execute, file and deliver the agreements, documents, securities and instruments contemplated by the Plan, including, but not limited to, those contained in the Plan Supplement, in the name of and on behalf of the Reorganized Debtors, the Creditor Trust Debtors and Eddie Bauer Holdings. Each of the Debtors, the Reorganized Debtors and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, or Eddie Bauer Holdings. Furthermore, pursuant to section 1142(b) of the Bankruptcy Code, the Managing Trustee shall be authorized and empowered to complete and execute on behalf of the Creditor Trust Debtors any document

necessary to carry out the provisions of the Plan, including but not limited to, state and federal tax returns.

72.    <u>Second Amended and Restated Loan and Security Agreement</u>.  The "Termination Date" of the Second Amended and Restated Loan and Security Agreement and the "Closing Date" of the Loan and Security Agreement shall both occur on the Effective Date.  On the Effective Date, if there are any Letters of Credit outstanding under the Second Amended and Restated Loan and Security Agreement or any unpaid Obligations under the Second Amended and Restated Loan and Security Agreement, the following shall occur:  (i) to the extent there are any undrawn Letters of Credit issued under the Second Amended and Restated Loan and Security Agreement outstanding on the Effective Date, the Debtors or Reorganized Debtors, as the case may be, shall either deposit with the Agent under the Second Amended and Restated Loan and Security Agreement cash in the amount of one hundred five percent (105%) of the face amount of each such undrawn Letter of Credit or provide to the Agent a "Supporting Letter of Credit" for each such outstanding Letter of Credit in accordance with section 2.3(k) of the Second Amended and Restated Loan and Security Agreement or, at the option of the Debtors and the Agent under the Working Capital Facility, shall be deemed to constitute Letters of Credit issued under the Working Capital Facility; (ii) to the extent there are any unpaid Obligations under the Second Amended and Restated Loan and Security Agreement on the Effective Date, such Obligations will be repaid by the Debtors on the Effective Date; and (iii) with respect to the Cash, if any, deposited with the Agent with respect to undrawn Letters of Credit that were outstanding on the Effective Date, any Cash that was deposited with the Agent with respect to a Letter of Credit that eventually expires without being drawn will be promptly delivered by the Agent to Reorganized Eddie Bauer upon the expiration of any such Letter of Credit.  In addition,

upon the completion of clauses (i) and (ii) in the immediately preceding sentence, the Agent

under the Second Amended and Restated Loan and Security Agreement shall terminate and

release its liens and security interests in the Collateral granted to it under the Second Amended

and Restated Loan and Security Agreement, the Final Bankruptcy Court Order and the

Confirmation of Borrowing Order, and the Debtors, on the one hand, and the Agent and the

Lenders, on the other hand, will release, remise and discharge each other, and their respective

officers, directors, agents, employees, servants, accountants, attorneys, parents, subsidiaries and

affiliates, from any and all claims, debts, liabilities, torts, claims for relief or causes of action

arising under or relating to the Second Amended and Restated Loan and Security Agreement or

the negotiation and documentation thereof, the administration thereof, of the payment or

enforcement thereof.

73.    <u>The Working Capital Facility</u>.  The terms and conditions of the Working

Capital Facility and any documents related thereto are approved and ratified as being entered into

in good faith and being critical to the success and feasibility of the Plan.  Eddie Bauer Holdings

and the Reorganized Debtors are hereby authorized to execute and deliver the loan and security

agreement for the Working Capital Facility, all mortgages, security documents and all other

related documents (the "<u>Working Capital Facility Documents</u>") and perform their obligations

thereunder.  The Working Capital Facility Documents shall constitute legal, valid, binding and

authorized obligations of Eddie Bauer Holdings or the Reorganized Debtors, as applicable,

enforceable in accordance with their terms.  On the Effective Date, all of the liens and security

interests to be granted in accordance with the Working Capital Facility Documents shall be

deemed approved and shall be legal, valid, binding and enforceable first priority liens on the

collateral for the Working Capital Facility (the "<u>Working Capital Facility Collateral</u>").  In

furtherance of the foregoing, Eddie Bauer Holdings and the Reorganized Debtors, as applicable, and the other persons granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties. All fees, costs and expenses paid by or to be paid by Eddie Bauer Holdings and the Reorganized Debtors in connection with the Working Capital Facility are ratified and approved.

74. Senior Debt Facility. The terms and conditions of the Senior Debt Facility and any documents related thereto are approved and ratified as being entered into in good faith and being critical to the success and feasibility of the Plan. Eddie Bauer Holdings and the Reorganized Debtors are hereby authorized to execute and deliver the loan agreement for the Senior Debt Facility, all mortgages, security documents and all other related documents (the "Senior Debt Facility Documents") and perform their obligations thereunder. The Senior Debt Facility Documents shall constitute legal, valid, binding and authorized obligations of Eddie Bauer Holdings or Reorganized Debtors, as applicable, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests to be granted in accordance with the Senior Debt Facility Documents shall be deemed approved and shall be legal, valid, binding and enforceable (i) first priority liens on the collateral for the Senior Debt Facility, except for the Working Capital Facility Collateral, and (ii) second priority liens on the Working Capital Facility Collateral. In furtherance of the foregoing, Eddie Bauer Holdings and the

Reorganized Debtors, as applicable, and the other persons granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.  All fees, costs and expenses paid by or to be paid by Eddie Bauer Holdings and the Reorganized Debtors in connection with the Senior Debt Facility are ratified and approved.  Eddie Bauer Holdings and the Reorganized Debtors are authorized to enter into and perform under an intercreditor agreement between themselves and the respective lenders and agents under the Working Capital Facility and the Senior Debt Facility.

75.    <u>Execution By Third Parties</u>.  Each and every federal, state and local governmental agency or department is hereby directed to accept, and lessors and holders of liens are directed to execute, any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan including, without limitation, documents and instruments for recording in county and state offices where the Amended Certificates of Incorporation and Bylaws and the Eddie Bauer Holdings Certificate of Incorporation and Bylaws or any other agreement, document or instrument that may need to be filed in order to effectuate the Plan.

76.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation

of the Plan and any documents, instruments or agreements, and any amendments or

modifications thereto, and any other acts referred to in or contemplated by the Plan, the

Disclosure Statement, the Plan Supplement and any documents, instruments or agreements

contained therein, and any amendments or modifications of any of the foregoing.

          77.    <u>Notice of Entry of Confirmation Order</u>.  Within thirty days following the

date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this

Confirmation Order, substantially in the form annexed hereto as <u>Exhibit B</u> (the "<u>Confirmation</u>

<u>Notice</u>"), upon all parties that received notice of the Confirmation Hearing and shall cause

publication of the Confirmation Notice once in *The New York Times* (National Edition), *USA*

*Today* (National Edition), *The Wall Street Journal* (National Edition) and *The Globe and Mail*

(National Edition).  The form of Confirmation Notice is hereby approved.  Service of the

Confirmation Notice as provided herein shall constitute good and sufficient notice pursuant to

Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) of entry of this Confirmation Order and,

except as provided herein, no other or further notice need be given.

          78.    <u>Notice of Effective Date</u>.  Within ten business days after the occurrence of

the Effective Date, the Reorganized Debtors shall publish a notice the occurrence of the

Effective Date of the Plan substantially in the form annexed hereto as <u>Exhibit C</u> (the "<u>Effective</u>

<u>Date Notice</u>") in *The New York Times* (National Edition), *USA Today* (National Edition), *The*

*Wall Street Journal* (National Edition) and *The Globe and Mail* (National Edition).  The form of

Effective Date Notice is hereby approved.  Publication of the Effective Date Notice as provided

herein shall be good and sufficient notice of the occurrence of the Effective Date under

Bankruptcy Rule 2002(l).

79. <u>References to Plan Provisions</u>.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be confirmed in its entirety.

80. <u>Confirmation Order Controlling</u>.  If there is any direct conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

81. <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan and any related documents or any amendments or modifications thereto.

82. <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and the Plan Documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

83. <u>Release of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document entered into in connection with the consummation of the Plan:  (i) each Holder of (a) a Secured Claim, (b) a Claim that is purportedly secured, and/or (c) a judgment, mechanics or similar Lien, shall on or immediately

before the Effective Date: (x) turn over and release to the Debtors any and all property of the Debtors that secures or purportedly secures such Claim, as it pertains to the properties currently owned or leased by the Debtors, or such Liens shall automatically, and without further action by the Debtors, the Reorganized Debtors, the Creditor Trust, or the Creditor Trust Debtors, be deemed released; and (y) execute such documents and instruments as the Debtors, the Reorganized Debtors, the Creditor Trust, or the Creditor Trust Debtors request to evidence such Claim Holder's release of such property or Lien; and (ii) on the Effective Date, as set forth in Section 7.1 of the Plan, all right, title and interest in any and all property of the Debtors' estates other than the Creditor Trust Assets shall be transferred to Eddie Bauer Holdings free and clear of all Claims and interests, including, without limitation, Liens, escrows, charges, pledges, encumbrances and/or security interests of any kind. No Distribution under the Plan shall be made to or on behalf of any Claim Holder unless and until such Holder executes and delivers to the Debtors or Eddie Bauer Holdings, as the case may be, such release of Liens or otherwise turns over and releases such Cash, pledge, or other possessory Liens. Any such Holder that fails to execute and deliver such release of Liens within one hundred and twenty days of the Effective Date shall be deemed to have no further Claim against the Debtors, the Reorganized Debtors, the Creditor Trust Debtors, the Creditor Trust or their assets or property in respect of such Claim and shall not participate in any Distribution under the Plan. Notwithstanding the immediately preceding sentence, any such Holder of a Disputed Claim shall not be required to execute and deliver such release until such time as the Claim is Allowed or Disallowed.

84.     The MBIA Settlement. Nothing in the Plan, the Disclosure Statement, or this Order approving the confirmation of the Plan, in any way affects, alters or amends the provisions, terms, enforceability or effectiveness of the Settlement Agreement and the MBIA

Settlement Trust Agreement as such are more particularly described in that certain Motion filed by certain of the Debtors dated December 3, 2004 (Docket No. 2409)and as approved by this Court on December 15, 2004.

85.    _Effectiveness of Order_.  Notwithstanding Bankruptcy Rules 3020(e), 6004(g) and 6006(d), or any other provision of the Bankruptcy Code or the Bankruptcy Rules, this Confirmation Order shall be effective immediately upon its entry.  This Order is and shall be deemed to be a separate order with respect to each of the Debtors for all purposes.

86.    _Substantial Consummation_.  Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

87.    _The Record_.  The record of the Confirmation Hearing is closed.  The findings of fact and conclusions of law of this Court set forth herein and at the Confirmation Hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable herein by Bankruptcy Rule 9014, and the findings of fact and conclusions of law of this Court at the Confirmation Hearing are incorporated herein by reference.  To the extent that any of the foregoing findings of fact constitute conclusions of law, they are adopted as such.  To the extent any that any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

Dated: New York, New York
        May 25, 2005
        At 11:47 a.m.

                        /s/Burton R. Lifland_____
                        HONORABLE BURTON R. LIFLAND
                        UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
        :

        :     **Chapter 11**

        :

**In re:**        :     **Case No.  03 - 11540 (BRL)**

        :

**SPIEGEL, INC., et al.,**        :     **(Jointly Administered)**

        :

      **Reorganized Debtors.**  :

        :

        :

        :

------------------------------------------------------------------x

### ORDER GRANTING TWENTY-FOURTH OMNIBUS OBJECTION TO PROOFS OF CLAIM WITH RESPECT TO CLAIM NUMBER 4248 FILED BY THE JACQUELINE J. JOHNSON

Upon the Debtors' Twenty-Fourth Omnibus Objection to Proofs of Claim (Docket No. 2431) (the "Objection"),[1] seeking entry of an order disallowing and expunging proof of claim number 4248; and upon consideration of the Response of Jacqueline J. Johnson to Debtors' Twenty-Fourth Omnibus Objection to Claims (Docket No. 2593), the Supplemental Statement of the Spiegel Creditor Trust with Respect to the Claim of Jacqueline J. Johnson (Docket No. 4335), the Response of Jacqueline J. Johnson to the Supplemental Statement of the Spiegel Creditor Trust in Support of the Twenty-Fourth Omnibus Objection to Claims (Docket No. 4360), the Notice of Dismissal of U.S. Equal Employment Opportunity Commission Action Filed by Jacqueline J. Johnson and Notice of Spiegel Creditor Trust's Intention to Prosecute Pending Objection to Johnson (Docket No. 4588), and the Response to the Spiegel Creditor Trust Notice of Dismissal of U.S. Equal Employment Opportunity Commission Action Filed by Jacqueline J. Johnson and Notice of Spiegel Creditor Trust's Intention to Prosecute Pending

---

[1]     Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Objection.

Objection to Johnson (Claim No. 4248); and it appearing that this Court has jurisdiction to

consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of

these cases and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it

appearing that the relief requested in the Objection is in the best interests of the Spiegel Creditor

Trust; and it appearing that notice of the Objection has been given as provided in the Objection,

and that no other or further notice need be given; and upon the record herein and after due

deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

        ORDERED, that the relief requested in the Objection is granted; and it is further

        ORDERED, that proof of claim 4248 filed by Jacqueline J. Johnson be and

hereby is disallowed and expunged in its entirety; and it is further

        ORDERED, that this Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.


Dated:  New York, New York
      December 19, 2006


                      /s/Burton R. Lifland_____
                      HONORABLE BURTON R. LIFLAND
                      UNITED STATES BANKRUPTCY JUDGE

# United States District Court

## Northern District of Illinois

### Eastern Division

| | |
|---|---|
| Johnson | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 07 C747 |
| Spiegel Inc. | |

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with.

Michael W. Dobbins, Clerk of Court

Date: 7/13/2007

_____
/s/ Mathew P. John, Deputy Clerk

# United States District Court
## Northern District of Illinois
### Eastern Division

Johnson

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 07 C747

Spiegel Inc.

☐     Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury rendered its verdict.

■     Decision by Court.  This action came to hearing before the Court.  The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with.

Michael W. Dobbins, Clerk of Court

Date: 7/13/2007

_____

/s/ Mathew P. John, Deputy Clerk

COLE, TERMED

# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 3.1.3 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:07–cv–00747

Johnson v. Spiegel Inc.
Assigned to: Honorable Elaine E. Bucklo
Demand: $100,000
Cause: 42:1981 Job Discrimination (Race)

Date Filed: 04/09/2007
Date Terminated: 07/13/2007
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Jacqueline Johnson**                     represented by  **Jacqueline Johnson**
10305 So. Bensley Avenue
Chicago, IL 60617
(773) 374–7581
PRO SE

V.

**Defendant**

**Spiegel Inc.**                          represented by  **Blake T. Hannafan**
Hannafan &Hannafan Ltd.
One East Wacker Drive
Suite 1208
Chicago, IL 60601
(312) 527–0055
Email: bth@hannafanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric J. Malnar**
Hannafan &Hannafan, Ltd.
1 East Wacker Drive
Suite 1208
Chicago, IL 60601
(312) 527–0055
Email: ejm@hannafanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael T. Hannafan**
Michael T. Hannafan &Associates, Ltd.
One East Wacker Drive
Suite 1208
Chicago, IL 60601
(312) 527–0055
Email: mth@hannafanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/06/2007 | 1 | RECEIVED Complaint and one copy by Jacqueline Johnson. (vkd, ) (Entered: 02/09/2007) |
| 02/06/2007 | 2 | CIVIL Cover Sheet (vkd, ) (Entered: 02/09/2007) |
| 02/06/2007 | 3 | PRO SE Appearance by Plaintiff Jacqueline Johnson. (vkd, ) (Entered: 02/09/2007) |

| 02/06/2007 | 4 | APPLICATION by Plaintiff Jacqueline Johnson for leave to proceed in forma pauperis. (vkd, ) (Entered: 02/09/2007) |
|---|---|---|
| 02/06/2007 | 5 | MOTION by Plaintiff Jacqueline Johnson for appointment of counsel. (vkd, ) (Entered: 02/09/2007) |
| 04/09/2007 | 6 | MINUTE entry before Judge Elaine E. Bucklo : Plaintiff's application to proceed in forma pauperis 4 is granted. Accordingly, the Clerk of Court is directed to issue summons forthwith and the U.S. Marshal is directed to serve defendant with process. Status hearing set for 6/29/2007 at 09:30 a.m. at which time plaintiff must appear or the case will be dismissed. Plaintiff's motion for appointment of counsel 5 is denied.Mailed notice (rbf, ) (Entered: 04/10/2007) |
| 04/09/2007 | 7 | COMPLAINT filed by Jacqueline Johnson; Jury Demand.(rbf, ) (Entered: 04/10/2007) |
| 04/10/2007 | | SUMMONS Issued to U.S. Marsals for service as to Defendant Spiegel Inc. (rbf, ) (Entered: 04/10/2007) |
| 06/18/2007 | 8 | SUMMONS Returned Executed by U.S. Marshals on behalf of Jacqueline Johnson as to Spiegel Inc. on 5/6/2007, answer due 5/29/2007. (rbf, ) (Entered: 06/21/2007) |
| 06/29/2007 | 9 | MINUTE entry before Judge Elaine E. Bucklo :Status hearing held on 6/29/2007. The court finds defendant in default and prove−up hearing set for 7/13/2007 at 10:00 AM.Mailed notice (mpj, ) (Entered: 07/02/2007) |
| 07/13/2007 | 10 | MINUTE entry before Judge Elaine E. Bucklo :Prove−up hearing held on 7/13/2007. Default judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with. Civil case terminated. Mailed notice (mpj, ) (Entered: 07/13/2007) |
| 07/13/2007 | 11 | ENTERED JUDGMENT Signed by Judge Elaine E. Bucklo on 7/13/2007:Mailed notice(mpj, ) (Entered: 07/13/2007) |
| 08/27/2007 | 12 | ATTORNEY Appearance for Defendant Spiegel Inc. by Eric J. Malnar (Malnar, Eric) (Entered: 08/27/2007) |
| 08/27/2007 | 13 | ATTORNEY Appearance for Defendant Spiegel Inc. by Blake T. Hannafan (Hannafan, Blake) (Entered: 08/27/2007) |
| 08/27/2007 | 14 | ATTORNEY Appearance for Defendant Spiegel Inc. by Michael T. Hannafan (Hannafan, Michael) (Entered: 08/27/2007) |
| 08/27/2007 | 15 | MEMORANDUM *IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Supplement 257 B.R. 394# 6 Supplement 328 B.R. 158)(Hannafan, Michael) (Entered: 08/27/2007) |
| 08/27/2007 | 16 | MOTION by Defendant Spiegel Inc. to vacate *Default Judgment* (Hannafan, Michael) (Entered: 08/27/2007) |
| 08/27/2007 | 17 | NOTICE of Motion by Michael T. Hannafan for presentment of motion to vacate 16 before Honorable Elaine E. Bucklo on 8/30/2007 at 09:30 AM. (Hannafan, Michael) (Entered: 08/27/2007) |
| 08/28/2007 | 18 | CERTIFICATE of Service by Defendant Spiegel Inc. regarding MOTION by Defendant Spiegel Inc. to vacate *Default Judgment* 16 , memorandum in support of motion 15 , notice of motion 17 *(AMENDED)* (Malnar, Eric) (Entered: 08/28/2007) |
| 08/30/2007 | 19 | MINUTE entry before Judge Elaine E. Bucklo : Motion of Special Creditor Trust to vacate default judgment (16) heard and the motion is granted. Accordingly, default judgment entered on 7/13/07 is vacated. The case is dismissed without prejudice. The court notes that plaintiff appeared after this case had been called and the motion granted. Plaintiff stated that she had received notice of this motion from a neighbor only this morning and had immediately come to court. I |

|  |  | explained to plaintiff, on the record, that I could not hear her case until and unless she received an order from the district court in New York reversing the action taken by the bankruptcy court in dismissing her claim, and then a transfer of the claim to this court. Mailed notice (mpj, ) (Entered: 08/30/2007) |

*JH*

RECEIVED

FEB 0 6 2007

Feb. 6, 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Jacqueline Johnson )
_____ )
_____ )
(Name of the plaintiff or plaintiffs) )
)                    CIVIL ACTION
v. )
Spiegel Inc. )            07CV747
_____ )     JUDGE BUCKLO
_____ )     MAGISTRATE JUDGE COLE
(Name of the defendant or defendants) )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Resident _____ of the
county of COOK _____ in the state of Illinois.

3. The defendant is Spiegel Inc. _____, whose
street address is 1575 W. 22nd street OakBrook Ill 60522
(city) OakBrook (county) Cook (state) Ill (ZIP) 60522
(Defendant's telephone number) (630) – 986-8800

4. The plaintiff sought employment or was employed by the defendant at (street address)
35th St near Morgan _____ (city) Chgo _____
(county) COOK (state) Ill (ZIP code) 60617

5. The plaintiff [check one box]

   (a) ☐   was denied employment by the defendant.

   (b) ☐   was hired and is still employed by the defendant.

   (c) ☑   was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,
(month) _April_ , (day)_1_ , (year) _2002_

**7.1** *(Choose paragraph 7.1 or 7.2, do not complete both.)*

    (a) The defendant is not a federal governmental agency, and the plaintiff  [*check one box*] □ *has not* ☑ *has* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

    (i) □ the United States Equal Employment Opportunity Commission, on or about (month)_Feb_ (day) _13_ (year) _03_ .

    (ii) □ the Illinois Department of Human Rights, on or about (month)_Feb_ (day) _13_ (year) _03_ .

(b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☑ YES. □ NO, **but plaintiff will file a copy of the charge within 14 days.** It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason  to believe that this policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and    N A
    (a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

        ☑   Yes (month) _Feb_ (day) _13_ (year) _2003_

        □   No, did not file Complaint of Employment Discrimination

    2.    The plaintiff received a Final Agency Decision on (month)_NO_
    (day) _18_ (year) _2006_ .

    c.    Attached is a copy of the

       a.   Complaint of Employment Discrimination,

         ☑ YES    □ NO, but a copy will be filed within 14 days.

      (ii) Final Agency Decision

         ☑ YES    □ NO, but a copy will be filed within 14 days.

8.  *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

   (a)☐ the United States Equal Employment Opportunity Commission has not issued a

   Notice of Right to Sue.

   (b)☑ the United States Equal Employment Opportunity Commission has issued a

   Notice of Right to Sue, which was received by the plaintiff on

   (month) NOV____ (day) 8 (year) 200__ a copy of which Notice

   is attached to this complaint.

9.  The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:  Protected activities

   (a)☐  Age (Age Discrimination Employment Act).

   (b)☐  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (c)☑  Disability (Americans with Disabilities Act or Rehabilitation Act)

   (d)☐  National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (e)☑  Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (f)☐  Religion (Title VII of the Civil Rights Act of 1964)

   (g)☐  Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

   (a)☑  failed to hire the plaintiff.

   (b)☑  terminated the plaintiff's employment.

   (c)☐  failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): gave negative info to Chgo Public schools and other Companies Plaintiff sought for employment.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Defendant transmission of negative employment referrals, on or about April 1, 2002, In retaliation for having filed previous charges of employment discrimination.

14. [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ YES ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☑  Direct the defendant to (specify): _Stop transmission_
_of negative employment referrals._
_Also, Make plaintiff whole because_
_of any monies lost during April 1, 2002_
_until present._

(g) ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑  Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

_____
(Plaintiff's name)

_____

_____
(Plaintiff's street address)

_10305 S. Bensley Ave._
(City) _Chgo_ (State) _Ill_ (ZIP) _60617_
(Plaintiff's telephone number) _(773)_-_374-7581_

Date: _2-6-07_

## LOCAL RULES 5.2 — 5.4

**LR5.2.    Form of Papers Filed**

(a)    PAPER AND FONT SIZE.  Each document filed shall be flat and unfolded on opaque, unglazed, white paper approximately 8 ½ x 11 inches in size.  It shall be plainly written, or typed, or printed, or prepared by means of a duplicating process, without erasures or interlineations which materially deface it.  It shall be bound or secured on the top edge of the document. Where the document is typed, line spacing will be at least 1½ lines.  Where it is typed or printed, (1)    the size of the type in the body of the text shall be 12 points and that in footnotes, no less than 11 points, and (2)    the margins, left-hand, right-hand, top, and bottom, shall each be 1 inch.

EEOC Form 161 (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jacqueline J. Johnson<br>10305 S. Bensley<br>Chicago, IL 60617 | From: | **EEOC**<br>**Chicago District Office**<br>**500 West Madison Street, Suite 2800**<br>**Chicago, Illinois 60661-2511** |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR § 1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **21B-2003-01343** | **Nola Smith, State and Local** | **(312) 886-5973** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

NOV  8 2006

Enclosure(s)

**John P. Rowe, District Director**

(Date Mailed)

cc: **Douglas Deutsch**
**Chadbourne & Parke LLP**
**30 Rockefeller Plaza**
**New York, New York 10112**

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form.

03W0923.16

| AGENCY | CHARGE NUMBER |
|---|---|
| [X] IDHR | |
| [X] EEOC | 2003CF2410 |

### Illinois Department of Human Rights and EEOC

| NAME (indicate Mr., Ms., Mrs.) | HOME TELEPHONE (include area code) |
|---|---|
| JACQUELINE J. JOHNSON | 773-978-5646 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 10305 S BENSLEY | CHICAGO, IL 60617 | 00/00/00 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE, LIST BELOW)

| NAME | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (include area code) |
|---|---|---|
| SPIEGEL INC | | 630 986-8800 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1575 W 22ND STREET | OAK BROOK, IL 60522 | 043 |

| NAME | TELEPHONE (include area code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON; | DATE OF DISCRIMINATION |
|---|---|
| RETALIATION | EARLIEST (ADEA/EPA) / /    LATEST (ALL) 04/01/2002 [ ] CONTINUING ACTION |

THE PARTICULARS ARE (if additional space is needed attach extra sheet(s))

    I.    A.    ISSUE/BASIS

                TRANSMISSION OF NEGATIVE EMPLOYMENT REFERRALS, ON OR ABOUT APRIL 1, 2002, IN RETALIATION FOR HAVING FILED PREVIOUS CHARGES OF EMPLOYMENT DISCRIMINATION.

        B.    PRIMA FACIE ALLEGATIONS

            1.    On September 27, 1989, January 15, 1992, September 28, 1993, and again on August 26, 1999, I engaged in protected activities by having filed charges numbered 1990CF0885, 1992CF1850, 1994CF0846, and 2000CF0378 against the Respondent with the Illinois Department of Human Rights.

            2.    On or about April 1, 2002, I discovered that the Respondent, through their corporate counsel, Debra Divis, had transmitted negative employment references

| [X] I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY (when necessary for State and Local Requirements) Alice M. Ralph 02/13/03 |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |
| OFFICIAL SEAL ALICE M. RALPH NOTARY PUBLIC, STATE OF ILLINOIS MY COMMISSION EXPIRES 3-13-2006 Notary Public Seal | SIGNATURE OF COMPLAINANT     DATE |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 2-13-03 (Day, month, year) |

EEOC FORM 5 (6/00)    FEP91JT3

Complainant Name:   JACQUELINE J. JOHNSON
Charge Number:      2003CF2410
Page 2

> to my subsequent employer, the Chicago Public School
> System, at their Chicago Vocational High School
> location.   Based upon an inspection of the case file
> of my most recently filed charge against the
> Respondent, I discovered there was negative employment
> information which had been transmitted and received
> by Respondent and my subsequent employer.

3.   Respondent's adverse action followed my protected
     activity within such a period of time as to raise an
     inference of retaliatory motivation.

ACF/JJT/RCG

# HANNAFAN & HANNAFAN, LTD.

One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055
Fax: (312) 527-0220

www.hannafanlaw.com

August 27, 2007

<u>**VIA HAND DELIVERY**</u>

Honorable E. Bucklo
United States District Court
Northern District of Illinois,
Eastern Division
219 South Dearborn Street
Room 1441
Chicago, Illinois 60604

Re: <u>Jacqueline Johnson v. Spiegel, Inc. – Case No. 07 C 747</u>

Dear Judge Bucklo:

Enclosed please find copies of the following documents in the above-referenced case:

1.  Appearance of Michael T. Hannafan;
2.  Appearance of Blake T. Hannafan;
3.  Appearance of Eric J. Malnar;
4.  Notice of Filing Motion of Spiegel Creditor Trust to Vacate Default Judgment
5.  Motion of Spiegel Creditor Trust to Vacate Default Judgment;
6.  Notice of Filing Memorandum of Spiegel Creditor Trust in Support of its Motion to Default Judgment;
7.  Memorandum of Spiegel Creditor Trust in Support of its Motion to Default Judgment with attached Exhibits and
8.  Notice of Motion

These motions are noticed up before Your Honor on Thursday, August 30, 2007 at 9:30 a.m. Thank you.

Very truly yours,

Eric J. Malnar

EJM/dmm
Encls.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No.  07 C 747 |
| Plaintiff, | ) ) | (Honorable Elaine E. Bucklo) |
| vs. | ) ) | |
| Spiegel, Inc., | ) ) | |
| Defendant. | ) ) ) | |

## NOTICE OF FILING

TO:    Jacqueline Johnson (pro se)
         10305 South Bensley Avenue
         Chicago, Illinois  60617

**PLEASE TAKE NOTICE** that on August 27, 2007, we filed with the Clerk of the

United States District Court for the District of Illinois, Eastern Division, the attached

**Appearance,** a copy of which is attached hereto and served upon you.

Dated: August 27, 2007

                                                    s/Eric J. Malnar

Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois  60601
312/527-0055

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| In the Matter of | Case Number: 07 C 747 |
|---|---|
| JACQUELINE JOHNSON, Plaintiff, <br> v. <br> SPIEGEL, INC. (now the Spiegel Creditor Trust), <br> Defendant. | |

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendant, SPIEGEL, INC. (now the Spiegel Creditor Trust).

| NAME (Type or print) <br> Michael T. Hannafan | |
|---|---|
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) <br> s/ Michael T. Hannafan | |
| FIRM <br> Hannafan & Hannafan, Ltd. | |
| STREET ADDRESS <br> One East Wacker Drive, Suite 1208 | |
| CITY/STATE/ZIP <br> Chicago, Illinois 60601 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) <br> 01119265 | TELEPHONE NUMBER <br> 312/527-0055 |
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ✓   NO ☐ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐   NO ✓ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ✓   NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ✓   NO ☐ |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. | |
| RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐ | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2007, I caused the foregoing **Appearance** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division.  Copies of these documents will be sent electronically to all parties registered as filing users of the Court's Electronic Filing System and the following person via messenger.

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois  60617

s/Eric J. Malnar

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| Defendant. | ) | |
| | ) | |

<u>NOTICE OF FILING</u>

TO:    Jacqueline Johnson (<u>pro se</u>)
        10305 South Bensley Avenue
        Chicago, Illinois 60617

**PLEASE TAKE NOTICE** that on August 27, 2007, we filed with the Clerk of the

United States District Court for the District of Illinois, Eastern Division, the attached **Motion of**

**Spiegel Creditor Trust To Vacate Default Judgment,** a copy of which is attached hereto and

served upon you.

Dated:  August 27, 2007

                                            s/Eric J. Malnar
                                            _____

Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois  60601
312/527-0055

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Jacqueline Johnson,                  )
                                     )      Case No.  07 C 747
            Plaintiff,               )
                                     )      (Honorable Elaine E. Bucklo)
vs.                                  )
                                     )
Spiegel, Inc.,                       )
                                     )
            Defendant.               )
                                     )

## MOTION OF SPIEGEL CREDITOR TRUST
## TO VACATE DEFAULT JUDGMENT

Pursuant to Federal Rules 55(c) and 60(b), the Spiegel Creditor Trust (the "Creditor Trust"), as successor to Spiegel, Inc. in certain matters pursuant to the Plan of Reorganization (as described below), by its attorneys, moves the Court to vacate a default judgment entered on July 13, 2007, in favor of Jacqueline Johnson for the following reasons:

1.    The Creditor Trust recently discovered that plaintiff Jacqueline Johnson had obtained a default judgment on July 13, 2007, against Spiegel, Inc. in the above-captioned case (the "Illinois Action"). This surprised the Creditor Trust because: (a) all claims against Spiegel, Inc. had previously been discharged pursuant to a confirmed, final and non-appealable Chapter 11 Plan of Reorganization under the United States Bankruptcy Code; (b) Spiegel has long been dissolved under Delaware state law; (c) the Creditor Trust is the legal successor of Spiegel, Inc. with respect to this matter; (d) the United States Bankruptcy Court for the Southern District of New York has and retains exclusive jurisdiction over the claim that is the subject matter of this litigation; and (e) the Illinois Action was commenced and prosecuted by Johnson in knowing and willful violation of a permanent injunction entered by the Bankruptcy Court in connection with the confirmed and effective plan of reorganization. Indeed, the Creditor Trust is currently

litigating (on an appeal by Johnson of a bankruptcy court order) *the identical claims* Johnson raises in the Illinois Action in the United States District Court for the Southern District of New York (the "New York District Court Action"). Therefore, the default judgment is void and should be immediately vacated.

2.    Although not before the Court, the Creditor Trust filed a motion to hold Johnson in contempt of court in the United States Bankruptcy Court for the Southern District of New York for violating that court's plan confirmation order and permanent injunction by initiating and pursuing this action. On August 21, 2007, the Bankruptcy Court entered an order holding Johnson in contempt of Court. *See* Order Granting the Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in contempt of Court (Bankruptcy Court Docket No. 4720). Thus, this litigation has been determined by the Bankruptcy Court to have been both a violation of its injunction and an affront to its exclusive retained jurisdiction over this subject matter.

3.    A Memorandum of Law and Affidavit of attorney David M. LeMay are attached in support of this Motion.

WHEREFORE, the Spiegel Creditor Trust (as successor to Spiegel, Inc. with respect to certain matters) prays that the Court vacate and set aside in its entirety the Default Judgment entered on July 13, 2007, in favor of plaintiff Jacqueline Johnson and dismiss her action without prejudice.

Dated: August 27, 2007

Respectfully submitted

s/Michael T. Hannafan
MICHAEL T. HANNAFAN
One of the Attorneys for the Spiegel Creditor Trust

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055
(312) 527-0220

Of counsel:

David M. LeMay
Douglas E. Deutsch
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2007, I caused the foregoing **Motion of Spiegel Creditor Trust to Vacate Default Judgment** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division. Copies of these documents will be sent electronically to all parties registered as filing users of the Court's Electronic Filing System and the following person via messenger.

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois 60617

s/Eric J. Malnar

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| | ) | |
| Plaintiff, | ) | (Honorable Elaine E. Bucklo) |
| | ) | |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### NOTICE OF FILING

TO:    Jacqueline Johnson (pro se)
10305 South Bensley Avenue
Chicago, Illinois 60617

**PLEASE TAKE NOTICE** that on August 27, 2007, we filed with the Clerk of the United States District Court for the District of Illinois, Eastern Division, the attached **Memorandum of Spiegel Creditor Trust in Support of its Motion to Vacate Default Judgment**, a copy of which is attached hereto and served upon you.

Dated:  August 27, 2007

s/Eric J. Malnar

Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
312/527-0055

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| Spiegel, Inc., | ) | |
| Defendant, | ) | |

MEMORANDUM OF SPIEGEL CREDITOR TRUST
IN SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT

## INTRODUCTION

The Court is probably aware that plaintiff Jacqueline Johnson is a *pro se* litigant. However, the Court may not be aware that Johnson has filed at least 13 actions against Spiegel, Inc. All of these matters, except for the New York District Court Action and this Illinois Action, have been dismissed. It appears that all of Johnson's actions to date have been frivolous, wasteful and an abuse of the judicial system. The prosecution of this Illinois Action is no exception.

As set forth below, Spiegel, Inc. was discharged of all liabilities pursuant to a confirmed, effective, final and non-appealable plan of reorganization under the Bankruptcy Code. The plan confirmation order at the Bankruptcy Court involved a permanent injunction, applicable to all claimants (including Johnson), barring the initiation or prosecution of litigation such as this case. Such discharge and permanent injunction provisions are expressly contemplated and provided for in the Bankruptcy Code. Soon after, Spiegel, Inc. was dissolved. Given these facts, the default judgment obtained by Johnson on July 13, 2007, against Spiegel, Inc. is void and must be

vacated.  A copy of the Default Judgment and Notification of Docket Entry are attached as **Exhibit A.**

## **BACKGROUND**

*A.     Johnson's EEOC/Human Rights Actions.*

On February 13, 2003, Johnson filed a "Charge of Discrimination" with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission (the "EEOC") against Spiegel, Inc. asserting that Spiegel, Inc. provided negative employment information on Johnson (the "EEOC/Human Rights Actions").

*B.     Spiegel, Inc.'s Bankruptcy Filing and Johnson's Claim*

On March 17, 2003, Spiegel, Inc. and certain affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The lead case number in the Spiegel, Inc. *et al.* bankruptcy cases is 03-11540 (the "Bankruptcy Cases").

Upon the bankruptcy filing, and pursuant to Section 362 of the Bankruptcy Code, all actions (including the EEOC/Human Rights Actions) against Spiegel, Inc. and/or its debtor affiliates were automatically stayed.  By order dated July 15, 2003, the Bankruptcy Court established a deadline by which all creditors were to file proof of any claims they had against the Debtors.

On October 15, 2004, Johnson filed Proof of Claim No. 4248 (the "Johnson Claim") *against Spiegel, Inc. in the Bankruptcy Cases.  Johnson demanded $100,000 for damages* pursuant to a "Complaint and or Law Suit filed against [Spiegel] for reasons of discrimination[.]" Attached to the Johnson Claim was the complaint Johnson filed in the EEOC/Human Rights

Actions. By these actions, Johnson essentially converted her EEOC/Human Rights Actions into a bankruptcy claim.

The Johnson Claim was duly and timely disputed by the Debtors. For various reasons, the dispute was not resolved prior to confirmation of the Plan (as defined below).

On May 25, 2005, the Debtors' Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") was confirmed. *See* Bankruptcy Case Docket No. 3356; *see also* Finding of Facts, Conclusions of Law and Order Pursuant to 11 U.S.C. § 1129(a) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Modified First Amended Joint Plan or Reorganization of Affiliated Debtors and Granting Related Relief" (the "Confirmation Order") (Bankruptcy Case Docket No. 3590). The Plan became effective on or about June 21, 2005.

Among other things, the Plan transferred certain assets and unresolved claim matters to the Creditor Trust. The Creditor Trust was specifically tasked with "settling, resolving and objecting to all Disputed Claims and Unresolved Claims." Johnson's claim fell into this category.

Importantly, Section 13.2 of the Plan (titled "Discharge") states, in relevant part:

Except for Distributions under this Plan, and as otherwise provided in this Plan or in the Confirmation Order, on the Effective Date, the Confirmation Order shall operate as a discharge under Section 1141(d)(1) of the Bankruptcy Code, and as a release of any and all debts ... of, and Claims against, one or more of the Debtors that arose at any time before the Confirmation Date, including, but not limited to, all principal and interest, whether accrued before, on or after the Petition Date, regardless of whether (i) a proof of claim in respect of such Claim has been Filed or deemed Filed, [or] (ii) such Claim has been Allowed pursuant to Section 502 of the Bankruptcy Code ....

Additionally, Section 13.1 of the Plan (titled "Injunction") states, in relevant part:

all Entities who have held, hold or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from: (i)

commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; ... and (v) taking any actions to interfere with the implementation or consummation of this Plan that do not conform to or comply with the provisions of this Plan.

Finally, Section 14.1 of the Plan (titled "Retention of Jurisdiction") provides that the "Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan" and shall also have exclusive jurisdiction to, among other things, "(e) ... hear and determine any timely objections ... to proofs of Claims and Equity Interests Filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part."

On or about June 21, 2005, the Creditor Trust dissolved Spiegel, Inc., a Delaware corporation, under Delaware law. On December 19, 2006, the Bankruptcy Court entered its Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline J. Johnson (the "Disallowance Order") (Docket No. 4606). Johnson subsequently filed three motions for reconsideration of the Disallowance Order with the Bankruptcy Court.[1] All three motions were denied.

---

[1]    *See* Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline Johnson (docketed January 10, 2007) (Bankruptcy Case Docket No. 4632); Motion to Reconsider and Allow Corrections to Clarify Misunderstanding and Explanation as to Why the Reconsideration was Made by Claimant in her Motion for Reconsideration to Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 filed by Jacqueline Johnson (docketed April 16, 2007) (Bankruptcy Case Docket No. 4674); Motion to Re Reconsider in Light of this New Evidence with Respect to Claim No. 4247 (docketed May 1, 2007) (Bankruptcy Case Docket No. 4692).

**C.    *Johnson Appeals the Bankruptcy Court's Disallowance Order and Discloses the Existence of the Northern District of Illinois Action***

While Johnson continued to press forward with her multiple motions for reconsideration with the Bankruptcy Court, she also filed a notice of appeal of the Disallowance Order. *See* Notice of Appeal (docketed April 16, 2007) (Bankruptcy Case Docket No. 4673). Ultimately, the appeal was docketed in the United States District Court for the Southern District of New York as Case No. 07-CV-03947. The Honorable Richard Holwell, United States District Judge, was assigned to handle the Johnson bankruptcy appeal, which is currently pending before him.

On the bottom of the first page of a letter dated July 20, 2007, which was sent to Judge Holwell by Johnson, she refers to and attaches a copy of a default judgment (the "Default Judgment") that she apparently recently obtained from this Court against Spiegel, Inc. in this Illinois Action. A copy of Johnson's letter to Judge Holwell and the related exhibits to the letter are attached as **Exhibit B**. However, the Creditor Trust had not previously been served with any papers in the Illinois Action and was not aware that this action was being prosecuted.

On August 21, 2007, the Bankruptcy Court entered an order holding Johnson in contempt of Court for filing this Illinois Action. *See* Order Granting the Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in Contempt of Court (Bankruptcy Court Docket No. 4720) a copy of this contempt order is attached as **Exhibit C**. Thus, this litigation has been determined by the Bankruptcy Court to have been both a violation of the Injunction and an affront to its exclusive retained jurisdiction over this subject matter. The Affidavit of attorney David M. LeMay in support of the background facts is attached as **Exhibit D**.

## THE DEFAULT JUDGMENT SHOULD BE VACATED
## BECAUSE THE JUDGMENT IS VOID

Rule 60(b) of the Rules of Civil Procedure provides, in relevant part, states the following: "On a motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ...(4) the judgment is void ...." In the current instance, the Default Judgment is void for the reasons detailed below.

### A.    Johnson's Judgment is Void Because Spiegel, Inc. was Discharged of All Liabilities Under a Confirmed and Effective Chapter 11 Plan

A judgment is void if the court lacks jurisdiction of the subject matter. *See, e.g., Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993) (default judgment entered on debt discharged in bankruptcy). Bankruptcy Code Section 524(a) states that a discharge under the Bankruptcy Code "voids any judgment at any time obtained ...." Courts have interpreted this provision broadly to include "both retrospective and prospective effects on creditors' attempts to seek payment of discharged debts." *See In re Dabrowski*, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001); *see also Briley*, 981 F.2d at 249-50; *Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (B.A.P. 9th Cir. 2005) ("[a]lthough the discharge and discharge injunction differ from the automatic stay . . . these are distinctions without a difference with respect to the effect on creditors" as both are void). (Copies of the Bankruptcy Reporter decisions are attached.)

In the present instance, Spiegel, Inc. was discharged of all liabilities pursuant to the terms of the Plan and the related Confirmation Order. Accordingly, the Default Judgment obtained in the Northern District of Illinois last month, over two years after the entry of the Confirmation Order, is void. Additionally, the Plan (at Section 14.1) expressly provided for continued and exclusive jurisdiction by the Bankruptcy Court over all Spiegel claim matters. Accordingly,

even if Johnson had identified a proper party to bring her "new" action against (a party, for instance, who was *not* discharged pursuant to a confirmed and effective plan of reorganization), the only forum Johnson could have potentially asserted her action in is the Bankruptcy Court. As Johnson failed to bring the action in that forum,[2] the Default Judgment is also void on this basis.

**B.    *Johnson's Judgment is Void Because This Court Did Not Have Personal Jurisdiction***

Where there is no valid service of process, a default judgment is a nullity and must be vacated. *See Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *see also American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F. Supp.2d 372, 375 (S.D.N.Y. 1998) ("[A] judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law"). To properly serve Spiegel, Inc., Johnson was required to "deliver[] a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *See* Fed. R. Civ. P. 4(h)(1) (governing service on a corporation).

Here, Johnson apparently asserts that service on an unknown person and entity in Virginia constitutes proper service on Spiegel, Inc. However, Spiegel, Inc. was dissolved as a Delaware corporation in June 2005 and Johnson did not identify (and could not have identified) a Spiegel, Inc. officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process in Virginia.

---

[2]    Of course, there would be no basis for filing another action in the Bankruptcy Court because the identical issues *have already been decided in that forum and the Bankruptcy Court's decision is currently on appeal. See* discussion, *supra*.

Because Johnson was required to perform due diligence and determine the appropriate person to serve, *see American Institute*, 8 F.Supp.2d at 376, and because Johnson failed to perform that due diligence and validly serve a proper party, Johnson's alleged service is a nullity and the default judgment is void. Accordingly, the Default Motion must also be vacated on this basis.

### Conclusion

For the above reasons, the Default Judgment entered against Spiegel Inc. on July 13, 2007, should be vacated and set aside and, further, the Complaint should be dismissed without prejudice.

Dated:  August 27, 2007

Respectfully submitted,

s/Michael T. Hannafan
MICHAEL T. HANNAFAN
One of the Attorneys for the Spiegel Creditor Trust

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055

Of counsel:

David M. LeMay
Douglas E. Deutsch
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

# EXHIBIT A

# United States District Court
## Northern District of Illinois
### Eastern Division

Johnson                                    **JUDGMENT IN A CIVIL CASE**

        v.                           Case Number: 07 C747

Spiegel Inc.

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.


IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with.


Michael W. Dobbins, Clerk of Court

Date: 7/13/2007

_____

/s/ Mathew P. John, Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacqueline Johnson

                    Plaintiff,

v.
                                        Case No.: 1:07–cv–00747
                                         Honorable Elaine E. Bucklo

Spiegel Inc.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 13, 2007:

      MINUTE entry before Judge Elaine E. Bucklo :Prove–up hearing held on 7/13/2007. Default judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with. Civil case terminated. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# EXHIBIT B

July 20, 2007


Jacqueline Johnson
10305 S. Bensley Ave.
Chicago, Illinois 60617
Home 773 374-7581
Cell 773 726-0884


To: The Honorable Richard J. Holwell
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

Re: Jacqueline Johnson v. Spiegel Inc. Creditor Trust (Civil Docket Case #: 07-CV-
03947-RJH)

Dear Judge Holwell:

I am writing to you to explain why my response has not been recorded on PACER.
Until today I have been sending all my Appeals information and responses to Creditor's
Motions to the appeals court located at One Bowlinggreen NY, NY 10004. Also I've
been waiting for an approval of my Pauper's Petition and Record on Appeal. When I
called for the status, the clerk told me, that some one would contact me, as of yet no one
has. Because, I didn't get any info on my Appeal, I didn't know who or where to send
my Response to Creditor's Motion, and The Creditor's Motion to Dismiss gave no
direction ether. Not being able to get this info caused me a lot of confusion, so I sent the
response to the only place I knew the above address.

Today I spoke with the appeal's clerk. He informed me, that he received my
response and sent it to the mailroom for correct delivery.

I got the address from Mr. LeMay in his letter dated July 19, 2007. He explained
that he did not receive his copy until that same day. His copy was mailed First Class
Mail on the same day (July 8, 2007) I sent the courts copy Next Day.  See copy marked
A.

I am sending a copy of what was sent Next Day to the Appeals Court at One
Bowlinggreen NY, NY 10004on July 8, 2007.  See copy marked B.

I am also sending you a copy of the Order that was mailed to my self and Creditor
dated 7-13-07 from THE UNITED STATES DISTRICT COURT FOR THE Northern
District of Illinois, this order in enter on behalf of the Plaintiff Jacqueline Johnson in the
amount of $100,000.00. This finding was the result of my EEOC complaint and right to

sue. I followed the procedure The procedural regulations of the EEOC are at 29 C.F.R. 1601 et seq. and Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq.for filing. See copy C.

If you have any further questions of me feel free to contact me at the above telephone number and address. God Bless and keep you, thank you for your time and consideration in this matter.

Yours Sincerely,

Jacqueline Johnson

COPY
A

```
==============================================
        CARDISS COLLINS STORE 8
           CHICAGO, Illinois
              606079998
           1615420803-0096
07/08/2007 (312)983-8182 01:11:29 AM
==============================================
========= Sales Receipt =========
Product          Sale Unit      Fina
Description       Qty  Price     Pric

4ic #16            1    $0.50     $0.
Horsel Env
NEW YORK NY 10034                $16.
Zone-8 Express Mail
PO-Add Flat Rate
0.50 oz.
Label #:     EB329715996US
2nd Day PM
Normal Delivery
                                ======
Issue PVI:                       $16.

NEW YORK NY 10112                 $0.
Zone-8 First-Class
Letter
1.80 oz.
Customer Postage                 -$0.
                                ======
Issue PVI:                        $0.

                               ========
Total:                           $16.

Paid by:
Account #:      XXXXXXXXXXXX3031
Approval #:     462182
Transaction #:  707
2302286XXXX
Receipt#:       000988

Order stamps at USPS.com/shop or
call 1-800-Stamp24.  Go to
USPS.com/clicknship to print
shipping labels with postage. For
other information call
1-800-ASK-USPS.
Refunds for guaranteed services only
     Thank you for your business.
```

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jacqueline Johnson<br>Claimant, plaintiff | ) ) ) | Case No. 07-CV-03947-RJH |
| v. | ) ) | Case No. 03-11540 (BRL) |
| SPIEGEL, INC.., | ) ) | |
| Creditor, defendant | ) | |

## NOTICE OF MOTION

I, Jacqueline Johnson this notice of motion in response to Spiegel Creditor Trust's Memorandum of law In Support O Motion To Dismiss Pending Johnson Appeal.

## PROOF OF SERVICE

I certify that I also served a copy of the Debtor's attorney at CHADBOURNE & PARKE LLP 30 Rockefeller Plaza New York, New York 10112, by way of First Class Mail at 10400 S. Torrance Ave. in Chicago, Illinois 60617. At 5:00 p.m. on the July 8, 2007.


Jacqueline Johnson

COPY

# CHADBOURNE
## PARKE

July 19, 2007

The Honorable Richard J. Holwell
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

       Re: Jacqueline Johnson v. Spiegel Creditor Trust (Civil Docket Case #: 07-CV-
       03947-RJH)

Dear Judge Holwell:

       I am writing as counsel to the Spiegel Creditor Trust in the above referenced
action. *what is the date*

       On Wednesday afternoon, this office received Ms. Jacqueline Johnson's responsive
memorandum of law (the "Response") to the Spiegel Creditor Trust's motion to dismiss and
its related memorandum of law (each filed with the Court on June 29, 2007). Ms. Johnson's
Response has not yet been recorded on PACER. Ms. Johnson is a pro se litigant who may not
have direct access to PACER. Accordingly, as a courtesy and in order to move this matter
forward as quickly as possible, we filed Ms. Johnson's Response on PACER today.
Additionally, as we are not certain that the Court has received courtesy copies of Ms.
Johnson's Response, we have included two copies herein, as required by Your Honor's
individual practice procedures.

       I am at the Court's disposal if your Chambers has any questions or if I may
otherwise be of assistance.

               Respectfully,

               David M. LeMay

BY HAND

cc: Ms. Jacqueline Johnson
    Douglas Deutsch, Esq.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jacqueline Johnson | ) | |
| Claimant, plaintiff | ) | Case No. 07-CV-03947-RJH |
| | ) | |
| v. | ) | Case No. 03-11540 (BRL) |
| | ) | |
| SPIEGEL, INC.., | ) | |
| | ) | |
| Creditor, defendant | ) | |

### RESPONSE TO SPEIGEL CREDITOR TRUST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PENDING JOHNSON APPEAL

I Jacqueline Johnson am the Creditor in the above case this response to the Debtors motion to dismiss is in according to Rule 9006.

I, Jacqueline Johnson object to the following Exhibit B. Mr. Francisco Vazquez's validation of this sworn statement from David M. Bava on December 21, 2006, for which his commission expired on December 7, 2006 14 days prior to notorizing an Affidavit of Service that was filed in Bankruptcy Court. The affidavit also states in paragraph 2 that:

He (David M. Baza) "is legal assistant at Chadbourne & Parke LLP, and that "On December 19, 2006, I caused to be served a true and correct copy of the Order Granting Twenty0Fourth Omnibus Objection to proofs of Claim with Respect to Claim number 4248 Filed by Jacqueline J. Johnson upon Jacqueline J. Johnson 10305 S. Bensley Ave Chicago, Illinois by First class mail, postage prepaid thereon." This was two day prior to Mr. Vazquez's validation of Bava's sworn statement, that he mailed a copy on 12-19-06 the day of the hearing. If he mailed it on the 21st of December 2006, why does it state in the body of the letter that he mailed it on the 19th day of December 2006? It's because it was never mailed to Johnson. Another thing there is no Docket no for this (Debtor's) exhibit B.

On the day of December 19, 2006 Debtor's attorney should have sent a copy of the order for that day to the attorney of record or Creditor Jacqueline Johnson.

Under Perjury: If you knowingly act as a notary public after your term has expired One is guilty of perjury if he has stated or given testimony on a material matter, under oath or by affirmation, as to the truth thereof, when he knew the statement or testimony to be false and willfully made.

Interest as a disqualification. A notary public should not take an acknowledgment to a legal instrument to which the notary is a party in interest. (*Armstrong v. Combs*, 15 App. Div. 246.) Mr. Vazquez is an Bankruptcy attorney, who works for the law firm of CHADBOURNE & PARKE LLP 30 Rockefeller Plaza in New York this notary-attorney is a party in interest.

Authentication (Notarial)

A certificate subjoined by a county clerk to any certificate of proof or acknowledgment or oath signed by a notary; this county clerk's certificate authenticates or verifies the a notary public must sign the name under which he was appointed and no other. In addition to his signature and venue, the notary public shall print, typewrite or stamp beneath his signature in black ink, his name, the words "Notary Public State of New York," the name of the county in which he is qualified, and the date upon which his commission expires (§137, Executive Law). Authority of the notary public to act as such. (See §133, Executive Law.) Mr. Vazquez at the time of taking the sworn statement of affidavit of service from David m. Bava ( head clerk at the law firm of CHADBOURNE & PARKE LLP 30 Rockefeller Plaza in New York) on (12-21-07) was not legally authorized to do so, because of his expired (12-7-07) commission. This notarized Affidavit of Service is Void. I, Jacqueline Johnson would like to use it as an example of the lies and deceit she has had to put up with this past year.

Taking an Acknowledgment

The act of the person named in an instrument telling the notary public that he is the person named in the instrument and acknowledging that he executed such instrument; also includes the act of the notary public in obtaining satisfactory evidence of the identity of the person whose acknowledgment is taken.

The notary public "certifies to the taking of the acknowledgment" when the notary signs his official signature to the form setting forth the fact of the taking of the acknowledgment.

According to Also, if a person wanted to challenge the legitimacy of your notarial certificate (signature & stamp), such will be held as <u>circumstantial</u> evidence, provided such person could prove otherwise.

I, Jacquleine Johnson am challenging the legitimacy of vazquaz's notarial certificate

Ineligibility of notary, because Expiration of his/her term, commission or appointment; notary public acting after commission expires: No notary public shall do or perform any act as a notary public knowing that his term in office has expired. Ohio Revised code, Sec. 147. 10

Rule 8011. Motions

(a) Content of motions; response; reply.



(b) Appeal by leave; how taken.

An appeal from an interlocutory judgment, order, or decree of a bankruptcy judge as permitted by 28 U.S.C. § 158(a)(3) shall be taken by filing a notice of appeal, as prescribed in subdivision (a) of this rule, accompanied by a motion for leave to appeal prepared in accordance with Rule 8003 and with proof of service in accordance with Rule 8008, Creditor Jacqueline Johnson filed as a pauper and is awaiting the records on appeal. Everything on appeal has been timely filed.

(b) Effect of motion on time for appeal.

If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion:

(1) to amend or make additional findings of fact under Rule 7052, whether or not granting the motion would alter the judgment;

(2) to alter or amend the judgment under Rule 9023;

(3) for a new trial under Rule 9023; or

Rule 8006. Record and Issues on Appeal

If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. All parties shall take any other action necessary to enable the clerk to assemble and transmit the record. Johnson filed paupers petition and await the record on appeals.

<u>ARGUMENT</u>

It was not Johnson's intention to let her response to Debtor Spiegel Creditor Trust's Intention to Prosecute Pending Objection to Johnson (Claim No. 4248) (Bankruptcy Docket No. 4610) substitute her presents or response at trial.

The last order from the Bankruptcy Judge should overrule the original order denying reconsideration, and if not the affidavit of service from David M. Bava is void (because he failed to show proof of the date of service on Appellant.

<u>In response to letter I. of Spiegels Inc. Dismissal on Grounds that District Court Has No Jurisdiction, and Dismiss On Grounds That Appeal Deadline Ignored Creditor Jacqueline Johnson states:</u>



In respect to Jurisdiction:  Rule 8001. Manner of Taking Appeal;
Voluntary Dismissal  (a) Appeal as of right; how taken.  An appeal from a
judgment, order, or decree of a bankruptcy judge to a district court or
bankruptcy appellate panel as permitted by 28 U.S.C. § 158(a)(1) or (a)(2) shall
be taken by filing a notice of appeal with the clerk within the time allowed by
Rule 8002. An appellant's failure to take any step other than timely filing a
notice of appeal does not affect the validity of the appeal, but is ground only for
such action as the district court or bankruptcy appellate panel deems appropriate,
which may include dismissal of the appeal. The notice of appeal shall (1)
conform substantially to the appropriate Official Form, (2) contain the names of
all parties to the judgment, order, or decree appealed from and the names,
addresses, and telephone numbers of their respective attorneys, and (3) be
accompanied by the prescribed fee. Each appellant shall file a sufficient number
of copies of the notice of appeal to enable the clerk to comply promptly with
Rule 8004.

In respect to Deadline Being Ignored Johnson states:

She appealed the order disposing of her claim after the order denying her
reconsideration.  The re-reconsideration was for new evidence.  Even if the Debtors
state the appeal from the first motion for reconsideration dated (April 4, 2007) was
late, (in which it was excusable) the final order dated May 17, 2007denying the
motion for re-reconsideration under newly discovered evidence, the first time before
the Bankruptcy Judge should have been appealable.  Judge Lifland states: "Mrs.
Johnson's motion to reconsider fails to demonstrate any manifest errors or and
injustice, newly discovered evidence or change in controlling law and as explained
below...."  For this reason the motion for re-reconsideration should have been
allowed and supercede the first motion.

According to Rule 8002. : Time for Filing Notice of Appeal. A notice of
appeal filed after the announcement of a decision or order but before entry of
the judgment, order, or decree shall be treated as filed after such entry and
on the day thereof. If a notice of appeal is mistakenly filed with the district
court or the bankruptcy appellate panel, the clerk of the district court or the
clerk of the bankruptcy appellate panel shall note thereon the date on which
it was received and transmit it to the clerk and it shall be deemed filed with
the clerk on the date so noted.

Johnson has two appeals one from the judgment and one from the last motion
requesting to enter new evidence. A notice of appeal filed after an order but before
entry of the judgment, order, or decree shall be treated as filed after such entry and on
the day thereof. The notice of appeal was filed before the entry of the last order.

SUPREME COURT Justice O'Connor respectfully dissent in
PIONEER INVESTMENT SERVICES COMPANY,
PETITIONER v. BRUNSWICK ASSOCIATES LIMITED
PARTNERSHIP et al. No. 91-1695 (March 24, 1993)

Justice O'Connor states: The Court does recognize one guidepost. It states that the requirement of "excusable neglect" should be construed so as to "deter creditors or other parties from freely ignoring court ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." *Ante*, at 14-15. According to Spiegel's Attorney Page 7 last paragraph of Spiegel creditor trust's memorandum of law in support of motion to dismiss pending Johnson appeal: Here Johnson has gone to great lengths to try to file an appeal of an order. If this statement is considered to be truth, Johnson is not freely ignoring court order deadlines, and she has worked diligently on every aspect of this case.

Judge Lifland states in his judgment: Ms. Johnson's motion to reconsider fails to demonstrate any manifest errors or injustice, newly discover evidence or change in controlling law and as explained below excusable neglect, and thus, states no grounds for the relief under Rule 60(b). In Johnson's request for re-reconsideration under new evidence is denied again by Judge Lifland. Johnson was not aware a decision had been made. Johnson was not aware the case was being tried, had she known the case was being tried she could have requested a copy of the decision. Johnson assumed everything was being disputed by motion. Johnson was not aware of what Creditor Trust meant by <u>INTENTION TO PROSECUTE PENDING OBJECTION</u> as mentioned in notice of Spiegel creditor trust's intention to prosecute pending objection to Johnson (Claim No. 4248) (Bankruptcy Docket No. 4610), so she filed a response to there motion. <u>She was not aware she had to be present for court in New York.</u> The attorney for Spiegel refused to talk to her.

Congress *has* provided "guideposts" as to how courts should determine whether "neglect will be considered `excusable.' " The majority simply fails to follow them. First is the remaining language of Rule 9006(b)(1) itself, a good portion of which the majority fails to consult. The Rule, read in its entirety, establishes that the excusable neglect determination requires inquiry into causation rather than consequences: Unless "the *failure* to act was *the result*" of the excusable neglect, relief is unavailable. "It is clear from this language that the focus of [the Rule] is on the movant's actions and the reasons for those *actions, not on the effect that an extension might have on the* other parties' positions." *In re South Atlantic Financial Corp.*, 767 F. 2d, at 819. Moreover, Rule 9006(b)(1) indicates that the court must determine whether the neglect was "excusable" as of the moment it occurred rather than in light of facts known when untimely action is proposed. The Rule authorizes relief in cases where the failure "*was*" the result of excusable neglect, not as to incidents where the neglect *is* excusable in light of current knowledge.



The majority also overlooks a second and dispositive guidepost-
-the accepted dictionary definition of "excusable neglect." That
definition does not incorporate the results or consequences of a
failure to take appropriate and timely action; to the contrary, it
turns on the cause or reasons for the failure and the culpability
involved. According to Black's Law Dictionary 566 (6th ed.
1990), "excusable neglect" is:

"[A] Failure to take the proper steps at the proper time, not in consequence of the
party's own carelessness, inattention, or willful disregard of the process of the court,
but in consequence of some unexpected or unavoidable hindrance or accident, or
reliance on the care and vigilance of his counsel or on promises made by the adverse
party. As used in rule (e. g. Fed. R. Civil P. 6(b)) authorizing court to permit an act to
be done after expiration of the time within which under the rules such act was
required to be done, where failure to act was the result of 'excusable neglect', quoted
phrase is ordinarily understood to be the act of a reasonably prudent person under the
same circumstances."

Cf. 4A C. Wright & A. Miller, Federal Practice and Procedure
§1165, pp. 480, 482 (2d ed. 1987) ("Excusable neglect [in Fed.
Rule Civ. Proc. 6(b)] seems to require a demonstration of good
faith on the part of the party seeking an enlargement and some
reasonable basis for noncompliance . . . . Absent a showing
along these lines, relief will be denied"). Of course, we are not
bound to accept Black's Law Dictionary as the authoritative
expositor of American law. But if Congress had intended to
depart from the accepted meaning of excusable neglect--
supplementing its exclusive focus on the *reason* for the error
with an emphasis on its *effect*--surely it would have so
indicated.

AMMENDED BACKGROUND FACTS TO INCLUDE A COPY OF THE LAST
MOTION SENT TO JUDGE LIFLAND FOR RE-RECONSIDERATION OF NEW
EVIDENCE

This motion was excluded from Debtor's Background of Facts.

A copy is attached as evidence and an order is also attached.

Jacqueline Johnson

10305 S. Bensley Chicago, Illinois 60617  (773) 726-0884

*EX. B
of
Debtor*

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
David M. LeMay (DL 9093)
Douglas E. Deutsch (DD 7229)

Attorneys for the Spiegel Creditor Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------x
                                         :    Chapter 11
                                         :
In re:                                   :    Case No. 03 - 11540 (BRL)
                                         :
SPIEGEL, INC., et al.,                   :      (Jointly Administered)
                                         :
                     Reorganized Debtors.:
                                         :
                                         :
                                         :
                                         :
-----------------------------------------x
```

## AFFIDAVIT OF SERVICE

David M. Bava, being duly sworn, deposes and says:

1.  I am employed as a legal assistant by the law firm of Chadbourne & Parke LLP, I am not a party to this action and that I am over the age of eighteen.

2.  On December 19, 2006; I caused to be served a true and correct copy of the *Order Granting Twenty-Fourth Omnibus Objection to Proofs Of Claim With Respect to Claim Number 4248 Filed by Jacqueline J. Johnson* upon Jacqueline J. Johnson, 10305 South Bensley, Chicago, Illinois 60617 by First Class Mail, postage prepaid thereon.

3. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment under penalty of perjury.

_/s/ David M. Bava_
David M. Bava

Sworn to before me this
21st day of December 2006

_/s/ Francisco Vazquez_
Notary Public

Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires Dec. 12 2006

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re

SPIEGEL, INC..,

                              Reorganized Debtor.
------------------------------------------------------------X

Chapter 11
Case No. 03-11540 (brl)

### ORDER DENYING MOTION TO RE RECONSIDER IN LIGHT OF THIS NEW EVIDENCE WITH RESPECT TO CLAIM NUMBER 4247 [SIC] FILED BY JACQUELINE JOHNSON

In consideration of Jacqueline Johnson's third motion for reconsideration of this Court's order granting the twenty-fourth omnibus objection to proofs of claim with respect to claim number 4248 (the "Motion");

WHEREAS this Court finds no basis for reconsideration and for the reasons set forth in this Court's Memorandum Decision and Order, dated April 4, 2007, Denying the Motion to Reconsider; the motion is hereby DENIED.

IT IS SO ORDERED.

Dated: New York, New York
       May 17, 2007

                              /s/Burton R. Lifland
                              UNITED STATES BANKRUPTCY JUDGE

1





Jacqueline Johnson
10305 So. Bensley Avenue
Chicago, IL 60617

1:07–cv–00747

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacqueline Johnson

<div align="center">Plaintiff,</div>

v.

Spiegel Inc.

<div align="center">Defendant.</div>

Case No.: 1:07–cv–00747
Honorable Elaine E. Bucklo

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 13, 2007:

MINUTE entry before Judge Elaine E. Bucklo :Prove–up hearing held on 7/13/2007. Default judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with. Civil case terminated. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Johnson

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 07 C747

Spiegel Inc.

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with.

Michael W. Dobbins, Clerk of Court

Date: 7/13/2007

_____
/s/ Mathew P. John, Deputy Clerk

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                  :       **Chapter 11**
                                  :
In re:                            :       **Case No. 03 - 11540 (BRL)**
                                  :
**SPIEGEL, INC., et al.,**          :       **(Jointly Administered)**
                                  :
              **Reorganized Debtors.**  :
                                  :
                                  :
-------------------------------------------------------x

## ORDER GRANTING THE SPIEGEL CREDITOR TRUST'S MOTION
## TO HOLD JACQUELINE JOHNSON IN CONTEMPT OF COURT

Upon the motion dated August 2, 2007 (Docket No. 4713) ("the Motion")[1] filed

by the Spiegel Creditor Trust (the "Creditor Trust"), seeking entry of an order pursuant to section

105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the

"Bankruptcy Code") and Rule 9020(b) of the Federal Rules of Bankruptcy Procedure, holding

Jacqueline Johnson ("Johnson") in contempt of court; it having been established through the

record of the hearing on the Motion and through the record of the above captioned-cases or

otherwise, that: (i) this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§

157 and 1334; (ii) venue of these cases and this Motion in this district is proper pursuant to 28

U.S.C. §§1408 and 1409; (iii) this matter is a core proceeding pursuant to 28 U.S.C. §157(b); (iv)

notice of the Motion has been given as provided in the Motion, and that no other or further notice

need be given; (v) any and all debts of, and claims against, the Debtors have been discharged

---

[1]   Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Motion.

pursuant to Section 13.2 of the Plan, Paragraph 40 of the Confirmation Order and section

1141(d)(1) of the Bankruptcy Code, and that, pursuant to Section 524(a) of the Bankruptcy

Code, Section 13.1 of the Plan and Paragraph 51 of the Confirmation Order, any and all

claimants of or against any of the Debtors have been permanently enjoined from commencing or

continuing any actions or proceedings on any claims against the Debtors, except as expressly

provided in the Plan; (vi) Johnson received repeated and specific written warnings that filing

actions in another court would violate the Plan injunction of this Court; (vii) despite these

multiple written and specific warnings, Johnson filed an action in the United States District

Court for the Northern District of Illinois on February 6, 2007 (Case No. 1:07-cv-00747)(the

"Illinois Action"); (viii) Johnson prosecuted the Illinois Action and obtained a default judgment

against Spiegel, Inc. on July 13, 2007, and (ix) Johnson has sought to rely on the Illinois Action

default judgment by referencing it in an appeal pending before the United States District Court

for the Southern District of New York (Case No. 07-CV-03947); and upon all the record herein

and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

ORDERED that the Motion is granted, and the Court finds and determines that

Jacqueline Johnson is in civil contempt of this Court; and it is further

ORDERED that Johnson is enjoined, restrained and prohibited from any and all

further and/or additional violations of the Plan and Confirmation Order, whether specifically

further described and prohibited by this Order or not; and it is further

ORDERED that Johnson is prohibited from bringing any action, prosecuting any

claim, or filing any papers related to any action, proceeding, claim or other assertion of any type

against Spiegel, Inc., any of the Debtors (as defined in the Plan) or the Creditor Trust in any

2

court, tribunal, regulatory board, commission or any other adjudicatory body of any type *without the prior permission* of the Court, *except* with respect to any papers filed by Johnson in that certain action currently pending before United States District Judge Richard Holwell; and it is further

ORDERED that Johnson is required and is affirmatively enjoined and directed to assist the Creditor Trust, if requested, in voiding and vacating the judgment obtained by her against Spiegel, Inc. in the United States District Court for the Northern District of Illinois; and it is further

ORDERED that Johnson is enjoined, restrained and prohibited from taking any action in opposition to the Creditor Trust's voidance and vacating of the judgment obtained by Johnson in the United States District Court for the Northern District of Illinois; and it is further

ORDERED that Johnson's failure to comply with any component of this Order may result in severe additional and other sanctions; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
     August 21, 2007

          /s/Burton R. Lifland
          HONORABLE BURTON R. LIFLAND
          UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | (Honorable Elaine E. Bucklo) |
| Spiegel, Inc., | ) ) | |
| Defendant, | ) ) ) | |

## AFFIDAVIT OF ATTORNEY DAVID M. LeMAY

David M. LeMay, being sworn, states as follows:

1.      I am an attorney licensed to practice in the State of New York and I am a member

in good standing of the New York Bar.  I have been licensed in New York since 1982.  I am a

partner in the law firm of Chadbourne & Parke LLP, located at 30 Rockefeller Plaza, New York,

New York.  I have represented the Spiegel Creditor Trust in various bankruptcy and other

litigation matters.  I have personal knowledge of the facts set forth below.

2.      I have read the attached Motion of Spiegel Creditor Trust to Vacate Default

Judgment and accompanying Memorandum of Spiegel Creditor Trust in Support of its Motion to

Vacate Default Judgment.  I hereby confirm that the factual and procedural matters stated in the

Motion and Memorandum are true and accurate.

David M. LeMay

Subscribed and Sworn to before me
this 27th day of August, 2007.

Notary Public

FRANCISCO VAZQUEZ
Notary Public, State of New York
No. 02VA6013920
Qualified in New York County
Commission Expires December 27, 20 10

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2007, I caused the foregoing **Memorandum of Spiegel Creditor Trust in Support of its Motion to Vacate Default Judgment** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division. Copies of these documents will be sent electronically to all parties registered as filing users of the Court's Electronic Filing System and the following person via messenger.

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois 60617

s/Eric J. Malnar

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| Defendant. | ) | |
| | ) | |

<u>NOTICE OF MOTION</u>

<u>VIA MESSENGER</u>

TO:  Ms. Jacqueline Johnson (<u>pro se</u>)
10305 South Bensley Avenue
Chicago, Illinois 60617

PLEASE TAKE NOTICE that on August 30, 2007 at 9:30 a.m., or as soon thereafter as we may be heard, we shall appear before Judge Elaine E. Bucklo in Room 1441 in the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, and present the MOTION OF SPIEGEL CREDITOR TRUST TO VACATE DEFAULT JUDGMENT, a copy of which is attached with MEMORANDUM OF LAW, at which time you may be present if you so desire.

Respectfully submitted,

<u>s/Michael T. Hannafan</u>
Michael T. Hannafan
One of the Attorneys for the
Spiegel Creditor Trust

Dated:  August 27, 2007

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois  60601
(312) 527-0055

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on August 27, 2007 he caused true and correct copies of the **NOTICE OF MOTION TO VACATE DEFAULT JUDGMENT** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division and that I caused a copy of the attached to be served Via Messenger on:

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois 60617


s/ Michael T. Hannafan

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacqueline Johnson

       Plaintiff,

v.            Case No.: 1:07–cv–00747
              Honorable Elaine E. Bucklo

Spiegel Inc.

        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, August 30, 2007:

   MINUTE entry before Judge Elaine E. Bucklo : Motion of Special Creditor Trust to vacate default judgment (16) heard and the motion is granted. Accordingly, default judgment entered on 7/13/07 is vacated. The case is dismisssed without prejudice. The court notes that plaintiff appeared after this case had been called and the motion granted. Plaintiff stated that she had received notice of this motion from a neighbor only this morning and had immediately come to court. I explained to plaintiff, on the record, that I could not hear her case until and unless she received an order from the district court in New York reversing the action taken by the bankruptcy court in dismissing her claim, and then a transfer of the claim to this court. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

<div align="right">
**Hearing Date and Time: August 21, 2007 at 10:00 a.m.**
**Objection Deadline: August 17, 2007 at 2:00 p.m.**
</div>

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369
David M. LeMay (DL 9093)
Douglas E. Deutsch (DD 7229)

Attorneys for the Spiegel Creditor Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | |
|---|---|
| : | **Chapter 11** |
| : | |
| **In re:** : | **Case No.  03 - 11540 (BRL)** |
| : | |
| **SPIEGEL, INC., et al.,** : | **(Jointly Administered)** |
| : | |
| **Reorganized Debtors.** : | |

------------------------------------------------------------x

### SPIEGEL CREDITOR TRUST'S MOTION TO HOLD JACQUELINE JOHNSON IN CONTEMPT OF COURT FOR KNOWING VIOLATION OF PLAN INJUNCTION

The Spiegel Creditor Trust (the "Creditor Trust"), as successors to the debtors (the "Debtors") in certain matters in the above referenced cases, hereby submits this Motion to Hold Jacqueline Johnson in Contempt of Court for Knowing Violation of Plan Injunction (the "Motion").  In support of this Motion, the Creditor Trust respectfully represents as follows:

### PRELIMINARY STATEMENT

1.    Between 1992 and 2001, Jacqueline Johnson ("Johnson") apparently filed ten separate actions against Spiegel, Inc.[1]  These actions were pursued before (a) the Illinois Human

---

[1]    *See* **Exhibit A** (letter from Deborah Divis, Assistant General Counsel of Spiegel, Inc. to State of Illinois Department of Human Rights dated April 12, 2001).

Rights Commission (multiple times), (b) the Circuit Court of Cook County (multiple times), (c) Appellate Court of Illinois, 1st Judicial District, (d) United States District Court for the Northern District of Illinois, (e) United States Court of Appeals for the Seventh Circuit, and (f) Circuit Court of Cook County, Law Division. All of these actions were apparently dismissed. Johnson then filed yet another claim against Spiegel, Inc. in February 2003. Soon after, the Debtors filed for bankruptcy. Accordingly, Johnson essentially converted her February 2003 claim into a bankruptcy claim by attaching the relevant materials to her proof of claim. That claim was duly disputed by the Debtors and by the Creditor Trust, as their duly-authorized successor under the Debtors' confirmed plan of reorganization with respect to these matters. In December 2006, Johnson's claim was disallowed by this Court. Johnson has sought to appeal the order disallowing her claim and the Creditor Trust has contested its appealability. That issue is currently pending (in the form of a motion to dismiss the purported appeal) before The Honorable Richard Holwell, United States District Judge. Another matter brings us back to this Court today.

2.    Last week, the Creditor Trust learned that Johnson filed yet another action against Spiegel, Inc. on February 6, 2007 in the Northern District of Illinois. Following months of prosecuting that action in secret, Johnson obtained a default judgment against Spiegel, Inc. As successor to Spiegel, Inc. with respect to these matters, the Creditor Trust finds the new action in the Northern District of Illinois very troubling. The inception and prosecution of that action was in direct violation of the Plan and Confirmation Order (both as defined below) and comes after numerous and very specific written warnings were provided to Johnson as to the consequences of taking such steps. Moreover, by prosecuting the action, Johnson obtained her thirteenth bite at the proverbial apple. Meanwhile, the Creditor Trust is required to spend substantial time and

NY4 - 202835.04

monies to address this entirely frivolous litigation (including by filing this motion, by clarifying matters with Judge Holwell and by vacating the default judgment), all to the detriment of the Creditor Trust beneficiaries.

3.      Johnson has demonstrated an amazing ability to create and prolong frivolous litigation.  This cannot continue to be tolerated, especially in blatant violation of orders of this Court that limit such litigation.  Accordingly, the Creditor Trust requests the Court hold Johnson in contempt of court and put in place sufficient sanctions, including but not limited to those described below, to ensure that Johnson does not violate the Court's orders again.

## **BACKGROUND**

### *A. Johnson's Original Complaint and Proof of Claim.*

4.      As set forth in more detail in the Supplemental Statement of the Spiegel Creditor Trust in Support of the Debtors' Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to the Claim of Jacqueline J. Johnson (Docket No. 4335) (the "Supplemental Statement"), on or about February 13, 2003, Jacqueline J. Johnson filed a "Charge of Discrimination" with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission (the "EEOC") against Spiegel, Inc. asserting that Spiegel, Inc. provided negative employment information on Johnson (the "EEOC/Human Rights Actions").

5.      On March 17, 2003, each of the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

6.      On October 15, 2004, Johnson filed Proof of Claim No. 4248 against Spiegel, Inc. in the amount of $100,000 (the "Johnson Claim") asserting damages pursuant to a "Complaint and or Law Suit filed against [Spiegel] for reasons of discrimination[.]"  *See* Supplemental Statement, Exhibit E.

3

7.    Thereafter, and pre-confirmation, the Debtors filed an objection to the Johnson Claim and Johnson filed a reply.  *See generally* Supplemental Statement.

**B.  Debtors' Plan of Reorganization is Confirmed.**

8.    On May 25, 2005, the Debtors' Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") was confirmed.  *See* Docket No. 3356.  The Plan became effective on or about June 21, 2005.  Among other things, the Plan transferred certain assets and claim liabilities to the Creditor Trust.  The Creditor Trust was specifically tasked with "settling, resolving and objecting to all Disputed Claims and Unresolved Claims."  *See* Plan §7.9.

9.    Additionally, Section 13.1 of the Plan (titled "Injunction") states, in relevant part:

all Entities who have held, hold or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; … and (v) taking any actions to interfere with the implementation or consummation of this Plan that do not conform to or comply with the provisions of this Plan.

10.    Furthermore, Section 13.2 of the Plan (titled "Discharge") states, in relevant part:

Except for Distributions under this Plan, and as otherwise provided in this Plan or in the Confirmation Order, on the Effective Date, the Confirmation Order shall operate as a discharge under Section 1141(d)(1) of the Bankruptcy Code, and as a release of any and all debts … of, and Claims against, one or more of the Debtors that arose at any time before the Confirmation Date, including, but not limited to, all principal and interest, whether accrued before, on or after the Petition Date, regardless of whether (i) a proof of claim in respect of such Claim has been Filed or deemed Filed, [or] (ii) such Claim has been Allowed pursuant to Section 502 of the Bankruptcy Code ….

11.    The order confirming the Plan was titled "Finding of Facts, Conclusions of Law and Order Pursuant to 11 U.S.C. § 1129(a) and Rule 3020 of the Federal Rules of Bankruptcy

4

Procedure Confirming Modified First Amended Joint Plan or Reorganization of Affiliated

Debtors and Granting Related Relief" (the "Confirmation Order") (Docket No. 3590).  Among

other things, the Confirmation Order approved the discharge set forth in Section 13.2 of the Plan.

*See* Confirmation Order at ¶40.

12.     Furthermore, tracking the language of the Plan, the Confirmation Order

specifically decreed that

> all Entities who have held, hold or may hold Claims or Equity Interests are
> permanently enjoined, from and after the Effective Date, from: (a) commencing
> or continuing in any manner any action or other proceeding of any kind on any
> such Claim or Interest against the Debtors, their estates, the Reorganized
> Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust,
> or the Trustees; (b) enforcing, attaching, collecting or recovering by any manner
> or means of any judgment, award, decree or order against the Debtors, their
> estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer
> Holdings, the Creditor Trust, or the Trustees; … and (e) taking any actions to
> interfere with the implementation or consummation of this Plan that do not
> conform to or comply with the provisions of this Plan.

*Id.* at ¶51.

**C.  Disallowance of Claim and Multiple Warnings Provided to Johnson**

13.     On December 19, 2006, the Court entered its Order Granting Twenty-Fourth

Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline

J. Johnson (the "Disallowance Order") (Docket No. 4606).

14.     Subsequently, Johnson filed a motion requesting reconsideration of the

Disallowance Order.  *See* Motion for Request for Reconsideration of Order Granting Twenty-

Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by

Jacqueline Johnson (docketed January 10, 2007) (Docket No. 4632) ("Johnson's First Motion to

Reconsider").

15.     During this period, Johnson telephonically informed counsel to the Spiegel Creditor Trust that "she may seek to continue prosecution of her claim against Spiegel (and the Trust) through the EEOC process."  Accordingly, in its response to Johnson's First Motion to Reconsider, the Creditor Trust reported this threat to the Court and noted that taking such an action would be in violation of Section 13.1 of the Plan and paragraph 51 of the Confirmation Order.  *See* Response of the Spiegel Creditor Trust to Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim With Respect to Claim Number 4248 Filed by Jacqueline Johnson (docketed February 5, 2007) (Docket No. 4646) ("Creditor Trust's Response to Motion for Reconsideration") at p.13.  A copy of the Creditor Trust's Response to Motion for Reconsideration is attached hereto as **Exhibit B.**[2]

16.     As a reply to the Creditor Trust's Response to Motion for Reconsideration, Johnson filed what she titled a "response."  *See* Response of Jacqueline Johnson (Claim 4248) to Spiegel Creditor Trust's Response to Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim (docketed February 14, 2007) (Docket No. 4656) ("Johnson's Reply").  Johnson's Reply attached an exhibit that suggested that Johnson was pursuing an action against Spiegel, Inc. in the Northern District of Illinois.  *See* Johnson's Reply at Exhibit C.

17.     Immediately after receiving Johnson's Reply, counsel to the Spiegel Credit Trust mailed a letter to the Court on which Ms. Johnson was copied (the "February 20, 2007 Letter").

---

[2]     Johnson was served with a copy of the Creditor Trust's Response to Motion for Reconsideration.  *See* Affidavit of Service dated February 7, 2007 (Docket No. 4648).

A copy of the February 20, 2007 Letter is attached hereto as **Exhibit C.**  The February 20, 2007

Letter stated, in relevant part:

> … Ms. Johnson indicates in her response that she recently filed a complaint
> against Spiegel, Inc. in the United States District Court for the Northern District
> of Illinois.  *See* Response at pg. 3 and Exhibit C thereto.  The paper attached to
> the Civil Cover Sheet was date stamped on February 6, 2007.  We note the
> filing of this or any other new complaint in any other Court is prohibited by the
> confirmed and effective Plan of Reorganization in these cases and by this
> Court's prior orders.  Moreover, Ms. Johnson has been alerted, both orally and
> in the Spiegel Creditor Trust's prior papers, that filing such papers would violate
> Section 13.1 of the Plan (Docket No. 3556) and paragraph 51 of the related
> Confirmation Order (Docket No. 3590).

18.     Ultimately, the Court denied Johnson's First Motion for Reconsideration.  *See*

Memorandum Decision and Order Denying Motion for Reconsideration (docketed on April 4,

2007) (Docket No. 4668) ("First Order Denying Reconsideration").

19.     On April 16, 2007, Johnson filed her Motion to Reconsider and Allow

Corrections to Clarify Misunderstanding and Explanation as to Why the Reconsideration was

Made by Claimant in her Motion for Reconsideration to Order Granting Twenty-Fourth Omnibus

Objection to Proofs of Claim with Respect to Claim Number 4248 filed by Jacqueline Johnson

(docketed April 16, 2007) (Docket No. 4674) ("Johnson's Second Motion for Reconsideration").

A copy of Johnson's Second Motion for Reconsideration is attached hereto as **Exhibit D**.

20.     Johnson's Second Motion for Reconsideration stated, among other things, that

"[o]n April 13, 2007, claimant [Johnson] will be filing an appeal against the Department of

Human Rights and EEOC for failure to conduct a through [sic] investigation.  A copy will be

sent to this court as part of her motion under new evidence to reconsider the expungment.

Claimant just discovered the her [sic] witnesses were never contacted in the investigations."  *See* Johnson's Second Motion for Reconsideration at p.2.[3]

21.    On April 19, 2007, and partially in response to the above-quoted language in the Johnson's Second Motion for Reconsideration, counsel to the Spiegel Creditor Trust sent a letter to Johnson (the "April 19, 2007 Letter").  A copy of the letter the April 19, 2007 Letter is attached hereto as **Exhibit E**.  The April 19, 2007 Letter stated, in relevant part:

> You state in your Motion to Reconsider and Allow dated April 12, 2007 that you will be filing an appeal with the Department of Human Rights and the EEOC.  As noted in my February 20, 2007 letter to Judge Lifland and in prior court papers, such an action would violate Section 13.1 of the Spiegel Plan of Reorganization (Docket No. 3556) and paragraph 51 of the related Confirmation Order (Docket No. 3590).  I would urge you (again) to obtain and consult with counsel before taking this action.

22.    To the knowledge of the Creditor Trust, neither the Court or the Creditor Trust was ever provided a copy of the threatened appeal papers referenced in Johnson's Second Motion for Reconsideration.

**D.  Discovery of New Action in Illinois**

23.    Following this Court's entry of its First Order Denying Reconsideration, Johnson filed a notice of appeal.  *See* Notice of Appeal (docketed April 16, 2007) (Docket No. 4673).

_____

[3]    The Court denied Johnson's Second Motion for Reconsideration.  *See* Order Denying Motion to Reconsider and Allow Corrections to Clarify Misunderstanding and Explanation as to Why the Reconsideration to Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline Johnson (docketed on April 19, 2007) (Docket No. 4675).  Following entry of this order, Johnson filed yet another motion to reconsider in the Bankruptcy Court.  *See* Motion to Re Reconsider in Light of this New Evidence with Respect to Claim No. 4247 (docketed May 1, 2007) (Docket No. 4692) ("Johnson's Third Motion to Reconsider").  Johnson's Third Motion to Reconsider was also denied by this Court.  *See* Order Denying Motion to Re Reconsider in Light of this New Evidence with Respect to Claim Number 4247 (docketed May 17, 2007) (Docket No. 4696).

Ultimately, the appeal was docketed in the United States District Court for the Southern District of New York as Case No. 07-CV-03947.

24.    In a letter dated July 20, 2007 that was sent to District Judge Holwell, the District Court Judge assigned to handle the Johnson appeal, Johnson references and attaches a copy of a default judgment she apparently recently obtained in the United States District Court for the Northern District of Illinois against Spiegel, Inc.[4]  The case was filed as Case No. 1:07-cv-00747 (the "Illinois Action").  A copy of Johnson's Letter to Judge Holwell and the related Exhibits are attached hereto as **Exhibit F**.

25.    Upon receipt of the letter, the Creditor Trust reviewed the docket for the Illinois Action (a copy of the docket summary sheet is attached as **Exhibit G**; a copy of all materials currently docketed in the Illinois Action is attached as **Exhibit H**) and found that, Johnson commenced an action against Spiegel, Inc. on February 6, 2007.  Johnson apparently filed the Illinois Action complaint and served process on an unknown person and entity in Virginia who, Johnson appears to claim, was served on behalf of Spiegel, Inc.[5] On July 13, 2007, given that the Creditor Trust was not notified of the Illinois Action and no response was filed, the court

---

[4]    The pendency of the Johnson appeal does not divest the Court of jurisdiction over this Motion, which is entirely unrelated to the appeal and involves this Court's power and duty to enforce its plan injunction.

[5]    We are not certain who was served with Ms. Johnson's summons as, among other things, Spiegel, Inc. was not only discharged of all liabilities in June 2005 but was also dissolved under state law.  For what little it is worth, we note that even if Spiegel, Inc. had not been dissolved, the purported service would still have been improper. Spiegel, Inc. was a Delaware corporation with an agent in Delaware.  Accordingly, service might have been appropriate there.  As Spiegel, Inc. did business in Illinois and Johnson lives in Illinois, service on an agent in Illinois might also have been correct.  Service in Virginia, however, is both illogical and totally improper.  Since the purported service was in any case prohibited by this Court's plan injunction, the issue of service is moot.

responsible for that Action awarded Johnson a default judgment of $100,000 in damages as well as certain injunctive relief.

## **ARGUMENT**

**A.    *Civil Contempt Standards***

26.    Bankruptcy courts have the authority to hold a party in civil contempt. The statutory basis for this authority is found in 11 U.S.C. § 105(a). *See Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 284 (9th Cir. 1996). Section 105 states:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or prevent an abuse of process.

Additionally, Bankruptcy Rule 9020(b) specifically allows bankruptcy judges to conduct hearings on contempt not committed in the presence of the bankruptcy judge. *See also Eck v. Dodge Chemical Co. (In re Power Recovery Systems, Inc.)*, 950 F.2d 798, 802 (1st Cir. 1991) ("Bankruptcy rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of the procedures are given.").

27.    Generally, civil contempt is appropriate where a party violates a court order and punishment is necessary to induce compliance. *See Gompers v. Bucks Stove & Range Co*., 221 U.S. 418, 441-2 (1911). The Second Circuit has described three requirements for holding a party in civil contempt:

> … a party may be held in civil contempt for failure to comply with an order of the court if the order being enforced is "clear and unambiguous, the proof of noncompliance is 'clear and convincing,'" and the defendants have not "been reasonably diligent and energetic in attempting to

10

accomplish what was ordered." …. It is not necessary to show that defendants disobeyed the … court's orders willfully.

*EEOC v. Local 638,* 753 F.2d 1172, 1178 (2d Cir. 1985) (citations omitted).

28.    Bankruptcy cases have held that a party who violates (willfully or not) any bankruptcy court order can be held in contempt. *See, e.g., Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989) (attorney held in contempt for failing to turn over funds that court ordered be paid to court); *In re Terrebonne*, 108 F.3d at 613-14 (creditor held in contempt for continuing to prosecute discharged claim for damages).  Courts have often noted that contempt is the appropriate remedy for the violation of a plan injunction provision. *See, e.g., Texaco v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 945 (Bankr. S.D.N.Y. 1995)(violation of discharge injunction may be enforced under 11 U.S.C. § 524 by means of a contempt action); *Insurance Co. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp.* (*In re National Gypsum Co.*), 118 F.3d 1056 (5th Cir. 1997)("The discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt"); *see also* 4 Collier on Bankruptcy ¶ 524.02[2][c] (15th ed. 2007) ("Civil contempt is the normal sanction for violation of the discharge injunction.").

29.    In a noteworthy action in the Southern District of New York, *Bartel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 171 B.R. 18 (S.D.N.Y. 1994), the District Court reviewed a bankruptcy court's order that held appellant Richard C. Bartel in contempt.  There, the District Court noted that the bankruptcy court's order of contempt found that Bartel had filed proofs of claim in another bankruptcy case in violation of the automatic stay in the Eastern Airlines bankruptcy case, that Bartel had "actual knowledge of that stay, that he was not authorized to act in Eastern's behalf, that he lacked any good faith argument that his conduct complied with the

automatic stay, and that he was therefore in civil contempt 'pursuant to Section 105 of the

Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9020.'" *Id.* at 20 (citation omitted).

30.     In that case, the District Court found that the monetary sanction of $3500 plus

$750 per day for each day that Bartel did not withdraw the claims purportedly filed on behalf of

Eastern was an appropriate civil penalty "to coerce the defendant in compliance with the court's

order, and to compensate the complainant for losses sustained." *Id.* at 21 (citations omitted).

Here, we believe such monetary sanctions are currently insufficient to ensure that the defendant

complies with the court's order or to compensate the complainant for losses sustained.

**B.**     ***Application of Law to Johnson Actions***

31.     As set forth above, the Second Circuit has stated that a party may be held in civil

contempt if (a) the order which is sought to be enforced is clear and unambiguous, (b) the proof

of noncompliance is clear and convincing, and (c) the defendant has not been reasonably diligent

and energetic in attempting to accomplish what was ordered. *See EEOC v. Local 638,* 753 F.2d

at 1178. With respect to Johnson's actions, each of the elements is analyzed below.

32.     The first element is satisfied because the Debtors' Plan and Confirmation Order

provisions noted above could not be more clear or unambiguous. These provisions are based on

relatively standard provisions that discharge the Debtors, including Spiegel, Inc. from liability

(except as otherwise provided by the Plan) and permanently enjoin all parties from commencing

or continuing any action against the Debtors outside of the Bankruptcy Court's own claim

administration process.

33.     Although the existence of these Plan and Confirmation Order provisions alone

should satisfy the requirement that the order be clear and unambiguous, the multiple specific and

written notices that Johnson received with respect to the threatened action guaranteed that

Johnson knew or should have known of these provisions.  To reiterate, Johnson was notified of the existence of these relevant Plan and Confirmation Order provisions and specifically warned *in writing on three separate occasions* that taking action in another court with respect to this matter would violate the Plan and Confirmation Order.  *See* Creditor Trust's Response to Motion for Reconsideration at p.13 (docketed February 5, 2007); February 20, 2007 Letter; and April 19, 2007 Letter.

34.    The second element, that proof of noncompliance be clear and convincing, is also satisfied in this case beyond any doubt.  Again, despite the language in the Plan and Confirmation Order, Johnson began the Illinois Action on February 6, 2007 and prosecuted that action for almost six months.  Over the span of that six month period, all three of the written warnings described above -- dated February 5, 2007, February 20, 2007 and April 19, 2007 -- were ignored.  This is overwhelming evidence of Johnson's noncompliance with the Court's order.

35.    The third and final element is that the defendant not be reasonably diligent and energetic in attempting to accomplish what was ordered.  In fact, based on the foregoing, it should be clear to the Court that Johnson has demonstrated incredible diligence and energy in flouting this Court's order by prosecuting a new action *sub rosa*.  Accordingly, this element is also satisfied.

36.    In conclusion, Johnson has intentionally ignored the orders of this Court.  However, willfulness is not even required to be proven to hold a party in contempt.  *See EEOC v. Local 638,* 753 F.2d at 1178.  Most important is for this Court to determine and impose appropriate sanctions to induce compliance with its orders.

13

**REQUESTED RELIEF**

37.     Based on the foregoing, the Creditor Trust requests that the Court hold Johnson in contempt and order, *inter alia*, that:

- Johnson be enjoined, restrained and prohibited from further and/or additional violations of the Plan and Confirmation Order, whether specifically further described and prohibited by this Court's order or not;

- Johnson be prohibited from bringing any action, prosecuting any claim, or filing any papers related to any action, proceeding, claim or other assertion of any type against Spiegel, Inc., any of the Debtors (as defined in the Plan) or the Creditor Trust in any court, tribunal, regulatory board, commission or any other adjudicatory body of any type *without the prior permission* of this Court, *except* with respect to any papers filed by Johnson in that certain action currently pending before Judge Holwell;

- Johnson be required to assist the Creditor Trust, if requested, in voiding and vacating the judgment obtained in the Northern District of Illinois;

- Johnson be enjoined, restrained and prohibited from taking any action in opposition to the Creditor Trust's voidance and vacating of the judgment obtained in the Northern District of Illinois; and

- Johnson be notified that failure to comply with any component of the Court's order may result in severe sanctions.

        WHEREFORE, the Creditor Trust respectfully requests that the Court grant the Motion and find Johnson in contempt of Court, sanction Johnson as set forth above, and grant such other and further relief as the Court may deem just and appropriate.

Dated:  August 3, 2007
        New York, New York
                                CHADBOURNE & PARKE LLP


                                By:    */s/  David M. LeMay*
                                       David M. LeMay (DL 9093)
                                       Douglas E. Deutsch (DD 7229)
                                       30 Rockefeller Plaza
                                       New York, New York 10112
                                       (212) 408-5100


                                Attorneys for the Spiegel Creditor Trust

14

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                          :
                                          :      Chapter 11
                                          :
In re:                                    :      Case No.  03 - 11540 (BRL)
                                          :
SPIEGEL, INC., et al.,                    :        (Jointly Administered)
                                          :
                   Reorganized Debtors.   :
                                          :
                                          :
                                          :
                                          :
----------------------------------------------------------------x
```

### ORDER GRANTING THE SPIEGEL CREDITOR TRUST'S MOTION
### TO HOLD JACQUELINE JOHNSON IN CONTEMPT OF COURT

Upon the motion dated August 2, 2007 (Docket No. 4713) ("the Motion")[1] filed by the Spiegel Creditor Trust (the "Creditor Trust"), seeking entry of an order pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "Bankruptcy Code") and Rule 9020(b) of the Federal Rules of Bankruptcy Procedure, holding Jacqueline Johnson ("Johnson") in contempt of court; it having been established through the record of the hearing on the Motion and through the record of the above captioned-cases or otherwise, that: (i) this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§1408 and 1409; (iii) this matter is a core proceeding pursuant to 28 U.S.C. §157(b); (iv) notice of the Motion has been given as provided in the Motion, and that no other or further notice need be given; (v) any and all debts of, and claims against, the Debtors have been discharged

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Motion.

pursuant to Section 13.2 of the Plan, Paragraph 40 of the Confirmation Order and section

1141(d)(1) of the Bankruptcy Code, and that, pursuant to Section 524(a) of the Bankruptcy

Code, Section 13.1 of the Plan and Paragraph 51 of the Confirmation Order, any and all

claimants of or against any of the Debtors have been permanently enjoined from commencing or

continuing any actions or proceedings on any claims against the Debtors, except as expressly

provided in the Plan; (vi) Johnson received repeated and specific written warnings that filing

actions in another court would violate the Plan injunction of this Court; (vii) despite these

multiple written and specific warnings, Johnson filed an action in the United States District

Court for the Northern District of Illinois on February 6, 2007 (Case No. 1:07-cv-00747)(the

"Illinois Action"); (viii) Johnson prosecuted the Illinois Action and obtained a default judgment

against Spiegel, Inc. on July 13, 2007, and (ix) Johnson has sought to rely on the Illinois Action

default judgment by referencing it in an appeal pending before the United States District Court

for the Southern District of New York (Case No. 07-CV-03947); and upon all the record herein

and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

ORDERED that the Motion is granted, and the Court finds and determines that

Jacqueline Johnson is in civil contempt of this Court; and it is further

ORDERED that Johnson is enjoined, restrained and prohibited from any and all

further and/or additional violations of the Plan and Confirmation Order, whether specifically

further described and prohibited by this Order or not; and it is further

ORDERED that Johnson is prohibited from bringing any action, prosecuting any

claim, or filing any papers related to any action, proceeding, claim or other assertion of any type

against Spiegel, Inc., any of the Debtors (as defined in the Plan) or the Creditor Trust in any

court, tribunal, regulatory board, commission or any other adjudicatory body of any type *without the prior permission* of the Court, *except* with respect to any papers filed by Johnson in that certain action currently pending before United States District Judge Richard Holwell; and it is further

ORDERED that Johnson is required and is affirmatively enjoined and directed to assist the Creditor Trust, if requested, in voiding and vacating the judgment obtained by her against Spiegel, Inc. in the United States District Court for the Northern District of Illinois; and it is further

ORDERED that Johnson is enjoined, restrained and prohibited from taking any action in opposition to the Creditor Trust's voidance and vacating of the judgment obtained by Johnson in the United States District Court for the Northern District of Illinois; and it is further

ORDERED that Johnson's failure to comply with any component of this Order may result in severe additional and other sanctions; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      August 21, 2007

                    /s/Burton R. Lifland_____
                    HONORABLE BURTON R. LIFLAND
                    UNITED STATES BANKRUPTCY JUDGE

NY3 - 448747.03

1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   --------------------------------x

4       In the Matter

5           of                    Case No.
                                   03-11540

6       SPIEGEL INC.,

7                   Debtor.

8   --------------------------------x

9                       August 21, 2007

10                      United States Custom House
                        One Bowling Green

11                      New York, New York 10004

12

13      Motion of Spiegel Creditor Trust to Hold
    Jacqueline

14
    Johnson in Contempt of Court for Knowing Violation of Plan

15
    Injunction; Debtor's Fourth Omnibus Objection to Proofs of

16
    Claim.

17

18

19

    B E F O R E:

20

                    HON. BURTON R. LIFLAND,

21

                        U.S. Bankruptcy Judge

22

23

24

25

2

1   **A P P E A R A N C E S:**

2

3

      **CHADBOURNE & PARKE LLP**

4

        **Attorneys for the Spiegel Creditor Trust**

5        **30 Rockefeller Plaza**

        **New York, New York 10112**

6

      **BY:  DAVID M. Le MAY, ESQ.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    P R O C E E D I N G S:

2              MR. Le MAY:  Your Honor, good morning.  My

3    name is David Le May from Chadbourne and Park here in New

4    York.  As you know, my firm represents the Spiegel Creditor

5    Trust that was formed under the confirmed effective plan of

6    reorganization of Spiegel.

7              As the court also knows, we are here this

8    morning on a contempt motion.  The person against whom

9    contempt sanctions are sought is Ms. Jacqueline Johnson.

10   Yesterday we received from Ms. Johnson, a response in

11   which, among other things, she asked your Honor to be able

12   to participate by telephone.  I did not know if she was

13   going to participate by telephone or if that's something

14   your Honor would continence.  So I thought, as a threshold

15   matter, I would ask the court how I should proceed.

16             THE COURT:  You may proceed.  You filed

17   papers.  She filed papers.  We can proceed.  The court

18   always entertains oral argument, but especially in a

19   situation such as this, I would want the respondent here in

20   the courtroom.

21             MR. Le MAY:  For the record, your Honor,

22   then could it be said that your Honor denied her request?

23             THE COURT:  Yes.

24             MR. Le MAY:  Thank you, your Honor.

25             Honor is familiar with what brings me down

4

here this morning.  Ms. Johnson is not unknown to you, nor

for that matter I suppose are we.  For the record and

because Ms. Johnson has a tendency to take things to other

courts, may I have a few minutes just to make a record.  I

will be very brief.

THE COURT:  Go ahead.

MR. Le MAY:  Your Honor, this is a motion

for contempt that we served on the 3rd of this month.  Ms.

Johnson filed a response which we received yesterday;

actually that was three days later than the objection

deadline set forth in the motion.  Ms. Johnson has asked

for telephonic participation; your Honor has denied that

request.

As the court knows, you confirmed the plan

of reorganization in the Spiegel cases in May of 2005.  The

plan became effective shortly thereafter.  That plan

contains completely standard provisions consistent with the

relevant provisions in the Bankruptcy Code and cause for

tracking those provisions.

Those provisions contain the standard

formulas both for discharge of the debtor, and for the

injunction, a permanent injunction, binding on all parties

against the pursuit of collateral litigation anywhere other

than in the Bankruptcy Court.  Very, very standard

provisions.

5

1    Ms. Johnson filed a proof of claim in this

2    case.  That claim was contested and your Honor denied her

3    claim on or about December 19, 2006.  Ms. Johnson then

4    filed three motions for reconsideration, all of which this

5    court denied.  She has appealed this court's rulings, and

6    that appeal is sub judice before District Judge Holwell in

7    the Southern District of New York.  We moved to dismiss

8    that appeal, and that will take its course.

9    Meanwhile, however, Ms. Johnson, in letters

10   and telephone conversations had made it clear that she

11   intended to pursue the claims that had been the subject of

12   her proof of claim in which were denied in other forum.  We

13   wanted to make sure -- she is a pro se individual and is

14   entitled to the accommodations that pro se individuals are

15   entitled to -- we wanted to make sure that she knew that

16   that was a very bad thing.  Obviously lawyers know that;

17   she is a pro se individual.

18   We filed on February 5th a response to a

19   motion that she had filed which specifically noted her

20   threat to pursue collateral litigation, and specifically

21   noted the fact that that would be in violation of the

22   discharge and injunction.  We know that she received that

23   document was because she responded to it in a subsequent

24   filing.  We also, however, sent letters to her on February

25   20th, 2007, and April 19th, 2007, at least one of which was

6

1   copied to this court, perhaps both of which were.  And

2   those letters, among other things, urged her to consult

3   with counsel and remind her that pursuing collateral

4   litigation on these claims that your Honor had already

5   ruled on would be a violation of court injunction and could

6   have some pretty severe sanctions for her.

7                    It nevertheless turns out that earlier this

8   year she filed an action in the United States District

9   Court for the Northern District of Illinois and got a

10  default judgment.  That action alleges the very same

11  grievances against Spiegel that were the subject of the

12  claim that was denied.

13                   We don't know who she served or where.

14  Spiegel Inc. no longer exists; it was dissolved pursuant to

15  the confirmed plan of reorganization.  She served someone.

16  At and the clerk, having gotten no response from anybody,

17  not surprisingly, out in the Northern District of Illinois,

18  entered a default judgment.

19                   Ms. Johnson is now in possession of a

20  default judgment.  I'm not sure what she intends to do with

21  it, but obviously we can't have this.  As I say, it isn't

22  clear who she served with her complaint, but it really

23  doesn't matter because on its face the complaint is

24  violative of the discharge and your court's prior order.

25                   Your Honor, we are here today really for

1    two reasons.  One, we just can't have a legal system where

2    people ignore court orders.  It's often said that the rich

3    and the powerful can't be above the law, and that's

4    certainly true, but neither can the pro se individual.  It

5    can't be said that simply by being a pro se unrepresented

6    person you get to ignore judges' order.

7                    Second and related, we are spending an

8    awful lot of time with Ms. Johnson.  As you know, your

9    Honor, we've been before you.  My colleague, Mr. Detuche,

10   has now been before you on four occasions dealing with Ms.

11   Johnson.  We filed a lot of papers.  We have an appeal

12   pending.  It is not right, and it is not fair for the

13   legitimate creditors of Spiegel and its associated debtors

14   to have to fund me coming down here all the time to deal

15   with Ms. Johnson.  It's simply not fair to them.  Many of

16   them are large banks and sophisticated financial

17   institutions, but Spiegel was a retail merchant, and many

18   more of them are small businesses and indeed individuals.

19   So it's just not fair that Mrs. Jones out in Iowa should

20   have to pay me to come down here to deal with Ms. Johnson's

21   contumacious behavior.

22                    Your Honor, our papers, which you have, set

23   forth the applicable legal standards in this circuit for a

24   finding of contempt.  The second circuit standard is pretty

25   clear; it has three elements.  The order that is being

8

1  examined by the Bankruptcy Court has to be clear and

2  unambiguous.  There has to be clear and convincing proof of

3  noncompliance with that order.  And it must be shown that

4  the defendant or the respondent did not show reasonable

5  diligence and energy in doing what the court had ordered.

6          And I know that your Honor has personal

7  experience with the application of those standards.  In our

8  papers we cited a matter growing out of the Eastern Air

9  Lines case involving Mr. Bartels in which I think it could

10  be said that even without a showing of willfulness contempt

11  is an appropriate sanction when the Second Circuit tests

12  are met.  Here I believe there is a gross showing of the

13  willfulness, it's really atrocious, and we really would

14  like your Honor to stop this.

15          Now, it's very clear that Ms. Johnson has

16  no money.  We don't seek monetary sanctions against Ms.

17  Johnson; it would be fruitless and it would be stupid.

18  What we would like your Honor to do is basically help us

19  put a stop to this.  And so we submitted a form of order

20  with our papers, and I have an order to hand up, if the

21  court want's to grant me my relief, which would do a few

22  things.  It would, first of all, declare that she is in

23  contempt.  It would require her to assist us in getting the

24  Illinois action dismissed, and we will be filing a motion

25  in Illinois to have that default judgment vacated.  I don't

9

1    think we will need her cooperation, but the least she ought

2    to do is be forced to help us.  And then it, in effect,

3    tells her that she can't do this anymore, that she cannot

4    continue to violate your injunctions and that she cannot go

5    on filing papers related to this claim in any other court,

6    except for pursuing her pending appeal in front of Judge

7    Holwell, which is sub judice before him.

8              We think this is reasonable.  We don't seek

9    to terrorize or punish Ms. Johnson, but honestly, your

10   Honor, the other creditors of Spiegel are getting a raw

11   deal here and this should shop.  That's pretty much my

12   presentation, your Honor, and I certainly could answer

13   questions.

14             THE COURT:  Does anyone here want to be

15   heard?

16             Ms. Johnson did file a lengthy response

17   which, in essence, is really not responsive at all to the

18   challenge being put forth today with respect to her

19   activities.

20             Although she is pro se, it's quite clear

21   from all of the dealings in this court and the fact that

22   there is an appeal pending with basically the same issues

23   that are involved in the district court, she is not on

24   unmindful of the potential of her pursuit of the collateral

25   litigation to be in violation of the discharge and this

10

1    court's orders.

2                The record here clearly demonstrates that

3    the criteria for finding of contempt has been met, and

4    certainly Ms. Johnson is rather cavalier in her course of

5    action.  I recognize that the relief sought by the moving

6    party here does not include monetary sanctions that perhaps

7    is somewhat realistic under the circumstances, and I am

8    prepared to grant the finding of contempt and the

9    affirmative relief that's requested in the proposed order.

10               And I am not unmindful that should there be

11   a continuation of the activities with respect to outside

12   collateral litigation, that she may very well be subject to

13   financial compensation, and I would entertain your order,

14   Mr. Le May.

15               MR. Le MAY:  Thank you, your Honor.

16               Your Honor, I have an order in the exact

17   form that we submitted with our papers, and if I may

18   approach I'll hand it up.

19               THE COURT:  Yes.

20               MR. Le MAY:  Thank you, your Honor.

21               THE COURT:  I've approved the order.

22               MR. Le MAY:  Your Honor, thank you.  We

23   will make efforts to have a process server serve a copy of

24   your Honor's order on her personally.  I'm not sure she

25   fully appreciates the gravity of what all this entails.  So

11

1   we are going to have a process server go out and try to tag

2   her.  We will hope that that works.  And of course, if

3   there is more, we'll just have to come back here.

4                    Thank you, your Honor.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12

1                          C E R T I F I C A T E

2

3   STATE OF NEW YORK        }

                             }    ss.:

4   COUNTY OF WESTCHESTER    }

5

6              I, Denise Nowak, a Shorthand Reporter

7        and Notary Public within and for the State of

8        New York, do hereby certify:

9              That I reported the proceedings in the

10       within entitled matter, and that the within

11       transcript is a true record of such proceedings.

12             I further certify that I am not

13       related, by blood or marriage, to any of the

14       parties in this matter and that I am in no way

15       interested in the outcome of this matter.

16             IN WITNESS WHEREOF, I have hereunto

17       set my hand this _____ day of

18       _____, 2007.

19

20                    _____

                             DENISE NOWAK

21

22

23

24

25

Official Form 17
(12/04)

# United States Bankruptcy Court

_Southern_ District Of _New York_

In re _Spiegel Inc_
         Debtor

Case No. _07-CV-03947-RJH_

Chapter _Chap 11_

_[Caption as in Form 16A, 16B, or 16D, as appropriate]_

## NOTICE OF APPEAL

_Jacquelene Johnson_, the plaintiff [_or defendant or other party_] appeals under 28 U.S.C. § 158(a) or (b) from the judgment, order, or decree of the bankruptcy judge (describe) entered in this adversary proceeding [_or other proceeding, describe type_] on the _30_ day of _August_ _2007_.
                                                                                                                    (month)        (year)

The names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

_David Lemay_          _Chadbourne + Parke_
_30 Rockefeller Plz_
_NY, NY 10112_

Dated: _August 30, 2007_

                                                                                                                    AUG 31

Signed: _Jacquelene Johnson_

Attorney for Appellant (or Appellant, if not represented by an Attorney)

Attorney Name: _____

Address: _10305 S. Bensley Ave,_
         _Chgo, Ill 60617_

Telephone No: _773 374-7581_

If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party has a right to have the appeal heard by the district court. The appellant may exercise this right only by filing a separate statement of election at the time of the filing of this notice of appeal. Any other party may elect, within the time provided in 28 U.S.C. § 158(c), to have the appeal heard by the district court.

_If a child support creditor or its representative is the appellant, and if the child support creditor or its representative files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required._

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jacqueline Johnson | ) | |
| Claimant, Plaintiff | ) | Case Number 07-CV-03947-RJH |
| | ) | |
| v. | ) | Case Number 03-11540 (brl) |
| | ) | |
| SPIEGEL, INC., | ) | |
| | ) | |
| Creditor, Defendant | ) | |

## NOTICE FOR DESIGNATION OF ITEMS
## AND MOTION FOR STAY PENDING APPEAL

1. Motion to hold Johnson in contempt.
2. Johnson's motion not to hold Johnson in contempt.
3. Exhibit for Creditor Trust in support of motion to hold Johnson in contempt.
4. Motion of Spiegel Creditor Trust to vacate default judgment and its evidence in support of that motion.
5. Judgment in civil case 07 C474 for and against Plaintiff.
6. Transcript on the Hearing for motion, on August 21, 2007 before Judge Burton Lifland.
7. Order holding Johnson in contempt.

## PROOF OF SERVICE

I certify that, I served a copy of the Designation of Items on the Appellate Clerk for United States Bankruptcy Court for the Southern District of New York 1 Bowlinggreen New York, New York 10004 on September 8, 2007.



Jacqueline Johnson
Prose

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Johnson

       v.

Spiegel Inc.

**JUDGMENT IN A CIVIL CASE**

Case Number: 07 C747

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with.

Michael W. Dobbins, Clerk of Court

Date: 7/13/2007

_____
/s/ Mathew P. John, Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacqueline Johnson

                    Plaintiff,

v.                                          Case No.: 1:07–cv–00747
                                            Honorable Elaine E. Bucklo

Spiegel Inc.

                    Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, August 30, 2007:

      MINUTE entry before Judge Elaine E. Bucklo : Motion of Special Creditor Trust
to vacate default judgment (16) heard and the motion is granted. Accordingly, default
judgment entered on 7/13/07 is vacated. The case is dismissed without prejudice. The
court notes that plaintiff appeared after this case had been called and the motion granted.
Plaintiff stated that she had received notice of this motion from a neighbor only this
morning and had immediately come to court. I explained to plaintiff, on the record, that I
could not hear her case until and unless she received an order from the district court in
New York reversing the action taken by the bankruptcy court in dismissing her claim, and
then a transfer of the claim to this court. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

# HANNAFAN & HANNAFAN, LTD.

One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055
Fax: (312) 527-0220

www.hannafanlaw.com

August 27, 2007

**VIA HAND DELIVERY**

Honorable E. Bucklo
United States District Court
Northern District of Illinois,
Eastern Division
219 South Dearborn Street
Room 1441
Chicago, Illinois 60604

Re:  Jacqueline Johnson v. Spiegel, Inc. – Case No. 07 C 747

Dear Judge Bucklo:

Enclosed please find copies of the following documents in the above-referenced case:

1.     Appearance of Michael T. Hannafan;
2.     Appearance of Blake T. Hannafan;
3.     Appearance of Eric J. Malnar;
4.     Notice of Filing Motion of Spiegel Creditor Trust to Vacate Default Judgment
5.     Motion of Spiegel Creditor Trust to Vacate Default Judgment;
6.     Notice of Filing Memorandum of Spiegel Creditor Trust in Support of its Motion to Default Judgment;
7.     Memorandum of Spiegel Creditor Trust in Support of its Motion to Default Judgment with attached Exhibits and
8.     Notice of Motion

These motions are noticed up before Your Honor on Thursday, August 30, 2007 at 9:30 a.m.  Thank you.

Very truly yours,

Eric J. Malnar

EJM/dmm
Encls.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| | ) | |
| Plaintiff, | ) | (Honorable Elaine E. Bucklo) |
| | ) | |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### NOTICE OF FILING

TO:    Jacqueline Johnson (pro se)
       10305 South Bensley Avenue
       Chicago, Illinois  60617

**PLEASE TAKE NOTICE** that on August 27, 2007, we filed with the Clerk of the

United States District Court for the District of Illinois, Eastern Division, the attached

**Appearance**, a copy of which is attached hereto and served upon you.

Dated:  August 27, 2007

s/Eric J. Malnar

Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois  60601
312/527-0055

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| In the Matter of | Case Number: 07 C 747 |
|---|---|

JACQUELINE JOHNSON, Plaintiff,
v.
SPIEGEL, INC. (now the Spiegel Creditor Trust),
                    Defendant.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendant, SPIEGEL, INC. (now the Spiegel Creditor Trust).

| NAME (Type or print) | |
|---|---|
| Michael T. Hannafan | |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
|---|
| s/ Michael T. Hannafan |

| FIRM |
|---|
| Hannafan & Hannafan, Ltd. |

| STREET ADDRESS |
|---|
| One East Wacker Drive, Suite 1208 |

| CITY/STATE/ZIP |
|---|
| Chicago, Illinois  60601 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| 01119265 | 312/527-0055 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
|---|---|---|

| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
|---|---|---|

| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ | NO ☐ |
|---|---|---|

| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☑ | NO ☐ |
|---|---|---|

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐    APPOINTED COUNSEL ☐

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2007, I caused the foregoing **Appearance** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division. Copies of these documents will be sent electronically to all parties registered as filing users of the Court's Electronic Filing System and the following person via messenger.

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois  60617

s/Eric J. Malnar _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No.  07 C 747 |
| | ) | |
| Plaintiff, | ) | (Honorable Elaine E. Bucklo) |
| | ) | |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING

TO:    Jacqueline Johnson (pro se)
       10305 South Bensley Avenue
       Chicago, Illinois  60617

PLEASE TAKE NOTICE that on August 27, 2007, we filed with the Clerk of the

United States District Court for the District of Illinois, Eastern Division, the attached **Motion of**

**Spiegel Creditor Trust To Vacate Default Judgment,** a copy of which is attached hereto and

served upon you.

Dated:  August 27, 2007

                                        s/Eric J. Malnar _____

Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois  60601
312/527-0055

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION OF SPIEGEL CREDITOR TRUST**
**TO VACATE DEFAULT JUDGMENT**

Pursuant to Federal Rules 55(c) and 60(b), the Spiegel Creditor Trust (the "Creditor Trust"), as successor to Spiegel, Inc. in certain matters pursuant to the Plan of Reorganization (as described below), by its attorneys, moves the Court to vacate a default judgment entered on July 13, 2007, in favor of Jacqueline Johnson for the following reasons:

1.    The Creditor Trust recently discovered that plaintiff Jacqueline Johnson had obtained a default judgment on July 13, 2007, against Spiegel, Inc. in the above-captioned case (the "Illinois Action").  This surprised the Creditor Trust because: (a) all claims against Spiegel, Inc. had previously been discharged pursuant to a confirmed, final and non-appealable Chapter 11 Plan of Reorganization under the United States Bankruptcy Code; (b) Spiegel has long been dissolved under Delaware state law; (c) the Creditor Trust is the legal successor of Spiegel, Inc. with respect to this matter; (d) the United States Bankruptcy Court for the Southern District of New York has and retains exclusive jurisdiction over the claim that is the subject matter of this litigation; and (e) the Illinois Action was commenced and prosecuted by Johnson in knowing and willful violation of a permanent injunction entered by the Bankruptcy Court in connection with the confirmed and effective plan of reorganization.  Indeed, the Creditor Trust is currently

litigating (on an appeal by Johnson of a bankruptcy court order) *the identical claims* Johnson raises in the Illinois Action in the United States District Court for the Southern District of New York (the "New York District Court Action"). Therefore, the default judgment is void and should be immediately vacated.

2.    Although not before the Court, the Creditor Trust filed a motion to hold Johnson in contempt of court in the United States Bankruptcy Court for the Southern District of New York for violating that court's plan confirmation order and permanent injunction by initiating and pursuing this action. On August 21, 2007, the Bankruptcy Court entered an order holding Johnson in contempt of Court. *See* Order Granting the Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in contempt of Court (Bankruptcy Court Docket No. 4720). Thus, this litigation has been determined by the Bankruptcy Court to have been both a violation of its injunction and an affront to its exclusive retained jurisdiction over this subject matter.

3.    A Memorandum of Law and Affidavit of attorney David M. LeMay are attached in support of this Motion.

WHEREFORE, the Spiegel Creditor Trust (as successor to Spiegel, Inc. with respect to certain matters) prays that the Court vacate and set aside in its entirety the Default Judgment entered on July 13, 2007, in favor of plaintiff Jacqueline Johnson and dismiss her action without prejudice.

Dated:  August 27, 2007

Respectfully submitted

s/Michael T. Hannafan
MICHAEL T. HANNAFAN
One of the Attorneys for the Spiegel Creditor Trust

2

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055
(312) 527-0220

Of counsel:

David M. LeMay
Douglas E. Deutsch
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2007, I caused the foregoing **Motion of Spiegel Creditor Trust to Vacate Default Judgment** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division.  Copies of these documents will be sent electronically to all parties registered as filing users of the Court's Electronic Filing System and the following person via messenger.

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois  60617

s/Eric J. Malnar

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING

TO:    Jacqueline Johnson (pro se)
       10305 South Bensley Avenue
       Chicago, Illinois 60617

PLEASE TAKE NOTICE that on August 27, 2007, we filed with the Clerk of the

United States District Court for the District of Illinois, Eastern Division, the attached

**Memorandum of Spiegel Creditor Trust in Support of its Motion to Vacate Default**

**Judgment**, a copy of which is attached hereto and served upon you.

Dated:  August 27, 2007

                                        s/Eric J. Malnar

Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
312/527-0055

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| Defendant, | ) | |

## MEMORANDUM OF SPIEGEL CREDITOR TRUST
## IN SUPPORT OF ITS MOTION TO VACATE DEFAULT JUDGMENT

### INTRODUCTION

The Court is probably aware that plaintiff Jacqueline Johnson is a *pro se* litigant. However, the Court may not be aware that Johnson has filed at least 13 actions against Spiegel, Inc. All of these matters, except for the New York District Court Action and this Illinois Action, have been dismissed. It appears that all of Johnson's actions to date have been frivolous, wasteful and an abuse of the judicial system. The prosecution of this Illinois Action is no exception.

As set forth below, Spiegel, Inc. was discharged of all liabilities pursuant to a confirmed, effective, final and non-appealable plan of reorganization under the Bankruptcy Code. The plan confirmation order at the Bankruptcy Court involved a permanent injunction, applicable to all claimants (including Johnson), barring the initiation or prosecution of litigation such as this case. Such discharge and permanent injunction provisions are expressly contemplated and provided for in the Bankruptcy Code. Soon after, Spiegel, Inc. was dissolved. Given these facts, the default judgment obtained by Johnson on July 13, 2007, against Spiegel, Inc. is void and must be

vacated.  A copy of the Default Judgment and Notification of Docket Entry are attached as **Exhibit A.**

## BACKGROUND

*A.    Johnson's EEOC/Human Rights Actions.*

On February 13, 2003, Johnson filed a "Charge of Discrimination" with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission (the "EEOC") against Spiegel, Inc. asserting that Spiegel, Inc. provided negative employment information on Johnson (the "EEOC/Human Rights Actions").

*B.    Spiegel, Inc.'s Bankruptcy Filing and Johnson's Claim*

On March 17, 2003, Spiegel, Inc. and certain affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The lead case number in the Spiegel, Inc. *et al.* bankruptcy cases is 03-11540 (the "Bankruptcy Cases").

Upon the bankruptcy filing, and pursuant to Section 362 of the Bankruptcy Code, all actions (including the EEOC/Human Rights Actions) against Spiegel, Inc. and/or its debtor affiliates were automatically stayed.  By order dated July 15, 2003, the Bankruptcy Court established a deadline by which all creditors were to file proof of any claims they had against the Debtors.

On October 15, 2004, Johnson filed Proof of Claim No. 4248 (the "Johnson Claim") against Spiegel, Inc. in the Bankruptcy Cases.  Johnson demanded $100,000 for damages pursuant to a "Complaint and or Law Suit filed against [Spiegel] for reasons of discrimination[.]" Attached to the Johnson Claim was the complaint Johnson filed in the EEOC/Human Rights

Actions. By these actions, Johnson essentially converted her EEOC/Human Rights Actions into a bankruptcy claim.

The Johnson Claim was duly and timely disputed by the Debtors. For various reasons, the dispute was not resolved prior to confirmation of the Plan (as defined below).

On May 25, 2005, the Debtors' Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") was confirmed. *See* Bankruptcy Case Docket No. 3356; *see also* Finding of Facts, Conclusions of Law and Order Pursuant to 11 U.S.C. § 1129(a) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Modified First Amended Joint Plan or Reorganization of Affiliated Debtors and Granting Related Relief" (the "Confirmation Order") (Bankruptcy Case Docket No. 3590). The Plan became effective on or about June 21, 2005.

Among other things, the Plan transferred certain assets and unresolved claim matters to the Creditor Trust. The Creditor Trust was specifically tasked with "settling, resolving and objecting to all Disputed Claims and Unresolved Claims." Johnson's claim fell into this category.

Importantly, Section 13.2 of the Plan (titled "Discharge") states, in relevant part:

Except for Distributions under this Plan, and as otherwise provided in this Plan or in the Confirmation Order, on the Effective Date, the Confirmation Order shall operate as a discharge under Section 1141(d)(1) of the Bankruptcy Code, and as a release of any and all debts ... of, and Claims against, one or more of the Debtors that arose at any time before the Confirmation Date, including, but not limited to, all principal and interest, whether accrued before, on or after the Petition Date, regardless of whether (i) a proof of claim in respect of such Claim has been Filed or deemed Filed, [or] (ii) such Claim has been Allowed pursuant to Section 502 of the Bankruptcy Code ....

Additionally, Section 13.1 of the Plan (titled "Injunction") states, in relevant part:

all Entities who have held, hold or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from: (i)

3

commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Reorganized Debtors, the Creditor Trust Debtors, Eddie Bauer Holdings, the Creditor Trust, or the Trustees; ... and (v) taking any actions to interfere with the implementation or consummation of this Plan that do not conform to or comply with the provisions of this Plan.

Finally, Section 14.1 of the Plan (titled "Retention of Jurisdiction") provides that the "Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan" and shall also have exclusive jurisdiction to, among other things, "(e) ... hear and determine any timely objections ... to proofs of Claims and Equity Interests Filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part."

On or about June 21, 2005, the Creditor Trust dissolved Spiegel, Inc., a Delaware corporation, under Delaware law. On December 19, 2006, the Bankruptcy Court entered its Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline J. Johnson (the "Disallowance Order") (Docket No. 4606). Johnson subsequently filed three motions for reconsideration of the Disallowance Order with the Bankruptcy Court.[1] All three motions were denied.

---

[1]    *See* Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline Johnson (docketed January 10, 2007) (Bankruptcy Case Docket No. 4632); Motion to Reconsider and Allow Corrections to Clarify Misunderstanding and Explanation as to Why the Reconsideration was Made by Claimant in her Motion for Reconsideration to Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 filed by Jacqueline Johnson (docketed April 16, 2007) (Bankruptcy Case Docket No. 4674); Motion to Re Reconsider in Light of this New Evidence with Respect to Claim No. 4247 (docketed May 1, 2007) (Bankruptcy Case Docket No. 4692).

**C.**    *Johnson Appeals the Bankruptcy Court's Disallowance Order and Discloses the Existence of the Northern District of Illinois Action*

While Johnson continued to press forward with her multiple motions for reconsideration with the Bankruptcy Court, she also filed a notice of appeal of the Disallowance Order. *See* Notice of Appeal (docketed April 16, 2007) (Bankruptcy Case Docket No. 4673). Ultimately, the appeal was docketed in the United States District Court for the Southern District of New York as Case No. 07-CV-03947. The Honorable Richard Holwell, United States District Judge, was assigned to handle the Johnson bankruptcy appeal, which is currently pending before him.

On the bottom of the first page of a letter dated July 20, 2007, which was sent to Judge Holwell by Johnson, she refers to and attaches a copy of a default judgment (the "Default Judgment") that she apparently recently obtained from this Court against Spiegel, Inc. in this Illinois Action. A copy of Johnson's letter to Judge Holwell and the related exhibits to the letter are attached as **Exhibit B**. However, the Creditor Trust had not previously been served with any papers in the Illinois Action and was not aware that this action was being prosecuted.

On August 21, 2007, the Bankruptcy Court entered an order holding Johnson in contempt of Court for filing this Illinois Action. *See* Order Granting the Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in Contempt of Court (Bankruptcy Court Docket No. 4720) a copy of this contempt order is attached as **Exhibit C**. Thus, this litigation has been determined by the Bankruptcy Court to have been both a violation of the Injunction and an affront to its exclusive retained jurisdiction over this subject matter. The Affidavit of attorney David M. LeMay in support of the background facts is attached as **Exhibit D**.

## THE DEFAULT JUDGMENT SHOULD BE VACATED
## BECAUSE THE JUDGMENT IS VOID

Rule 60(b) of the Rules of Civil Procedure provides, in relevant part, states the following: "On a motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ...(4) the judgment is void ...." In the current instance, the Default Judgment is void for the reasons detailed below.

### A.    Johnson's Judgment is Void Because Spiegel, Inc. was Discharged of All Liabilities Under a Confirmed and Effective Chapter 11 Plan

A judgment is void if the court lacks jurisdiction of the subject matter. *See, e.g., Briley v. Hidalgo*, 981 F.2d 246, 249 (5th Cir. 1993) (default judgment entered on debt discharged in bankruptcy). Bankruptcy Code Section 524(a) states that a discharge under the Bankruptcy Code "voids any judgment at any time obtained ...." Courts have interpreted this provision broadly to include "both retrospective and prospective effects on creditors' attempts to seek payment of discharged debts." *See In re Dabrowski*, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001); *see also Briley*, 981 F.2d at 249-50; *Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (B.A.P. 9th Cir. 2005) ("[a]lthough the discharge and discharge injunction differ from the automatic stay . . . these are distinctions without a difference with respect to the effect on creditors" as both are void). (Copies of the Bankruptcy Reporter decisions are attached.)

In the present instance, Spiegel, Inc. was discharged of all liabilities pursuant to the terms of the Plan and the related Confirmation Order. Accordingly, the Default Judgment obtained in the Northern District of Illinois last month, over two years after the entry of the Confirmation Order, is void. Additionally, the Plan (at Section 14.1) expressly provided for continued and exclusive jurisdiction by the Bankruptcy Court over all Spiegel claim matters. Accordingly,

6

even if Johnson had identified a proper party to bring her "new" action against (a party, for instance, who was *not* discharged pursuant to a confirmed and effective plan of reorganization), the only forum Johnson could have potentially asserted her action in is the Bankruptcy Court. As Johnson failed to bring the action in that forum,[2] the Default Judgment is also void on this basis.

**B.      *Johnson's Judgment is Void Because This Court Did Not Have Personal Jurisdiction***

Where there is no valid service of process, a default judgment is a nullity and must be vacated. *See Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *see also American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F. Supp.2d 372, 375 (S.D.N.Y. 1998) ("[A] judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law"). To properly serve Spiegel, Inc., Johnson was required to "deliver[] a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *See* Fed. R. Civ. P. 4(h)(1) (governing service on a corporation).

Here, Johnson apparently asserts that service on an unknown person and entity in Virginia constitutes proper service on Spiegel, Inc. However, Spiegel, Inc. was dissolved as a Delaware corporation in June 2005 and Johnson did not identify (and could not have identified) a Spiegel, Inc. officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process in Virginia.

---

[2]     Of course, there would be no basis for filing another action in the Bankruptcy Court because the identical issues have already been decided in that forum and the Bankruptcy Court's decision is currently on appeal. *See* discussion, *supra*.

Because Johnson was required to perform due diligence and determine the appropriate person to serve, *see American Institute*, 8 F.Supp.2d at 376, and because Johnson failed to perform that due diligence and validly serve a proper party, Johnson's alleged service is a nullity and the default judgment is void. Accordingly, the Default Motion must also be vacated on this basis.

### Conclusion

For the above reasons, the Default Judgment entered against Spiegel Inc. on July 13, 2007, should be vacated and set aside and, further, the Complaint should be dismissed without prejudice.

Dated: August 27, 2007

Respectfully submitted,

s/Michael T. Hannafan
MICHAEL T. HANNAFAN
One of the Attorneys for the Spiegel Creditor Trust

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055

Of counsel:

David M. LeMay
Douglas E. Deutsch
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

# EXHIBIT A

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Johnson

                                        **JUDGMENT IN A CIVIL CASE**

            v.                          Case Number: 07 C747

Spiegel Inc.

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been
     tried and the jury rendered its verdict.

■    Decision by Court. This action came to hearing before the Court. The issues have
     been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff,
Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00.
Defendant is also enjoined from providing any negative information about plaintiff to any
employer plaintiff may seek employment with.

Michael W. Dobbins, Clerk of Court

Date: 7/13/2007                         _____
                                        /s/ Mathew P. John, Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacqueline Johnson

                          Plaintiff,

v.                                              Case No.: 1:07−cv−00747
                                                Honorable Elaine E. Bucklo

Spiegel Inc.

                          Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 13, 2007:

    MINUTE entry before Judge Elaine E. Bucklo :Prove−up hearing held on
7/13/2007. Default judgment is entered in favor of plaintiff, Jacqueline Johnson and
against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined
from providing any negative information about plaintiff to any employer plaintiff may
seek employment with. Civil case terminated. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

# EXHIBIT B

July 20, 2007


Jacqueline Johnson
10305 S. Bensley Ave.
Chicago, Illinois  60617
Home 773 374-7581
Cell 773 726-0884


To:  The Honorable Richard J. Holwell
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007


Re:  Jacqueline Johnson v. Spiegel Inc. Creditor Trust (Civil Docket Case #: 07-CV-
03947-RJH)

Dear Judge Holwell:

        I am writing to you to explain why my response has not been recorded on PACER.
Until today I have been sending all my Appeals information and responses to Creditor's
Motions to the appeals court located at One Bowlinggreen NY, NY 10004.  Also I've
been waiting for an approval of my Pauper's Petition and Record on Appeal.  When I
called for the status, the clerk told me, that some one would contact me, as of yet no one
has.  Because, I didn't get any info on my Appeal, I didn't know who or where to send
my Response to Creditor's Motion, and The Creditor's Motion to Dismiss gave no
direction ether.  Not being able to get this info caused me a lot of confusion, so I sent the
response to the only place I knew the above address.

        Today I spoke with the appeal's clerk.  He informed me, that he received my
response and sent it to the mailroom for correct delivery.

        I got the address from Mr. LeMay in his letter dated July 19, 2007.  He explained
that he did not receive his copy until that same day.  His copy was mailed First Class
Mail on the same day (July 8, 2007) I sent the courts copy Next Day.    See copy marked
A.

        I am sending a copy of what was sent Next Day to the Appeals Court at One
Bowlinggreen NY, NY 10004on July 8, 2007.    See copy marked B.

        I am also sending you a copy of the Order that was mailed to my self and Creditor
dated 7-13-07 from THE UNITED STATES DISTRICT COURT FOR THE Northern
District of Illinois, this order in enter on behalf of the Plaintiff Jacqueline Johnson in the
amount of $100,000.00.  This finding was the result of my EEOC complaint and right to

sue. I followed the procedure The procedural regulations of the EEOC are at 29 C.F.R. 1601 et seq. and Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq.for filing. See copy C.

If you have any further questions of me feel free to contact me at the above telephone number and address. God Bless and keep you, thank you for your time and consideration in this matter.

Yours Sincerely,


Jacqueline Johnson

COPY
A

```
================================================
        CARDISS COLLINS STORE B
           CHICAGO, Illinois
              606079998
           1615420803-0096
07/08/2007 (312)983-8182 01:11:29 A
================================================
========= Sales Receipt =========
Product          Sale Unit      Fina
Description       Qty  Price      Pric
------------------------------------------------
4tc #\c\         1   $0.50       $0.
Horse Env
NEW YORK NY 10004               $16.
Zone-8 Express Mail
PO-Add Flat Rate
8.50 oz.
Label #:      EB329715996US
2nd Day 3PM
Normal Delivery
                               ======
Issue PVI:                     $16.

NEW YORK NY 10112              $0.
Zone-8 First Class
Letter
1.90 oz.
Customer Postage             -$0.
                               ======
Issue PVI:                     $0.

                               ========
Total:                         $16.

Paid by:
  Account #:    XXXXXXXXXXXX3031
  Approval #:        462182
  Transaction #:     707
  23322861737
  Receipt#:          000986

Order stamps at USPS.com/shop or
call 1-800-Stamp24.  Go to
USPS.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.
Bill#:[illegible]
Refunds for guaranteed services only
     Thank you for your business.
```

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jacqueline Johnson | ) | |
| Claimant, plaintiff | ) | Case No. 07-CV-03947-RJH |
| | ) | |
| v. | ) | Case No. 03-11540 (BRL) |
| | ) | |
| SPIEGEL, INC.., | ) | |
| | ) | |
| Creditor, defendant | ) | |

## NOTICE OF MOTION

I, Jacqueline Johnson this notice of motion in response to Spiegel Creditor Trust's Memorandum of law In Support O Motion To Dismiss Pending Johnson Appeal.

### PROOF OF SERVICE

I certify that I also served a copy of the Debtor's attorney at CHADBOURNE & PARKE LLP 30 Rockefeller Plaza New York, New York 10112, by way of First Class Mail at 10400 S. Torrance Ave. in Chicago, Illinois 60617.  At 5:00 p.m. on the July 8, 2007.

Jacqueline Johnson

COPY *(handwritten)*

# CHADBOURNE
## PARKE

JUN 19, 2007

The Honorable Richard J. Holwell
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Jacqueline Johnson v. Spiegel Creditor Trust (Civil Docket Case #: 07-CV-
03947-RJH)

Dear Judge Holwell:

I am writing as counsel to the Spiegel Creditor Trust in the above referenced
action. *what is the date (handwritten)*

On Wednesday afternoon, this office received Ms. Jacqueline Johnson's responsive
memorandum of law (the "Response") to the Spiegel Creditor Trust's motion to dismiss and
its related memorandum of law (each filed with the Court on June 29, 2007). Ms. Johnson's
Response has not yet been recorded on PACER. Ms. Johnson is a pro se litigant who may not
have direct access to PACER. Accordingly, as a courtesy and in order to move this matter
forward as quickly as possible, we filed Ms. Johnson's Response on PACER today.
Additionally, as we are not certain that the Court has received courtesy copies of Ms.
Johnson's Response, we have included two copies herein, as required by Your Honor's
individual practice procedures.

I am at the Court's disposal if your Chambers has any questions or if I may
otherwise be of assistance.

Respectfully,

David M. LeMay

BY HAND

cc: Ms. Jacqueline Johnson
    Douglas Deutsch, Esq.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jacqueline Johnson | ) | |
| Claimant, plaintiff | ) | Case No. 07-CV-03947-RJH |
| | ) | |
| v. | ) | Case No. 03-11540 (BRL) |
| | ) | |
| SPIEGEL, INC.., | ) | |
| | ) | |
| Creditor, defendant | ) | |

### RESPONSE TO SPEIGEL CREDITOR TRUST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PENDING JOHNSON APPEAL

I Jacqueline Johnson am the Creditor in the above case this response to the Debtors motion to dismiss is in according to Rule 9006.

I, Jaequeline Johnson object to the following Exhibit B. Mr. Francisco Vazquez's validation of this sworn statement from David M. Bava on December 21, 2006, for which his commission expired on December 7, 2006 14 days prior to notorizing an Affidavit of Service that was filed in Bankruptcy Court. The affidavit also states in paragraph 2 that:

He (David M. Baza) "is legal assistant at Chadbourne & Parke LLP, and that "On December 19, 2006, I caused to be served a true and correct copy of the Order Granting Twenty0Fourth Omnibus Objection to proofs of Claim with Respect to Claim number 4248 Filed by Jacqueline J. Johnson upon Jacqueline J. Johnson 10305 S. Bensley Ave Chicago, Illinois by First class mail, postage prepaid thereon." This was two day prior to Mr. Vazquez's validation of Bava's sworn statement, that he mailed a copy on 12-19-06 the day of the hearing. If he mailed it on the 21st of December 2006, why does it state in the body of the letter that he mailed it on the 19th day of December 2006? It's because it was never mailed to Johnson. Another thing there is no Docket no for this (Debtor's) exhibit B.

On the day of December 19, 2006 Debtor's attorney should have sent a copy of the order for that day to the attorney of record or Creditor Jacqueline Johnson.

Under Perjury: If you knowingly act as a notary public after your term has expired One is guilty of perjury if he has stated or given testimony on a material matter, under oath or by affirmation, as to the truth thereof, when he knew the statement or testimony to be false and willfully made.

Interest as a disqualification. A notary public should not take an acknowledgment to a legal instrument to which the notary is a party in interest. (*Armstrong* v. *Combs*, 15 App. Div. 246.) Mr. Vazquez is an Bankruptcy attorney, who works for the law firm of CHADBOURNE & PARKE LLP 30 Rockefeller Plaza in New York this notary-attorney is a party in interest.

Authentication (Notarial)
A certificate subjoined by a county clerk to any certificate of proof or acknowledgment or oath signed by a notary; this county clerk's certificate authenticates or verifies the a notary public must sign the name under which he was appointed and no other. In addition to his signature and venue, the notary public shall print, typewrite or stamp beneath his signature in black ink, his name, the words "Notary Public State of New York," the name of the county in which he is qualified, and the date upon which his commission expires (§137, Executive Law). Authority of the notary public to act as such. (See §133, Executive Law.) Mr. Vazquez at the time of taking the sworn statement of affidavit of service from David m. Bava ( head clerk at the law firm of CHADBOURNE & PARKE LLP 30 Rockefeller Plaza in New York) on (12-21-07) was not legally authorized to do so, because of his expired (12-7-07) commission. This notarized Affidavit of Service is Void. I, Jacqueline Johnson would like to use it as an example of the lies and deceit she has had to put up with this past year.

Taking an Acknowledgment
The act of the person named in an instrument telling the notary public that he is the person named in the instrument and acknowledging that he executed such instrument; also includes the act of the notary public in obtaining satisfactory evidence of the identity of the person whose acknowledgment is taken.
The notary public "certifies to the taking of the acknowledgment" when the notary signs his official signature to the form setting forth the fact of the taking of the acknowledgment.

According to Also, if a person wanted to challenge the legitimacy of your notarial certificate (signature & stamp), such will be held as <u>circumstantial</u> evidence, provided such person could prove otherwise.

I, Jacqueline Johnson am challenging the legitimacy of vazquaz's notarial certificate

Ineligibility of notary, because Expiration of his/her term, commission or appointment; notary public acting after commission expires: No notary public shall do or perform any act as a notary public knowing that his term in office has expired. Ohio Revised code, Sec. 147. 10

Rule 8011. Motions

(a) Content of motions; response; reply.



(b) Appeal by leave; how taken.

An appeal from an interlocutory judgment, order, or decree of a bankruptcy judge as permitted by 28 U.S.C. § 158(a)(3) shall be taken by filing a notice of appeal, as prescribed in subdivision (a) of this rule, accompanied by a motion for leave to appeal prepared in accordance with Rule 8003 and with proof of service in accordance with Rule 8008, Creditor Jacqueline Johnson filed as a pauper and is awaiting the records on appeal. Everything on appeal has been timely filed.

(b) Effect of motion on time for appeal.

If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion:

(1) to amend or make additional findings of fact under Rule 7052, whether or not granting the motion would alter the judgment;

(2) to alter or amend the judgment under Rule 9023;

(3) for a new trial under Rule 9023; or

Rule 8006. Record and Issues on Appeal

If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. All parties shall take any other action necessary to enable the clerk to assemble and transmit the record. Johnson filed paupers petition and await the record on appeals.

## ARGUMENT

It was not Johnson's intention to let her response to Debtor Spiegel Creditor Trust's Intention to Prosecute Pending Objection to Johnson (Claim No. 4248) (Bankruptcy Docket No. 4610) substitute her presents or response at trial.

The last order from the Bankruptcy Judge should overrule the original order denying reconsideration, and if not the affidavit of service from David M. Bava is void (because he failed to show proof of the date of service on Appealant.

In response to letter I. of Spiegels Inc. Dismissal on Grounds that District Court Has No Jurisdiction, and Dismiss On Grounds That Appeal Deadline Ignored Creditor Jacqueline Johnson states:



In respect to Jurisdiction: Rule 8001. Manner of Taking Appeal; Voluntary Dismissal (a) Appeal as of right; how taken. An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by 28 U.S.C. § 158(a)(1) or (a)(2) shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002. An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal. The notice of appeal shall (1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys, and (3) be accompanied by the prescribed fee. Each appellant shall file a sufficient number of copies of the notice of appeal to enable the clerk to comply promptly with Rule 8004.

In respect to Deadline Being Ignored Johnson states:

She appealed the order disposing of her claim after the order denying her reconsideration. The re-reconsideration was for new evidence. Even if the Debtors state the appeal from the first motion for reconsideration dated (April 4, 2007) was late, (in which it was excusable) the final order dated May 17, 2007denying the motion for re-reconsideration under newly discovered evidence, the first time before the Bankruptcy Judge should have been appealable. Judge Lifland states: "Mrs. Johnson's motion to reconsider fails to demonstrate any manifest errors or and injustice, newly discovered evidence or change in controlling law and as explained below...." For this reason the motion for re-reconsideration should have been allowed and supercede the first motion.

According to Rule 8002. : Time for Filing Notice of Appeal. A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof. If a notice of appeal is mistakenly filed with the district court or the bankruptcy appellate panel, the clerk of the district court or the clerk of the bankruptcy appellate panel shall note thereon the date on which it was received and transmit it to the clerk and it shall be deemed filed with the clerk on the date so noted.

Johnson has two appeals one from the judgment and one from the last motion requesting to enter new evidence. A notice of appeal filed after an order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof. The notice of appeal was filed before the entry of the last order.

SUPREME COURT Justice O'Connor respectfully dissent in PIONEER INVESTMENT SERVICES COMPANY, PETITIONER v. BRUNSWICK ASSOCIATES LIMITED PARTNERSHIP et al. No. 91-1695 (March 24, 1993)

Justice O'Connor states: The Court does recognize one guidepost. It states that the requirement of "excusable neglect" should be construed so as to "deter creditors or other parties from freely ignoring court ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." *Ante*, at 14-15. According to Spiegel's Attorney Page 7 last paragraph of Spiegel creditor trust's memorandum of law in support of motion to dismiss pending Johnson appeal: Here Johnson has gone to great lengths to try to file an appeal of an order. If this statement is considered to be truth, Johnson is not freely ignoring court order deadlines, and she has worked diligently on every aspect of this case.

Judge Lifland states in his judgment: Ms. Johnson's motion to reconsider fails to demonstrate any manifest errors or injustice, newly discover evidence or change in controlling law and as explained below excusable neglect, and thus, states no grounds for the relief under Rule 60(b). In Johnson's request for re-reconsideration under new evidence is denied again by Judge Lifland. Johnson was not aware a decision had been made. Johnson was not aware the case was being tried, had she known the case was being tried she could have requested a copy of the decision. Johnson assumed everything was being disputed by motion. Johnson was not aware of what Creditor Trust meant by <u>INTENTION TO PROSECUTE PENDING OBJECTION</u> as mentioned in notice of Spiegel creditor trust's intention to prosecute pending objection to Johnson (Claim No. 4248) (Bankruptcy Docket No. 4610), so she filed a response to there motion. <u>She was not aware she had to be present for court in New York.</u> The attorney for Spiegel refused to talk to her.

Congress *has* provided "guideposts" as to how courts should determine whether "neglect will be considered 'excusable.'" The majority simply fails to follow them. First is the remaining language of Rule 9006(b)(1) itself, a good portion of which the majority fails to consult. The Rule, read in its entirety, establishes that the excusable neglect determination requires inquiry into causation rather than consequences: Unless "the *failure* to act was *the result*" of the excusable neglect, relief is unavailable. "It is clear from this language that the focus of [the Rule] is on the movant's actions and the reasons for those actions, not on the effect that an extension might have on the other parties' positions." *In re South Atlantic Financial Corp.*, 767 F. 2d, at 819. Moreover, Rule 9006(b)(1) indicates that the court must determine whether the neglect was "excusable" as of the moment it occurred rather than in light of facts known when untimely action is proposed. The Rule authorizes relief in cases where the failure "*was*" the result of excusable neglect, not as to incidents where the neglect *is* excusable in light of current knowledge.



The majority also overlooks a second and dispositive guidepost--the accepted dictionary definition of "excusable neglect." That definition does not incorporate the results or consequences of a failure to take appropriate and timely action; to the contrary, it turns on the cause or reasons for the failure and the culpability involved. According to Black's Law Dictionary 566 (6th ed. 1990), "excusable neglect" is:

"[A] Failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party. As used in rule (e. g. Fed. R. Civil P. 6(b)) authorizing court to permit an act to be done after expiration of the time within which under the rules such act was required to be done, where failure to act was the result of 'excusable neglect', quoted phrase is ordinarily understood to be the act of a reasonably prudent person under the same circumstances."

Cf. 4A C. Wright & A. Miller, Federal Practice and Procedure §1165, pp. 480, 482 (2d ed. 1987) ("Excusable neglect [in Fed. Rule Civ. Proc. 6(b)] seems to require a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance . . . . Absent a showing along these lines, relief will be denied"). Of course, we are not bound to accept Black's Law Dictionary as the authoritative expositor of American law. But if Congress had intended to depart from the accepted meaning of excusable neglect--supplementing its exclusive focus on the *reason* for the error with an emphasis on its *effect*--surely it would have so indicated.

## AMMENDED BACKGROUND FACTS TO INCLUDE A COPY OF THE LAST MOTION SENT TO JUDGE LIFLAND FOR RE-RECONSIDERATION OF NEW EVIDENCE

This motion was excluded from Debtor's Background of Facts.

A copy is attached as evidence and an order is also attached.

Jacqueline Johnson

10305 S. Bensley Chicago, Illinois 60617  (773) 726-0884

*Ex. B*
*of*
*Debtor*

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
David M. LeMay (DL 9093)
Douglas E. Deutsch (DD 7229)

Attorneys for the Spiegel Creditor Trust

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x
                                                 :
                                                 :    Chapter 11
                                                 :
In re:                                           :    Case No. 03 - 11540 (BRL)
                                                 :
SPIEGEL, INC., et al.,                           :    (Jointly Administered)
                                                 :
                        Reorganized Debtors.     :
                                                 :
                                                 :
                                                 :
-------------------------------------------------x

### AFFIDAVIT OF SERVICE

David M. Bava, being duly sworn, deposes and says:

1.  I am employed as a legal assistant by the law firm of Chadbourne & Parke LLP, I am not a party to this action and that I am over the age of eighteen.

2.  On December 19, 2006, I caused to be served a true and correct copy of the *Order Granting Twenty-Fourth Omnibus Objection to Proofs Of Claim With Respect to Claim Number 4248 Filed by Jacqueline J. Johnson* upon Jacqueline J. Johnson, 10305 South Bensley, Chicago, Illinois 60617 by First Class Mail, postage prepaid thereon.

NY3 - 429415 01

3.  I certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment under

penalty of perjury.

_____/s/  David M. Bava_____
David M. Bava

Sworn to before me this
21st day of December 2006

_/s/ Francisco Vazquez_
Notary Public

Francisco Vazquez
Notary Public, State of New York
No. 31-4010920
Qualified in New York County
Commission Expires Dec. 7, 2006

2

NY3 - 429445.01

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re                                                    Chapter 11
                                                         Case No. 03-11540 (brl)
SPIEGEL, INC..,

                          Reorganized Debtor.
---------------------------------------------------------X

### ORDER DENYING MOTION TO RE RECONSIDER IN LIGHT OF THIS NEW EVIDENCE WITH RESPECT TO CLAIM NUMBER 4247 [SIC] FILED BY JACQUELINE JOHNSON

In consideration of Jacqueline Johnson's third motion for reconsideration of this Court's order granting the twenty-fourth omnibus objection to proofs of claim with respect to claim number 4248 (the "Motion");

WHEREAS this Court finds no basis for reconsideration and for the reasons set forth in this Court's Memorandum Decision and Order, dated April 4, 2007, Denying the Motion to Reconsider; the motion is hereby DENIED.

IT IS SO ORDERED.

Dated: New York, New York
       May 17, 2007

                              /s/Burton R. Lifland_____
                              UNITED STATES BANKRUPTCY JUDGE

1





Jacqueline Johnson
10305 So. Bensley Avenue
Chicago, IL 60617

1:07–cv–00747

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Jacqueline Johnson

                           **Plaintiff,**

v.                                                    Case No.: 1:07–cv–00747
                                                      Honorable Elaine E. Bucklo

Spiegel Inc.

                           Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 13, 2007:

 MINUTE entry before Judge Elaine E. Bucklo :Prove–up hearing held on 7/13/2007. Default judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with. Civil case terminated. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov.*

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Johnson

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 07 C747

Spiegel Inc.

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered in favor of plaintiff, Jacqueline Johnson and against defendant, Spiegel Inc. in the amount of $100,000.00. Defendant is also enjoined from providing any negative information about plaintiff to any employer plaintiff may seek employment with.

Michael W. Dobbins, Clerk of Court

Date: 7/13/2007

_____

/s/ Mathew P. John, Deputy Clerk

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x
                        :　　Chapter 11

In re:                   :　　Case No. 03 - 11540 (BRL)

SPIEGEL, INC., et al.,     :　　(Jointly Administered)

        Reorganized Debtors.　:

-----------------------------------------------x

## ORDER GRANTING THE SPIEGEL CREDITOR TRUST'S MOTION
## TO HOLD JACQUELINE JOHNSON IN CONTEMPT OF COURT

Upon the motion dated August 2, 2007 (Docket No. 4713) ("the Motion")[1] filed by the Spiegel Creditor Trust (the "Creditor Trust"), seeking entry of an order pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code") and Rule 9020(b) of the Federal Rules of Bankruptcy Procedure, holding Jacqueline Johnson ("Johnson") in contempt of court; it having been established through the record of the hearing on the Motion and through the record of the above captioned-cases or otherwise, that: (i) this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§1408 and 1409; (iii) this matter is a core proceeding pursuant to 28 U.S.C. §157(b); (iv) notice of the Motion has been given as provided in the Motion, and that no other or further notice need be given; (v) any and all debts of, and claims against, the Debtors have been discharged

---

[1]　Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Motion.

pursuant to Section 13.2 of the Plan, Paragraph 40 of the Confirmation Order and section

1141(d)(1) of the Bankruptcy Code, and that, pursuant to Section 524(a) of the Bankruptcy

Code, Section 13.1 of the Plan and Paragraph 51 of the Confirmation Order, any and all

claimants of or against any of the Debtors have been permanently enjoined from commencing or

continuing any actions or proceedings on any claims against the Debtors, except as expressly

provided in the Plan; (vi) Johnson received repeated and specific written warnings that filing

actions in another court would violate the Plan injunction of this Court; (vii) despite these

multiple written and specific warnings, Johnson filed an action in the United States District

Court for the Northern District of Illinois on February 6, 2007 (Case No. 1:07-cv-00747)(the

"Illinois Action"); (viii) Johnson prosecuted the Illinois Action and obtained a default judgment

against Spiegel, Inc. on July 13, 2007, and (ix) Johnson has sought to rely on the Illinois Action

default judgment by referencing it in an appeal pending before the United States District Court

for the Southern District of New York (Case No. 07-CV-03947); and upon all the record herein

and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

ORDERED that the Motion is granted, and the Court finds and determines that

Jacqueline Johnson is in civil contempt of this Court; and it is further

ORDERED that Johnson is enjoined, restrained and prohibited from any and all

further and/or additional violations of the Plan and Confirmation Order, whether specifically

further described and prohibited by this Order or not; and it is further

ORDERED that Johnson is prohibited from bringing any action, prosecuting any

claim, or filing any papers related to any action, proceeding, claim or other assertion of any type

against Spiegel, Inc., any of the Debtors (as defined in the Plan) or the Creditor Trust in any

2

court, tribunal, regulatory board, commission or any other adjudicatory body of any type *without the prior permission* of the Court, *except* with respect to any papers filed by Johnson in that certain action currently pending before United States District Judge Richard Holwell; and it is further

ORDERED that Johnson is required and is affirmatively enjoined and directed to assist the Creditor Trust, if requested, in voiding and vacating the judgment obtained by her against Spiegel, Inc. in the United States District Court for the Northern District of Illinois; and it is further

ORDERED that Johnson is enjoined, restrained and prohibited from taking any action in opposition to the Creditor Trust's voidance and vacating of the judgment obtained by Johnson in the United States District Court for the Northern District of Illinois; and it is further

ORDERED that Johnson's failure to comply with any component of this Order may result in severe additional and other sanctions; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
       August 21, 2007

/s/Burton R. Lifland
HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| Plaintiff, | ) | |
| | ) | (Honorable Elaine E. Bucklo) |
| vs. | ) | |
| Spiegel, Inc., | ) | |
| Defendant, | ) | |

## AFFIDAVIT OF ATTORNEY DAVID M. LeMAY

David M. LeMay, being sworn, states as follows:

1.      I am an attorney licensed to practice in the State of New York and I am a member

in good standing of the New York Bar. I have been licensed in New York since 1982. I am a

partner in the law firm of Chadbourne & Parke LLP, located at 30 Rockefeller Plaza, New York,

New York. I have represented the Spiegel Creditor Trust in various bankruptcy and other

litigation matters. I have personal knowledge of the facts set forth below.

2.      I have read the attached Motion of Spiegel Creditor Trust to Vacate Default

Judgment and accompanying Memorandum of Spiegel Creditor Trust in Support of its Motion to

Vacate Default Judgment. I hereby confirm that the factual and procedural matters stated in the

Motion and Memorandum are true and accurate.

David M. LeMay

Subscribed and Sworn to before me
this 27th day of August, 2007.

Notary Public

FRANCISCO VAZQUEZ
Notary Public, State of New York
No. 02VA6013920
Qualified in New York County
Commission Expires December 27, 20 10

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2007, I caused the foregoing **Memorandum of Spiegel Creditor Trust in Support of its Motion to Vacate Default Judgment** to be filed electronically in the United States District Court, Northern District of Illinois, Eastern Division. Copies of these documents will be sent electronically to all parties registered as filing users of the Court's Electronic Filing System and the following person via messenger.

Jacqueline Johnson
10305 South Bensley Avenue
Chicago, Illinois 60617

s/Eric J. Malnar

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jacqueline Johnson, | ) | Case No. 07 C 747 |
| | ) | |
| Plaintiff, | ) | (Honorable Elaine E. Bucklo) |
| | ) | |
| vs. | ) | |
| | ) | |
| Spiegel, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF MOTION**

VIA MESSENGER

TO: Ms. Jacqueline Johnson (pro se)
    10305 South Bensley Avenue
    Chicago, Illinois 60617

    PLEASE TAKE NOTICE that on August 30, 2007 at 9:30 a.m., or as soon thereafter as we may be heard, we shall appear before Judge Elaine E. Bucklo in Room 1441 in the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, and present the MOTION OF SPIEGEL CREDITOR TRUST TO VACATE DEFAULT JUDGMENT, a copy of which is attached with MEMORANDUM OF LAW, at which time you may be present if you so desire.

                                    Respectfully submitted,


                                    s/Michael T. Hannafan
                                    Michael T. Hannafan
                                    One of the Attorneys for the
                                    Spiegel Creditor Trust

Dated:  August 27, 2007

Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois  60601
(312) 527-0055

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on August 27, 2007 he caused

true and correct copies of the **NOTICE OF MOTION TO VACATE DEFAULT**

**JUDGMENT** to be filed electronically in the United States District Court, Northern

District of Illinois, Eastern Division and that I caused a copy of the attached to be served

Via Messenger on:

> Jacqueline Johnson
> 10305 South Bensley Avenue
> Chicago, Illinois 60617


> s/ Michael T. Hannafan


Michael T. Hannafan
Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055

**Westlaw.**

328 B.R. 158                                                                                    Page 1

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

**C**
In re Gurrola
9th Cir.BAP (Cal.),2005.

United States Bankruptcy Appellate Panel of the
Ninth Circuit.
In re Paul Michael GURROLA, Debtor.
Lone Star Security & Video, Inc., Appellant,
v.
Paul Michael Gurrola, Appellee.
BAP No. CC-04-1143-KMoB.
Bankruptcy No. LA 96-31858-ER.
Adversary No. LA 03-01257-ER.

Argued and Submitted on Nov. 17, 2004 at
Pasadena, California.
Filed-June 20, 2005.

**Background:** Creditor brought adversary
proceeding to block enforcement of Chapter 7
debtor's discharge against it, based on debtor's
failure to raise his discharge in bankruptcy as
defense to entry of postpetition judgment on
discharged debt. The United States Bankruptcy
Court for the Central District of California, Ernest
M. Robles, J., ruled that debtor was not estopped,
and creditor appealed.

**Holding:** The Bankruptcy Appellate Panel, Klein,
J., held that debtor's failure to raise his discharge in
bankruptcy as defense to entry of postpetition
judgment on discharged debt did not equitably
estop him from relying on his discharge vis-a-vis
judgment creditor.

Affirmed.
West Headnotes
[1] Bankruptcy 51 ⚖3782

51 Bankruptcy
    51XIX Review

51XIX(B) Review of Bankruptcy Court
        51k3782 k. Conclusions of Law; De
Novo Review. Most Cited Cases
Availability of estoppel doctrines to circumvent
statutory effect of bankruptcy discharge is question
of law, a bankruptcy court's conclusions on which
are reviewed de novo. Bankr.Code, 11 U.S.C.A. §
524.

[2] Bankruptcy 51 ⚖3784

51 Bankruptcy
    51XIX Review
        51XIX(B) Review of Bankruptcy Court
            51k3784 k. Discretion. Most Cited Cases
Once it is determined that estoppel is available as
matter of law, bankruptcy court's decision on
whether to apply particular estoppel doctrine is
reviewed for abuse of discretion.

[3] Bankruptcy 51 ⚖3252

51 Bankruptcy
    51X Discharge
        51X(A) In General
            51k3252 k. Waiver of Discharge. Most
Cited Cases
Chapter 7 debtor's failure to raise his discharge in
bankruptcy as defense to entry of postpetition
judgment on discharged debt did not equitably
estop him from relying on his discharge vis-a-vis
judgment creditor. Bankr.Code, 11 U.S.C.A. §
524(a)(1).

[4] Bankruptcy 51 ⚖2462

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction
and Stay
        51IV(D) Enforcement of Injunction or Stay
            51k2462 k. Validity of Acts in Violation
of Injunction or Stay. Most Cited Cases
In "void[ing]" any judgment obtained, insofar as it
is determination of personal liability of debtor on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

discharged debt, discharge injunction directs that such judgments may be disregarded and are subject to collateral attack; "void" judgment is nullity. Bankr.Code, 11 U.S.C.A. § 524(a).

**[5] Bankruptcy 51 ⬡3418**

51 Bankruptcy
   51X Discharge
      51X(E) Effect of Discharge
         51k3418 k. Pleading Discharge. Most Cited Cases
By specifying that discharge injunction operates to void any judgments obtained in violation thereof " whether or not discharge of such debt is waived," Congress established discharge in bankruptcy as absolute, nonwaivable defense, as opposed to an affirmative defense, which debtor may waive by not raising it. Bankr.Code, 11 U.S.C.A. § 524(a).

**[6] Bankruptcy 51 ⬡2394.1**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(B) Automatic Stay
         51k2394 Proceedings, Acts, or Persons Affected
            51k2394.1 k. In General. Most Cited Cases

**Bankruptcy 51 ⬡2399**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(B) Automatic Stay
         51k2394 Proceedings, Acts, or Persons Affected
            51k2399 k. Set-Offs and Counterclaims; Cross Claims. Most Cited Cases
Creditor's letter to Chapter 7 debtor demanding payment of prepetition debt, filing of counterclaim in debtor's breach of contract and fraud action against it, and filing of request for entry of default on its counterclaim, along with actual entry of default, all violated automatic stay, as being in nature of acts to collect, assess, or recover upon prepetition claim. Bankr.Code, 11 U.S.C.A. §

362(a)(1, 6).

**[7] Bankruptcy 51 ⬡2462**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(D) Enforcement of Injunction or Stay
         51k2462 k. Validity of Acts in Violation of Injunction or Stay. Most Cited Cases
Any judgment that creditor obtained, after discharge order was entered, upon discharged prepetition debt as personal liability of Chapter 7 debtor was automatically rendered "void" by virtue of discharge injunction, from moment it was entered. Bankr.Code, 11 U.S.C.A. § 524(a).

**[8] Bankruptcy 51 ⬡2125**

51 Bankruptcy
   51III Courts; Proceedings in General
      51III(A) In General
         51k2124 Power and Authority
            51k2125 k. Equitable Powers and Principles. Most Cited Cases

**Bankruptcy 51 ⬡2466**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(D) Enforcement of Injunction or Stay
         51k2465 Contempt
            51k2466 k. Violation of Discharge Order. Most Cited Cases
To extent that creditor's violation of discharge injunction occurred with notice thereof, it was subject to contempt remedy pursuant to bankruptcy court's authority to enter "necessary or appropriate" orders. Bankr.Code, 11 U.S.C.A. §§ 105(a), 524(a).

**[9] Bankruptcy 51 ⬡3252**

51 Bankruptcy
   51X Discharge
      51X(A) In General
         51k3252 k. Waiver of Discharge. Most Cited Cases
Estoppel theories may not be used to circumvent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                    Page 3

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

effect of debtor's discharge and discharge injunction; such uses of estoppel are varieties of waiver theories, that are outlawed by anti-waiver language in Bankruptcy Code provision imposing a discharge injunction. Bankr.Code, 11 U.S.C.A. § 524(a)(1).

**[10] Bankruptcy 51 ⊂⟶2442**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(C) Relief from Stay
         51k2435 Proceedings
            51k2442 k. Determination and Relief; Conditions. Most Cited Cases
Automatic stay provision contains an authorization for annulling stay, which has effect of retroactively validating acts that otherwise would violate stay. Bankr.Code, 11 U.S.C.A. § 362(d).

**[11] Bankruptcy 51 ⊂⟶2442**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(C) Relief from Stay
         51k2435 Proceedings
            51k2442 k. Determination and Relief; Conditions. Most Cited Cases
Correct standard for determining whether "cause" exists to annul automatic stay retroactively is " balancing of the equities" test. Bankr.Code, 11 U.S.C.A. § 362(d).

**[12] Bankruptcy 51 ⊂⟶2364**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(A) In General
         51k2363 Protection Against Discrimination or Collection Efforts in General; " Fresh Start."
            51k2364 k. Discharge as Injunction. Most Cited Cases
Creditor has duty to obey discharge injunction by refraining from engaging in any activity to collect discharged debt as personal liability of debtor, even

in absence of any bankruptcy court order barring such collection activity.

**[13] Bankruptcy 51 ⊂⟶2364**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(A) In General
         51k2363 Protection Against Discrimination or Collection Efforts in General; " Fresh Start."
            51k2364 k. Discharge as Injunction. Most Cited Cases
Debtors do not bear burden of proving to creditors the existence of discharge and discharge injunction before liability can be imposed on creditor for violating discharge injunction. Bankr.Code, 11 U.S.C.A. § 524(a).

**[14] Bankruptcy 51 ⊂⟶2364**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(A) In General
         51k2363 Protection Against Discrimination or Collection Efforts in General; " Fresh Start."
            51k2364 k. Discharge as Injunction. Most Cited Cases
Discharge and the discharge injunction are effective against the world to full extent of their statutory terms, regardless of notice. Bankr.Code, 11 U.S.C.A. § 524(a).

**[15] Bankruptcy 51 ⊂⟶2364**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(A) In General
         51k2363 Protection Against Discrimination or Collection Efforts in General; " Fresh Start."
            51k2364 k. Discharge as Injunction. Most Cited Cases

**Bankruptcy 51 ⊂⟶3411**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                      Page 4

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

51 Bankruptcy
  51X Discharge
    51X(E) Effect of Discharge
      51k3411 k. In General. Most Cited Cases
Not only are discharge and discharge injunction
good against the world, they are good anywhere in
the world, i.e., extraterritorially. Bankr.Code, 11
U.S.C.A. § 524(a).

**[16] Bankruptcy 51 ⇐2462**

51 Bankruptcy
  51IV Effect of Bankruptcy Relief; Injunction
and Stay
    51IV(D) Enforcement of Injunction or Stay
      51k2462 k. Validity of Acts in Violation
of Injunction or Stay. Most Cited Cases
Judgments and acts in violation of discharge
injunction are automatically void ab initio.
Bankr.Code, 11 U.S.C.A. § 524(a).

**[17] Bankruptcy 51 ⇐2462**

51 Bankruptcy
  51IV Effect of Bankruptcy Relief; Injunction
and Stay
    51IV(D) Enforcement of Injunction or Stay
      51k2462 k. Validity of Acts in Violation
of Injunction or Stay. Most Cited Cases
Lack of notice of debtor's discharge is not pertinent
to whether judgment or act in violation of discharge
injunction is void, nor is lack of notice a means of
ratifying void act to enforce void judgment.
Bankr.Code, 11 U.S.C.A. § 524(a).

**[18] Bankruptcy 51 ⇐2364**

51 Bankruptcy
  51IV Effect of Bankruptcy Relief; Injunction
and Stay
    51IV(A) In General
      51k2363 Protection Against
Discrimination or Collection Efforts in General; "
Fresh Start."
      51k2364 k. Discharge as Injunction.
Most Cited Cases

**Bankruptcy 51 ⇐2466**

51 Bankruptcy
  51IV Effect of Bankruptcy Relief; Injunction
and Stay
    51IV(D) Enforcement of Injunction or Stay
      51k2465 Contempt
        51k2466 k. Violation of Discharge
Order. Most Cited Cases
While lack of notice of debtor's bankruptcy and
discharge may serve as defense to contempt
sanctions for violating discharge injunction, legal
consequences of acts in violation of discharge
injunction do not otherwise vary. Bankr.Code, 11
U.S.C.A. § 524(a).

**\*160** Before: KLEIN, MONTALI, and BRANDT,
Bankruptcy Judges.

### OPINION
KLEIN, Bankruptcy Judge.
Ignorance. Pure ignorance. The debtor was
amazingly ignorant of the legal consequences of his
bankruptcy discharge. The question is whether
such ignorance is punishable by equitably estopping
the debtor from relying on the discharge because he
did not assert the discharge as a defense to entry of
a postpetition judgment on a discharged debt. We
hold that the bankruptcy discharge cannot be
circumvented on equitable grounds.

The provision of 11 U.S.C. § 524(a) that a
discharge "voids any judgment at any time
obtained, to the extent that such judgment is a
determination of the personal liability of the debtor
with respect to any debt discharged ... whether or
not such discharge is waived," and the concomitant
statutory injunction, do not admit of an equitable
exception and are self-executing. Any
inappropriate postpetition conduct by the debtor
that unfairly harms a creditor can be addressed by
measures other than reviving the debt through an
estoppel.

Accordingly, we AFFIRM the judgment refusing to
estop the debtor from relying on his discharge to
defeat a postpetition judgment rendered on a
prepetition debt.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

## FACTS

On May 15, 1996, Paul Gurrola contracted with Lone Star Security, Inc. (later renamed Lone Star Security and Video, Inc., hereafter, "Lone Star"), for a $650.00 installation of a security system in his residence in Los Angeles, California, and for monitoring service at $15.95 per month for 36 months.

*161 Dissatisfied with the installation, and in a dispute over whether the price included a siren, Gurrola stopped payment on his $697.85 check that represented the installation and first three months of monitoring service. Although the total contractual obligation was $1,224.20 [= $650.00 + ($15.95 x 36 mos.) ], Lone Star filed a small claims action against Gurrola on May 31, 1996, seeking $2,664.90, based on the $697.85 check and the " balance of the alarm monitoring contract."

Gurrola, acting pro se,[FN1] countered on June 26, 1996, by suing Lone Star for breach of contract and fraud. This action, *Gurrola v. Lone Star Security, Inc.*, Los Angeles County Municipal Court, No. 96K14098, effectively preempted the small claims suit.

> FN1. Under California procedure, a self-represented litigant is said to be acting "in pro per," and a claim by a defendant against a plaintiff is termed a "cross-claim." We use the terms common to general federal practice: "pro se" and "counterclaim." Cf. *Barton Bus. Park Assocs. v. Alexander (In re Barton Bus. Park Assocs.)*, 118 B.R. 776, 777-78 n. 1 (Bankr.E.D.Cal.1990).

On July 8, 1996, Gurrola, represented by counsel, filed a chapter 7 bankruptcy in which he accurately listed his Municipal Court action against Lone Star on the Statement of Financial Affairs as a suit pending when the bankruptcy was filed. Lone Star was not, however, separately scheduled as a creditor and, hence, was not on the notice list.

Gurrola did nothing to prosecute his Municipal

Court action after he filed bankruptcy.

Unaware of the bankruptcy, on July 16, 1996, Lone Star, through attorney George M. Wallace, sent Gurrola an "offer" to settle if Gurrola would pay $2,550.00. Gurrola did not respond.

On August 6, 1996, Lone Star filed a $2,664.90 counterclaim and an answer in Gurrola's Municipal Court action.[FN2]

> FN2. Although our analysis renders the problem a red herring, the suspension by the California Secretary of State of Lone Star's corporate rights, powers, and privileges at the time of this filing puts a cloud on its judgment. 1 Ann Taylor Schwing, California Affirmative Defenses § § 18:17 & 39:38 (2005).

Then, on September 20, 1996, Lone Star obtained Gurrola's default after he did not respond to its $2,664.90 counterclaim.

Gurrola's bankruptcy discharge was entered on October 23, 1996. The bankruptcy case was closed on November 1, 1996, as a "no asset" case in which no claim filing deadline had been set.

At a November 1997 status hearing, not attended by Gurrola, the Municipal Court dismissed his complaint and set a default judgment hearing for March 12, 1998, on Lone Star's counterclaim.

When Gurrola learned of the default judgment hearing, and acquiescing in the dismissal of his complaint, he filed a motion to vacate default and defend against Lone Star's counterclaim.

In support of Gurrola's motion, state-court attorney Scott A. Meehan averred that, while "assisting" Gurrola during September 1996, he had been misled by the Municipal Court's default clerk into believing that no default would be entered.

At the default judgment hearing on March 12, 1998, the Municipal Court refused to vacate the default and entered a default judgment in favor of Lone

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                                                    Page 6

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

Star for $2,725.20, plus $2,488.25 attorneys' fees, $499.62 interest, and $140.00 costs.

Gurrola did not mention the bankruptcy discharge before the default judgment was entered. Instead, he first told Mr. Meehan about the bankruptcy after the hearing,*162 which information Mr. Meehan communicated to Lone Star's counsel on March 13, 1998.

When Lone Star continued to assert that the default judgment remained enforceable, Gurrola engaged new bankruptcy counsel, Simon J. Dunstan, to enforce the bankruptcy discharge.

On May 8, 1998, Mr. Dunstan sent Lone Star's counsel a letter asserting that the discharge injunction rendered the postpetition judgment "void, " and that the discharge could not be "waived." He demanded that Lone Star desist.

Lone Star stuck to its position that Gurrola was estopped because he had not earlier told Lone Star about the bankruptcy.

Lone Star also contended that it is the debtor's burden to enforce the discharge and instructed Gurrola that he should seek a court order to stop Lone Star from enforcing its judgment.

At a judgment debtor's examination under state law on August 9, 1999, Gurrola invoked the discharge. The Municipal Court refused to compel testimony without a bankruptcy court ruling on the impact of the discharge on the judgment. The examination was continued in order to afford time for a bankruptcy court ruling.

Nobody, however, asked the bankruptcy court to do anything until March 14, 2002, when Lone Star filed a motion to reopen the bankruptcy case. Gurrola opposed reopening, arguing the underlying merits of the discharge dispute. The bankruptcy court denied the request to reopen the case, ruling that Gurrola was not estopped from relying on his discharge. Lone Star appealed.

We affirmed the refusal to reopen the case but vacated the ruling on the discharge question

because it is error to purport to resolve underlying substantive merits in a procedural motion to reopen a case. We explained that underlying substantive disputes should be resolved in a procedurally correct manner independent of the merely administrative reopening issue. *Lone Star Sec. & Video, Inc. v. Gurrola,* CC-02-1313-KBaP (9th Cir. BAP December 20, 2002).

On March 4, 2003, Lone Star filed an adversary proceeding seeking to block enforcement of Gurrola's discharge against it.

After trial, the bankruptcy court ruled that Gurrola was not estopped from relying on his discharge. It believed his testimony that he was ignorant of the scope of the discharge and did not intend to mislead Lone Star. Judgment was entered February 13, 2004. This appeal ensued.

### JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

### ISSUE

Whether a debtor can be equitably estopped from relying on the bankruptcy discharge.[FN3]

> FN3. Denial of summary judgment was an issue listed but not argued and is abandoned. *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1402 (9th Cir.1995).

### STANDARD OF REVIEW

[1][2] The availability of estoppel doctrines to circumvent the statutory effect of the bankruptcy discharge is a question of law that we review de novo. *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.),* 283 B.R. 549, 554 (9th Cir. BAP 2002). Once it is determined that estoppel is available as a matter of law, the decision whether to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

apply a particular estoppel doctrine*163 is reviewed for abuse of discretion. *Id.; accord, Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 780 (9th Cir.2001).

## DISCUSSION

[3] Lone Star's theory is one of confession and avoidance. It concedes that the debt was discharged and concedes that the debt is not excepted from discharge under 11 U.S.C. § 523(a). FN4 It then argues that the discharge nevertheless can be circumvented on an estoppel theory based on postpetition events that do not operate to create new liability. This theory is misconceived.

> FN4. "Lone Star does not dispute that its debt *was* included among the debts that were discharged in Gurrola's Chapter 7 case." Appellant's Reply Brief, at 3 (emphasis in original).
> This concession recognizes that unscheduled debts in a so-called "no-asset, no-bar-date" case are discharged. *White v. Nielsen (In re Nielsen),* 383 F.3d 922, 925-27 (9th Cir.2004), *adopting Beezley v. Cal. Land Title Co. (In re Beezley),* 994 F.2d 1433, 1435-40 (9th Cir.1993) (O'Scannlain, J., concurring).

That the present version of the federal bankruptcy discharge provides an absolute, nonwaivable defense is apparent from the language of the implementing statute, the history of the evolution of the discharge, and the case law.

### I

As with all statutory construction issues, we start with the statutory language. Here, we look at the statute describing the effect of the discharge.

### A

Bankruptcy Code § 524(a), enacted in 1978,

provides:

### § 524. Effect of discharge

(a) A discharge in a case under this title-
(1) *voids any judgment* at *any time obtained,* to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, *whether or not discharge of such debt is waived;*
(2) operates as an injunction against the commencement or continuation of an action, the employment for process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; [community property rule omitted].

11 U.S.C. § 524(a), *enacted by* Pub.L. 95-598, § 101, 92 Stat. 2549, 2592 (1978) (emphasis supplied).

Bankruptcy Code § 524(a) reenacted Bankruptcy Act § 14f, which was first enacted in 1970:

### § 14f. An order of discharge shall-

(1) declare that any judgment theretofore or thereafter obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to any of the following: (a) debts not excepted from the discharge under subdivision a of section 17 of this Act; (b) debts discharged under paragraph (2) of subdivision c of section 17 of this Act; and (c) debts determined to be discharged under paragraph (3) of subdivision c of section 17 of this Act; and
(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

Bankruptcy Act of 1898, § 14f, *codified at* 11 U.S.C. § 362(f), *enacted by* Pub.L. 91-467, § 3, 84 Stat. 990, 991 (1970).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                                          Page 8

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

#### *164 B

As a matter of "plain English," the language of §
524(a)(1), although circular with respect to the
irrelevant issue of which debts are discharged (Lone
Star having conceded the point), is both
unambiguous and absolute as to questions of effect,
time, and waiver.

The status of a judgment as "void" (which replaced
the 1970 term "null and void") implies that it is a
judgment that may be disregarded as a nullity and
cannot be enforced.

The phrase "at any time obtained" (which replaced
the 1970 term "theretofore or thereafter obtained")
plainly means that judgments voided by the
discharge include judgments obtained before,
during, and after the bankruptcy.

The phrase "whether or not discharge of such debt
is waived" (new in 1978) similarly nullifies all
putative waivers of specific debts and appears to
encompass both express waivers and waivers by
conduct.

#### C

The term "void" is also a term of art with a long
history in the law of judgments that equates with the
concept of a nullity associated with lack of
jurisdiction and the ability to make a "collateral
attack" on a judgment.

For example, the Supreme Court early explained the
effect of a court acting without jurisdiction as
follows:
[If a court] act[s] ...without authority, its judgments
and orders are nullities. They are not voidable, but
simply void; and form no bar to a recovery sought,
even prior to a reversal in opposition to them.
They constitute no justification; and all persons
concerned in executing such judgments or
sentences, are considered, in law, as trespassers.

*Elliott v. Peirsol*, 26 U.S. (1 Pet.) 328, 340, 7 L.Ed.
164 (1828), *cited with approval, Kalb v. Feuerstein*,
308 U.S. 433, 438-39 n. 8, 60 S.Ct. 343, 84 L.Ed.

370 (1940); *cf. The Betsey*, 3 U.S. (3 Dall.) 6,
15-16, 1 L.Ed. 485 (1794).

A judgment was construed as "void" when rendered
by a court lacking personal or subject-matter
jurisdiction or was based on defective notice.
Restatement of Judgments §§ 5-8 & 11.

A judgment that was "void" could be the subject of
a "collateral attack" through some procedure other
than motions for new trial, postjudgment relief,
appeal, or an independent action in equity, all of
which were characterized as "direct attacks" that
were required when the judgment was merely "
voidable." Restatement (Second) of Judgments §
80, cmt. a.

After the merger of law and equity in the
mid-twentieth century, the distinctions between "
void" and "voidable" and "collateral attack" and "
direct attack" became an increasingly unsatisfactory
way to balance the contradictory interests of finality
and validity of judgments. *Id.,* §§ 12, cmts. a-b &
80, cmt. a. After the adoption of the *Restatement
(Second) of Judgments* in 1980, it was recognized
that it was more productive to think in terms of
finality and validity rather than "void" and "
voidable;" the latter terms, accordingly, were
de-emphasized. They have not, however, entirely
lost their meaning, and a judgment rendered without
jurisdiction is still vulnerable to attack.

When the Congress enacted Bankruptcy Act § 14f
in 1970 and Bankruptcy Code § 524(a) in 1978, the
term "void" was still a term of art unambiguously
connoting a judgment rendered without
subject-matter jurisdiction that could be ignored as
a nullity and collaterally attacked.

#### *165 II

The purpose of the 1970 enactment of Bankruptcy
Act § 14f also informs the interpretation of its
reenacted version in Bankruptcy Code § 524(a).

Between 1800 and 1970, as will be seen, the federal
bankruptcy discharge was merely an affirmative
defense that was waived if not timely asserted in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                            Page 9

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

subsequent litigation. Creditors could flout the discharge by suing and hoping the defense was not timely raised. The main purpose of the 1970 legislation was to change the discharge from an affirmative to an absolute defense.

## A

A standard statement of the pre-1970 status of the bankruptcy discharge as creating an affirmative defense that must be raised in order to prevent an enforceable judgment from being entered is *Dimock v. Revere Copper Co.*, 117 U.S. 559, 6 S.Ct. 855, 29 L.Ed. 994 (1886) (Bankruptcy Act of 1867). This decision followed the rule to that effect established under the Bankruptcy Acts of 1800 and 1841. *Steward v. Green*, 11 Paige Ch. 535 (N.Y.Ch.1845) (Bankruptcy Act of 1841), *cited with approval*, *Dimock*, 117 U.S. at 566, 6 S.Ct. 855, *and citing with approval, Mechanics' Bank v. Hazard*, 9 Johns. 392, 1812 WL 1144 (N.Y. Ch. 1812) (Bankruptcy Act of 1800).

In *Dimock*, the debtor filed a bankruptcy case in June 1874 in a U.S. District Court, at which time there was then pending against him a contract-based lawsuit by Revere Copper in a Massachusetts state court. Although the bankruptcy discharge was entered before the trial in the state court, Dimock did not bring the discharge to the attention of that court, which entered a $3,595.15 judgment against him. Instead, Dimock raised the discharge as a defense to a subsequent collection lawsuit "on the judgment" in New York, contending that the Massachusetts judgment could not be enforced. *Dimock*, 117 U.S. at 560-63, 6 S.Ct. 855.

The Supreme Court noted that the judgment was not made void under the Bankruptcy Act of 1867, 117 U.S. at 564, 6 S.Ct. 855, and held that the Massachusetts judgment remained valid and enforceable: "[w]e are of [the] opinion that, having in his hands a good defence at the time judgment was rendered against him, namely, the order of discharge, and having failed to present it to a court which had jurisdiction of his case, ..., the judgment is a valid judgment, and that the defence cannot be set up here in an action on that judgment." *Id.* at

566, 6 S.Ct. 855.

Although the Court made clear that it was dealing with a collateral (as opposed to direct) attack on a theory not asserted in the original action and that it might still be possible for the Massachusetts court that issued the judgment to set it aside and entertain the defense,[FN5] the teaching of *Dimock* was that the defense of discharge *166 in bankruptcy was an affirmative defense that could be deemed waived if not raised.

FN5. The Court noted:
[I]f Dimock had brought his discharge to the attention of the superior court at any time before judgment, it would have been received as a bar to the action, and, under proper circumstances, even after judgment, it might be made the foundation for setting it aside and admitting the defence.
117 U.S. at 565, 6 S.Ct. 855. And:
It is clear that until the judgment of the Massachusetts court is set aside or annulled by some direct proceeding in that court, its effect cannot be defeated as a cause of action, when sued in another state, by pleading the discharge as a bar which might have been pleaded in the original action.
117 U.S. at 566, 6 S.Ct. 855.
It also clarified that if the discharge defense had been raised and rejected in the original action, it could be renewed in the action on the judgment:
[I]f he had appeared in the state court, and pleaded his discharge in bar, and it had been overruled as a sufficient bar, he could, nevertheless, in this action on that judgment, renew the defence.
But, in such case his remedy would not lie in renewing the struggle in a new suit on such judgment, but in bringing the first judgment for review before this court, where his right under the discharge would have been enforced then, as he seeks to do it now, after submitting to that judgment without resistance and without complaint.
117 U.S. at 566, 6 S.Ct. 855.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                                                    Page 10

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

The enactment of the Bankruptcy Act of 1898 did not alter the status of the discharge as an affirmative defense that could be lost if not raised. Thus, when the Federal Rules of Civil Procedure were adopted in 1937, "discharge in bankruptcy" was enumerated as an affirmative defense at Rule 8(c).

### B

The winds of change began to blow with the enactment of farmer bankruptcy provisions in the 1930's, including the two "Frazier-Lemke" farm mortgage acts amending Bankruptcy Act § 75.[FN6]

> FN6. The statutes were: Act of March 3, 1933, c. 204, § 1, 47 Stat. 1470-73; Act of June 7, 1934, c. 424, §§ 8-9, 48 Stat. 911, 925; Act of June 28, 1934, c. 869, 48 Stat. 1289 (Frazier-Lemke Act I); and Act of August 28, 1935, c. 792, 49 Stat. 942 (Frazier-Lemke Act II).

### 1

When the dust settled after the second Frazier-Lemke Act in 1935,[FN7] all a farm debtor's property, "wherever located," was under the "sole jurisdiction and control of the court in bankruptcy." No foreclosure or execution could be maintained or instituted "in any court or otherwise," which prohibition applied to all creditors and "all judicial or official proceedings." Bankr.Act § 75(*o*)-(p); *Kalb,* 308 U.S. at 440-41, 60 S.Ct. 343.[FN8]

> FN7. The first Frazier-Lemke Act was held unconstitutional. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601-602, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). The second Frazier-Lemke Act survived constitutional scrutiny. *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 470, 57 S.Ct. 556, 81 L.Ed. 736 (1937).
>
> FN8. The ultimate statutory language, as quoted and emphasized by the Supreme

Court in *Kalb,* was:

(*o*) Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings *shall not be instituted,* or if instituted at any time prior to the filing of a petition under this section, *shall not be maintained, in any court or otherwise,* against the farmer or his property, *at any time after the filing* of the petition under this section, *and prior to the confirmation* or other disposition of the composition or extension proposal by the court: ...

(2) *Proceedings for foreclosure of a mortgage on land,* or for cancellation, rescission, or specific performance of an agreement for sale of land *or for recovery of possession of land;*

...

(6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage.

(p) *The prohibitions ... shall apply to all judicial or official proceedings in any court or under the direction of any official,* and *shall apply to all creditors, public or private,* and *to all of the debtor's property, wherever located. All such property shall be under the sole jurisdiction and control of the court in bankruptcy* and subject to the payment of the debtor farmer's creditors, as provided for in [this section] section 75 of this Act.

Bankr.Act §§ 75(*o*)-(p), *as quoted and emphasized by Kalb,* 308 U.S. at 440-41, 60 S.Ct. 343.

### 2

In *Kalb,* the Supreme Court resolved the effect of these farmer-debtor provisions*167 suspending pending state court foreclosures and placing all of the farmer-debtor's property wherever located in the exclusive jurisdiction of the bankruptcy court. The Court concluded that Congress had deprived state courts and officials of jurisdiction to foreclose,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                     Page 11

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

confirm a sale, execute a sheriff's deed, issue a writ of assistance, and eject the debtors from their property. *Id.* at 443-44, 60 S.Ct. 343.

The analysis in *Kalb* was straightforwardly based on the Supremacy Clause. Agreeing that "[i]t is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack," it explained that "Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." *Id.* at 438-39, 60 S.Ct. 343.

Reasoning further that, under the Bankruptcy Power, "Congress ean limit the jurisdiction which courts, state or federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law," and concluding that Bankruptcy Act § 75 had been amended by the Frazier-Lemke Act specifically to deprive state courts of "power and jurisdiction to continue or maintain in any manner the foreclosure proceedings," it held that the Wisconsin courts lacked jurisdiction. Hence, its orders were a nullity in the face of the Supremacy Clause and "void." *Id.* at 439-40, 60 S.Ct. 343.

As relevant to the present appeal, the Court in *Kalb* described the congressional scheme as " self-executing" and made plain that there is no requirement that the fact of bankruptcy protection be raised in the state court:
Congress manifested its intention that the issue of jurisdiction in the foreclosing court need not be contested *or even raised* by the [debtor].... [C]onsiderations as to whether the issue of jurisdiction was actually contested in the County Court, or whether it could have been contested, arc not applicable where the plenary power of Congress over bankruptcy has been exercised as in this Act.

*Id.* at 444, 60 S.Ct. 343 (emphasis supplied).

*Kalb* was in the mainstream of the settled rules

described above regarding "void" judgments rendered by a court without jurisdiction that were nullities and, hence, vulnerable to collateral attack in another forum. It was, thus, unremarkable that the Court cited decisions to that effect dating back to the first half of the Nineteenth Century. *Id.* at 439-440, nn. 8-12, 60 S.Ct. 343.

**3**

Although *Kalb* was an automatic stay case, it provided the foundation for the next important step.

The Court's reasoning regarding the exercise of the Bankruptcy Power to enjoin and render "void" state-court proceedings without the need to raise the bankruptcy issue in state court provided the model for the 1970 amendment to Bankruptcy Act § 14f that, for the first time, declared state court judgments to be "null and void" to the extent they determined the personal liability of the debtor. Bankruptcy Act § 14f, *codified at* 11 U.S.C. § 362(f) (repealed 1979).

The purpose of that legislation, Senate Bill 4247, was to reverse the *Dimock* rule that the bankruptcy discharge merely creates an affirmative defense that is waived if not raised.

Congress noted that creditors increasingly were suing discharged debtors after *168 bankruptcy "in the hope the debtor will not appear in that action, relying to his detriment upon the discharge," and also noted that "this results because the discharge is an affirmative defense which, if not pleaded, is waived." Hence, "S. 4247 is meant to correct this abuse." H.R. Rep. No. 91-1502 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4156; 116 Cong. Rec. 34,818 (1970) (Statements of Reps. Rogers & Wiggins). [FN9]

FN9. The House Judiciary Committee report explained:
As stated in the report on this measure by the Senate Judiciary Committee, the major purpose of the proposed legislation is to effectuate, more fully, the discharge in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                                                    Page 12

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.

S. 4247 is meant to correct this abuse.

H.R. Rep. No. 91-1502, 1970 U.S.C.C.A.N at 4156, *quoted by* 116 Cong. Rec. 34,818 (statement of Rep. Rogers).

The subcommittee's ranking minority member elaborated:

The bill has the unanimous and bi-partisan support of the bankruptcy subcommittee and it has the unanimous support of the House Committee on the Judiciary....

Under present practice, debtors are frequently coerced by unscrupulous creditors into paying bills that have been discharged. Typically, the creditor will wait until the bankruptcy proceeding has been closed and then sue in State court on the discharged debt. Such creditors usually do not mention the discharge in bankruptcy in their complaint....

When suit on a discharged debt is filed in a State court, the bankrupt must file an answer, pleading his discharge as an affirmative defense; otherwise judgment will go to the creditor by default. Many bankrupts do not realize the consequences of ignoring the State court proceeding. Others who do have great difficulty obtaining counsel because, having just gone through bankruptcy, they have no resources with which to pay an attorney's fee. This situation has been very embarrassing to members of the bar who, having represented the bankrupt in the bankruptcy proceedings, cannot continue to represent him in a series of State court proceedings without prospect of a reasonable fee. In yet other cases the service of process on the bankrupt is inadequate and he is never in fact notified of the State court suit against him, and thus he defaults.

In all of these instances the concept of a discharge in bankruptcy by which the Bankruptcy Act attempts to assure the honest but unfortunate person a fresh start and rehabilitation is defeated. This problem has become more acute year by year as the number of consumer-type bankruptcy cases has increased. For several years approximately 92 percent of all bankruptcy cases filed have been personal or nonbusiness cases.

116 Cong. Rec. 34,818 (statement of Rep. Wiggins).

Thus, in 1970 the bankruptcy discharge lost its status as an affirmative defense. Thereafter, judgments establishing the personal liability of debtors on certain prepetition debts were "null and void" and creditors were enjoined from collection.

III

The 1978 Bankruptcy Code reenacted with different syntax, and elaborated in two main respects upon, the voidness provision of Bankruptcy Act § 14f. 4 Collier on Bankruptcy ¶ 524LH (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) (" Collier").

A

[4] The syntax used in new § 524(a) prescribed the legal effect of the discharge *169 ("discharge ... voids any judgment ... [and] operates as an injunction ...") rather than the former syntax that prescribed language for the discharge order ("order

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

of discharge shall declare that any judgment ... is null and void ... and enjoin all creditors..."). *Compare* 11 U.S.C. § 524(a), *with* Bankruptcy Act § 14f (repealed 1979).

The meaning of a "void" judgment, however, continued to have the meaning that it had had in Supreme Court jurisprudence for nearly two centuries.

To be sure, jurisprudence scholars recognized by the 1970's that the "void" and "voidable" judgment distinction had become obsolete after the merger of law and equity and concomitant procedural developments that increased opportunities for reconsideration and modification of judgments. Thus, in the *Restatement (Second) of Judgments* that was adopted in 1980, preclusion analysis was recast to give more emphasis to finality than to the validity of a judgment that had been the touchstone of the first *Restatement of Judgments.* Nevertheless, the meaning of a "void" judgment as a judgment that could be disregarded and collaterally attacked retained vitality.

That the "void" judgment provisions of the Bankruptcy Code retained vitality is apparent from the express reference in the *Restatement (Second) of Judgments* naming § 524(a) as an example of a statute "significantly modifying the rule of res judicata in certain matters relating to bankruptcy." Restatement (Second) of Judgments § 27, Reporter's Note. [FN10]

> FN10. A fuller version of the quotation is:
> There are sometimes special statutory provisions that modify the rules stated in this Section. ... For a statute significantly modifying the rules of res judicata in certain matters relating to bankruptcy, see § 524(a) of the Bankruptcy Code, 11 U.S.C. § 524(a) (1979). Its predecessor, § 14f of the Bankruptcy Act, 11 U.S.C. § 362(f) (1976), is discussed in Countryman, The New Dischargeability Law, 45 American Bankruptcy L.J. 1, 44-50 (1971). Restatement (Second)ofJudgments § 27, Reporter's Note.

Moreover, the *Restatement (Second) of Judgments* expressly takes *Kalb* into account in several contexts relating to permissible collateral attacks.

The rule regarding contested subject matter jurisdiction permits collateral attacks where " [a]llowing the judgment to stand substantially infringe the authority of another tribunal or agency of government." Restatement (Second) of Judgments § 12(2). The Reporter's Note names *Kalb* as an example of a situation in which an attack for lack of subject-matter jurisdiction is permitted because "protecting the jurisdiction of a tribunal of legally superior authority is a predominant consideration." *Id.* Reporter's Note. [FN11]

> FN11. The dictum contained in footnote 9 of the Supreme Court's decision in *Kontrick v. Ryan,* 540 U.S. 443, 456 n. 9, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), does not compel a contrary conclusion. That dictum asserts "[e]ven subject-matter jurisdiction, however, may not be attacked collaterally" and cites Restatement (Second)ofJudgments § 12 as support for the proposition. In light of the exceptions set forth in § 12, the dictum should be understood as implicitly including the qualification, "except as set forth in the *Restatement (Second) of Judgments.*"

*Kalb* is also cited as an example of the claim preclusion exception that permits relitigation based on authorization of such relitigation in a statutory or constitutional scheme. *Id.* § 26(1)(d), Reporter's Note, cmt. e.

Finally, with respect to the rule governing relief in a subsequent action, *Kalb* is given as an example "in which relief through a subsequent action is regarded as *170 affording a more adequate remedy." *Id.* § 80, Reporter's Note cmt. b.

In short, the term "void" judgment at the time of the 1978 enactment of the Bankruptcy Code continued to refer to a judgment entered without jurisdiction that could be disregarded as a nullity and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                      Page 14

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

collaterally attacked.

### B

The two main expansions over Bankruptcy Act § 14f that appeared in § 524(a) related to the injunction and to waiver.

### 1

In the 1978 Bankruptcy Code, the injunction changed from a specific injunction directed to creditors that was to be included in an order of discharge to a statutory injunction that was expanded to apply unambiguously to all entities.

It also expanded to encompass all acts to "collect, recover or offset" a debt as a personal liability of the debtor, instead of the former language that was limited to "instituting or continuing any action or employing any process to collect" a debt as a personal liability of the debtor. Compare Bankruptcy Act § 14f(2), with 11 U.S.C. § 524(a)(2) ; 4 Collier ¶ 524.02[2].

### 2

[5] The other big change in 1978 added "whether or not discharge of such debt is waived" to the § 524(a)(1) judgment-voiding provision and to the § 524(a)(2) injunction.

This new anti-waiver language was expressly " intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section." H.R. Rep. No. 95-595, at 366; S. Rep. No. 95-989, at 80.[FN12]

> FN12. The full explanation of § 524(a)(1) & (2), which was identical in both House and Senate reports, was:
> Subsection (a) specifies that a discharge in a bankruptcy case voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect

to a prepetition debt, and operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. *The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.* This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. § 524(d), and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect the discharge extinguishes the debt, and creditors may not attempt to avoid that. *The language " whether or not discharge of such debt is waived" is intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section.* It is directed at waiver of discharge of a particular debt, not waiver of discharge in toto as permitted under section 727(a)(9).
H.R. Rep. No. 95-595, at 365-66, *reprinted in* 1978 U.S.C.C.A.N. at 6321-22; *accord* S. Rep. No. 95-989, at 80, *reprinted in* 1978 U.S.C.C.A.N. at 5866 (emphasis supplied).

### 3

It follows, that the defense of discharge in bankruptcy is now an absolute, nonwaivable defense. Since 1970, it has not been an affirmative defense. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich),*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158    Page 15

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

229 B.R. 777, 781-82 (9th Cir. BAP 1999).

### C

It is apparent from our review of § 524(a)(2) that the statutory injunction *171 and anti-waiver provisions applied to Lone Star as of the date of entry of the discharge on October 23, 1996. Before then, the automatic stay protected Gurrola from the date of the order for relief on July 8, 1996, until it expired upon the entry of discharge. 11 U.S.C. § 362(c)(2)(C).

The application of straightforward statutory analysis to Lone Star's litigation and collection activities is as follows.

### 1

[6] Lone Star's July 16, 1996, letter to Gurrola demanding $2,550.00, the August 6, 1996, filing of its $2,664.90 counterclaim against Gurrola, its filing of the request for entry of Gurrola's default, and the entry of default on September 20, 1996, all violated the automatic stay.

The transmittal of the July 16, 1996, letter was a postpetition "act" to collect, assess, or recover a prepetition claim against the debtor that violated the automatic stay while that stay was in effect. 11 U.S.C. § 362(a)(6).

The various filings and the entry of default constituted the commencement or continuation of a judicial action against the debtor that was or could have been commenced before the commencement of the bankruptcy case or to recover a claim against the debtor that arose before the commencement of the case in violation of § 362(a)(1).

The *Kalb* analysis continues to apply with respect to the automatic stay, with the consequence that acts in violation of the automatic stay are void and of no effect. *40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076, 1080 (9th Cir.2003); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir.1992), *citing Kalb*, 308 U.S. at 438, 60

S.Ct. 343.

Since the filing of the counterclaim and entry of default were "void" as stay violations, there was no counterclaim and no default upon which the state court could premise a judgment in favor of Lone Star.

### 2

[7] Once the discharge was entered on October 23, 1996, any judgment that Lone Star at any time obtained on the discharged debt would automatically be rendered "void" by § 524(a)(1), and Lone Star, itself, was subject to the discharge injunction imposed by § 524(a)(2).

Thus, the default judgment obtained on March 12, 1998, was "void" the instant it was entered. 11 U.S.C. § 524(a)(1).

Lone Star's activities in prosecuting its effort to obtain a default judgment and thereafter to collect upon it violated the discharge injunction. 11 U.S.C. § 524(a)(2).[FN13]

> FN13. In contrast, the dismissal of Gurrola's complaint in November 1997 did not offend any injunction. First, the complaint was an action by, not against, the debtor. Second, to the extent that the cause of action was "property of the estate, " it likely would be deemed to have been abandoned to the debtor under 11 U.S.C. § 554(c) as of the closing of the case on November 1, 1996, because it had been unambiguously identified in the Statement of Financial Affairs as a cause of action in which the debtor was plaintiff, even it was not formally scheduled as an asset. If it was not abandoned, then it would remain property of the estate protected by the automatic stay, forever. *Compare* 11 U.S.C. § 554(d), *with id.* § 362(c)(1).

[8] To the extent Lone Star's violation of the discharge injunction occurred with notice of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
**(Cite as: 328 B.R. 158)**

discharge injunction, it is subject to a contempt remedy via 11 U.S.C. § 105(a). *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1191-92 (9th Cir.2003); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 506-07 (9th Cir.2002).

**\*172 3**

[9] Lone Star's argument that estoppel should nevertheless enable it to collect its judgment runs afoul of the anti-waiver provisions of § 524(a).

We have established that the phrase "whether or not discharge of such debt is waived" encompassed all possible theories for collecting a discharged debt as a personal liability of the debtor.

Estoppel theories are equitable theories typically based on conduct. The usual argument is that the person to be estopped has done, or omitted to do, something that makes it inappropriate for them to rely on a right that otherwise is available. This, in a functional sense, is merely one variety of waiver.

We, thus, conclude that estoppel theories may not be used to circumvent the effect of the discharge and the discharge injunction. Such uses of estoppel are varieties of waiver theories that are outlawed by the phrase "whether or not discharge of such debt is waived" in § 524(a).

In reaching this conclusion, we are mindful that scenarios can be constructed in which a discharged debtor might misbehave postpetition in a manner that so unconscionably disadvantages a creditor holding a discharged debt, or interferes with litigation in a court, as to cry out for a remedy. A number of potential remedies (especially sanctions) based on, and tailored to, the postpetition misconduct suggest themselves. The gravamen of our analysis is that § 524(a) eliminates the revival of the discharged debt as a remedy for postpetition misconduct.

Accordingly, Lone Star's theory of equitable estoppel premised upon the debtor's silence about his bankruptcy until after the default judgment was entered offends § 524(a) and must be rejected on

that account.

**IV**

The cases Lone Star cites do not confirm its theory that estoppel nevertheless trumps the strictures of § 524(a). No Ninth Circuit decision or decision of this Panel is on point.

**A**

Lone Star points out that three other courts of appeals appear to have ruled that equitable considerations warrant refusal to treat as void state-court proceedings conducted in violation of the automatic stay. *Job v. Calder (In re Calder),* 907 F.2d 953, 956-57 (10th Cir.1990); *Matthews v. Rosene,* 739 F.2d 249, 250-51 (7th Cir.1984); *Appeal of Brodeur (In re Smith Corset Shops, Inc.),* 696 F.2d 971, 976-77 (1st Cir.1982).

While we do not quarrel with the outcome of those decisions, each suffers from the same fallacy: overlooking the equitable exception in the § 362(d) automatic stay relief provision that could, in each case, have been invoked to reach the same result.

[10][11] The automatic stay contains an authorization for annulling the stay, which has the effect of retroactively validating acts that otherwise violated the stay. 11 U.S.C. § 362(d). Although some decisions have favored more stringent standards, we have previously explained that the correct "standard for determining 'cause' to annul the automatic stay retroactively is a 'balancing of the equities' test." *Fjeldsted v. Lien (In re Fjeldsted)* 293 B.R. 12, 21-25 (9th Cir. BAP 2003); *accord Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.),* 129 F.3d 1052, 1055 (9th Cir.1997).

Under the balancing-of-the-equities standard, or any stricter standard, the circumstances that prompted the First, **\*173** Seventh, and Tenth Circuits to invoke equitable principles to conclude that acts putatively in violation the stay were not void are sufficient to warrant annulling the stay. None of

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

the courts of appeals demonstrated awareness of the § 362(d) statutory annulment authority that would have obviated the need independently to invoke equitable doctrines.

Since § 362(d) provides statutory authority to annul the automatic stay on the facts of *Calder, Matthews,* and *Smith Corset Shops,* those decisions should be understood as requiring annulment of the stay in accordance with the statute, even though the courts merely mouthed equitable principles. Indeed, the Ninth Circuit has construed *Matthews* in precisely this fashion. *Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin),* 890 F.2d 123, 126 (9th Cir.1989); *accord, In re Raanan,* 181 B.R. 480, 485-86 (Bankr.C.D.Cal.1995).

Moreover, neither *Calder,* nor *Matthews,* nor *Smith Corset Shops,* appears to have implicated § 524(a). In *Calder,* the discharge was denied. *Calder,* 907 F.2d at 956. *Matthews* was a chapter 13 case in which it is not indicated that a discharge was issued. *Matthews,* 739 F.2d at 250. *Smith Corset Shops* involved an appeal from a bankruptcy court decision refusing to find that a conversion occurred when a creditor refused to turn over property acquired in innocent violation of the automatic stay. *Smith Corset Shops,* 696 F.2d at 973-74.

In view of the statutory authority to accomplish the results achieved, those decisions of other circuits are not persuasive with respect to the question whether equitable principles can be used to trump either § 362 or § 524(a).

**B**

Three bankruptcy court decisions are also cited by Lone Star. One is inapposite. Two are not persuasive.

One of the bankruptcy court decisions upon which Lone Star relies imposes equitable estoppel to extend the deadline under Federal Rule of Bankruptcy Procedure 4007(c) to file an action to except a debt from discharge. *Fed. Home Loan Mortgage Corp. v. Potter (In re Potter),* 185 B.R. 68 (Bankr.C.D.Cal.1995). This decision follows

our own decisions to the same effect. *E.g., Schreiber v. Halstead (In re Halstead),* 158 B.R. 485, 487-88 (9th Cir. BAP 1993), *aff'd & adopted,* 53 F.3d 253 (9th Cir.1995).

Nor is *Potter* inconsistent with the Supreme Court's determination that the deadline prescribed by Federal Rule of Bankruptcy Procedure 4004 for objecting to discharge is a "claims processing" procedural rule that can be forfeited if not timely raised. *Kontrick,* 540 U.S. at 457-60, 124 S.Ct. 906. The Court was careful to clarify that its decision involved no question of any equity-based exception and that it was not reaching any such question. *Id.* at 457, 124 S.Ct. 906. Rather, the linchpin of the analysis was that the statute did not specify a deadline and that "it is axiomatic" that rules of practice and procedure cannot extend or limit federal jurisdiction. *Id.* at 453-54, 124 S.Ct. 906.

The issue of rule-based deadlines for filing actions objecting to discharge or to establish that a debt is nondischargeable, however, has no bearing on the question of whether equitable estoppel can trump § 524(a) of the statute. Lone Star has conceded that Gurrola's debt cannot be excepted from discharge and does not question the validity of Gurrola's discharge. Hence, *Potter* is inapposite.

Lone State also cites an Oklahoma bankruptcy court decision that is a two-page memorandum appearing to assert, *ipse dixit,* that equity can trump anything. *174Logan v. Quail Creek Bank (In re Logan),* 144 B.R. 538 (Bankr.W.D.Okla.1992). We are not persuaded.

Finally, Lone Star relies on the bankruptcy trial court's decision in *Raanan,* where the debtor had intentionally concealed a cause of action (that was property of the estate) against an omitted creditor, had litigated the dispute, and had suffered an adverse judgment on a counterclaim. The court reasoned that the prepetition debt represented by the judgment on the counterclaim should be excepted from discharge on equitable grounds because the innocent creditor hired an attorney and expended time and money to assert and prevail on his counterclaim. *Raanan,* 181 B.R. at 485. The court, however, neither noted nor assessed the effect

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                                                            Page 18

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

of the anti-waiver provisions of § 524(a) that we have addressed in this opinion.

We disagree with the *Raanan* decision in three respects. First, the penalty of reviving the debt does not fit the crime. The real problem was that the debtor had prosecuted a cause of action that was property of the estate and, hence, lacked standing. Such misconduct qualifies as the sort of "bad faith" violation of the litigation process that may warrant an award of attorney's fees under the court's inherent authority to impose sanctions that include attorney's fees and litigation expenses. *Chambers v. NASCO*, 501 U.S. 32, 42-47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (awarding fees as sanction); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir.1996); *Ybarra v. Boeing N. Am., Inc. (In re Ybarra)*, 295 B.R. 609, 617-22 (9th Cir. BAP 2003) (Klein, J., concurring). Second, the Bankruptcy Code is so specific with respect to a plethora of statutory nondischargeability theories that it does not admit of the nonstatutory, general equitable nondischargeability remedy that the *Raanan* court fashioned. Third, for reasons we have already explained, the anti-waiver provisions of § 524(a) forbid the use of such waiver theories to revive a prepetition debt that is not otherwise nondischargeable and forbid a sanction of reviving the discharged debt. Hence, we are not persuaded by *Raanan*.

Mr. Raanan's transgressions could adequately have been remedied without reviving the discharged debt.

In sum, the cases upon which Lone Star relies do not suffice to overcome the effect of the specific provisions of § 524(a).

V

We must emphatically reject Lone Star's position that it was entitled to enforce its judgment until such time as the bankruptcy court issued an order barring collection activity.

[12] To the contrary, a creditor has a *duty* to obey the discharge injunction, which duty is a modern

corollary of the venerable rule that "all persons concerned in executing [void] judgments ... are considered in law as trespassers." *Elliott*, 26 U.S. at 340, *cited with approval, Kalb*, 308 U.S. at 439, 60 S.Ct. 343.

Moreover, there is no merit in Lone Star's position that the discharged debtor was obliged to take the initiative to clarify the discharge issue: "if Mr. Gurrola believed his bankruptcy immunized him from enforcement of the judgment, then he should" obtain an order from the bankruptcy court to that effect.[FN14] Such an order*175 already existed in the form of the discharge order, with its statutory injunction, enforceable by contempt proceedings.[FN15]

> FN14. The full quotation from Lone Star's counsel was:
> I also conveyed my opinion that if Mr. Gurrola believed his bankruptcy immunized him from enforcement of the judgment, then he should apply to the Bankruptcy Court to obtain an appropriate order to bar Lone Star from pursuing such enforcement.
> Decl. of George M. Wallace, 10/29/03, at p. 6.

> FN15. Although all courts agree that contempt is the standard method of enforcing the discharge injunction, there is debate on the question whether, in addition, there is a private cause of action for such violations. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 508-10 (9th Cir.2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir.2000); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 443-47 (1st Cir.2000); *Bassett v. Am. Gen. Fin., Inc. (In re Bassett)*, 255 B.R. 747, 753-57 (9th Cir. BAP 2000), *aff'd in relevant part*, 285 F.3d 882 (9th Cir.2002) ; *Costa v. Welch (In re Costa)*, 172 B.R. 954, 965-66 (Bankr.E.D.Cal.1994); 4 Collier ¶ 524.02[2][c].

[13] Lone Star's position is remarkably similar to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

328 B.R. 158                                                                Page 19

328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313
(Cite as: 328 B.R. 158)

that of the automatic stay violator we encountered in *Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (9th Cir. BAP 2004), who thought that he could safely quibble with a debtor about the automatic stay. We held that debtors do not bear the burden of proving to creditors the existence of the automatic stay before stay-violation liability can be imposed. *Id.* at 389. The same basic analysis applies to the discharge and discharge injunction.

[14] As with the § 362 automatic stay, the § 524(a) discharge and the discharge injunction are effective against the world to the full extent of their statutory terms, regardless of notice. Although the discharge and discharge injunction differ from the automatic stay in the sense that the protection is limited to the personal liability of the debtor and does not, for example, affect valid prepetition liens, these are distinctions without a difference with respect to the effect on creditors. *Pavelich*, 229 B.R. at 783-84; 4 Collier ¶ 524.02; *cf. Johnson v. Home State Bank*, 501 U.S. 78, 82-83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (valid prepetition liens survive); *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) (same).

[15] Not only are the discharge and discharge injunction "good against the world," they are good anywhere in the world, i.e. extraterritorily. *E.g., Hong Kong & Shanghai Banking Corp. v. Simon*, 153 F.3d 991, 995-97 (9th Cir.1998) (cataloging cases).

[16] It follows that judgments and acts in violation of the injunction are automatically void ab initio, hence self-executing, for the same reasons as the automatic stay. 11 U.S.C. § 524(a); *cf. Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081-82 (9th Cir.2000) (en banc); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572-74 (9th Cir.1992); *Peralta*, 317 B.R. at 389.

[17] Lack of notice of the discharge is not pertinent to whether a judgment or act in violation of the discharge injunction is void. Nor is lack of notice a means of ratifying a void act to enforce a void judgment. 4 COLLIER ¶ 524.02 [2].

[18] While lack of notice of the bankruptcy and of

the discharge may serve as a defense to contempt sanctions, *cf. Dyer*, 322 F.3d at 1191-92, the legal consequences of acts in violation of the discharge injunction do not otherwise vary.

The word "void" in § 524(a) means "void," not "voidable." Lone Star's judgment was void. Lone Star's actions in obtaining the judgment are void as having violated the discharge injunction, even though the lack of notice may be a defense to contempt sanctions. Lone Star's pursuit*176 of judgment enforcement after learning of the bankruptcy discharge violated the discharge injunction and was done at peril of contempt proceedings.

CONCLUSION

There is no equitable exception to the provisions of § 524(a) that void any judgment at any time obtained with respect to the personal liability of the debtor for a specific discharged debt, which voidness cannot be waived, and that similarly enjoin all entities from attempting to collect such a discharged debt. Any postpetition misconduct by the debtor must be remedied by some means tailored to that misconduct and cannot include reviving the discharged debt. AFFIRMED.

9th Cir.BAP (Cal.),2005.
In re Gurrola
328 B.R. 158, 05 Cal. Daily Op. Serv. 6066, 2005 Daily Journal D.A.R. 8313

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

257 B.R. 394                                                                                    Page 1

257 B.R. 394
(Cite as: 257 B.R. 394)

▷
In re Dabrowski
Bkrtcy.S.D.N.Y.,2001.

United States Bankruptcy Court,S.D. New York.
In re Robert DABROWSKI, Debtor.
No. 99-B-44654 (REG).

Jan. 4, 2001.

Chapter 7 debtor brought adversary proceeding in reopened case for clarification of discharge order and for entry of order holding landlord in contempt for violating discharge injunction. The Bankruptcy Court, Robert E. Gerber, J., held that: (1) bankruptcy court was not bound by prior judgment of municipal court that debtor's obligation for retroactive rent was not discharged; (2) debtor's obligation for $42,000 in retroactive rent, pursuant to administrative determination that predated debtor's bankruptcy, was in nature of dischargeable prepetition debt; (3) while discharge order barred landlord from trying to recover discharged rent as personal obligation of debtor, it did not constitute payment of rent or extinguish underlying debt; (4) contempt finding was not warranted; and (5) court would abstain from ruling on remaining state law issues.

So ordered.
West Headnotes
[1] Judgment 228 ☞713(2)

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(C) Matters Concluded
            228k713 Scope and Extent of Estoppel in General
                228k713(2) k. Matters Which Might Have Been Litigated. Most Cited Cases
Doctrine of res judicata, or claim preclusion, prohibits litigation of any claim that was available to party in prior proceeding, without regard to whether prior judgment actually determined that

ground or claim.

[2] Judgment 228 ☞634

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(A) Judgments Conclusive in General
            228k634 k. Nature and Requisites of Former Adjudication as Ground of Estoppel in General. Most Cited Cases
Res judicata applies when there is final judgment on merits, rendered by court of competent jurisdiction, based on same cause of action as action presently pending before court, and involving same parties.

[3] Judgment 228 ☞713(1)

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(C) Matters Concluded
            228k713 Scope and Extent of Estoppel in General
                228k713(1) k. In General. Most Cited Cases

Judgment 228 ☞720

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(C) Matters Concluded
            228k716 Matters in Issue
                228k720 k. Matters Actually Litigated and Determined. Most Cited Cases

Judgment 228 ☞724

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(C) Matters Concluded
            228k723 Essentials of Adjudication
                228k724 k. In General. Most Cited Cases
Doctrine of collateral estoppel, or issue preclusion, prohibits review of issue when (1) issue was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                Page 2

257 B.R. 394
(Cite as: 257 B.R. 394)

actually and necessarily decided in prior proceeding, and (2) party against whom doctrine is asserted had full and fair opportunity to litigate issue in first proceeding.

**[4] Judgment 228 ⇒634**

228 Judgment
   228XIV Conclusiveness of Adjudication
      228XIV(A) Judgments Conclusive in General
         228k634 k. Nature and Requisites of Former Adjudication as Ground of Estoppel in General. Most Cited Cases
Collateral estoppel may be applied only to issues of fact underlying prior judgment, not to issues of law.

**[5] Courts 106 ⇒509**

106 Courts
   106VII Concurrent and Conflicting Jurisdiction
      106VII(B) State Courts and United States Courts
         106k509 k. Vacating or Annulling Decisions. Most Cited Cases
*Rooker-Feldman* doctrine operates generally as bar upon federal courts' review of state court decisions.

**[6] Courts 106 ⇒509**

106 Courts
   106VII Concurrent and Conflicting Jurisdiction
      106VII(B) State Courts and United States Courts
         106k509 k. Vacating or Annulling Decisions. Most Cited Cases
*Rooker-Feldman* doctrine provides that lower federal courts lack subject matter jurisdiction over case where exercise of jurisdiction over that case would reverse or modify state court judgment.

**[7] Courts 106 ⇒509**

106 Courts
   106VII Concurrent and Conflicting Jurisdiction
      106VII(B) State Courts and United States Courts
         106k509 k. Vacating or Annulling Decisions. Most Cited Cases
*Rooker-Feldman* doctrine is raised in bankruptcy

case, if bankruptcy issue is raised in state court, and if same issue is later raised in bankruptcy court either before or after state court has determined matter.

**[8] Courts 106 ⇒509**

106 Courts
   106VII Concurrent and Conflicting Jurisdiction
      106VII(B) State Courts and United States Courts
         106k509 k. Vacating or Annulling Decisions. Most Cited Cases
*Rooker-Feldman* issue may be raised at any time, by parties or sua sponte by court.

**[9] Courts 106 ⇒509**

106 Courts
   106VII Concurrent and Conflicting Jurisdiction
      106VII(B) State Courts and United States Courts
         106k509 k. Vacating or Annulling Decisions. Most Cited Cases
There is exception to application of *Rooker-Feldman* doctrine when the state court judgment is void.

**[10] Courts 106 ⇒509**

106 Courts
   106VII Concurrent and Conflicting Jurisdiction
      106VII(B) State Courts and United States Courts
         106k509 k. Vacating or Annulling Decisions. Most Cited Cases
Because void state court judgment is nullity, vacating such a judgment is mere formality and does not intrude on notion of mutual respect in federal-state interests underlying *Rooker-Feldman* doctrine.

**[11] Bankruptcy 51 ⇒2368**

51 Bankruptcy
   51IV Effect of Bankruptcy Relief; Injunction and Stay
      51IV(A) In General
         51k2363 Protection Against

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                    Page 3

257 B.R. 394
**(Cite as: 257 B.R. 394)**

Discrimination or Collection Efforts in General; " Fresh Start."
  51k2368 k. Judicial Proceedings in General. Most Cited Cases

**Bankruptcy 51 ☞2462**

51 Bankruptcy
 51IV Effect of Bankruptcy Relief; Injunction and Stay
  51IV(D) Enforcement of Injunction or Stay
   51k2462 k. Validity of Acts in Violation of Injunction or Stay. Most Cited Cases

**Baukruptcy 51 ☞3414**

51 Bankruptcy
 51X Discharge
  51X(D) Effect of Discharge
   51k3413 Effect as to Securities and Liens
    51k3414 k. Judgments or Executions. Most Cited Cases
Discharge order has both retroactive and prospective effect on creditors' attempts to seek payment of discharged debts; not only is any judgment obtained by creditor prior to entry of discharge order void, but so is any judgment on discharged debt which is obtained after entry of discharge order. Bankr.Code, 11 U.S.C.A. § 524(a)(1).

**|12| Bankruptcy 51 ☞2462**

51 Bankruptcy
 51IV Effect of Bankruptcy Relief; Injunction and Stay
  51IV(D) Enforcement of Injunction or Stay
   51k2462 k. Validity of Acts in Violation of Injunction or Stay. Most Cited Cases

**Courts 106 ☞509**

106 Courts
 106VII Concurrent and Conflicting Jurisdiction
  106VII(B) State Courts and United States Courts
   106k509 k. Vacating or Annulling Decisions. Most Cited Cases

**Judgment 228 ☞828.21(2)**

228 Judgment
 228XVII Foreign Judgments
  228k828 Effect of Judgments of State Courts in United States Courts
   228k828.21 Particular Federal Proceedings
    228k828.21(2) k. Bankruptcy. Most Cited Cases
Bankruptcy court was not bound under res judicata or collateral estoppel principles, or pursuant to *Rooker-Feldman* doctrine, by prior judgment of municipal court that debtor's obligation for retroactive rent was not discharged by Chapter 7 discharge order; to extent that municipal court erred, and that debtor's obligation for such retroactive rent had in fact been discharged, municipal court's judgment, which enforced effort to collect that discharged debt, would be void, as violative of discharge injunction. Bankr.Code, 11 U.S.C.A. § 524(a)(1).

**[13] Bankruptcy 51 ☞3343.1**

51 Bankruptcy
 51X Discharge
  51X(C) Debts and Liabilities Discharged
   51X(C)1 In General
    51k3343 Particular Debts or Liabilities
     51k3343.1 k. In General. Most Cited Cases
 (Formerly 51k3343)

**Bankruptcy 51 ☞3411**

51 Bankruptcy
 51X Discharge
  51X(D) Effect of Discharge
   51k3411 k. In General. Most Cited Cases
Landlord's right to payment of $42,000 in retroactive rent, pursuant to administrative decision that was entered shortly prior to commencement of debtor-tenant's Chapter 7 case, was prepetition claim, the debtor's obligation on which was discharged upon entry of discharge order.

**[14] Bankruptcy 51 ☞3115.1**

51 Bankruptcy

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                  Page 4

257 B.R. 394
**(Cite as: 257 B.R. 394)**

      511X Administration
         511X(C) Debtor's Contracts and Leases
            51k3115 Effect of Acceptance or Rejection
               51k3115.1 k. In General. Most Cited
Cases

**Bankruptcy 51 ☞3131**

51 Bankruptcy
    511X Administration
       511X(D) Abandonment
          51k3131 k. In General. Most Cited Cases
Deemed rejection of residential lease, as result of
Chapter 7 trustee's failure to assume it in timely
fashion, resulted in abandonment of lease as "
property of the estate." Bankr.Code, 11 U.S.C.A. §
365(d)(1).

**|15| Bankruptcy 51 ☞3343.1**

51 Bankruptcy
    51X Discharge
       51X(C) Debts and Liabilities Discharged
         51X(C)1 In General
           51k3343 Particular Debts or Liabilities
              51k3343.1 k. In General. Most
Cited Cases
    (Formerly 51k3343)
Whether debtor-tenant was discharged of obligation
for retroactive rent did not depend upon whether
lease became, or did not become, property of estate;
relevant issue was whether landlord's claim for such
rent was in nature of prepetition claim and, if so,
whether any discharge exceptions applied.

**|16| Bankruptcy 51 ☞3411**

51 Bankruptcy
    51X Discharge
       51X(D) Effect of Discharge
         51k3411 k. In General. Most Cited Cases
As result of discharge of Chapter 7 debtor's
personal liability for retroactive rent, landlord could
neither obtain money judgment against debtor for
such retroactive rent nor seek such a judgment.
Bankr.Code, 11 U.S.C.A. § 524(a)(1).

**|17| Bankruptcy 51 ☞3411**

51 Bankruptcy
    51X Discharge
       51X(D) Effect of Discharge
         51k3411 k. In General. Most Cited Cases
Even though discharge order barred landlord from
trying to recover discharged rent as personal
obligation of debtor, it did not constitute payment
of rent or extinguish underlying debt.

**|18| Bankruptcy 51 ☞2364**

51 Bankruptcy
    511V Effect of Bankruptcy Relief; Injunction
and Stay
       511V(A) In General
          51k2363    Protection    Against
Discrimination or Collection Efforts in General; "
Fresh Start."
          51k2364 k. Discharge as Injunction.
Most Cited Cases
Although landlord could not, consistent with
discharge injunction, obtain personal judgment
against Chapter 7 debtor for discharged prepetition
rent, landlord could, consistent with discharge
injunction, seek to evict debtor for nonpayment of
this discharged prepetition debt.

**|19| Bankruptcy 51 ☞2465.3**

51 Bankruptcy
    511V Effect of Bankruptcy Relief; Injunction
and Stay
       511V(D) Enforcement of Injunction or Stay
         51k2465 Contempt
           51k2465.3 k. Proceedings. Most Cited
Cases
Contempt finding, based on landlord's technical and
unintended violation of discharge injunction, in
context of post-bankruptcy eviction proceedings, in
requesting entry of judgment against debtor for
unpaid prepetition rent, was neither appropriate nor
just, where landlord's actions evinced effort to
ascertain and comply with applicable law, did not
evidence any malevolent intent or bad faith, and
were not malicious or egregious. Bankr.Code, 11
U.S.C.A. § 524(a)(1).

**|20| Bankruptcy 51 ☞2467**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                                    Page 5

257 B.R. 394
(Cite as: 257 B.R. 394)

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction
and Stay
        51IV(D) Enforcement of Injunction or Stay
            51k2467 k. Damages and Attorney Fees.
Most Cited Cases
No damages, attorney fees or costs would be
awarded for landlord's technical and unintended
violation of discharge injunction, in context of
post-bankruptcy eviction proceedings, in requesting
entry of judgment against debtor for unpaid
prepetition rent, where landlord had not acted in
bad faith, vexatiously, wantonly or for oppressive
reasons. Bankr.Code, 11 U.S.C.A. § 524(a)(1).

|21| Bankruptcy 51 ⟐2364

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction
and Stay
        51IV(A) In General
            51k2363          Protection          Against
Discrimination or Collection Efforts in General; "
Fresh Start."
            51k2364 k. Discharge as Injunction.
Most Cited Cases

Bankruptcy 51 ⟐2461

51 Bankruptcy
    51IV Effect of Bankruptcy Relief; Injunction
and Stay
        51IV(D) Enforcement of Injunction or Stay
            51k2461 k. In General. Most Cited Cases
Although landlord could not use self-help to recover
discharged prepetition rent, and could not apply
debtor's postpetition rental payments to this
discharged debt, landlord would not be required to
make formal accounting in order to reassure debtor
that postpetition rental payments were properly
applied, at least not until parties had attempted to
resolve matter through less formal channels,
through exchange of letters between them; while
debtor wondered whether he postpetition rental
payments were properly applied, she did not assert
that they were not.

|22| Federal Courts 170B ⟐47.5

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B)  Right  to  Decline  Jurisdiction;
Abstention Doctrine
            170Bk47 Particular Cases and Subjects,
Abstention
                170Bk47.5 k. Bankruptcy. Most Cited
Cases
    (Formerly 170Bk47.1)
Following entry of judgment by bankruptcy court
on bankruptcy issues, that debtor's discharge had
relieved him of any personal obligation for past-due
prepetition rent but had not resulted in payment or
extinguishment of debtor's debt for such rent,
bankruptcy court would abstain from ruling on
remaining state law issues, as to whether debtor
could continue to occupy leased premises by paying
only rent that accrued after his bankruptcy filing, as
matters that state courts were better suited to
determine. 28 U.S.C.A. § 1334.

*396 Robert Grimble, New York City, for debtor.
Meryl L. Wenig, Brooklyn, NY, for landlord Pari
Duluc.

*DECISION ON MOTION FOR CONSTRUCTION
OF DISCHARGE ORDER, FINDING OF
CONTEMPT, ACCOUNTING, AND RELATED
RELIEF*
ROBERT E. GERBER, Bankruptcy Judge.

*Introduction and Summary*

Robert Dabrowski ("Debtor"), the debtor in a
previously closed chapter 7 case in this Court, is the
tenant in a rent-regulated apartment in New York
City ("Apartment"). As described more fully
below, he and Pari Dulac, the landlord of the
Apartment in which the Debtor lives ("Landlord"),
differed over the maximum collectible rent and the
rent regulation regime that was applicable to his
Apartment, and litigated extensively, before the
filing of the Debtor's bankruptcy case, with respect
to those issues in the regulatory agency with
jurisdiction over such matters, the Office of Rent
Administration of New York State's Division of
Housing and Community Renewal ("DHCR").
After administrative proceedings lasting 10 years,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                                    Page 6

257 B.R. 394
(Cite as: 257 B.R. 394)

the DHCR ruled that the Debtor's Apartment *397 was subject to "Rent Stabilization" (rather than "Rent Control," an alternative regulatory regime under which the rent would be lower), and that the Debtor owed the Landlord retroactive additional rent of approximately $42,000 (the "Retroactive Rent").

With the $42,000 in Retroactive Rent due to the Landlord, the Debtor then filed a petition for bankruptcy relief in this Court. His chapter 7 trustee took no action to either assume or reject the lease, and the Landlord, although given notice of the Debtor's chapter 7 filing, took no action in the case. At the conclusion of the Debtor's bankruptcy case, an order was duly entered by Judge Garrity of this Court (the "Discharge Order") discharging the Debtor from all of his pre-petition debts-including, the Debtor argues, the Retroactive Rent.

The Landlord thereafter commenced a "summary non-payment proceeding" in the New York City Civil Court's Housing Part ("Housing Court") seeking possession of the Apartment and the arguably discharged rent; her papers sought both eviction and a money judgment for the unpaid Retroactive Rent. In a decision now under appeal in the state courts,[FN1] a New York City Housing Court Judge granted summary judgment in the Landlord's favor to the extent of dismissing the bankruptcy defense raised by the Debtor, ruling that the debt had not been discharged. After unsuccessfully moving to reargue, the Debtor duly appealed the Housing Court decision, and then sought relief here.

> FN1. By agreement between the Debtor and Landlord, that appeal is "on hold" pending a decision by this Court on the motion.

Having also moved for an order reopening his case,[FN2] the Debtor moves for an order:

> FN2. That aspect of the relief requested by the Debtor, which was unopposed, has been granted by the Court.

(a) clarifying the Discharge Order insofar as it related to the Retroactive Rent;
(b) holding the Landlord in civil and/or criminal contempt for taking actions prohibited or said to be prohibited by the Discharge Order, in connection with the commencement and prosecution of the summary non-payment proceeding;
(c) setting the matter down for an evidentiary hearing on any issues of fact;
(d) awarding costs and legal fees incurred in relation to the motion;
(e) awarding damages arising from the alleged failure to comply with the Discharge Order;
(f) directing the Landlord to render an accounting as to any sums paid post-petition by the Debtor that were applied to any pre-petition debts; and
(g) granting any further relief as might be just to enforce the Discharge Order.

The motion is granted in part and denied in part,[FN3] as set forth more fully below.

> FN3. Part (a) is granted and Part (f) is granted in substance, and the desired clarification, and the principles applicable to the accounting, are set forth below. Parts (b), (d) and (e) are denied on the merits. Parts (c) and (g) are denied, other than on the merits, as unnecessary and/or inappropriate for this Court to decide.

Based on the above facts, and those stated in more detail below, the Debtor argues that the Retroactive Rent was discharged, just like any other pre-petition debt, and that the Landlord's nonpayment proceeding, and/or the relief sought in it-seeking a money judgment for that debt, along with possession-was violative of the Discharge Order and the injunction against such actions under Bankruptcy Code section 524. In addition to asking this Court to clarify the Discharge Order to explicitly say that any request for the Retroactive Rent would be violative of the Discharge Order, the Debtor seeks to hold *398 the Landlord in contempt for that violation.

In opposition, the Landlord argues that the Housing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                                    Page 7

257 B.R. 394
(Cite as: 257 B.R. 394)

Court was correct in determining that the DHCR Debt was not discharged. But she also raises a significant threshold issue, articulated as one of res judicata, as to whether this Court can determine the discharge issue now that the Housing Court has done so.

For the reasons described below, with respect to the most significant of the issues:
(a) This Court is not bound by the judgment of the Housing Court with respect to the bankruptcy discharge issue (which, as noted below, unfortunately is erroneous), as that judgment is void under Bankruptcy Code section 524(a)(1) and the caselaw thereunder;
(b) The "deemed rejection" under Bankruptcy Code section 365(d)(1) of the Debtor's "lease" (or, more accurately, the bundle of statutory and contractual rights and obligations associated with the Debtor's occupancy of the Apartment), relied on by the Housing Court, is not determinative of the discharge issue;
(c) The $42,000 debt was, in fact (contrary to the determination of the Housing Court), discharged, under Bankruptcy Code section 727(b), as implemented under Bankruptcy Code section 524(a) and the Discharge Order, and the Landlord accordingly may not sue for the Retroactive Rent;
(d) The Landlord nevertheless may proceed, *in rem*, to recover possession of the Apartment, if state law permits recovery of possession of the Apartment as a *consequence* of the nonpayment of the Retroactive Rent; this Court does not regard it as violative of the Discharge Order if any of the Landlord's remedies are limited to proceeding *in rem* (such as proceeding solely to recover possession, or bringing an action in the nature of ejectment), or if the Landlord, in any subsequent proceedings in state court (including, if such is possible, in summary proceedings in the Housing Court), clearly, unequivocally, and irrevocably renounces any entitlement to any money damages award;
(e) Once the federal law defining the nature and scope of the discharge is clarified, the state courts are better suited to determine the parties' rights and responsibilities incident to the Debtor's continuing occupancy of the Apartment. Assuming (though this may be debatable) that this Court has subject matter jurisdiction over the determination of the

rights of the Debtor and the Landlord with respect to the Apartment once the coverage of the Discharge Order is determined, this Court believes that the state courts provide the more appropriate forum to determine, as one or more questions of state law, whether the Debtor may occupy the Apartment if he pays only the rent accruing after his bankruptcy filing, and chooses (as his right) not to pay the discharged Retroactive Rent. They also are better suited than this Court to determine what state court procedural vehicles are available to the Landlord to obtain any necessary rulings, in light of this Court's ruling that she can proceed in rem for possession but must disclaim entitlement to a money judgment award. Particularly in light of the Debtor's understandably limited request for relief-construction and enforcement of the Discharge Order-this Court does not regard any of those state law issues to be properly before it, and to the extent any might be deemed to be so, it abstains from considering them.

*Facts*

Except for matters irrelevant to determination of the motion, the facts are not in dispute.[FN4] The Debtor occupies the Apartment,*399 a 3-bedroom unit, # 2R, at 24 Minetta Lane, in the Greenwich Village section of Manhattan, New York City. As gleaned from the decision of the DHCR that preceded the Debtor's bankruptcy filing,[FN5] the Debtor commenced occupancy of the Apartment in 1966 pursuant to a lease, and continued to receive renewal leases every two years [FN6] for part, but less than all, of the duration of his occupancy. The DHCR found that the last lease, for a duration of two years, ran from May 1, 1986 through April 30, 1988.[FN7] The DHCR further found that the Debtor and the Landlord did not enter into any lease agreements after April 30, 1988.[FN8]

FN4. The Court believes that the combination of proof by affidavit, exhibits, and counsel's undisputed representations results in there being no material disputed issues of fact necessary to determine the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

motion. Accordingly, there is no need to take oral testimony.

FN5. Grimble Aff.Exh. C.

FN6. *Id.* at 2.

FN7. *Id.* at 9.

FN8. *Id.*

In July 1988, the Debtor commenced proceedings with the DHCR seeking a determination as to the maximum collectible rent and his rent regulation status. Thereafter, the Landlord responded and filed related petitions and requests for relief.[FN9] The Debtor generally contended that his Apartment was subject to "rent control," rather than "rent stabilization." While these two alternative regimes have the common effect of limiting the amount that a landlord can charge a tenant for continued occupancy of an apartment, they differ in their mechanics and, at least frequently, in the maximum collectible rent. Rent control does not require or contemplate a current written and signed lease. In this way, the rent-controlled tenancy survives the lease term of the original lease instrument (and any written renewals thereof) and becomes a so-called " statutory" tenancy. *See Resolution Trust Corp. v. Diamond ("Diamond I"),* 18 F.3d 111, 114 (2d Cir.1994) (describing the two programs' operation from a federal law perspective), *vacated and remanded sub nom. Solomon v. Resolution Trust Corp.,* 513 U.S. 801, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994), *on remand,* 45 F.3d 665 (2d Cir.1995) (" *Diamond II*"). The maximum rent for each rent-controlled property is set by an administrative board on a biennial basis; upon certain enumerated contingencies, such as an increase in operating expenses, a landlord may petition the rent control board for an extraordinary increase. *See id.* at 114. So long as the tenant pays the regulated rent, and otherwise is not in breach of tenant obligations, the landlord may not evict. *See id.* at 119. [FN10]

FN9. Landlord acquired the building in the late 1980's, and also attempted to seek possession of the Apartment for her own use. It appears that she was unsuccessful in this regard, and such efforts are in any event not relevant to the discharge issues before the Court here.

FN10. The differences help explain why the litigation was so vigorous, although, for the reasons discussed below, this Court does not believe that the choice of regulatory regime, or the characteristics of either: (a) determines whether there was an executory contract that could be deemed to have been rejected, or (b) assuming that there was a "deemed rejection," affects the discharge issue.

Unlike rent control, rent stabilization contemplates a current written lease, and requires the landlord to offer a renewal lease to the tenant before the end of each lease term. *See id.* at 114. New York City's rent guidelines board regularly fixes the maximum rent increase for one-year and two-year leases, the allowable percentage increase being based in part on market conditions. *See id.* As long as the tenant continues to pay the rent, the tenant cannot be denied a renewal lease or be evicted except on specified grounds, including the owner's desire to take possession for the owner's own use as a primary residence and certain wrongful acts by the tenant. *See id.* at 119. Though the evidentiary basis for this in the record is thin, ***400** this Court left the hearing on the motion with the understanding that rents for apartments under "rent control" are at least typically materially lower than rents for comparable apartments under "rent stabilization." Certainly this case is consistent with that understanding.

With this by way of background, the Debtor and the Landlord litigated vigorously and at length over whether the Debtor's Apartment was subject to "rent control" or "rent stabilization." The Debtor was successful in the early stages of that litigation, and in 1989 the DHCR ruled that the Debtor's Apartment was subject to "rent control" and not " rent stabilization," and that the maximum monthly rent was $30.70 per month, effective August 1, 1970. [FN11] However, in 1998, after what was by then 10 years of administrative proceedings, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

257 B.R. 394
(Cite as: 257 B.R. 394)

DHCR determined that the Debtor's Apartment was subject to "rent stabilization" and not "rent control," and awarded the Landlord the back rent corresponding to the difference between the rent that had been collected and the rent that would have been collectible under rent stabilization, "as if the parties had entered into two-year renewal leases starting from May 1, 1988 through the issuance date of this order." FN12

> FN11. Grimble Aff.Exh. C (DHCR Decision) at 1.
>
> FN12. *Id.* at 9.

The Retroactive Rent, according to the Debtor, was approximately $42,000. FN13 Thereafter, the Landlord sought what may be the exact amount of the Retroactive Rent, $41,894.00, and, by reason of further accruals and/or different computations, additional sums as well.FN14 The DHCR provided that the Debtor could pay off the Retroactive Rent in monthly installments over 36 months.FN15 In response to the DHCR decision, the Debtor filed an Article 78 proceeding for judicial review of the administrative determination, but was unsuccessful.

> FN13. Grimble Aff. ¶ 16. Indeed, this amount might have been higher, but for the statute of limitations.
>
> FN14. Grimble Aff.Exh. G.
>
> FN15. Grimble Aff.Exh. C (DHCR Decision) at 10.

In May 1999, the Landlord commenced the first of two nonpayment summary proceedings in Housing Court that are relevant to this case, seeking payment of the Retroactive Rent and possession of the premises. The proceeding was adjourned by stipulation. Before any material further proceedings in the Housing Court took place, the Debtor filed for relief in this Court, under chapter 7 of the Code, on July 30, 1999. The imposition of the automatic stay under Bankruptcy Code section 362 caused that nonpayment proceeding in the

Housing Court to be marked "off calendar."

In his Schedule of Liabilities accompanying his chapter 7 filing (specifically, Schedule F, showing his unsecured debts), the Debtor listed debts in the aggregate amount of $231,170. That included the Retroactive Rent, scheduled in the amount of $42,000 as owed to the Landlord, who was listed by name and, so far as the Court can determine, the proper address. In his petition, the Debtor stated that he estimated that after any exempt property that he held was excluded and administrative expenses were paid, there would be no funds available for distribution to creditors. The Chapter 7 Trustee came to the same conclusion, and this thus was a " no asset" case. The Landlord was inactive in the bankruptcy. She did not file a proof of claim, nor did she attend the section 341 meeting, file any motion objecting to discharge in general, or object to the dischargeability of the Retroactive Rent.FN16

> FN16. The Court further finds as a fact, however, that it would be a mistake to conclude very much from this. This was a "no-asset" case; there would be no funds for distribution to unsecured creditors, like the Landlord. In a no-asset case, where (as here, *see* Docket # 5) a "notice of no distribution" is issued, filing of proofs of claim would be pointless, and as a result of the interplay between Rules 2002(e) and 3002(c)(5) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), there would be no deadline for filing proofs of claim until and unless creditors were notified that funds would be available for distribution. *See, e.g., In re Cruz*, 254 B.R. 801, 806 & n. 7 (Bankr.S.D.N.Y.2000) (Gonzalez, J.) (explaining the practice in a "no asset" case). Similarly, the Court finds it difficult to see why the Landlord might reasonably be expected to have taken any of the other enumerated acts either, and considers it inappropriate to fault her for, or draw inferences from, her failure to do so.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                                    Page 10

257 B.R. 394
(Cite as: 257 B.R. 394)

**\*401** At the conclusion of his chapter 7 case, the Debtor obtained a discharge of all his dischargeable pre-petition debts by the Discharge Order granted by the Hon. James Garrity (to whom this case previously was assigned) dated November 23, 1999. After providing that "no order denying a discharge has been granted," the Discharge Order went on to provide:

1. The Debtor is released from all dischargeable debts.

2. Any judgment not obtained in this court is null and void as to the personal liability of the Debtor(s) regarding the following:
(a) debts dischargeable under 11 U.S.C. § 523(a);
(b) debts alleged to be excepted from discharge under 11 U.S.C. § 523(a)(2), (4), (6) or (15) unless determined by this court to be nondischargeable;
(c) debts determined by this court to be discharged.

3. All creditors whose debts are discharged by this order or whose judgments are declared null and void in 2 above, are enjoined from instituting or continuing any action, employing any process or engaging in any act to collect such debts as personal liabilities of the Debtor(s).

(Grimble Aff.Exh. B). The Discharge Order further provided for the closing of the Debtor's bankruptcy case, and that closing was docketed the same day. [FN17]

> FN17. The Debtor's counsel asserted, by affidavit, that all post-petition rent-rent accruing after the filing of the Debtor's chapter 7 case-was paid in full, and while copies of post-petition checks were introduced on the motion, the Court does not understand the Landlord necessarily to agree that all amounts were so paid, and/or that the amounts so paid were the correct amounts. Any such disagreement, however, is not dispositive of the motion. In this chapter 7 case, pre-petition debts, and pre-petition debts only, were discharged; if and to the extent that the proper post-petition rent was not fully paid, it would not be discharged, and its collection would not be barred by the Discharge Order.

On or about April 19, 2000, the Landlord brought a second nonpayment proceeding in Housing Court. Before she did so, she served the Debtor, on March 27, 2000, with a "Notice to Tenant" setting forth rent obligations that were unpaid, in varying amounts said to have accrued in the period from May 1993 through June 1999. The Notice to Tenant said:

TAKE NOTICE THAT you are justly indebted to the Landlord of the above-described premises as set forth above which you are required to pay on or before the expiration of five (5) days from the day of service of this Notice, or surrender up the possession of said remise to the Landlord, in default of which the Landlord will commence summary proceedings under the Statute to recover the possession thereof.

(Grimble Aff.Exh. G, third document). It further stated:PLEASE TAKE NOTICE THAT A DISCHARGE IN BANKRUPTCY OF THE ACCRUED DEBT FOR RENT DOES NOT CONSTITUTE THE PAYMENT OF RENTAL, THE EXTINGUISHMENT, OR THE CANCELLATION OF THE DEBT.

PLEASE TAKE FURTHER NOTICE THAT DESPITE THE DISCHARGE IN BANKRUPTCY, A LANDLORD CAN STILL AVAIL ITSELF OF ITS STATUTORY REMEDY TO RECOVER**\*402** POSSESSION OF THE PREMISES FOR NONPAYMENT OF RENT.

(Id.) (capitals in original).

This Court further finds as a fact, or mixed question of fact and law-based on its analysis of the law of discharge, discussed below, and notwithstanding its conclusion below that the Retroactive Rent was in fact discharged-that these two statements were true. Indeed, they represent substantially verbatim quotations from the decisions in *In re Hepburn,* 27 B.R. 135, 136 (Bankr.E.D.N.Y.1983) (Goetz, J), [FN18] and *In re Touloumis,* 170 B.R. 825, 830 (Bankr.S.D.N.Y.1994) (Bernstein, C.J.), dealing with this exact issue.

> FN18. As noted at n. 40 below, this Court would not necessarily agree with other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                    Page 11

257 B.R. 394
(Cite as: 257 B.R. 394)

language in *Hepburn,* but it is in agreement with the quoted language.

The summary non-payment proceeding, commenced on or about April 19, 2000, was filed with papers of the type used to commence a " special proceeding" under New York law-a "Notice of Petition" (analogous to a summons), and a " Petition" (analogous to a complaint). The Notice of Petition provided, in part, "PLEASE TAKE NOTICE that the annexed petition ... prays for a final judgment of eviction, awarding the petitioner [Landlord] possession of the premises." (Grimble Aff.Exh. G, first document). It went on to say, however:
TAKE NOTICE also that *demand is made in the petition herein for judgment against you for the sum of $41,894.00* plus the costs and disbursements of this proceeding, and legal fees in an amount to be determined by the court.

(Id.) (capitals in original; italics added).

The accompanying petition made reference to rents due from the Debtor, in varying monthly amounts, over the period May 1993 through June 1999,[FN19] and characterized the 5-Day Notice that had previously been served, quoted in part above, as " requiring in the alternative the payment of said rent or the possession of the aforesaid premises." [FN20] It went on to provide:

> FN19. Grimble Aff.Exh. G, second document, at ¶ 7.

> FN20. *Id.* ¶ 10.

WHEREFORE, Petitioner *requests that a final judgment be entered against respondent* [Debtor] *for the rent demanded herein,* further awarding possession of the premises to the petitioner-landlord, and directing the issuance of a warrant of eviction to remove the respondent(s) from the possession of the premises together with costs and disbursements of this proceeding.
(Id.) (italics added).

The Debtor filed a pro se answer asserting

bankruptcy discharge as a defense. He later obtained counsel to represent him in that proceeding.

The Debtor moved for summary judgment to dismiss the non-payment summary proceeding. The Landlord opposed and cross-moved for summary judgment (or in the alternative, for partial summary judgment) dismissing the Debtor's defense of discharge in bankruptcy.

The motions spawned two decisions by the Housing Court. In the first decision (which, with due respect, was based upon a faulty analysis and application of bankruptcy law, as discussed below), the Housing Court concluded, relying upon section 365(d)(1) of the Code, quoted below (providing in substance for a "deemed rejection" of an executory contract or unexpired lease of residential real property, in a case under chapter 7 of the Code, when the chapter 7 trustee neither assumes nor rejects that contract or lease within 60 days of the bankruptcy filing), that the Retroactive Rent was an exception to the Debtor's pre-petition debts that were discharged. Based on the undisputed fact that the chapter 7 trustee in the Debtor's bankruptcy case had taken no action with respect to the Debtor's occupancy during the *403 60-day period, and thus that there would be such a "deemed rejection," the Housing Court concluded, without citation of authority for this proposition, that:
Here, because the lease [FN21] was rejected by the trustee, the rights and liabilities thereto never became part of the estate in bankruptcy and respondent's alleged debt to petitioner was not discharged.

> FN21. The Housing Court assumed without discussion that there was a lease to assume or reject, a matter meriting brief discussion. It appears from the DHCR Decision, and no evidence was introduced before this Court to the contrary, that the last lease between the Debtor and Landlord expired on April 30, 1988, 12 1/2 years ago. Authority in this District had observed that since rent controlled tenants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

257 B.R. 394
**(Cite as: 257 B.R. 394)**

were statutory tenants who did not have current leases, the applicability of section 365 to their tenancies was suspect, *see In re Friarton Estates Corp.,* 65 B.R. 586, 592 (Bankr.S.D.N.Y.1986) (Abram (Beatty), J.), though the *Friarton Estates* decision ultimately did not turn on this conclusion, since it noted that even if section 365 did apply, it could not be used by a landlord to oust rent controlled tenants by reason of the limitations on landlord rejections under section 365(h). *See id.* at 593. After *Friarton Estates,* however, the Second Circuit ruled in *Diamond I, supra,* 18 F.3d at 121 (adhering to this ruling in *Diamond II, supra,* 45 F.3d at 672), that the occupancies of tenants under each of rent control and rent stabilization, even after the expiration of their last executed leases, were "contract-based leaseholds," having sufficient roots in contract to make them capable of rejection under a provision of The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) analogous to section 365. That, in this Court's view, makes it fairly clear that under the current state of the law, the Debtor's tenancy-determined by the DHCR to be under "rent stabilization," but lacking a current lease-nevertheless would be capable of a "deemed rejection" under section 365(d)(1). *See In re Yasin,* 179 B.R. 43, 49 (Bankr.S.D.N.Y.1995) (Bernstein, C.J.) ("The Second Circuit's decisions in *Diamond I* and *Diamond II* foreclose the claim that rent stabilized leases are not leases (or contracts) within the meaning of federal law, and hence, 11 U.S.C. § 365."). Accordingly, this Court does not disagree with the Housing Court's assumption. However, for the reasons discussed below, this Court believes that whether the Debtor's lease was deemed rejected under section 365(d)(1) is not relevant to the discharge issue.

(Grimble Aff.Exh. I at 5.)

The Housing Court thus determined that the Debtor's "defense of discharge in bankruptcy is ... without merit" and granted the Landlord's motion for summary judgment to the extent of striking the defense of discharge in bankruptcy.

The Debtor moved to reargue. The Housing Court described the Debtor's points on reargument:
[A]ll debts incurred prior to the filing of a bankruptcy are discharged; the only exceptions are those provided by statute, specifically 11 U.S.C. § 523. According to respondent [Debtor], because none of those exceptions to discharge apply here, his debt for nonpayment of rent has been discharged.

(Reargument Decision, Grimble Aff.Exh. J, at 3.)
The Housing Court responded, however, by saying that "[t]his argument overlooks the specific requirements imposed by law on the trustee in bankruptcy"-referring to Code section 365(d)(1). On the apparent basis that a deemed rejection, at least on these facts, would result in an abandonment of the lease to the Debtor (which is true), the Housing Court then linked that fact (once more without supporting authority) to the matter of discharge:Consequently, the lease never became part of the estate in bankruptcy and the debt could not have been discharged.

(Id.).

The Housing Court thus stated that it "adheres to its original decision." (Id. at 4.) The Debtor duly appealed the decision to the Appellate Term, First Department, where it is presently pending.[FN22] He thereafter sought relief here.

> FN22. When this matter was submitted, counsel for the Debtor and Landlord agreed jointly to advise the state courts that this matter was brought here and is sub judiee, and correspondence implementing that undertaking has been provided to this Court.

**\*404** For reasons described below, this Court finds as conclusions of law, or as mixed questions of fact and law, that the Retroactive Rent was, in fact,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

discharged; that the Debtor does not have to pay it if he does not want to (though this may have consequences, under state law, which the state courts are free to determine); and that efforts to collect that debt, and/or to obtain a judgment for it, are violative of the injunction under section 524(a)(2) of the Code and the Discharge Order. It thus is appropriate to consider the facts underlying the Debtor's request for contempt.

Plainly the Landlord was aware of the discharge-having made express reference to it in the 5-Day Notice. And the italicized language in the Landlord's papers (in the Court's view, possibly at some variance from the Debtor's, [FN23] the language in the Notice of Petition and the " Wherefore" clause in the Petition, but not the language in the 5-Day Notice) can fairly be read as stating not only that a debt to the Landlord is still due and that the Landlord seeks possession, but also that the Landlord is seeking a money judgment for that debt.

> FN23. *See* Grimble Aff. ¶ 29 ("We ask the Court to note that the predicate notice for the non-payment petition clearly asks for payment of the discharged debt, not just possession of the premises."). While it is possible that the Debtor was referring to the Notice of Petition, the Court understood the "predicate notice" to be the 5-Day Notice. If the Debtor was referring to the 5-Day Notice, the Court disagrees; it reads the 5-Day Notice as saying that the debt exists, but without demanding payment-noting only that if payment is not made, possession of the Apartment must be surrendered.

However, taking the Landlord's litigation papers as a whole, and based on the total record before it, [FN24] the Court believes, and finds, that the Landlord's papers and conduct (as evidenced most significantly by the additions-accurate ones-to the 5-Day Notice) reflect a good-faith effort by an attorney to reconcile the Debtor's right to claim a discharge of the Retroactive Rent with the rights of the Landlord to recover possession of the

Apartment as a consequence of the Debtor's availing himself of the discharge. While the Court finds below, as a conclusion of law, that the Landlord's efforts in this regard crossed the line and were nevertheless violative of the discharge, the Court further finds, as facts, that the Landlord's actions evidenced an effort to ascertain and comply with the applicable law; were technical and unintended violations of the Debtor's rights; did not evidence malevolent intent or bad faith on the part of the Landlord; and were not malicious or egregious.

> FN24. The Court's conclusions in this regard were reinforced by its observations at the hearing on this motion as to the Landlord's counsel's demeanor and sincerity, and her statements at the hearing as to her efforts to grope with the nuances in the law with which she was presented.

*Discussion*

*I.*

*"Res Judicata" and Related Preclusionary Doctrines*

Although the Landlord speaks of "res judicata" as the bar to this Court's ability to determine the discharge issue, it is appropriate to consider all of the potentially applicable preclusionary rules and jurisdictional bars that might apply to prevent this Court from considering the very issue necessary to granting the requested relief. Three such doctrines are arguably relevant.

[1][2] First, the doctrine of res judicata, or claim preclusion, prohibits litigation of any claim that was available to a party in a prior proceeding, whether or not the judgment actually determined that ground or claim. *See In re Kressner*, 155 B.R. 68, 72 (Bankr.S.D.N.Y.1993) (holding that res judicata did not preclude debtor from bringing a claim under section 523(a)(2)(A) because it could not have been raised in the earlier state court action). Res

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

Page 14

257 B.R. 394
(Cite as: 257 B.R. 394)

judicata applies when there is a final judgment *405 on the merits, rendered by a court of competent jurisdiction, based on the same cause of action as the action presently pending before the court, and involving the same parties.[FN25] *See id.* Res judicata rests on the premise that federal courts must give the same full faith and credit to a state court decision as courts within that state would give the decision. *See Manhattan King David Rest., Inc. v. Levine,* 154 B.R. 423, 427 (S.D.N.Y.1993) (noting the full faith and credit rationale and citing 28 U.S.C. § 1768).

> FN25. The Landlord argued in her papers that res judicata barred the bankruptcy court from revisiting the state court decision. (*See* Affidavit in Opposition to Motion for Contempt and Other Ancillary Relief ¶ 7). At the hearing, however, she couched this argument in collateral estoppel language; i.e., she argued that the state court had already decided the discharge "issue". The Second Circuit has noted that certain commentators use the phrase res judicata to refer to both claim preclusion and issue preclusion. *See Moccio v. New York State Office of Court Administration,* 95 F.3d 195, 199, n. 1 (*citing* 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4402 at 6). This Court will adhere to the traditional use of the terms and address both doctrines individually.

Thus, in general, because a judgment of the Civil Court is given res judicata effect by New York state courts, it must also be given that effect by federal courts. *See id.* The reverse, however, is also true. "The doctrine of res judicata applies with equal force to final judgments rendered by the bankruptcy courts and thus precludes relitigation in another bankruptcy proceeding and in other proceedings before Federal and State Courts." *Air Line Pilots Intl. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 145 B.R. 404, 409 (D.Del.1992) (when a bankruptcy court order decides a federal question, that order is given preclusive effect in state court). The *Continental Airlines* court cited

the seminal decision of the United States Supreme Court in *Stoll v. Gottlieb,* 305 U.S. 165, 170-72, 59 S.Ct. 134, 137-38, 83 L.Ed. 104 (1938) (where a judgment or decree of a federal court determined a right under a federal statute, that decision was "final until reversed in an appellate court, or modified or set aside in the court of its rendition"; a bankruptcy court's order was thus res judicata and not subject to collateral attack in a subsequent state court action).

[3][4] Second, the related but narrower doctrine of collateral estoppel, or issue preclusion, prohibits review of an issue when (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *See Moccio v. New York State Office of Court Administration,* 95 F.3d 195, 200 (2d Cir.1996) (setting forth the requirements for collateral estoppel). Collateral estoppel may be applied only to the issues of fact underlying the judgment, not to issues of law. *See In re Krautheimer,* 210 B.R. 37, 49 (Bankr.S.D.N.Y.1997) (applying collateral estoppel where issue was whether debtor acted willfully and maliciously). Arguably, because the Housing Court's decision presents a legal issue, collateral estoppel would not apply. This Court does not have to reach this issue, however, because for the reasons stated below, no preclusionary bar applies in this case.

[5][6][7][8] A third limit (not addressed by either party in the briefing on this motion) is a jurisdictional one found in the *Rooker-Feldman* doctrine, named after two Supreme Court decisions, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).[FN26] It operates generally as a bar on *406 federal courts reviewing state court decisions; it provides that lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would reverse or modify a state court judgment. *See Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998) (finding that if the federal court ruled in appellant's favor, it would not overrule any action already taken by the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                Page 15

257 B.R. 394
**(Cite as: 257 B.R. 394)**

administrative judge and state court). As Judge Gonzalez of this Court noted recently in *In re Cruz, supra,* 254 B.R. 801, 805 n. 5 (Bankr.S.D.N.Y.2000), the *Rooker-Feldman* doctrine in a bankruptcy case is implicated when a bankruptcy issue is raised in the state court, and, thereafter (either before or after the state court has determined the matter), the same issue is raised in the Bankruptcy Court. *Rooker-Feldman* may be raised at any time by the parties or sua sponte by the court. *See id.*

> FN26. In *Rooker,* the Supreme Court held that federal jurisdiction over direct appeals from state courts would lie exclusively in the Supreme Court. Thereafter, in *Feldman,* the Supreme Court expanded the doctrine to bar federal jurisdiction over particular claims that are "inextricably intertwined with those a state court has already decided." Together, the decisions gave rise to the *Rooker-Feldman* doctrine, placing limits on federal courts' subject matter jurisdiction.

[9][10] However, as noted in *Cruz,* there is an exception to the application of *Rooker-Feldman.* It exists when the state court judgment is void, which, as noted below, is the case when a judgment is entered either before or after the claim underlying the judgment is discharged. *See Cruz,* 254 B.R. at 805 (*Rooker-Feldman* and other preclusionary doctrines would not be applicable if Code section 524 voided judgment that was determination of the personal liability of the debtor with respect to a discharged debt); *In re Pavelich,* 229 B.R. 777 (9th Cir. BAP 1999) (bankruptcy court can override state court judgment to the extent the state court construes the bankruptcy discharge incorrectly, because such judgment is void ab initio under section 524(a)(1)); 4 *Collier on Bankruptcy* ¶ 524.02[1] at 524-13 ("[a] bankruptcy court can find that a postpetition state court judgment is void despite the full faith and credit normally given to state court judgments"). The rationale for the exception, in part, is that because a void judgment is null, vacating such a judgment is a mere formality and does not intrude upon the notion of mutual

respect in federal-state interests. *See Pavelich,* 229 B.R. at 783 (*citing In re James,* 940 F.2d 46, 52 (3d Cir.1991)).

Bankruptcy Code section 524(a) sets forth the effect of a discharge in bankruptcy. It provides in relevant part that:
A discharge in a case under this title:
(1) voids any judgment *at any time obtained,* to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

(emphasis added).

[11] By its plain terms, section 524(a) applies not just to judgments obtained before the entry of the discharge order; it also applies to any obtained thereafter. In this way, the Discharge Order has both retroactive and prospective effects on creditors' attempts to seek payment of discharged debts. Not only is any judgment obtained by the creditor before the entry of the discharge order (usually one obtained pre-petition, since given the automatic stay, judgments on pre-petition debts would rarely be entered after the petition's filing) void; so is any judgment obtained after entry of the discharge order.

In *Cruz,* the debtor received his discharge. Thereafter, a default judgment was entered in state court against the debtor for a pre-petition car loan debt. The *Cruz* court found that because section 524(a)(1) operated as an injunction on any attempts to collect on discharged pre-petition debts, the default judgment was void *407 as a matter of law. *See Cruz,* 254 B.R. at 812-813. Thus, it had no preclusive effect in bankruptcy court. The debt was indeed discharged, and the creditor was enjoined from seeking its payment.

[12] Accordingly, if the Retroactive Rent was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394
**(Cite as: 257 B.R. 394)**

indeed discharged under the Discharge Order, any judgment of the Housing Court enforcing an effort to collect that discharged debt (and, most obviously, subjecting the order to collateral attack), would be void under section 524(a)(1) to the extent that it offends the discharge-*i.e.*, to the extent it construed the discharge incorrectly. *See Cruz,* 254 B.R. at 811; *Pavelich,* 229 B.R. at 782-83.

As the Bankruptcy Appellate Panel for the Ninth Circuit held in *Pavelich,* reversing a bankruptcy judge who had declined to grant relief by reason of *Rooker-Feldman:*
The key question is whether the bankruptcy court can enforce the discharge in the face of a contrary state court judgment. It can.
...
By federal statute, any judgment of any court that does not honor the bankruptcy discharge is "void" to that extent.

229 B.R. at 781.[FN27]

> FN27. It noted, in this connection, that section 524(a) was derived from a section of the former Bankruptcy Act that had been added in 1970 "to correct a perceived abuse arising from the former status of a bankruptcy discharge as merely creating an affirmative defense that was waived if not affirmatively pleaded and proved in postbankruptcy litigation." *Id.*

The *Pavelich* court further held, with respect to the effect of section 524(a)(1):
One consequence is that a federal court need not give full faith and credit to state court judgments to the extent that they are void under § 524(a)(1)....
Thus, when the bankruptcy court was presented with a request to consider whether it should entertain an injunction to enforce the discharge, it should not have taken the position that it could not examine the state court judgment.

*Id.* at 782.[FN28]

> FN28. The Ninth Circuit BAP noted, in

this connection, that:
The issuance of the bankruptcy discharge is a matter within exclusive federal jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment. And a " Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant."
*Id.* at 783. It continued:
The bankruptcy court erred when it ruled that the *Rooker-Feldman* doctrine stripped it of jurisdiction to consider whether the state court's judgment was void ab initio and whether the discharge injunction had been violated.
*Id.*

And that conclusion is applicable here even though the Debtor evidently litigated fairly extensively in the Housing Court in his unsuccessful effort to convince the Housing Court that the discharge applied. As Judge Gonzalez of this Court put it in *Cruz:*
The plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of the debtor with respect to a discharged debt. Nothing in § 524(a)(1) distinguishes the type of judgment subject to the provision. Nor does the section lead one to conclude that the level of participation by the debtor in a state court should be considered in the application of the section.

254 B.R. at 810.[FN29]

> FN29. While this Court reads section 524(a)(1) the same way, it notes that it is not called on to decide now, and does not decide now, if there are any limits to this-if, e.g., the Debtor had fully litigated the issue on appeal in the Appellate Term, Appellate Division or Court of Appeals, and only then came to the bankruptcy court for relief. That issue can be dealt with if and when it arises.

This has two consequences. *See Pavelich,* 229

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394
(Cite as: 257 B.R. 394)

B.R. at 782. First, this Court *408 does not have to give full faith and credit to the decision. *See id.* Second, the Housing Court decision is subject to collateral attack in this Court. *See id.*[FN30]

> FN30. While the above cases are directly on point, they are not the only authority arguably relevant to this issue. There are decisions that hold or might be deemed to hold to the contrary: *In re Singleton,* 230 B.R. 533 (6th Cir. BAP 1999) (state court determination that bankruptcy order staying sale of debtor's personal property did not apply to other property of the debtor was not subject to collateral attack by a federal court because no exception to *Rooker-Feldman* applied); *Ferren v. Searcy Winnelson Co. (In re Ferren),* 203 F.3d 559 (8th Cir.2000) (per curiam) (relying on *Singleton* and rejecting *Pavelich* without identifying any ways in which the *Pavelich* analysis was deficient, and then holding no exception to *Rooker-Feldman* existed to permit the bankruptcy court to revisit a lien-discharge argument already decided by the state court). In another decision, *In re Schneider,* 126 B.R. 626 (Bankr.M.D.Fla.1991), the court, under closely similar facts (in which a former debtor had litigated on the merits in state court defending a suit on a discharged debt; lost in the state court, and took an appeal; then sought to reopen his case in the Bankruptcy Court, while the appeal was pending, to enforce the discharge; to which discharge, the *Schneider* court concluded, the debtor would have been entitled on the merits), denied relief to the former debtor on collateral estoppel grounds, telling the former debtor that his remedy was in a state court appeal. (It should be noted, however, that the *Schneider* court did not consider, so far as this Court can determine, the effect of section 524(a)(1)).
>
> In this Court's view, *Cruz* and *Pavelich* are better reasoned. Even if the matter were

close (which this Court does not believe it is), where, as here, there is no controlling Second Circuit authority, this Court follows the decisions of other Bankruptcy Judges in the Southern District of New York, at least in the absence of clear error.

Thus, this Court may consider whether the DHCR Debt was discharged and the effect of that discharge on the future of the Landlord's pending nonpayment proceeding. If it finds that the Debtor was in fact discharged, this Court can enforce the discharge in the face of the contrary state court decision. [FN31]

> FN31. This Court recognizes that the reasoning of the courts (including this one) holding state court judgments void under section 524(a), and thus not considering themselves bound by contrary decisions of state courts, could be said to be somewhat circular-with the federal bankruptcy court's right to second-guess the state court decision turning on the outcome of the federal bankruptcy court's second-guessing. Nevertheless, in this Court's view, that is what section 524(a)(1), by its plain language, requires, as do *Cruz* and *Pavelich,* each of which hold that section 524(a)(1) operates to void the state court judgment to the extent that the Bankruptcy Court concludes, after the entry of a state court judgment, that the state court has construed the bankruptcy discharge incorrectly. Though not in these words, the arguable circularity was addressed, to a certain extent, in *Pavelich:*
> With respect to the discharge itself, state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge. Indeed, discharge in bankruptcy is a recognized defense under state law....
> But since 1970 the state court's power has been subject to the unusual limitation that stems from statutory voidness which now appears at § 524(a)(1). While the power to decide an issue ordinarily connotes the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

power to decide it incorrectly, with any erroneous result being enforceable unless corrected on appeal, § 524(a)(1) statutory voidness commands a different result.

If the state court construes the discharge correctly, its judgment will be enforced and not be vulnerable to being upset by means outside the normal appellate channels. If, however, the state court construes the discharge incorrectly, then its judgment may be void to the extent it offends the discharge and subject to collateral attack in federal court. *Id.* at 783.

*II.*

*Construction of Discharge Order and Section 524(a)*

This Court having concluded that it is not bound by the Housing Court's determination, it then turns to the requested clarification of the Discharge Order, and, in particular, the Debtor's contention that this debt, like any other pre-petition debt, was in fact discharged.

*\*409 A. Nature and Scope of Discharge*

[13] The Debtor's discharge, in this chapter 7 case, resulted from section 727 of the Code.[FN32] Section 727(a) provides that the Bankruptcy Court "shall" grant the debtor a discharge, unless one or more of ten disqualifying conditions appears. Implementing that, Fed.R.Bankr.P. 4004(c)(1) provides that in a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case for substantial abuse (in each case 60 days after the first date set for the meeting of creditors under section 341(a) of the Code, or as that date may be extended, for cause), "the court shall forthwith grant the discharge" unless one or more circumstances enumerated in Rule 4004(c)(1) is present.

FN32. Other provisions deal with the grant of the discharge under other chapters. *See* Bankruptcy Code sections 944(b) (chapter 9); 1141(d) (chapter 11); 1228 (chapter 12); 1328 (chapter 13).

Section 727(b) of the Code, the provision most relevant here, sets forth the nature and extent of the discharge in a chapter 7 case. It provides, in relevant part:

Except as provided in section 523 of [the Bankruptcy Code], a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter ... whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on such debt or liability is allowed under section 502 of this title.

The Landlord has not argued here, nor could she, that she did not have a claim, during the pendency of the Debtor's bankruptcy, for the $42,000 in Retroactive Rent. That was both a "claim," within the Code's definition of claims, section 101(a)(5),[FN33] and a claim that would be discharged whether or not a proof of claim had been filed with respect to it, Bankruptcy Code section 727(b),[FN34] and whether or not it ultimately had been allowed. *Id.*[FN35]

FN33. That section provides, in relevant part:

"[C]laim" means-
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured....

FN34. "... whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title...." As noted above, this was a no-asset case, for which, so long as it stayed that way, a filing of a proof of claim, by the Landlord or any other creditor, would be a meaningless act.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                      Page 19

257 B.R. 394
**(Cite as: 257 B.R. 394)**

That would not, however, make the claim any less dischargeable.

FN35. "... and whether or not a claim based on any such debt or liability is allowed under section 502 of this title...."
As it happens, on this state of the record (where the DHCR had ruled adversely to the Debtor, and where the Debtor had lost in his proceeding for Article 78 review), the Landlord's claim necessarily would have been allowed, because under familiar principles of res judicata, discussed above, the Debtor could not collaterally attack the pre-petition adverse decision in the Bankruptcy Court. *See, e.g., Teachers Insurance & Annuity Association v. Butler,* 803 F.2d 61, 66 (2d Cir.1986) (bankruptcy court would be required to give full faith and credit to earlier federal district court judgment against debtor in action for breach of loan commitment agreement)

Thus, section 727(b) provides that a discharge releases the debtor from personal liability for all debts except those that are not dischargeable under section 523. If the debt is not explicitly listed as an exception under 523, it is discharged as a matter of law upon the entry of the Discharge Order. *See Cruz,* 254 B.R. at 810 & n. 11.

B. *The Housing Court's Analysis*

While not bound by the Housing Court's conclusion, this Court, needless to say, thought it fully appropriate, and indeed essential, to review the Housing Court's decision for its analysis of the issues. However, having done so, this Court is *410 constrained to conclude that the Housing Court erred, in material respects, in its understanding of the federal bankruptcy law regarding claims and discharge.

After discussion of matters not germane to discharge,[FN36] the Housing Court started its analysis with a reference to Bankruptcy Code section 365(d)(1). That provision provides, in relevant part:

FN36. The Housing Court started with observations that a bankruptcy trustee may assume an unexpired lease only if it is property of the estate, and that it is such if a debtor is the lessee of the property at the time the bankruptcy petition is filed. These statements are true, but do not go to the discharge issue, and, in particular, whether the "deemed rejection" of a lease under section 365(d)(1) exempts any claims said to arise under the lease from the general rule that any and all prepetition debts are discharged.

In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period fixes, then such contract or lease is deemed rejected.
Bankruptcy Code section 365(d)(1), 11 U.S.C. § 365(d)(1).

And the Housing Court properly concluded, from its reading of that statutory provision, that:
In a Chapter 7 bankruptcy such as this, a trustee is deemed to have rejected contracts and leases of residential property that are not assumed within sixty days of the order for relief. 11 U.S.C. 365(d)(1). Here the trustee must be deemed to have rejected respondent's lease.

(Housing Ct.Op. at 4).

[14][15] But the Housing Court then jumped (without reference to section 727 or interpretive caselaw; the caselaw on the issue of "deemed rejection" by reason of Code section 365(d)(1); or any other caselaw) to a conclusion that:
Here, because the lease was rejected by the trustee, the rights and liabilities thereto never became part of the estate in bankruptcy, and respondent's [Tenant-Debtor's] alleged debt to petitioner [Landlord] was not discharged. The defense of discharge in bankruptcy is, therefore, without merit.

(Id. at 5).[FN37]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                    Page 20

257 B.R. 394
**(Cite as: 257 B.R. 394)**

FN37. In its decision on the Debtor's reargument motion, the Housing Court noted, citing *B.N. Realty Assoc. v. Lichtenstein,* 238 B.R. 249 (S.D.N.Y.1999) (Sweet, D.J.), that the "deemed rejection" of a residential lease in a chapter 7 case would result in the abandonment of the lease as property of the estate, and that any property abandoned by the trustee would revert in title to the debtor. (*See* Housing Ct.Rehrg. Decision at 2). This is true, for the reasons stated in *B.N. Realty,* and, more extensively, in other caselaw. *See In re Couture,* 225 B.R. at 58, 63-64 (D.Vt.1998); *In re Bacon,* 212 B.R. 66, 68 (Bankr.E.D.Pa.1997); *Yasin,* 179 B.R. at 47 (in a chapter 13 case, explaining the chapter 7 rule, comparing and contrasting the chapter 13 mechanism); *Touloumis,* 170 B.R. at 828.

However, the Housing Court then went on, inexplicably, and once more without authority, to say that "the lease never became a part of the estate in bankruptcy and the debt could not have been discharged." (Housing Ct.Op. at 5). That is an unsupportable jump. The discharge issue is determined not by whether the lease became or did not become "a part of the estate in bankruptcy." The relevant issue is rather whether claims arising from the lease were pre-petition and thus subject to section 727(b)-and, if so, whether they were within any of section 523's exceptions to discharge.

With due respect, the Housing Court's conclusions in this regard were erroneous. Assuming (as this Court does), that the Debtor's status as a statutory tenant under New York state law warranted treatment as an executory contract, its rejection did not mean that debts associated with the Debtor's tenancy were not discharged. To the contrary, the Debtor's Retroactive Rent to the Landlord, like any and all of the Debtor's other pre-petition debts, was discharged.

*411 As noted, section 727, quoted above, sets forth enumerated exceptions to the debts that are discharged upon an order of discharge (*i.e.,* those set forth under section 523); claims associated with leases, or the rejection of leases, are not among them. The Housing Court nevertheless engrafted upon section 727 an unenumerated exception. Again with due respect, that was error.

It appears that the Housing Court failed, in each of its original opinion and its opinion on reargument, to quote or otherwise address section 727(b), although in characterizing one of the Debtor's arguments, it made reference to an argument that seemingly was based on that provision. That is puzzling. It likewise is puzzling that a determination of exception from discharge was based on section 365, which is silent with respect to matters of discharge. As noted, the Housing Court cited no authority for its conclusion that there is a carve-out from the discharge in cases where there is a "deemed rejection" in a chapter 7 case resulting from the chapter 7 trustee's failure to assume the lease.

Caselaw dealing with the facts we have here-a case under chapter 7, where the debtor occupied residential property under a lease or rent-regulated tenancy, and where the chapter 7 trustee failed to either assume or reject the debtor's lease or the bundle of rights associated with the debtor's tenancy-supports the Debtor's contention that the Retroactive Rent was in fact discharged. Helpful in this regard are cases in this District and elsewhere evidencing their respective court's understanding that notwithstanding deemed rejection and resulting abandonment, pre-petition rent debts associated with those leases would be discharged. *See Hepburn, supra,* 27 B.R. at 136; *In re Touloumis,* 170 B.R. 825 (Bankr.S.D.N.Y.1994) (Bernstein, C.J.); *In re Bacon,* 212 B.R. 66 (Bankr.E.D.Pa.1997); *In re Couture,* 225 B.R. 58 (D.Vt.1998).

*Hepburn,* in the Eastern District of New York, was the first of them. As here, a debtor had filed a case under chapter 7 of the Code after having failed to pay material amounts of pre-petition rent. *See Hepburn,* 27 B.R. at 136. Also as here, the Chapter 7 trustee did not take action within section 365(d)(1)'s 60 day period, to assume or reject her

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                    Page 21

257 B.R. 394
(Cite as: 257 B.R. 394)

lease. The *Hepburn* court nevertheless noted, three times, that the debtor's debt for the pre-petition rent was discharged. *See id.* at 136 ("[e]xcept that the debtor's discharge in bankruptcy absolves her of the debt for rent ..."); *id.* ("[t]he discharge in bankruptcy of the accrued debt for rent does not constitute the payment of rental"); *id.* ("[d]espite the discharge, a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent").

In *Touloumis,* in this District, another case under chapter 7 wherein residential property of the debtor subject to section 365(d)(1) was the subject of the dispute, Judge Bernstein four times took into account the fact, as a predicate for addressing other, more litigable, matters, that pre-petition rent obligations would be discharged. *See Touloumis,* 170 B.R. at 830 ("The Debtor's second erroneous assumption in her opposition is that her discharge permits her to remain in possession of the premises without paying the rent that accrued under the expired lease."); *id.* ("although the discharge prevents the landlord from getting a personal judgment against the Debtor for the unpaid, pre-petition rent ..."); *id.* ("[d]espite the discharge .. ."); *id.* ("the Debtor's discharge does not prevent the landlord from evicting her ...")

Although there was no explicit mention in the *Touloumis* decision itself as to whether the Chapter 7 trustee had assumed or rejected the Debtor's lease, the docket in that case reflects no such action. In that case too, then, there would have been the " deemed rejection" and resulting abandonment to the Debtor under section 365(d)(1), yet there was nevertheless the *412 discharge of the unpaid pre-petition rent to which the *Touloumis* court repeatedly referred.

*Bacon,* also like this case, was a case filed under chapter 7 of the Code by a debtor with a large amount due in pre-petition rent, although the debtor in *Bacon,* unlike the Debtor here, also owed substantial sums in post-petition rent. *See Bacon,* 212 B.R. at 68. Also as here, the Chapter 7 trustee in the *Bacon* case did not assume the lease pursuant to section 365(d)(1) within 60 days of her filing. *See id.* Though the debtor's lease was deemed

rejected for that reason, *id.,* and would thus be abandoned back to the debtor, *id.* & n. 3, the *Bacon* court nevertheless recognized that the pre-petition rent would be discharged. *See id.* at 69 (after the termination of the automatic stay which comes into place at the time of discharge under chapter 7, landlords can enforce their rights under the lease " other than the right to collect the discharged debt").

*Couture* too involved a case filed under chapter 7 by debtors owing sums of pre-petition rent; the now-familiar pattern of a failure by their Chapter 7 trustee to assume or reject their lease within section 365(d)(1)'s 60 day period; and the resulting abandonment of the lease to the debtor. Citing, as part of its analysis, *Hepburn, Touloumis,* and *Bacon* for various parts of its analysis, the *Couture* court held:

The debtor is essentially placed in the same position that he would have been in absent the commencement of the bankruptcy case, except that payment of outstanding prepetition rent is stayed ... and ultimately discharged.

225 B.R. at 64. *See also id.* (after discharge and termination of the automatic stay, landlords could enforce their rights under the lease "other than the right to collect the discharged debt," citing *Bacon* ); *id.* ("[e]xcept that the [chapter 7] debtor's discharge in bankruptcy absolves her of the debt for rent ...," citing *Touloumis* ). The *Couture* court held in that connection:However, [the landlord Housing Authority] could only proceed against the Coutures *in rem* for failure to make pre-petition payments of rent in arrears.... Those arrears rental payments were dischargeable, and were ultimately discharged, by the Coutures' Chapter 7 filing.

*Id.* (italics in original).[FN38]

> FN38. In none of these cases, this Court should emphasize, was whether or not there was a discharge litigated or ruled upon. They are noted merely to show how other bankruptcy courts, like this one, view pre-petition rent debts as discharged, even in cases where the leases have been deemed rejected under Code section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

257 B.R. 394
(Cite as: 257 B.R. 394)

365(d)(1). So far as this Court has been able to determine, no bankruptcy court has ever ruled as did the Housing Court here, and this Court's research has revealed no other case in which a litigant even made the argument.

For all of the foregoing reasons, the Retroactive Rent was, in fact, discharged. The Debtor need not pay the Retroactive Rent if he does not want to. For those reasons too, the determination of the Housing Court is, respectfully, void, and, as such, the Housing Court's determination contrary to this Court's analysis is not binding on this Court, under res judicata, collateral estoppel, *Rooker-Feldman*, or otherwise.

### E. *What The Landlord May and May Not Do*

Having concluded that there was in fact a discharge of the Retroactive Rent, this Court then provides the requested clarification of the Discharge Order. Part of that is relatively straightforward; the remainder requires more discussion.

#### 1. *Seeking and Obtaining Monetary Judgment Against The Debtor*

[16] The relatively straightforward part, of course, is that the Landlord cannot obtain a money judgment against the *413 Debtor for the discharged Retroactive Rent. Nor can he seek it. If, though this Court is not convinced that this is the case, New York landlord-and-tenant procedural law is so inflexible as to require the Landlord to violate this prohibition in order to seek the *eviction* as a consequence of nonpayment that, as described below, is permissible as a matter of federal bankruptcy law,[FN39] this Court will consider entry of a supplemental order (settled on notice to all parties) to provide a safe harbor if the Landlord commits to proceed in a manner consistent with this opinion.

FN39. This Court adds "as a matter of federal bankruptcy law," because, as noted

below, it is intentionally not deciding the issues of state law, and in particular, state landlord-tenant law. The Court understands that the Debtor believes that once this Court makes clear that the Retroactive Rent has in fact been discharged, he has claims and/or defenses in his battle with the Landlord as matters of state landlord-tenant law. This Court emphasizes that it is not ruling on them here.

#### 2. *The Landlord's Ability to Proceed In Rem and/or for Eviction*

While, as just noted, the Retroactive Rent was discharged, and the Landlord thus cannot seek a monetary judgment for it, it is also important to note what the discharge did not do. The Discharge Order's third decretal paragraph tracked section 524(a) of the Code. Each enjoined the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset the discharged debt "*as a personal liability of the debtor.*" Section 524(a)(1); *accord* Discharge Order (¶ 3) ("*as personal liabilities of the Debtor(s)* ") (emphasis added in each instance).

[17] Each of section 524(a) and the Discharge Order prohibited the Landlord's efforts to recover the obligation from the discharged debtor, but did not extinguish the underlying debt. As the court explained in *United States v. Alfano*, 34 F.Supp.2d 827, 841 (E.D.N.Y.1999):

Part of the conceptual difficulty may arise from the interplay between a discharge of the debtor's debt and an extinguishment of the creditor's claim. The key point is that although a debtor's debt may be personally discharged in bankruptcy, the underlying debt is not extinguished.

By reason of that fundamental principle, the Landlord is free to observe, and to take action predicated on the fact, that the discharged Retroactive Rent has not been paid, and that the Debtor's rent debt to the Landlord has not been extinguished. A substantially identical observation was made by the court in *Hepburn*, supra, under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

257 B.R. 394
(Cite as: 257 B.R. 394)

facts very similar to those in our case. There, as noted above, a residential property tenant had filed for bankruptcy relief under chapter 7 of the Code when owing substantial sums in pre-petition rent to her landlord. There too the Chapter 7 trustee neither assumed nor rejected the lease, with the result that the lease was deemed rejected under section 365(d)(1). The debtor in *Hepburn* was discharged from the pre-petition rent (that apparently not even being an issue), but the *Hepburn* court then explicitly noted what that discharge did *not* do:

The discharge in bankruptcy of the accrued debt for rent does not constitute the payment of rental. A discharge in bankruptcy does not constitute a payment, or extinguishment, or a cancellation of the debt.

27 B.R. at 136.

Another corollary of the principle that the underlying debt is not extinguished upon discharge is that, at least as a matter of federal bankruptcy law, the Landlord here is free to avail herself of the *consequences* of the nonpayment of the rental, and of the fact that the unpaid rent obligation was not extinguished, so long as she does not attempt to recover the unpaid rent. That too appears from caselaw closely on point, including law in this District.

**\*414** Recognizing, as it did, that the underlying rent debt survived, and remained unpaid, the *Hepburn* court concluded:

Except that the debtor's discharge in bankruptcy absolves her of the debt for rent, the landlord is entitled to whatever his remedies would be in the courts of New York State, absent bankruptcy, for breach of a lease.... Despite the discharge, a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent.

...

[The landlord] is now free to pursue its remedies in New York's housing court for [the debtor tenant's] breach of her obligation to pay rent....

*Id.* at 136-137.[FN40]

FN40. The *Hepburn* court continued with an observation with which this Court would not necessarily agree, though in part this Court's view arises from cases decided after *Hepburn*, and in any event, both the *Hepburn* court's observation and this court's disagreement are unnecessary to the disposition of the motion. In *Hepburn* (where; as noted above, the Chapter 7 trustee's failure to act resulted in a deemed rejection under Code section 365(d)(1), and the lease was deemed "breached" under section 365(g)), the court found that the landlord could seek eviction for nonpayment of rent, "reinforced by the breach arising from the trustee's rejection of her lease." 27 B.R. at 137. Cases decided after *Hepburn* have emphasized the need to distinguish between the *fact* of the breach resulting from deemed rejection under section 365(d)(1) and the *consequences* of that breach. State law determines the latter. *See Medical Malpractice Insurance Ass'n v. Hirsch (In re Lavigne )*, 114 F.3d 379, 387 (2d Cir.1997) (*citing Yasin, supra,* 179 B.R. at 50) (because "rejection constitutes a statutory breach, but does not repudiate or terminate the lease ... [t]he parties must ... resort to state law to determine their rights as a result of the breach"). In this circuit, state law would determine whether the deemed breach by itself gives the landlord the right to evict, an issue of particular relevance where the rent continues to be paid.

A similar, but arguably distinct approach (determining by itself that rejection would not result in termination, rather than leaving the determination to the state courts), was that taken by the court in *Couture, supra,* 225 B.R. at 64 (although section 365(g) provides that the rejection of a lease constitutes a breach, the breach does not terminate an unexpired lease; "[t]o so hold would be to find that a lease otherwise not in default under state law would be terminated by the trustee's failure to assume it."). But to whatever extent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                                          Page 24

257 B.R. 394
(Cite as: 257 B.R. 394)

they themselves consider the state law, all of these cases are consistent in not taking it as a given that lease termination would flow from the deemed rejection.

*Touloumis*, authored by Chief Judge Bernstein of this Court, is also closely on point. There, as here, a tenant occupying a rent stabilized apartment in New York became embroiled with her landlord in nonpayment summary proceedings in New York City Civil Court by reason of her failure to pay pre-petition rent. Before her scheduled eviction, she filed a chapter 7 case in the Bankruptcy Court here.

Although the *Touloumis* decision, as noted above, recognized no less than four times that the Debtor was discharged, it nevertheless underscores how, at least as a matter of federal bankruptcy law, the landlord can invoke remedies without violation of the discharge and/or federal bankruptcy law. The *Touloumis* court made it clear that the discharge did not prevent the landlord from seeking to recover possession as a consequence of the failure to pay the discharged pre-petition rent. As the *Touloumis* court held:

The Debtor's second erroneous assumption in her opposition is that her discharge permits her to remain in possession of the premises without paying the rent that accrued under the expired lease.... [A]lthough the discharge prevents the landlord from getting a personal judgment against the Debtor for the unpaid, pre-petition rent, it does not prevent the landlord from evicting the Debtor for its non-payment....

170 B.R. at 830.

Other courts have held similarly. In an early case under the Code, *In re Rush*, 9 B.R. 197 (Bankr.E.D.Pa.1981), the debtor had argued that the landlord could not proceed against her to evict for failure to *415 pay pre-petition rent dischargeable in her Chapter 7 case. Referring to section 524(a), the court rejected that argument:

It is crystal clear from [that] language ... that a discharge only prevents a creditor from proceeding against the debtor on the debt as a personal liability.... Here the discharge of the debtor will eliminate the

debtor's personal liability for that debt but does not eliminate any of the other consequences of that debt. Therefore, since the failure to pay rent was a breach of the lease, we conclude that the landlord may pursue any remedy to which it is entitled under state law for that breach *except* a remedy against the debtor personally to collect the money due. Such action would not be contrary to the provisions of § 524(a) as stated above.

9 B.R. at 200 (italics in original). Thus, just as a mortgagee could foreclose on realty securing a discharged debt, the landlord could proceed in state court to recover premises leased by the debtor where the debtor was in pre-petition default in the payment of rent-even though that pre-petition rent would be discharged. *See id.* at 201.

Quoting from *Rush* approvingly, the *Bacon* court summarized the *Rush* holding:

Finding that the landlord did not seek to proceed against the debtor personally but rather to proceed in rem against the leased premises, the *Rush* Court found no violation of the discharge injunction of § 524(a) and granted the landlord's requested relief.

212 B.R. at 69. The *Bacon* court held, as had the court in *Rush*, that "[t]he landlord may still proceed in rem against the leased premises." *Id.; accord Couture*, 225 B.R. at 64 (same, citing *Bacon* ).[FN41]

> FN41. Some of the authority described above precedes the unanimous decision of the United States Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), and some follows it, but all are consistent with it. *Johnson* reiterated the long-standing principle that:
> [A] bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another-namely, an action against the debtor in rem.
> 501 U.S. at 84, 111 S.Ct. at 2154.

[18] The *Touloumis* court concluded:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

257 B.R. 394
(Cite as: 257 B.R. 394)

[T]he Debtor's discharge does not prevent the landlord from evicting her for nonpayment of rent under that lease.

170 B.R. at 830. This Court holds likewise. So long as no money is sought, this Court regards proceeding in rem against the Debtor's leasehold as no more inconsistent with a discharge than would be a mortgagee's proceeding against the Debtor's fee interest. Though the Landlord cannot, consistent with the discharge, get a personal judgment against the Debtor for the Retroactive Rent, she can, consistent with the discharge, seek to evict the Debtor for its nonpayment.

### III.

### Contempt

[19] Under Code section 524(a)(2), a discharge in a case under the Bankruptcy Code "operates as an injunction." The Discharge Order imposed a similar injunction. As Judge Gonzalez of this Court noted in *Cruz*, bankruptcy courts have found that violation of a section 524(a)(2) injunction is punishable by contempt. *See Cruz*, 254 B.R. at 816 (citing several cases, and extensively discussing when sanctions for violation would, or would not, be appropriate); *see also* 4 *Collier on Bankruptcy* ¶¶ 524.02[2], 524.02[2][c]. It is unnecessary, in this Court's view, to repeat the lengthy discussion of the law set out in *Cruz* ; it is sufficient simply to observe that in this case, as in *Cruz* and the numerous other cases cited and discussed in *Cruz*, this "is not a case in which sanctions are appropriate." *Cruz*, 254 B.R. at 816.

This Court has found that section 524 and the Discharge Order were violated, *416 but under circumstances where the Landlord had tried in good faith to walk the line between the permissible and the impermissible. This Court further found as facts that the Landlord's actions evidenced an effort to ascertain and comply with the applicable law; were technical and unintended violations of the Debtor's rights; did not evidence malevolent intent or bad faith on the part of the Landlord; and were

not malicious or egregious. In declining to find contempt in the face of facts like these, the *Cruz* court was supported by substantial authority. *See, e.g., In re Bowling*, 116 B.R. 659, 664 (Bankr.S.D.Ind.1990) (action of creditor had some colorable legal support; contempt sanctions not warranted: "Sanctions for contempt are not appropriate for technical and unintended violations of a debtor's rights."). Under these facts, as in *Bowling* and *Cruz*, 254 B.R. at 816, a finding of contempt would be inappropriate and unjust.

### IV.

### Damages, Legal Fees, and Costs

[20] The contempt analysis also determines, in this Court's view, the Debtor's request for damages, legal fees and costs. Although attorneys fees have been awarded in bankruptcy cases within the Second Circuit for a violation of the section 524 injunction, *see Cruz*, 254 B.R. at 816; *In re Watkins*, 240 B.R. 668, 680 (Bankr.E.D.N.Y.1999) (Eisenberg, J.), their award has been deemed appropriate (1) when a party willfully disobeys a court order, and (2) when a party acts in bad faith, vexatiously, wantonly or for oppressive reasons. *Cruz*, 254 B.R. at 816; *Watkins*, 240 B.R. at 678. Neither is present here. Even assuming (without deciding) that willfully proceeding with knowledge of the Discharge Order should be deemed to satisfy the first requirement, the second requirement plainly has not been established. There was no evidence, much less a finding, of bad faith on the part of the Landlord here.

### V.

### Accounting

[21] The analysis described above makes clear that while the Landlord can proceed in rem, she cannot require the payment of the discharged debt. Nor can she use self-help to recover it. If and to the extent that she applied post-petition rent payments

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394

257 B.R. 394
**(Cite as: 257 B.R. 394)**

to discharged pre-petition debt, that would be improper. However, the Debtor has merely stated that he wonders whether that is the case, and seeks an accounting to find out.

The Debtor's request is appropriate in principle, and will be granted but with a simplification. This Court believes that the formal mechanism of an accounting is unnecessary and burdensome as a means to answer that very discrete inquiry. The Court believes that counsel for the Debtor should first inquire by letter, and that counsel for the Landlord respond by letter. If that, contrary to the Court's expectation, is insufficient, the Court will authorize discovery under Fed.R.Bankr.P.2004 to clarify the facts. If that too is insufficient, the formality of an accounting might then be justified, and the Court will consider such an application upon due notice to the Landlord.

*VI.*

*Further Proceedings*

[22] The Debtor asked this Court, in his seventh request for relief, for "such further relief as might be just to enforce the Discharge Order." More specifically, though he acknowledged that the issues related to his tenancy "are most likely properly resolved in State court" (Debtor Br. at 3), he urged the Court to consider them "for the sake of completeness and to understand the procedural posture of the case." (Id.)

Thus the Debtor led this Court to understand that he would like this Court to involve itself in the determination of the *417 rights of the Debtor and the Landlord once the discharge issues were clarified-articulated in his brief as "application of state law to the facts." (Id. at 6). This Court declines the suggestion. Having determined the issues properly before this Court-construction of the Discharge Order and Bankruptcy Code section 524(a), the requests for contempt and sanctions, and the request for an accounting-this Court believes that it should do no more.

Assuming that this Court has subject matter jurisdiction over the landlord-tenant issues between the Debtor and the Landlord-a matter that is not free from doubt [FN42]-the Court chooses not to exercise it. As 28 U.S.C. § 1334 authorizes it to do,[FN43] the Court abstains. Once the federal law defining the nature and scope of the discharge is clarified, the state courts are better suited to determine the parties' rights and responsibilities incident to the Debtor's continuing occupancy of the Apartment. Just as this Court was probably better suited to rule on the federal bankruptcy law issues involving the nature and extent of discharge, this Court believes that the state courts are better suited to determine, as one or more questions of state law, whether the Debtor may occupy the Apartment if he pays only the rent accruing after his bankruptcy filing; whether there was, as the Debtor has suggested, a post-bankruptcy filing novation with respect to his tenancy, resulting from the acceptance of rent (see Debtor Br. at 6); and/or whether there are other bases for a contention that he may continue in occupancy if he chooses (as his right) not to pay the discharged Retroactive Rent.

FN42. This Court's subject matter jurisdiction arises under 28 U.S.C. § 1334. That section provides that the district courts of the United States (and thus the Bankruptcy Courts), in addition to having original and exclusive jurisdiction of all cases under title 11 (i.e., cases under the Bankruptcy Code), have original but not exclusive jurisdiction of civil proceedings arising under title 11 or arising in or related to a case under title 11. This is arguably a matter "related to" a case under title 11, an area where the standard is a fairly broad one. *See, e.g., Publicker Indus., Inc. v. United States (In re Cuyahoga Equipment, Corp.)*, 980 F.2d 110, 114 (2d Cir.1992) (looking to whether the outcome of the proceeding " might have any conceivable effect" on the estate being administered in bankruptcy). But this matter's minimal effect on the estate and creditors, as contrasted to the Debtor himself, might put this case in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394
**(Cite as: 257 B.R. 394)**

gray area. With the Chapter 7 trustee having understandably taken no action with respect to the Debtor's lease, and with the lease having been deemed abandoned back to the Debtor, an argument could be made that a necessary nexus to an effect upon the estate itself, and hence creditors, is lacking. This is an issue that the Court need not, and does not, decide.

FN43. 28 U.S.C. § 1334(c)(1) provides, in relevant part:
Nothing in this section prevents a district court [and hence the Bankruptcy Court] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding ... arising in or related to a case under title 11.

The New York state courts also are better suited than this Court to determine what state court procedural vehicles are available to the Landlord to obtain any necessary rulings, in light of this Court's ruling that while the Retroactive Rent was discharged, it did not go away, and that the Landlord may, consistent with federal bankruptcy law, proceed against the Debtor, in rem, so long as she does not try to collect the Retroactive Rent.

Possibly anticipating the way in which this Court would rule, the Debtor, in his papers, and the Landlord, in oral argument, each addressed state court requirements for the maintenance of landlord-tenant summary proceedings that might create procedural barriers to any of the Landlord's efforts to proceeding solely in rem, as this Court has ruled she may do. Counsel for the Landlord mentioned these requirements at the hearing on this motion as having affected the manner in which she drafted the 5-Day Notice, the Notice of Petition and Petition,[FN44] and the Debtor *418 raised these in the portion of his brief under "application of state law to the facts." (Debtor's Br. at 6).

FN44. Counsel for the Landlord, whose 5-Day Notice, as previously noted, properly characterized the law, articulated

the dilemma she thought she faced. She regarded her only available procedural vehicle to be a "non-payment" summary proceeding. *See* N.Y. Real Property Actions & Proceedings Law ("RPAPL") § 711(2). The right to evict, she thought, required pleading a claim for unpaid rent, even though the Landlord only wanted possession. She thought a summary proceeding for possession referred to in New York practice as a "holdover proceeding," *see* N.Y. RPAPL § 711(1)-a classic in rem type of proceeding-would not lie where the essence of the basis for eviction is not the continuation of possession after the expiration of the lease term, but rather the non-payment of rent.
This Court respected her sincerity in wrestling with these issues as an important factor in its determination that her violation of the Discharge Order and section 524(a) was in good faith and not contemptuous.

The determination of the availability of state law procedural vehicles to bring up the remaining issues for determination is classically one for the state courts. This Court believes it best to abstain in part based on its belief that if, as a matter of state law, the Landlord has substantive rights with respect to the Debtor's non-payment of the Retroactive Rent, the state courts will find an effective procedural mechanism for vindicating them (or merely clarify what it is), especially if any underlying federal bankruptcy law issues are clarified.[FN45] That is particularly so since (without purporting to infringe upon the domain of the state courts in this regard) Rasch observes that originally summary proceedings were proceedings in rem for the recovery of the possession of real property, *id.* at § 29:6, and that New York's statutes were thereafter amended to permit a judgment also for rent due if the notice of petition contains a notice that a demand for such judgment has been made. *Id.*[FN46]

FN45. A treatise in the landlord-tenant area, 2 Rasch, *New York Landlord & Tenant* (4th ed. 1998) ("Rasch"), states,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                             Page 28

257 B.R. 394
(Cite as: 257 B.R. 394)

with respect to the summary proceeding mechanism that had been used by the Landlord (and that is the normal means by which landlords enforce their rights), that its purpose was to afford a "simple, expeditious and inexpensive" means for the recovery of real property, as a substitute for ejectment, "an expensive and dilatory [proceeding which in many instances amounted] to a denial of justice." *Id.* at § 29:5 & notes 12-13 (*citing, e.g., Reich v. Cochran,* 201 N.Y. 450, 453-54, 94 N.E. 1080, 1081 (1911)).

FN46. Rasch goes on to say that:
Accordingly, a summary proceeding may now be either a solely possessory special proceeding, or a combination of action and special proceeding in which a money judgment can also be granted.
*Id.*

In his brief-once more in the section dealing with "application of state law to the facts"-the Debtor called this Court's attention to a decision of the Appellate Term, *Stahl Broadway Co. v. Haskins,* 180 Misc.2d 705, 693 N.Y.S.2d 398 (App.Term, 1st Dept.1999) (Debtor's Br. at 6); in oral argument, the Landlord also referred to this, as evidencing the dilemma with which she was faced. *Stahl Broadway* affirmed the dismissal of a nonpayment proceeding wherein the landlord sought a possessory judgment and warrant of eviction only, after rent arrears had been discharged in a bankruptcy. The *Stahl Broadway* court ruled that a summary proceeding could not be brought, as it believed that there was no valid basis to serve a rent demand pursuant to RPAPL 711(2) for arrears which had previously been discharged. *See Stahl Broadway,* 180 Misc.2d at 706, 693 N.Y.S.2d at 398 . It so ruled based on the state law principle that:
At the time a summary proceeding for nonpayment of rent is commenced there must be rent in arrears which has not been paid (2 Rasch, New York Landlord and Tenant-Summary Proceedings, 4th ed., § 32:8).

180 Misc.2d at 706, 693 N.Y.S.2d at 398.

The New York courts can decide if the *Stahl Broadway* court would have ruled as it did (or if it would so rule again) if it had been shown that a premise upon which the *Stahl Broadway* court may have ruled was incorrect. This Court notes, in that regard *419 (not by way of ruling on the state law issues, but only with respect to the federal bankruptcy law premise upon which the state law was applied), that even after a tenant's discharge, there *would* still be "rent in arrears which has not been paid," *id.,* for the reasons noted above.[FN47]

FN47. Before adding the language tracking the decisions in *Hepburn* and *Touloumis,* which this Court has noted accurately states federal bankruptcy law, the 5-Day Notice that was served here said:
TAKE NOTICE THAT you are justly indebted to the Landlord of the above-described premises as set forth above which you are required to pay on or before the expiration of five (5) days from the day of service of this Notice, or surrender up the possession of said premise to the Landlord, in default of which the Landlord will commence summary proceedings under the Statute to recover the possession thereof.
(Grimble Aff. Exh. G, third document).
This language was evidently satisfactory as an RPAPL 711(2) notice when the Landlord and Debtor were before the Housing Court. While, as noted, this Court was troubled by language in the Landlord's Notice of Petition and Petition seeking a money judgment in addition to possession, it was not troubled by the language in the 5-Day Notice; this Court has ruled that the 5-Day Notice, especially when accompanied by the additional language the Landlord added, was not violative of the Discharge Order or section 524(a).

This Court assumes that there will be a viable and reasonably expeditious way for the Landlord and the Debtor to litigate the merits of the issues of the Debtor's continued right to occupancy if he chooses

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

257 B.R. 394                                                                                                          Page 29

257 B.R. 394
**(Cite as: 257 B.R. 394)**

to avail himself of the discharge. If New York procedural law, by reason of *Stahl Broadway* or otherwise, is such that there is no such way for the New York courts to consider the merits of the Landlord-Debtor dispute consistent with what bankruptcy law permits and does not permit, this Court is prepared to consider entry of a further order so that its rulings are not a barrier to the state courts' consideration of the merits.[FN48]

> FN48. This Court assumes that the Debtor advised this Court of *Stahl Broadway* incident to laying out the totality of the potentially applicable law, and not as the first step in a chess game. While the Court emphasizes that it has no basis for concluding that the Debtor is acting in anything other than good faith, if it turns out that the Debtor has created procedural barriers in the state courts impeding the state courts from reaching the issues as a consequence of this Court's ruling-with the purpose or effect of a procedural checkmate-the Landlord can come back to this Court for further clarifications and/or a safe harbor, so long as she commits to act consistently with this opinion.

As a matter of federal bankruptcy law, the Debtor is entitled to protection from a money judgment but no more than that. In *187 Concourse Assoc. v. Bunting,* 175 Misc.2d 870, 874, 670 N.Y.S.2d 686, 688-89 (Civ.Ct. Bronx Co.1997), the court, upon thoughtful analysis of *Touloumis* and its progeny, appropriately concluded that while a nonpayment money judgment for a discharged rent obligation would be void under section 524(a), the possessory judgment resulting from nonpayment would not be.

Accordingly, to minimize the expense of litigation, and to avoid turning further litigation into such a chess game, this Court rules now that it will not consider the Landlord's actions to be violative of the Discharge Order or section 524(a) if (either by amendment to the Petition in her existing summary proceeding or in any newly commenced summary proceeding) she issues a clear, unequivocal, and irrevocable waiver of her right to a money judgment if she is required to ask for one and one is awarded. Needless to say, this Court will expect any such waiver by the Landlord to be honored, and will be available to provide relief-including, without limitation, declaring another judgment void-if it is not.

\* \* \* \* \* \*

The foregoing constitutes this Court's findings of fact and conclusions of law on the motion. The Discharge Order, and the applicability of Bankruptcy Code section 524(a) should be deemed clarified in accordance with this opinion, and the Debtor and the Landlord are authorized to proceed in any manner not inconsistent with it.

SO ORDERED.

Bkrtcy.S.D.N.Y.,2001.
In re Dabrowski
257 B.R. 394

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369
David M. LeMay (DL 9093)
Douglas E. Deutsch (DD 7229)

Attorneys for the Spiegel Creditor Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | **Chapter 11** |
| | : | |
| **In re:** | : | **Case No.  03 - 11540 (BRL)** |
| | : | |
| **SPIEGEL, INC., et al.,** | : | **(Jointly Administered)** |
| | : | |
| Reorganized Debtors. | : | |

----------------------------------------------------------------x

**SPIEGEL CREDITOR TRUST'S COUNTER DESIGNATION**
**OF ITEMS FOR THE RECORD ON APPEAL**

On September 10, 2007, the Court docketed Appellant Jacqueline Johnson's

designation of items to be included in the record of appeal.  *See* Notice for Designation of Items

and Motion for Stay Pending Appeal (Docket No. 4725) (the "Notice of Designation").[1] The

Spiegel Creditor Trust, as Appellee, hereby supplements Appellant Johnson's record on appeal

with its own list of items to be designated on the appeal including, for sake of clarity and

---

[1]    Although the Notice of Designation is styled to include a motion for stay pending appeal, there is no reference
to any stay request in the body of the court paper.  Including the stay request with the designation in that manner
is not only procedurally defective, it is also impossible to address as, among other things, it is not clear (a)
which order should be stayed, (b) what specific relief is requested, (c) the legal basis for the requested relief and
(d) the identity of the court from which the relief is sought (both the district court and the bankruptcy court
docket numbers are referenced in the Notice of Designation).  If a request for a stay is ever properly raised, the
Spiegel Creditor Trust reserves the right to address the request.

completeness, those items that Johnson seems to be seeking to identify in the Notice of

Designation.

The Spiegel Creditor Trust further notes that Johnson has failed to file a timely

statement of the issues to be presented.[2] Although the absence of a statement of issues on appeal

makes it impossible for the Spiegel Creditor Trust to be certain that all necessary items are

included in the designated record, the Spiegel Creditor Trust has assumed (to ensure that it has

complied fully with all applicable appeal-related deadlines) that Johnson is seeking to appeal

Judge Lifland's order holding Johnson in contempt.  Accordingly, the Spiegel Creditor Trust has

attempted to identify all relevant documents for an appeal of that order.  The Spiegel Creditor

Trust reserves the right to supplement this Counter Designation if Johnson ultimately files (and

the appropriate court ultimately considers) a statement of issues to be presented, however

untimely.

| Document Description | Date | Docket Number |
|---|---|---|
| Modified First Amended Joint Plan of Reorganization of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code | 05/23/2005 | 3556 |
| Finding of Facts, Conclusions of Law and Order Pursuant to 11 U.S.C. § 1129(a) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Modified First Amended Joint Plan or Reorganization of Affiliated Debtors and Granting Related Relief | 05/25/2005 | 3590 |

(Continued on next page)

---

[2]    The Spiegel Creditor Trust will seek to dismiss this appeal on that basis at the appropriate juncture.

| | | |
|---|---|---|
| Supplemental Statement of the Spiegel Creditor Trust in Support of the Debtors' Twenty-Fourth Omnibus Objection to Proofs of Claim (No Amount Due and Owing, Amount of Claim Incorrect, Claims Filed Against Incorrect Debtor, Misclassified Claims and Amended and Superseded Claims) with Respect to the Claim of Jacqueline J. Johnson (Claim No. 4248) *(including all exhibits thereto)* | 02/02/2006 | 4335 |
| Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline J. Johnson | 12/19/2006 | 4606 |
| Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline Johnson *(including all exhibits thereto)* | 01/10/2007 | 4632 |
| Response of the Spiegel Creditor Trust to Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim With Respect to Claim Number 4248 Filed by Jacqueline Johnson *(including all exhibits thereto)* | 02/05/2007 | 4646 |
| Response of Jacqueline Johnson (Claim 4248) to Spiegel Creditor Trust's Response to Motion for Request for Reconsideration of Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim *(including all exhibits thereto)* | 02/14/2007 | 4656 |
| Memorandum Decision and Order Denying Motion for Reconsideration | 04/04/2007 | 4668 |
| Notice of Appeal | 04/16/2007 | 4673 |
| Motion to Reconsider and Allow Corrections to Clarify Misunderstanding and Explanation as to Why the Reconsideration was Made by Claimant in her Motion for Reconsideration to Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 filed by Jacqueline Johnson | 04/16/2007 | 4674 |
| Order Denying Motion to Reconsider and Allow Corrections to Clarify Misunderstanding and Explanation as to Why the Reconsideration to Order Granting Twenty-Fourth Omnibus Objection to Proofs of Claim with Respect to Claim Number 4248 Filed by Jacqueline Johnson | 04/19/2007 | 4675 |
| Motion to Re Reconsider in Light of New Evidence with Respect to Claim Number 4248 Filed by Jacqueline Johnson | 05/01/2007 | 4692 |

(Continued on next page)

| | | |
|---|---|---|
| Order Denying Motion to Re Reconsider in Light of this New Evidence with Respect to Claim Number 4247 [SIC] Filed by Jacqueline Johnson | 05/17/2007 | 4696 |
| Motion of Spiegel Creditor Trust to Hold Jacqueline Johnson in Contempt of Court for Knowing Violation of Plan Injunction *(including all exhibits thereto)* | 08/03/2007 | 4713 |
| Affidavit of Service (Service of Notice and Motion of Spiegel Creditor Trust to Hold Jacqueline Johnson in Contempt of Court for Knowing Violation of Plan Injunction) | 08/03/2007 | 4714 |
| Response to Debtor's Notice of Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in Contempt of Court for Knowing Violation of Plan Injunction | 08/17/2007 | 4718 |
| Order Granting the Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in Contempt of Court | 08/21/2007 | 4720 |
| Affidavit of Service (Service of Order Granting the Spiegel Creditor Trust's Motion to Hold Jacqueline Johnson in Contempt of Court) | 08/21/2007 | 4721 |
| Transcript of Hearing Held on August 21, 2007 on Motion of Spiegel Creditor Trust to Hold Jacqueline Johnson in Contempt of Court for Knowing Violation of Plan Injunction | 08/30/2007 | 4723 |

Dated:  September 19, 2007
      New York, New York

                    CHADBOURNE & PARKE LLP


                By:    */s/  David M. LeMay*
                    David M. LeMay (DL 9093)
                    Douglas E. Deutsch (DD 7229)

                    30 Rockefeller Plaza
                    New York, New York 10112
                    (212) 408-5100

                    Attorneys for the Spiegel Creditor Trust

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
David M. LeMay (DL 9093)
Douglas E. Deutsch (DD 7229)

Attorneys for the Spiegel Creditor Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                    :
                    :      **Chapter 11**
In re:              :
                    :      **Case No. 03 - 11540 (BRL)**
**SPIEGEL, INC., et al.,**     :
                    :     **(Jointly Administered)**
       **Reorganized Debtors.**  :
                    :
                    :
                    :
-----------------------------------------------------------------x

## AFFIDAVIT OF SERVICE

    David M. Bava, being duly sworn, deposes and says:

    1. I am employed as a legal assistant by the law firm of Chadbourne & Parke LLP, I am not a party to this action and that I am over the age of eighteen.

    2. On September 19, 2007, I caused to be served a true and correct copy of the *Spiegel Creditor Trust's Counter Designation of Items for the Record on Appeal* upon Jacqueline Johnson, 10305 South Bensley Avenue, Chicago, Illinois 60617 by (i) Federal Express expedited delivery, and (ii) First Class Mail, postage prepaid thereon.

3.   I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment under penalty of perjury.

_____/s/ David M. Bava_____
David M. Bava

Sworn to before me this
19th day of September 2007

_/s/  Francisco Vazquez___
Notary Public

**Francisco Vazquez**
**Notary Public, State of New York**
**No. 31-6013920**
**Qualified in New York County**
**Commission Expires Dec. 27, 2010**

2